IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO:

JUDITH ANNE HAYES, individually and on behalf of W.H., a minor,
ROBYN MCCARTHY and JOHN MCCARTHY, individually
and on behalf of L.M., a minor, AMANDA BANEK, individually
and on behalf of D.B. and B.B, minor children, KAS ARONE-
MILLER, individually and on behalf of R.M. and L.M.,
Minor children, ALISHA TODD, individually and on behalf
of J.T, a minor, JAMIE KINDER, individually and on
behalf of R.K., a minor, CHRIS RODRIGUEZ, individually
and on behalf of J.D.-F., a minor, JACK KOCH, individually
and on behalf of R.K, B.K., and A.K., minor children,
KRISTEN THOMPSON, individually and on behalf of P.T., a
minor, EREN DOOLEY, individually and on behalf of G.D.,
a minor, TOM COLLINS, individually and on behalf of Q.C., a minor,

     Plaintiffs,

v.

GOVERNOR RONALD DION DESANTIS, in his official
Capacity as Governor of the State of Florida; FLORIDA
DEPARTMENT OF EDUCATION, RICHARD CORCORAN,
in his official capacity as Commissioner of the Florida Department
of Education, ORANGE COUNTY SCHOOL BOARD, MIAMI
DADE COUNTY SCHOOL BOARD, HILLSBOROUGH
COUNTY SCHOOL BOARD, PALM BEACH SCHOOL BOARD,
BROWARD COUNTY SCHOOL BOARD, PASCO COUNTY
SCHOOL BOARD, ALACHUA COUNTY SCHOOL BOARD and
VOLUSIA COUNTY SCHOOL BOARD,

     Defendants.

_____/

## **COMPLAINT FOR INJUNCTIVE RELIEF**

COME NOW the PLAINTIFFS, JUDITH ANN HAYES, individually and on behalf of

W.H., a minor, ROBYN MCCARTHY and JOHN MCCARTHY, individually and on behalf of

L.M., a minor, AMANDA BANEK, individually and on behalf of D.B. and B.B, minor children,

KAS ARONE-MILLER, individually and on behalf of R.M. and L.M., Minor children, ALISHA

TODD, individually and on behalf of J.T, a minor, JAMIE KINDER, individually and on behalf of R.K., a minor, CHRIS RODRIGUEZ, individually and on behalf of J.D.-F., a minor, JACK KOCH, individually and on behalf of R.K, B.K., and A.K., minor children, KRISTEN THOMPSON, individually and on behalf of P.T., a minor, EREN DOOLEY, individually and on behalf of G.D., a minor, and TOM COLLINS, individually and on behalf of Q.C. a minor, by and through the undersigned counsels sues GOVERNOR RON DESANTIS; FLORIDA DEPARTMENT OF EDUCATION; COMMISSIONER RICHARD CORCORAN; the ORANGE COUNTY SCHOOL BOARD; the MIAMI DADE COUNTY SCHOOL BOARD; the HILLSBOROUGH COUNTY SCHOOL BOARD, PALM BEACH SCHOOL BOARD; BROWARD COUNTRY SCHOOL BOARD; PASCO COUNTY SCHOOL BOARD; ALACHUA COUNTY SCHOOL BOARD and VOLUSIA COUNTY SCHOOL BOARD and hereby alleges as follows:

## PARTIES

1.      The plaintiff, JUDITH ANNE HAYES, is an individual, *sui juris*, who resides in Orange County, Florida. Mrs. Hayes is the mother of W.H., a disabled child.

2.      The plaintiff, W.H., is a minor who has resides in Orange County, Florida. W.H. has Down Syndrome and has been identified as a student with a disability.

3.      The plaintiff, ROBYN MCCARTHY, is an individual, *sui juris*, who resides in Miami-Dade County, Florida. Ms. McCarthy is the mother of L.M., a disabled child.

4.      The plaintiff, JOHN MCCARTHY, is an individual, *sui juris*, who resides in Miami-Dade County, Florida. Mr. McCarthy is the father of L.M., a disabled child.

5.      The plaintiff, L.M., is a minor who resides in Miami-Dade County, Florida. L.M. has severe asthma and has been identified as a student with a disability.

6.      The plaintiff, KAS ARONE-MILLER, is an individual, *sui juris*, who resides in Hillsborough County, Florida. Ms. Arone-Miller is the mother of R.M. and L.M.

7.      The plaintiff, R.M., is a minor who resides in Hillsborough County, Florida, at all times relevant. R.M. has an autism spectrum disorder and has been identified as a student with a disability.

8.      The plaintiff, L.M., is a minor who resides in Hillsborough County, Florida. L.M. has an autism spectrum disorder and has been identified as a student with a disability.

9.      The plaintiff, AMANDA BANEK, in an individual, *sui juris*, who resides in Palm Beach County, Florida. Ms. Banek is the mother of D.B. and B.B.

10.      The plaintiff, D.B., is a minor who resides in Palm Beach County, Florida. D.B. has severe asthma and a speech impairment and has been identified as a student with a disability.

11.      The plaintiff, B.B., is a minor who resides in Palm Beach County, Florida. B.B. has severe asthma, a speech impairment, attention deficit hyperactivity disorder and anxiety and has been identified as a student with a disability.

12.      The plaintiff, ALISHA TODD, in an individual, *sui juris*, who resides in Palm Beach County, Florida. Ms. Todd is the mother of J.T.

13.      The plaintiff, J.T., is a minor who resides in Palm Beach County, Florida. J.T. has an autism spectrum disorder and hyperekplexia and has been identified as a student with a disability.

14.     The plaintiff, JAMIE KINDER, is an individual, *sui juris*, who resides in Volusia County, Florida. Ms. Kinder is the mother of R.K.

15.     The plaintiff, R.K., is a minor who has resides in Volusia County, Florida. R.K. is immunocompromised and has been identified as a student with a disability.

16.     The plaintiff, CHRIS RODRIGUEZ, *sui juris*, who resides in Broward County, Florida. Mr. Rodriguez is the parent and guardian of J.D.-F.

17.     The plaintiff, J.D.-F., is a minor who has reside in Broward County, Florida. J.D.-F. has kidney disease and has been identified as a student with a disability.

18.     The plaintiff, JACK KOCH, *sui juris*, who resides in Pasco County, Florida. Mr. Koch is the father of R.K, B.K. and A.K.

19.     The plaintiff, R.K., is a minor who resides in Pasco County, Florida. R.K. has attention deficit hyperactive disorder and a specific learning disability and has been identified as a student with a disability.

20.     The plaintiff, B.K., is a minor who resides in Pasco County, Florida. B.K. has an autism spectrum disorder and attention deficit hyperactive disorder along with a speech impairment. B.K. has been identified as a student with a disability.

21.     The plaintiff, A.K., is a minor who resides in Pasco County, Florida. A.K. has a speech impairment and has been identified as a student with a disability.

22.     The plaintiff, KRISTEN THOMPSON, *sui juris*, who resides in Alachua County, Florida. Ms. Thompson is the mother of P.T.

23.     The plaintiff, P.T., is a minor who resides in Alachua County, Florida. P.T. has Trisomy-18 and breaths through a tracheotomy tube. P.T. has been identified as a student with a disability.

24.     The plaintiff, EREN DOOLEY, is individual, sui juris, who resides in Hillsborough County, Florida. Ms. Dooley is the mother of G.D.

25.     The plaintiff, G.D., is a minor who has resides in Hillsborough County, Florida. G.D. has asthma and anxiety and has been identified as a student with a disability.

26.     The plaintiff, TOM COLLINS, in individual, sui juris, who resides in Palm Beach County, Florida. Mr. Collins is the father of Q.C.

27.     The plaintiff, Q.C., is a minor who resides in Palm Beach County, Florida. Q.C. has severe asthma and anxiety and has been identified as a student with a disability.

28.     The Defendant, RONALD DION DESANTIS, in his official capacity as Governor of the State of Florida ("Gov. DeSantis" or "DeSantis" or "Governor"), is responsible under Florida law for ensuring "the laws be faithfully executed" and has the "authority to protect life, liberty, and property." Florida Statutes §§ 14.01, *et. seq*. Defendant DeSantis is sued for his official capacity as the Governor of the State of Florida.

29.     The FLORIDA DEPARTMENT OF EDUCATION. ("FLDOE") is the state educational agency (SEA) responsible for educating all children within the State of Florida, including those who need special educational services because of a disability. FLDOE is a public entity pursuant to 42 U.S.C. § 12131(1)(B) and is subject to the mandates of Title II of the ADA and its implementing regulations. FLDOE receives federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(a).

30.     The Defendant RICHARD CORCORAN, in his official capacity as Commissioner of the Florida Department of Education, is responsible for the acts and omissions of the FLDOE.

31.     The Defendant, ORANGE COUNTY SCHOOL BOARD, ("Board" or "District"), as an indispensable but not adverse party, is a corporate and governmental agency duly empowered by the constitution and statutes of the state of Florida to administer, manage, and operate the Orange County Public Schools ("OCPS"). The Board receives state and federal funding for the education of children with disabilities. The Board meets the definition of a public entity under 42 U.S.C. § 12131.

32.     The Defendant, MIAMI DADE COUNTY SCHOOL BOARD, ("Board" or "District"), as an indispensable but not adverse party, is a corporate and governmental agency duly empowered by the constitution and statutes of the state of Florida to administer, manage, and operate the Miami Dade County Public Schools ("MDCPS"). The Board receives state and federal funding for the education of children with disabilities. The Board meets the definition of a public entity under 42 U.S.C. § 12131.

33.     The Defendant, HILLSBOROUGH COUNTY SCHOOL BOARD, ("Board" or "District"), as an indispensable but not adverse party, is a corporate and governmental agency duly empowered by the constitution and statutes of the state of Florida to administer, manage, and operate the Hillsborough County Public Schools ("HCPS"). The Board receives state and federal funding for the education of children with disabilities. The Board meets the definition of a public entity under 42 U.S.C. § 12131.

34.     The Defendant, PALM BEACH COUNTY SCHOOL BOARD, ("Board" or "District"), as an indispensable but not adverse party, is a corporate and governmental agency duly

Case 1:21-cv-22863-KMM   Document 1   Entered on FLSD Docket 08/06/2021   Page 7 of 35

Judith Ann Hayes, et. al.  v. Governor DeSantis, et. al.
COMPLAINT
Page 7 of 35

empowered by the constitution and statutes of the state of Florida to administer, manage, and operate the Palm Beach County Public Schools ("PBCPS"). The Board receives state and federal funding for the education of children with disabilities. The Board meets the definition of a public entity under 42 U.S.C. § 12131.

35.     The Defendant, BROWARD COUNTY SCHOOL BOARD, ("Board" or "District"), as an indispensable but not adverse party, is a corporate and governmental agency duly empowered by the constitution and statutes of the state of Florida to administer, manage, and operate the Broward County Public Schools ("BCPS"). The Board receives state and federal funding for the education of children with disabilities. The Board meets the definition of a public entity under 42 U.S.C. § 12131.

36.     The Defendant, PASCO COUNTY SCHOOL BOARD, ("Board" or "District"), as an indispensable but not adverse party, is a corporate and governmental agency duly empowered by the constitution and statutes of the state of Florida to administer, manage, and operate the Pasco County Public Schools ("PCPS"). The Board receives state and federal funding for the education of children with disabilities. The Board meets the definition of a public entity under 42 U.S.C. § 12131.

37.     The Defendant, ALACHUA COUNTY SCHOOL BOARD, ("Board" or "District"), as an indispensable but not adverse party, is a corporate and governmental agency duly empowered by the constitution and statutes of the state of Florida to administer, manage, and operate the Alachua County Public Schools ("ACPS"). The Board receives state and federal funding for the education of children with disabilities. The Board meets the definition of a

Case 1:21-cv-22863-KMM   Document 1   Entered on FLSD Docket 08/06/2021   Page 8 of 35

Judith Ann Hayes, et. al.  v. Governor DeSantis, et. al.
COMPLAINT
Page 8 of 35

public entity under 42 U.S.C. § 12131. ACPS has put into a place mask mandate for the only first three weeks of school.

38.     The Defendant, VOLUSIA COUNTY SCHOOL BOARD, ("Board" or "District"), as an indispensable but not adverse party, is a corporate and governmental agency duly empowered by the constitution and statutes of the state of Florida to administer, manage, and operate the Volusia County Public Schools ("VCPS"). The Board receives state and federal funding for the education of children with disabilities. The Board meets the definition of a public entity under 42 U.S.C. § 12131.

39.     The School Board Defendants (ORANGE COUNTY SCHOOL BOARD; the MIAMI DADE COUNTY SCHOOL BOARD; the HILLSBOROUGH COUNTY SCHOOL BOARD, PALM BEACH SCHOOL BOARD; BROWARD COUNTRY SCHOOL BOARD; PASCO COUNTY SCHOOL BOARD; ALACHUA COUNTY SCHOOL BOARD, and VOLUSIA COUNTY SCHOOL BOARD) are necessary and indispensable parties, and in their absence, the children who attend school in their district would not be able to obtain complete relief and it may leave these defendants subject to a substantial risk of incurring inconsistent obligations because of their interests.

## JURISDICTION AND VENUE

40.     Jurisdiction for this action vests pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) based upon claims brought under the Americans with Disabilities Act of 1990; 29 U.S.C. § 794, for claims brought under Section 504 of the Rehabilitation Act of 1973.

41.     Venue for this action lies pursuant to 28 U.S.C. § 1391(b) in that Defendants MIAMI DADE COUNTY SCHOOL BOARD; PALM BEACH SCHOOL BOARD; BROWARD

COUNTRY SCHOOL BOARD reside in this judicial district, and the children, L.M., D.B., B.B., J.T., J.D.-F. and Q.C., reside and go to schools in this Judicial District.

## **INTRODUCTION**

42.     On July 30, 2021, Florida Governor Ron DeSantis issued Executive Order 21-175, entitled "Ensuring Parents' Freedom to Choose – Masks in School" in response to several Florida school boards considering or implementing mask mandates in their school districts. In such Executive Order, Florida's Governor DeSantis contended that wearing a mask is a limitation on a parent's fundamental right to make health and educational decisions for their children, and that many school districts are scheduled to begin classes on August 10, 2021, which is just days away, and within weeks virtually all public schools across Florida will be underway; thereby placing thousands of families in limbo.

43.     Furthermore, the Governor ordered that the Florida Department of Health issue rules and safety protocols that control the spread of COVID-19, but all rules must "at minimum be in accordance with Florida's "Parents' Bill of Rights" and protect parents' right to make decisions regarding masking of their children in relation to COVID-19."

44.     As a penalty for non-compliance, Governor DeSantis directed his Commissioner of Education to withhold state funds from non-compliant school boards, including state funds, discretionary grant funds, discretionary lottery funds, or any other funds specified as eligible for this purpose by the Legislature. While this mandate places all children at risk as children under 12 are unvaccinated, it may be deadly for those children who live with disabilities who are at high risk for severe illnesses due to COVID-19.

Case 1:21-cv-22863-KMM   Document 1   Entered on FLSD Docket 08/06/2021   Page 10 of 35

Judith Ann Hayes, et. al.  v. Governor DeSantis, et. al.
COMPLAINT
Page 10 of 35

45.     As part of a school district's obligations under the Individuals with Disabilities Education Act, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act, all public-school districts have an obligation to ensure that all children with disabilities have a free and appropriate public education in the most integrated and least restricted environment.  What this means, is that these kids with disabilities are entitled to learn and interact with all other children, receive the same education as all other children, and do so while being safe and returning home as safe and healthy as possible.

46.     As Governor of Florida, Ron DeSantis does not have the authority to threaten school districts with loss of funding if they protect their students with disabilities health and rights to be in an integrated learning environment. By doing so, he is violating the Americans with Disabilities Act and Rehabilitation Act by using criteria and methods of administration (i) That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; [and] (ii) That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities. 28 C.F.R. § 35.130(b)(3).

47.     The children whose parents are plaintiffs are all children who have an individualized education plan or 504 plan in the school districts in the counties in which they live.  They are all at higher risk for severe illness or death due to COVID-19 and will not go to public school because of the higher risk of severe illness or death.  The families are seeking to have their IEP and 504 plan implemented with care and heed taken for their individual circumstances as demanded by the educational laws, and not because of political whims or pressure of the majority that will endanger their health.

48.     The children Plaintiffs would like the school district to implement their IEP and 504 plans as required by Federal Law without state preconditions that may cause them harm.

49.     On its face, this executive order conflicts with the school districts obligations under the Individuals with Disabilities Education Act, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act, the Plaintiffs request that this court find that such order violates 28 C.F.R. § 35.130(b)(3) by imposing criterial and methods of administration that defeat the purposes of these laws upholding the rights of these children, and that Governor DeSantis does not have the authority to interfere with these children's rights under the Supremacy Clause of the United States Constitution.

## GENERAL ALLEGATIONS

50.     Students with disabilities who are unable to safely return to brick-and-mortar schools because of continued health concerns, are being excluded from the public school system in violation of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act.

51.     By refusing to allow school districts to implement mask mandates, Governor DeSantis has placed an illegal barrier for students with disabilities which is preventing our state's most vulnerable students from returning to public schools.

52.     There are no viable alternatives for students with disabilities who cannot return to brick-and-mortar schools.

53.     By its actions and inactions, the Governor and the State are forcing children out of the public school system.

54.     Parents are put into an impossible situation of having to choose between the health and life of their child and returning the school.

55.     Every parent will choose the life and safety of their child and thus are in the position of having to find an alternative educational placement outside the public school system.

56.     The Governor's most recent executive order preventing school districts from putting protections in place for students, such as a mask mandate or testing requirements, combined with the refusal to extend funding for distance learning, has tied the hands of school districts from acting and made it impossible for school districts to provide students with disabilities a free appropriate public education in the least restrictive environment.

**COVID-19**

57.     On March 1, 2020, the Governor, through Executive Order 20-51, declared a public health emergency in the State of Florida.

58.     On March 9, 2020, the Governor, through Executive Order 20-52, declared a state of emergency in the State of Florida and delegated the authority to close state buildings and facilities to the individual state agencies.

59.     Florida public school buildings were closed on March 16, 2020 and remained closed for the rest of the 2019-2020 school year. While the physical buildings were closed, schools remained opened, and students were expected to continue attending school remotely. The term "distance learning" became the phrase used to describe children learning at home and accessing their education online remotely.

60.     On May 8, 2020, the Governor, through Executive Order 20—114, extended the state of emergency in the state.

61.     On July 6, 2020, Richard Corcoran, Commissioner of Education issues an emergency order (DOE Order 2020-EO-06) requiring all schools to reopen in August 2020. The order included a provision to provide the "full panoply of services" including live synchronous and asynchronous instruction with the same curriculum as in person instruction and the ability to interact with a student's teacher and peers. *See* Order at I(b). The order went on to recognize that students with disabilities were entitled to FAPE even during this unusual and strange time. *See* Order at I(d). The commissioner directed districts to follow a "student-centered approach" with a commitment to ensure that the individual needs of the children were met. *Id*.

62.     This emergency order paved the way to allowing distance learning to continue throughout the 2020-2021 school year.

63.     Students who were extraordinarily vulnerable to COVID-19 and its variants were able to stay safe and home and continue with distance learning for the 2020-2021 school year. This included students with disabilities.

64.     On November 30, 2020, Commissioner Corcoran issued another Emergency Order (2020-EO-07) which extended funding for distance learning through spring semester 2021. The order focused on parent choice in selecting what modality was safest for their children.

65.     In March 2021, however, Commissioner Corcoran was asked publicly if distance learning would be allowed to continue into the 2021-2022 school year. Commissioner Corcoran side stepped the question answering instead, "The goal is to get everyone back in the classroom".

66.     Since that time, the Department of Education has not extended funding for distance learning into the 2021-2022 school year.  As such all students, including those with disabilities,

Case 1:21-cv-22863-KMM   Document 1   Entered on FLSD Docket 08/06/2021   Page 14 of 35

Judith Ann Hayes, et. al.  v. Governor DeSantis, et. al.
COMPLAINT
Page 14 of 35

must return to face-to-face learning in a school building, also known as returning to brick-and-mortar school.

67.     On May 3, 2021, the Governor signed an executive order suspending all COVID-19 emergency order and related public health restrictions publicly stating that Florida was no longer in a state of emergency.

68.     On June 29, 2021, the Governor signed into law H.B. 241, "the Parent's Bill of Rights" which prevents the state from infringing on the fundamental rights of a parent to direct the upbringing, education, health care or mental health of a minor child. § 1013.03 and 1013.04, Fla. Stat (2021).

69.     As the numbers of COVID-19 infections and deaths continue to rise in the State Florida, school districts attempted to put into place additional protections including mask mandates.

70.     In direct response, the Governor, through executive order 21-175, on July 30, 2021, made mask wearing optional in schools for the 2021-2022 school year. Stating that, "we should protect the freedoms and statutory rights of students and parents by resting with the parents the decision whether their children should wear masks in school; and…we should equally and uniformly protect the freedoms and rights of student and parents across the state." The order goes on to withhold state funding to any noncompliant school boards who attempt to put into place any type of mask mandate.

71.     Funding for distance learning, however, has not been expanded or extended.

Case 1:21-cv-22863-KMM   Document 1   Entered on FLSD Docket 08/06/2021   Page 15 of 35

Judith Ann Hayes, et. al.  v. Governor DeSantis, et. al.
COMPLAINT
Page 15 of 35

72.     Districts who have asked if they could offer live synchronous and asynchronous instruction with the same curriculum as in person instruction and the ability to interact with a student's teacher and peers have been refused the ability to do so by FLDOE.

73.     On Saturday, July 13, 2021, Florida reported the state's highest one day total since the start of the pandemic with 21,683 new cases according to the Centers for Disease Control and Prevention. On Monday, August 2, 2021, Florida set a new record for the most people hospitalized in a single day at 10,682. Last week, Florida saw a 50% increase weekly in new cases and has reported over 39,000 COVID-19 related deaths since March 2020. Florida has become the new epicenter or hot spot for the virus. Children are being impacted as well. Florida doctors have seen an 87% increase of COVID-19 cases in children under 12, who are not yet eligible for a vaccine. For children who are 12-19, there has been an 84% increase of COVID-19 cases reported.

74.     Tuesday, the U.S. Department of Education issued a roadmap for returning students to school safely, with its first priority being the health and safety of students, staff and educators. Further, the Centers for Disease Control and Prevention (CDC) now recommends that masks should be worn indoors no matter someone's vaccination status. The Centers for Disease Control and Prevention and the American Academy of Pediatrics recommend universal masking in schools for those over age 2.

75.     Despite record numbers of cases and deaths being reported in the state of Florida, despite guidance from the U.S. Department of Education, the CDC and public health experts, the Governor has remained steadfast in his position that school districts will be punished if they put certain measures in place, including mask mandates.

Case 1:21-cv-22863-KMM   Document 1   Entered on FLSD Docket 08/06/2021   Page 16 of 35

Judith Ann Hayes, et. al.  v. Governor DeSantis, et. al.
COMPLAINT
Page 16 of 35

76.     These decisions by the Governor and the Commissioner have left thousands of students with no ability to safely return to brick-and-mortar schools and no alternatives for a public education.

77.     If a student is unable to return to brick-and-mortar school because of continued health concerns, there are currently no viable alternative options for students with disabilities. [1]

**STUDENTS WITH DISABILITIES**

78.     The Florida Department of Education has a stated mission of increasing the proficiency of all its students within "one seamless efficient system" by allowing the opportunity to expand student's knowledge and skills through learning opportunities. See States Strategic plan found at: https://www.fldoe.org/policy/state-board-of-edu/strategic-plan.stml.

79.     The Florida Department of Education is responsible for educating all students, including those who have special learning needs because of a disability. The state's goal is to provide equal educational opportunities to all students with disabilities ages three (3) through twenty-one (21). Fla. Admin. Code R. 6A-6.0331.

80.     All students with disabilities aged three (3) through twenty-one (21) residing in the state have the right to Free and Appropriate Public Education (FAPE) consistent with the requirements of Section 1003.57 1, F.S. and Rules 6A-6.03011 through 6A-6.0361, F.A.C. Fla. Admin. Code R. 6A-6.03028.

---

[1] There is one district whose virtual school program might arguably provide a free appropriate public education (FAPE) to students with disabilities. Hendry County Public Schools is the only district that provides access point curriculum for students with disabilities through its virtual platform. This might arguably provide students with an opportunity to received a free appropriate public education (FAPE).

81.     FAPE is established with the creation of an Individualized Education Plan (IEP) for each ESE student. Fla. Admin. Code. R. 6A-6.03028.

82.     For students with a significant cognitive disability, they are educated on a modified curriculum also known as "Access Points" curriculum. An Access Point curriculum reflects the core intent of the grade level standards but allows the material to be taught at reduced levels of complexity. The intent is to expose students to grade level material and promote inclusion with nondisabled students.

83.     There is further a federal mandate that children with disabilities must be taught in the least restrictive environment (LRE) and as much as possible be maintained in the school and the classroom they would attend if they were not disabled.

## VIRTUAL PROGRAMS AND VOUCHERS DO NOT PROVIDE FAPE IN THE LRE

84.     The Defendants have argued publicly that students can attend virtual programs or be given a voucher to attend a private school however neither provide students with disabilities FAPE in the LRE.

85.     Virtual programs do not provide students with disabilities a free appropriate public education and there are no virtual programs available to those students on a modified curriculum.[2]

86.     Specifically, Florida Virtual School does not provide any classes to students who are on an Access point curriculum. If a student has a significant cognitive disability and has been placed on a modified curriculum or Access Points, they are unable to attend Florida Virtual School and will be rejected.

---

[2] It appears as if Hendry County Public Schools does provide an access point curriculum for students with disabilities through its virtual platform. It is unclear if this alone is sufficient to provide students with disabilities a free appropriate public education (FAPE).

87.     Vouchers are also not a viable alternative. When a parent accepts a voucher, they waive their right to a free appropriate public education. Parents must also have the financial means to transport their child to a private school and pay the extra expenses that the voucher does not cover. Also, the parent must find a private school willing to accept their child with their disabilities. Just having a voucher does not guarantee that the family will be able to find a private school willing to accept the voucher and that student.

88.     Finally, many, if not all, the deadlines to apply for a virtual school and/or a voucher have since passed.

89.     Thus, the only option for students with disabilities to receive a free appropriate public education (FAPE) in the Least Restrictive Environment (LRE) is to return to a brick-and-mortar school building. This is the only option for students on Access Points.

**STUDENTS WITH DISABILITIES ARE AT GREATER RISK**

90.     For thousands of students across the State of Florida it is too risky to return to brick-and-mortar schools.

91.     For the 2020-2021 school year, Florida had 2,795,691 students enrolled in public schools.

92.      Of the over two million students who attend public school, 14.9% are students who have been identified by the state as having a disability. 406,944 students have been identified has having a qualifying disability (excluding gifted students).

93.     As of the 2020-2021 survey 24,136 students were identified has having an intellectual disability; 47,667 students were identified as having an autism spectrum disorder and 438 have traumatic brain injuries. 47,606 are identified as other health impaired. Generally,

students with significant cognitive disabilities, who are placed on Access Points, will be from one of these eligibilities. If the student is on Access Points and cannot attend school for health and safety reasons, they will have no alternative but to leave the public school system.

94.     While all children are at increased risk to COVID-19 due to the fact that they are ineligible to be vaccinated, children with disabilities are at increased risk.

**PLAINTIFFS**

**W.H. in Orange County School District**

95.     W.H. is ten years old and was born with Down Syndrome.

96.     W.H. attends an Orange County public school and has been identified by OCPS as a student in need of exceptional student education services and has an IEP.  W.H. is placed in a general education setting on a modified curriculum also known as an access point curriculum.

97.     Prior to the Delta Variant, children with Down Syndrome were 10 times more likely to be hospitalized and 4 times more like to die if they contracted COVID-19. The risks are higher now with the Delta Variant being so prevalent.

98.     His parents believe that it is too dangerous to return to brick-and mortar school without such precautions as following the recommended CDC guidelines such as mandatory masking and regular testing in schools.

99.     The family would continue to participate in district learning; however, the district has denied such a request. The district has stated that they are not allowed to provide the "full panoply of services" including live synchronous and asynchronous instruction with the same curriculum as in person instruction and the ability to interact with a student's teacher and peers.

100.    W.H. cannot attend Florida Virtual School or Orange County Virtual school as neither provides FAPE; an Access Point Curriculum or the necessary supports, services and accommodations as identified in his IEP, including direct instruction from a special education teacher. Orange County offered to place W.H. in an unsafe classroom.

101.    W.H.'s mother now needs to decide whether to return W.H. to public school and risk his life or leave the public school system.

**L.M. in Miami Dade County School District**

102.    L.M. is six years old and lives with moderate to severe asthma and other suspected disabilities that make him eligible for supports and services through a 504 plan.

103.    L.M. attends a Miami Dade County public school in a magnet program.

104.    Because of his asthma, L.M. cannot return to school safely. No one can guarantee his safety.

105.    His treating doctors and specialists have informed his parents, that it is too dangerous to return to brick-and mortar school without such precautions as following the recommended CDC guidelines of mandatory masking and regular testing in schools.

106.    L.M.'s parents have been told that if L.M. does not return to school in person, he will lose his spot in his choice program and will have to find another school to attend. No one from the district has provided his parents with any options or accommodations so that he can remain in his magnet school program and receive all the benefits of that program.

107.    Now L.M.'s parents need to decide whether to return their child to school putting his life at risk or leave the public school system.

**R.M. and L.M. in Hillsborough County School District**

108.    R.M. is three years old and L.M. is seven years old.

109.    R.M. and L.M. are sisters and both have an autism spectrum disorder.

110.    HCPS as identified both sisters of being in need of exceptional student education services and both sisters have an IEP.

111.    R.M. attends a public school program in Hillsborough County specifically designed for disabled students. The school setting provides direct special education instruction and related services like therapy and social emotional supports. There is no online option and in order to maintain her spot in this program, R.M. must attend in person or find another school to attend.

112.    L.M. also attends a school in Hillsborough County.

113.    The children's treating doctors and specialists have informed the sister's mother that it is too dangerous to return to brick-and mortar school without such precautions as following the recommended CDC guidelines of mandatory masking and regular testing in schools.

114.    The sisters cannot attend Florida Virtual School or other online programs because none of them provide FAPE; an Access Point Curriculum or the necessary supports, services and accommodations, including direct instruction from a special education teacher.

115.    The girls' mother now needs to decide whether to return her children to public school and risk their lives or leave the public school system.

**D.B. and B.B. in Palm Beach County School District**

116.    D.B. is five years old and B.B. is 12 years old.

117.    D.B. and B.B. are siblings and attend public school in Palm Beach County.

118.    D.B. and B.B. both suffer from severe asthma. PBCS has identified both children as being in need of exceptional student education services and both children have an IEP.

119.    Their brother, R.B., also attends public school and is terrified he will bring the virus home to his siblings.

120.    The children's treating doctors and specialists have informed the siblings parents that it is too dangerous to return to brick-and mortar school without such precautions as following the recommended CDC guidelines of mandatory masking and regular testing in schools.

121.    Florida Virtual School, Palm Beach Virtual School and other online programs do not provide FAPE in the least restrictive environment and do not provide the necessary supports, services and accommodations, including direct instruction.

122.    The children's parents now need to decide whether to return their children to public school and risk their lives or leave the public school system.

**J.T. in Palm Beach County School District**

123.    J.T. is ten years old and has an autism spectrum disorder and hyperekplexia. Hyperekplexia is a rare hereditary, neurological disorder. J.T. also has a Chiari malformation. A Chiari malformation is a problem in which a part of the brain (the cerebellum) at the back of the skull bulges through a normal opening in the skull where it joins the spinal canal. This puts pressure on parts of the brain and spinal cord. J.T. recently underwent brain surgery.

124.    J.T. attends a public school in Palm Beach County and has been identified by PBCS as being in need of exceptional student education services. J.T. has an IEP and is on a modified curriculum also known as an Access Point curriculum.

Case 1:21-cv-22863-KMM   Document 1   Entered on FLSD Docket 08/06/2021   Page 23 of 35

Judith Ann Hayes, et. al.  v. Governor DeSantis, et. al.
COMPLAINT
Page 23 of 35

125.    His treating doctors and specialists have informed his parents that it is too dangerous to return to brick-and mortar school without such precautions as following the recommended CDC guidelines of mandatory masking and regular testing in schools. No one can guarantee his safety.

126.    The family would consider participating in district learning; however, the district has denied such a request stating the Florida Department of Education has advised the district that the district is not allowed to offer the "full panoply of services" including live synchronous and asynchronous instruction with the same curriculum as in person instruction and the ability to interact with a student's teacher and peers.

127.    J.T. cannot attend Florida Virtual School or Palm Beach County Virtual school as neither provides FAPE; an Access Point Curriculum or the necessary supports, services and accommodations as identified in his IEP, including direct instruction from a special education teacher. Palm Beach County suggested that families with children on access point curriculums leave the Palm Beach Public Schools and enroll in Hendry County Virtual School.

128.    J.T.'s parents now need to decide whether to return J.T. to public school and risk his life or leave the public school system.

**R.K. in Volusia County School District**

129.    R.K. is nine years old and is immunocompromised. R.K. has a weakened immune system and a reduced ability to fight infections making her vulnerable to severe illness and death due to Covid-19.

Case 1:21-cv-22863-KMM   Document 1   Entered on FLSD Docket 08/06/2021   Page 24 of 35

Judith Ann Hayes, et. al.  v. Governor DeSantis, et. al.
COMPLAINT
Page 24 of 35

130.     R.K. attends a public school in Volusia County. VCPS has identified R.K. as a student who is in need of supports and services through a 504 plan. Because of her disabilities she cannot return to school safely. No one can guarantee her safety.

131.     Her treating doctors and specialists have informed her parents, that it is too dangerous to return to brick-and mortar school without such precautions as following the recommended CDC guidelines of mandatory masking and regular testing in schools.

132.     R.K.'s mother now must decide whether to return her child to school putting her life at risk or leave the public school system.

**J.D.-F. in Broward County School District**

133.     J.D.-F. is four years old and lives with chronic kidney disease – stage 3. His kidneys are only working at 50% capacity.

134.     J.D.-F. attends a Broward County public school program and BCPS has identified J.D.-F. as being in need of exceptional student education services. J.D.-F. has an IEP and attends a public-school program that provides direct special education instruction and related services like speech therapy. There is no online option and to maintain his spot in this program, J.D.-F. must attend in person or find another school to attend.

135.     His treating doctors and specialists have informed his parents, that it is too dangerous to return to brick-and mortar school without such precautions as following the recommended CDC guidelines of mandatory masking and regular testing in schools. His doctors have advised that if he catches the COVID-19 virus it could be fatal.

136.     J.D.-F. has three other siblings who attend public school and are not yet eligible to be vaccinated. Due to the dangers facing J.D.-F., none of his siblings will be able to attend public

school unless recommended CDC guidelines of mandatory masking and regular testing in schools are implemented.

137.   J.D.-F.'s parents now must decide whether to return their children to school putting J.D.-F.'s life at risk or leave the public school system.

**R.K, B.K., and A.K. in Pasco County School District**

138.   R.K. is fourteen years old and has attention deficit hyperactive disorder and a specific learning disability.  R.K. attends a public school in Pasco County. PCPS has identified R.K. as a student how needs supports and services through a 504 plan.

139.   B.K. is twelve years old and has an autism spectrum disorder, attention deficit hyperactive disorder and a speech impairment. B.K. attends a public school in Pasco County. B.K. is in a magnet school program. PCPS has identified B.K. as being in need of exceptional student education services. B.K. has an IEP.  If B.K. does not attend school in person, he will lose his spot in the magnet school program. No one from the district has provided his parents with any options or accommodations so that he can remain in his magnet school program and receive all the benefits of that program.

140.   A.K, is eight years old and has a Speech Impairment. A.K. attends a public school in Pasco County. PCPS has identified A.K. as being in need of exceptional student education services. A.K. has an IEP.

141.   Their parents are concerned that it is too dangerous to return to brick-and mortar school without such precautions as following the recommended CDC guidelines of mandatory masking and regular testing in schools.

142.    Florida Virtual School, Pasco's virtual school and other online programs do not provide FAPE in the least restrictive environment and do not provide the necessary supports, services and accommodations, including direct instruction. Further, B.K. will not be able to attend his magnet school program if he attends school virtually.

143.    The parents now need to decide whether to return their children to public school and risk their lives or leave the public school system.

**P.T. in Alachua County School District**

144.    P.T. is seven years old and lives with Trisomy-18. Trisomy-18 also known as Edwards syndrome is when someone is born with an extra chromosome. Trisomy-18 causes severe developmental delays.

145.    P.T. has severe developmental delays and has a tracheostomy. A tracheostomy is an opening created at the front of the neck so a tube can be inserted into the windpipe (trachea) to help you breathe. P.T. is at a higher risk to get COVID-19 if people around her are not wearing masks.

146.    P.T. attends public school in Alachua County. ACPS has identified P.T. as being in need of exceptional student education services. P.T. has an IEP and is on a modified curriculum also known as an access point curriculum.

147.    Her treating doctors and specialists have informed her parents that it is too dangerous to return to brick-and mortar school without such precautions as following the recommended CDC guidelines of mandatory masking and regular testing in schools. No one can guarantee his safety.

Case 1:21-cv-22863-KMM   Document 1   Entered on FLSD Docket 08/06/2021   Page 27 of 35

Judith Ann Hayes, et. al.  v. Governor DeSantis, et. al.
COMPLAINT
Page 27 of 35

148.    P.T. cannot attend Florida Virtual School or any other virtual programs as none provide FAPE; an Access Point Curriculum or the necessary supports, services and accommodations as identified in his IEP, including direct instruction from a special education teacher.

149.    While Alachua County School Board did put in place a mask mandate it is only for two weeks, P.T.'s parents now need to decide whether to return P.T. to public school and risk her life or leave the public school system.

**G.D. in Hillsborough County School District**

150.    G.D. is ten years old and lives with severe asthma and anxiety.

151.    G.D. attends a public school in Hillsborough County. HCPS has identified G.D. as being in need of exceptional student education services. G.D. has an IEP.

152.    G.D.'s anxiety is triggered by being in school without everyone wearing masks and her anxiety is triggered by staying home and being isolated. This anxiety is impacting her education. Her parents are in a "no win" situation.

153.    Her treating doctors and specialists have informed her mother that it is too dangerous to return to brick-and mortar school without such precautions as following the recommended CDC guidelines of mandatory masking and regular testing in schools.

154.    Florida Virtual School or other online programs do not provide FAPE or the necessary supports, services and accommodations, including direct instruction and socialization with her peers.

155.    G.D.'s mother now needs to decide whether to return G.D. to public school and risk her life or leave the public school system.

**Q.C. in Palm Beach County School District**

156.    Q.C. is ten years old and has severe asthma and anxiety.

157.    Q.C. attends a public school in Palm Beach County. PBPS has identified Q.C. as a student how needs supports and services through a 504 plan. Q.C. has a 504 plan.

158.    His treating doctors and specialists have informed his parents that it is too dangerous to return to brick-and mortar school without such precautions as following the recommended CDC guidelines of mandatory masking and regular testing in schools.

159.    The family would consider participating in district learning; however, the district has denied such a request stating the Florida Department of Education has advised the district that the district is not allowed to offer the "full panoply of services" including live synchronous and asynchronous instruction with the same curriculum as in person instruction and the ability to interact with a student's teacher and peers.

160.    Q.C. cannot attend Florida Virtual School or Palm Beach County Virtual school as neither provides an equal education.

161.    Q.C.'s parents now need to decide whether to return Q.C. to public school and risk his life or leave the public school system.

162.    The Plaintiffs are seeking practical solutions. There is an understanding and appreciation for the competing interests. Students with Disabilities are entitled to a free appropriate public education in the least restrictive environment. There has been no wavier by the federal and state requirements to provide a FAPE in the LRE.  The Governors latest executive order violates the Americans with Disabilities Act and Section 504 of the Rehabilitation Act and hinders the districts' ability to provide a free appropriate public education in the least restrictive environment

Case 1:21-cv-22863-KMM   Document 1   Entered on FLSD Docket 08/06/2021   Page 29 of 35

Judith Ann Hayes, et. al.  v. Governor DeSantis, et. al.
COMPLAINT
Page 29 of 35

as well as realistic and practical solutions to unprecedented challenges. The Plaintiffs are seeking safe ways to return to brick-and-mortar schools including, but not limited to, rescinding Executive Order 21-175 to allow school districts to provide FAPE in the LRE including offering virtual options that are comparable to those offered to nondisabled students. The Plaintiffs are seeking a reinstatement of a "full panoply of services" including live synchronous and asynchronous instruction with the same curriculum as in person instruction and the ability to interact with a student's teacher and peers.

163.    If students with disabilities cannot go to school safely then no one can go to school safely.

164.    The Plaintiffs have performed all conditions precedent prior to the filing of the instant action as exhaustion would be futile.

165.    The Plaintiffs have engaged the Disability Independence Group, Inc. to represent them and are obligated to pay a reasonable fee for their services.

**COUNT 1**
**VIOLATION OF TITLE II OF THE AMERICAN DISABILITIES ACT**

166.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 165 of the Complaint as if fully set forth herein.

167.    The Defendants are public entities and is therefore subject to Title II of the Americans with Disabilities Act.

168.    The ADA provides a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. 42 U.S.C. § 12101(b)(1)&(2).

169.    Enactment of the ADA reflected deeply held American ideals that treasure the contributions that individuals can make when free from arbitrary, unjust, or outmoded societal attitudes and practices that prevent the realization of their full potential.

170.    The ADA embodies a public policy committed to the removal of a broad range of impediments to the integration of people with disabilities into society and strengthening the federal government's role in enforcing the standards established by Congress.

171.    The ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

172.    As a result of the immediate implementation of the Executive Order of Governor DeSantis to deny these children the protection that they need to attend school in a safe environment, the Defendants have violated the regulations and provisions of the ADA as follows:

a.    The Defendants are failing to make a reasonable modification under circumstances where it is required (28 C.F.R. § 35.130(b)(7); 34 C.F.R. § 104.34(a);

b.    The Defendants are excluding Plaintiffs from the participation in public education (42 U.S.C. § 12132; 28 C.F.R. § 35.130; 34 C.F.R. § 104.34(a)))

c.    The Defendants are failing to make its services, programs, and activities "readily accessible" to disabled individuals (28 C.F.R. § 35.150; 34 C.F.R. § 104.34(a)))

d.    The Defendants are administering a policy that has the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability

Case 1:21-cv-22863-KMM   Document 1   Entered on FLSD Docket 08/06/2021   Page 31 of 35

Judith Ann Hayes, et. al.  v. Governor DeSantis, et. al.
COMPLAINT
Page 31 of 35

and That has the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities. (28 C.F.R. § 35.130(b)(3))

    e.    The Defendants are failing to permit a public entity to administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities. (28 C.F.R. § 35.130(d); 34 C.F.R. § 104.34(a))

173.    The ADA further prohibits any public entity from directly or through contractual or other arrangements, utilizing any criteria or methods of administration that (a) has the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and/or (b) perpetuates the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State. § 35.130 (b)(3)(i)&(iii).

174.    The Governor does not have the authority to circumvent the ADA and protections for students with disabilities through the executive order

175.    Excluding children from the public-school classroom because of a disability or not placing a student in the least restrictive environment is exactly the type of discrimination and segregation the ADA and its amendments aim to prevent and specifically prohibit.

176.    Further, the regulations implementing the ADA require that "a public entity shall administer services, programs and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d).

177.    Relegating students into a separate classroom "for their safety" would be a violation of LRE.

178.     As public entities and instrumentalities of the state, the District is prohibited from providing "a qualified individual with a disability with an aide, benefit or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided others." 28 CFR 35.130(b)(1)(iii).

**WHEREFORE**, the PLAINTIFFS respectfully request this Court to declare the actions of the Defendants violate the Americans with Disabilities Act, issue a permanent injunction enjoining the Defendants from interfering with their rights to a free and appropriate public education in the least restrictive environment by refusing to allow them to go to public school in a safe environment and to otherwise immediately cease discriminating against students with disabilities and awarding Plaintiffs' attorneys' fees, costs and expenses incurred in this matter and for such further relief as the court deems just and equitable.

## COUNT 2
## SECTION 504 OF THE REHABILITATION ACT OF 1973
## 29 U.S.C. § 706

179.     Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 165 of the Complaint as if fully set forth herein.

180.     Plaintiffs are children with disabilities that substantially limit one or more major life activities and therefore are considered a person with a disability under Section 504 of the Rehabilitation Act, as amended. See 29 U.S.C. §706(8).

181.     The Plaintiffs are otherwise qualified under section 504 of the Rehabilitation Act because he met the essential eligibility requirements for the Defendants' services at all times material hereto

182.     The Defendants are recipients of federal financial assistance.

183.    The policies, practices and procedures, particularly the actions and omissions described herein, violate the student's rights under Section 504 of the Rehabilitation Act by discriminating on the basis of a disability.

184.    As a result of the immediate implementation of the Executive Order of Governor DeSantis to deny these children the protection that they need to attend school in a safe environment, the Defendants have violated the regulations and provisions of the ADA as follows:

a.    The Defendants are failing to make a reasonable modification under circumstances where it is required (28 C.F.R. § 35.130(b)(7); 34 C.F.R. § 104.34(a);

b.    The Defendants are excluding Plaintiffs from the participation in public education (42 U.S.C. § 12132; 28 C.F.R. § 35.130; 34 C.F.R. § 104.34(a)))

c.    The Defendants are failing to make its services, programs, and activities "readily accessible" to disabled individuals (28 C.F.R. § 35.150; 34 C.F.R. § 104.34(a)))

d.    The Defendants are administering a policy that has the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and That has the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities. (28 C.F.R. § 35.130(b)(3))

e.    The Defendants are failing to permit a public entity to administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities. (28 C.F.R. § 35.130(d); 34 C.F.R. § 104.34(a)

Case 1:21-cv-22863-KMM   Document 1   Entered on FLSD Docket 08/06/2021   Page 34 of 35

Judith Ann Hayes, et. al.  v. Governor DeSantis, et. al.
COMPLAINT
Page 34 of 35

185.    Section 104.33 requires that District provide FAPE to "each qualified handicapped person who is in the recipient's jurisdiction."

186.    For purposes of Section 504, an "appropriate education" is the:

> provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of non-handicapped persons are met and (ii) are based upon adherence to procedures that satisfy the requirements of §§ 104.34, 104.35, and 104.36.
> 34  C.F.R. § 104.33(b)(1).

187.    The failure to provide access to FAPE in an alternative setting, thereby excluding all students with disabilities who are unable to return to brick-and-mortar schools is a violation of Section 504.

**WHEREFORE,** the PLAINTIFFS respectfully pray that this Court grant the following relief against the Defendants, including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that the District's practices, policies and procedures have subjected the Plaintiffs to discrimination in violation of Section 504 of the Rehabilitation Act and issue a permanent injunction enjoining the Defendants from interfering with their rights to a free and appropriate public education in the least restrictive environment by refusing to allow them to go to public school in a safe environment and to otherwise enjoining the Defendants from any practice, policy and/or procedure which would deny students with disabilities equal access to and benefit of Defendants services, award damages, reasonable costs, attorneys' fees and any other relief this court deems necessary and appropriate.

**COUNT 3**
**FLORIDA EDUCATIONAL EQUITY ACT**

188.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 165 of the

Complaint as if fully set forth herein.

189.    The Florida Educational Equity Act (FEEA) prohibits discrimination against students in the Florida public school system on the basis of disability. s. 1000.05, F.S.

190.    No person shall be excluded from participation in, be denied benefits of or be subjected to discrimination under any public education program or activity.

191.    The discriminatory acts and omissions by the Defendant results in the exclusion of thousands of students from participation in, benefits of the public-school program are discrimination.

192.    As a result of the Defendants' actions, the Plaintiffs suffered damages.

**WHEREFORE**, the Plaintiffs, demand judgment against the Defendants for damages, together with their attorney's fees and costs, and such further relief as the court deems just and equitable.

Respectfully submitted this 6th day of August 2021.

By: /s/*Matthew W. Dietz*
Matthew W. Dietz, Esq.
Florida Bar No. 84905
Stephanie Langer, Esq.
Florida Bar No. 149720
2990 Southwest 35th Avenue
Miami, Florida 33133
T: (305) 669-2822 / F: (305) 442-4181
slanger@justDIGit.org
mdietz@justdigit.org
aa@justdigit.org

*Attorneys for the Plaintiffs*