IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:21-cv-22863-KMM

JUDITH ANNE HAYES, individually and on behalf of W.H., a minor,
ROBYN MCCARTHY and JOHN MCCARTHY, individually
and on behalf of L.M., a minor, AMANDA BANEK, individually
and on behalf of D.B. and B.B, minor children, KAS ARONE-
MILLER, individually and on behalf of R.M. and L.M.,
Minor children, ALISHA TODD, individually and on behalf
of J.T, a minor, JAMIE KINDER, individually and on
behalf of R.K., a minor, CHRIS RODRIGUEZ, individually
and on behalf of J.D.-F., a minor, JACK KOCH, individually
and on behalf of R.K, B.K., and A.K., minor children,
KRISTEN THOMPSON, individually and on behalf of P.T., a
minor, EREN DOOLEY, individually and on behalf of G.D.,
a minor, TOM COLLINS, individually and on behalf of Q.C., a minor,

     Plaintiffs,

v.

GOVERNOR RONALD DION DESANTIS, in his official
Capacity as Governor of the State of Florida; FLORIDA
DEPARTMENT OF EDUCATION, RICHARD CORCORAN,
in his official capacity as Commissioner of the Florida Department
of Education, ORANGE COUNTY SCHOOL BOARD, MIAMI
DADE COUNTY SCHOOL BOARD, HILLSBOROUGH
COUNTY SCHOOL BOARD, PALM BEACH SCHOOL BOARD,
BROWARD COUNTY SCHOOL BOARD, PASCO COUNTY
SCHOOL BOARD, ALACHUA COUNTY SCHOOL BOARD and
VOLUSIA COUNTY SCHOOL BOARD,

     Defendants.

_____/

## **MOTION FOR PRELIMINARY INJUNCTION – EXPEDITED MOTION**

    **COMES NOW**, Plaintiffs, JUDITH ANNE  HAYES, individually and on behalf of W.H.,

a minor., et al., by and through undersigned counsel, and pursuant to Rule 68, Fed. R. Civ. P. 65(a)

and  respectfully  requests  that  this  court  issue  a  preliminary  injunction  requiring  Defendant,

GOVERNOR    RON    DESANTIS;    FLORIDA    DEPARTMENT    OF    EDUCATION;

COMMISSIONER RICHARD CORCORAN; the ORANGE COUNTY SCHOOL BOARD; the MIAMI DADE COUNTY SCHOOL BOARD; the HILLSBOROUGH COUNTY SCHOOL BOARD, PALM BEACH SCHOOL BOARD; BROWARD COUNTRY SCHOOL BOARD; PASCO COUNTY SCHOOL BOARD; ALACHUA COUNTY SCHOOL BOARD and VOLUSIA COUNTY SCHOOL BOARD, to refrain from enforcing Office of the Governor Executive Order 21-175, and requests an expedited hearing and disposition,[1] and states as follows:

## I.      Preliminary Statement

It is a common sense, reasonable accommodation for a vulnerable child who is immunocompromised or at risk of a serious disease to require a public entity to implement simple precautions to ensure that the most vulnerable children are safe.  While this proposition should not be in dispute, Governor DeSantis' executive order requires school districts to defy their obligations under Federal Law and harms the children who the disability discrimination laws were enacted to protect.

On July 30, 2021, Florida Governor Ron DeSantis issued Executive Order 21-175, entitled "Ensuring Parents' Freedom to Choose – Masks in School" in response to several Florida school boards considering or implementing mask mandates in their school districts.[2]  In such Executive Order, Florida's Governor DeSantis contended that wearing a mask is a limitation on a parent's fundamental right to make health and educational decisions for their children, and that

> many school districts are scheduled to begin classes on August 10, 2021, which is
> less than two weeks away, and within four weeks virtually all public schools across

---

[1]  This motion is an expediated motion pursuant to Local Rule 7.1(d).  The reason as to why it is expedited is that the public-school year begins next week and any delay of the school year creates additional harm for these children.
[2]  Press release - Governor DeSantis Issues an Executive Order Ensuring Parents' Freedom to Choose, https://www.flgov.com/2021/07/30/governor-desantis-issues-an-executive-order-ensuring-parents-freedom-to-choose/ (last accessed 8/4/21)

Florida will be underway; therefore, immediate action is needed to protect the fundamental right of parents to make health and educational decisions for their children;[3]

Furthermore, he Ordered that the Florida Department of Health issue rules and safety protocols that control the spread of COVID-19, but all rules must "at minimum be in accordance with Florida's "Parents' Bill of Rights" and protect parents' right to make decisions regarding masking of their children in relation to COVID-19."[4]

As a penalty for non-compliance, Governor DeSantis directed his Commissioner of Education to withhold state funds from non-compliant school boards, including state funds, discretionary grant funds, discretionary lottery funds, or any other funds specified as eligible for this purpose by the Legislature.

While this mandate places all children at risk as children under 12 are unable to be vaccinated, it may be deadly for those children who live with disabilities who are at a higher risk for severe illnesses or death due to COVID-19.  As part of a school district's obligations under the Individuals with Disabilities Education Act, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act, all public-school districts have a obligation to ensure that all children with disabilities have a free and appropriate public education in the most integrated and least restricted environment.  What this means, is that these kids with disabilities are entitled to learn and interact with all other children, receive the same education as all other children, and do so while being safe and returning home as safe and healthy as possible.

As Governor of Florida, Ron DeSantis does not have the authority to threaten school districts with loss of funding if they protect their students with disabilities health and rights to be

---

[3] Id.
[4] Id.

in an integrated learning environment. By doing so, he is violating the Americans with Disabilities Act and Rehabilitation Act by using criteria and methods of administration (i) That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; [and] (ii) That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities. 28 C.F.R. § 35.130(b)(3).

The Plaintiff children have an individualized education plan or 504 plan in the school districts in the counties in which they live.  They are all at higher risk for severe illness or death due to COVID-19 and will not go to public school because of the higher risk of severe illness or death.  They would like to have their IEP and 504 plan implemented with care and heed taken for their individual circumstances as demanded by the educational laws, and not because of political whims or pressure of the majority that will endanger their health.

The School Districts that they attend are added as defendants, as complete relief under Rule 19, Fed. R.Civ. P. because in their absence, this Court could not complete relief among existing parties and the school districts must be secure in their liability from the State of Florida.  The children would like the school district to follow though with their IEP and 504 plans as required by Federal Law without state preconditions that may cause them harm.

On its face, the executive order conflicts with the school districts obligations under the Individuals with Disabilities Education Act, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act, the children request that this court find that such order violates 28 C.F.R. § 35.130(b)(3) by imposing criterial and methods of administration that defeat the purposes of these laws upholding the rights of these children, and that Governor DeSantis does not have the

authority to interfere with these children's rights under the Supremacy Clause of the United States Constitution.

## II.      Facts

For thousands of students across the State of Florida, it is too risky to return to brick-and-mortar schools without protection for their health and safety.  For the 2020-2021 school year, Florida had 2,795,691 students enrolled in public schools.  Of the over two million students who attend public school, 14.9% are students who have been identified by the state as having a disability. As of the 2020-2021 survey 24,136 students were identified has having an intellectual disability; 47,667 students were identified as having an autism spectrum disorder and 438 have traumatic brain injuries. 47,606 are identified as other health impaired.

The children in this lawsuit have multiple disabilities that make them susceptible to severe injury or death if they contract COVID-19. Their parent's declarations are attached hereto as Exhibit "A".  Whether these children live with Autism, Down Syndrome, kidney disease, asthma, or some other conditions that would compromise their immune system, they are each in the predicament to forego their right to a free and appropriate education in the least restrictive environment due to a requirement that places them at greater danger of death or serious injury.

On July 30, 2021, Governor DeSantis issued a memorandum to the press and issued an executive order requiring that the Department of Education and the Department of Health issue COVID-19 safety protocols that, at a minimum, "protect parents' rights to make decisions regarding the masking of their children in relation to COVID-19."[5] This penalties for failing to comply with a parent's rights to choose whether to mask their children was the loss of state

---

[5] https://www.flgov.com/2021/07/30/governor-desantis-issues-an-executive-order-ensuring-parents-freedom-to-choose/

funding.  The Executive Order expressly and explicitly disputes recent CDC guidance regarding the utility of masks to stop the spread on this virus.

The U.S. Centers for Disease Control has indicated that Children with underlying medical conditions are at increased risk for severe illness compared to children without underlying medical conditions. Current evidence suggests that children with medical complexity, with genetic, neurologic, metabolic conditions, or with congenital heart disease can be at increased risk for severe illness from COVID-19. Similar to adults, children with obesity, diabetes, asthma or chronic lung disease, sickle cell disease, or immunosuppression can also be at increased risk for severe illness from COVID-19.[6]  Furthermore, recent studies are uncontroverted in the additional dangers to children with disabilities that are disproportionally affected by COVID-19 and suffer more serios and life-threatening effects from the virus.  A cross-sectional study of 64,858,460 patients across 547 health care organizations reveals that having an intellectual disability was the strongest independent risk factor for presenting with a Covid-19 diagnosis and the strongest independent risk factor other than age for Covid-19 mortality.[7]  Furthermore, the largest study of intellectual disability and Covid-19 outcomes examined claims data from 467,773 patients who received Covid-19 diagnoses between April and August of 2020. This study found that those with developmental disabilities were over 3 times as likely to die following a diagnosis of Covid-19 and that those with intellectual disabilities were 2.75 times as likely to die following such a diagnosis. Id.

---

[6]         https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

[7] Jonathan Gleason, MD, Wendy Ross, MD, Alexander Fossi, MPHc, Heather Blonsky, MAS, Jane Tobias, DNP, RN, MSN, CPNP-PC & Mary Stephens, MD, The Devastating Impact of Covid-19 on Individuals with Intellectual Disabilities in the United States, NEJM Catalyst Innovations in Care Delivery, Vol. 2 No. 8|August 2021, found at https://catalyst.nejm.org/doi/full/10.1056/CAT.21.0051

Data on 43,465 children 18 years of age or younger showed that children with neurodevelopmental disorders were 1.6 times as likely to be hospitalized with COVID-19 than children without neurodevelopmental disorders, although severe illness among children hospitalized for COVID-19 with neurodevelopmental disorders was less common than among children with other conditions.[8]  Children with DDs often have medical conditions that contribute to higher risk for severe illness from COVID-19 and can experience barriers to accessing needed health care and possess other characteristics increasing their risk from COVID-19, including limited mobility, direct care requirements, and challenges practicing preventive measures and communicating illness symptoms. Id.

These facts were not lost on the Department of Education, who immediately issued a notice of proposed rulemaking to allow these children scholarships to allow them to leave the public school system.[9]

While these scholarships are insufficient, all children have the right to be in the public school system, and all children with disabilities have the right to a free and appropriate public education in the least restrictive environment.  These children all want the ability to learn, socialize and grow with their peers.

---

[8] Tinker SC, Cogswell ME, Peacock G, Ryerson AB. Important Considerations for COVID-19 Vaccination of Children with Developmental Disabilities. Pediatrics. 2021; doi: 10.1542/peds.2021-053190 found at : https://pediatrics.aappublications.org/content/pediatrics/early/2021/07/15/peds.2021-053190.full.pdf
[9] https://www.flrules.org/Faw/FAWDocuments/FAWVOLUMEFOLDERS2021/47151/47151doc.pdf

### III.     Argument

#### A.  Standard of Law for a Preliminary Injunction

"The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."   Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 546 n.12, 107 S.Ct. 1396, 1404 (1987)   "A district court may grant injunctive relief if the movant shows the following: (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." Jones v. Governor of Florida, 950 F.3d 795, 806 (11th Cir. 2020)(*quoting* Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000)

This Court has the authority to grant the injunctive relief that the Plaintiffs request. FED. R. CIV. P. 65(a). A party seeking a preliminary injunction bears the burden of establishing its entitlement to relief. Citizens for Police Accountability Political Comm. v. Browning, 572 F.3d 1213, 1217 (11th Cir. 2009). The Court evaluates four factors when determining whether to grant a motion for preliminary injunction: (1) whether there is a substantial likelihood that the party applying for preliminary relief will succeed later on the merits; (2) whether the applicant will suffer an irreparable injury absent preliminary relief; (3) whether the harm that the applicant will likely suffer outweighs any harm that its opponent will suffer as a result of an injunction; and (4) whether preliminary relief would disserve the public interest. See Scott v. Roberts, 612 F.3d 1279, 1290 (11th Cir. 2010). "The evidence presented for each of those criteria is balanced by the court on a sliding scale analysis: a much stronger showing on one or more of the necessary factors lessens the amount of proof required for the remaining factors." Collins & Co., General

Contractors v. Claytor, 476 F. Supp. 407, 409 (N.D.Ga.1979)) (citing Texas v. Seatrain International, S.A., 518 F.2d 175 (5th Cir. 1975); Siff v. State Democratic Executive Committee, 500 F.2d 1307 (5th Cir. 1974)). As shown below, these four factors strongly weigh in favor of granting a preliminary injunction barring enforcement of any rule prohibiting protections for children with disabilities to be integrated in schools.

Because of the ongoing irreparable injury being caused to individual Plaintiffs and other children with disabilities, as noted in more detail below, Plaintiffs seek a mandatory preliminary injunction commanding that Governor DeSantis and the Florida Department of Education refrain from enforcing Executive Order 21-175.

The facts and law in this case clearly favor Plaintiffs, and therefore a mandatory preliminary injunction is justified because the status quo is causing harm to the Plaintiffs and actively depriving them of the programs and services of public schools. *See* Powers v. Sec'y, Fla. Dep't of Corrs., 691 F.Appx. 581, 583 (11th Cir. 2017) (Noting that mandatory preliminary relief is disfavored unless the facts and law clearly favor the moving party.); Canal Auth. of Fla. v. Callaway, 489 F.2d 567, 576 (5th Cir.1974).

### B.  Substantial Likelihood of Success on the Merits

Section 504 of the Rehabilitation Act of 1973, as amended, provides "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 U.S.C. § 794(a). All defendants receive Federal financial assistance for the purposes of education. A qualified individual with a disability is one who meets the essential eligibility requirements for the services in question. 28 C.F.R. § 41.32.

Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131-12165, provides at §12132 that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." "Public entities" include any department, agency, special purpose district, or other instrumentality of a State or States or local government; 42 U.S.C. §12131(1)(B), and similarly, Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed. 714 (1908), allows a party to seek prospective injunctive relief against a state or local official for violating a federal law. Nat'l Ass'n of the Deaf v. Florida, 945 F.3d 1339, 1351–52 (11th Cir. 2020).

A qualified individual with a disability is an individual who, with or without reasonable modifications rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity. 42 U.S.C. § 12131(2).

The ADA prohibits discrimination against a disabled person by reason of the person's disability. See 42 U.S.C. § 12132. To state a claim under Title II of the ADA, Plaintiff must allege: (1) that he or she is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity or otherwise discriminated against by such entity; (3) by reason of such disability. Id.; Shotz v. Cates, 256 F.3d 1077, 1079 (11th Cir. 2001). "Because causes of action brought under Title II of the ADA and Section 504 of the Rehabilitation Act are essentially identical, they can be analyzed together." Savage v. S. Fla. Reg'l Transp. Auth., 523 F. App'x 554, 554 (11th Cir. 2013); Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000) ("Discrimination claims under the Rehabilitation

Act are governed by the same standards used in ADA cases, and therefore we will discuss these two claims together." (citation omitted)). Generally, case law interpreting one statute as if it applies directly to the other.

This mandate of the ADA and the Rehabilitation Act requires public entities, including public school districts and state school systems, to afford students with disabilities, an equal opportunity to participate in or benefit from any aid, benefit, or service provided to others. 28 C.F.R §§ 35.130(b)(1), (g). A public school system cannot provide different or separate aids, benefits, or services to individuals with disabilities than is provided to others unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others. 28 C.F.R. § 35.130(b)(1)(iv). Nor can a public entity otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service. 28 C.F.R. § 35.130(b)(1)(vii).

It is beyond dispute that each and every school district and the Florida Department of Education is a "program or activity receiving federal financial assistance," and is therefore subject to the requirements of the Rehabilitation Act. The Rehabilitation Act states that any "local educational agency" eligible to receive federal grants under the Elementary and Secondary Education Act ("ESEA") (20 U.S.C. § 7801) is a covered entity under the Rehabilitation Act. 29 U.S.C. § 794(b)(2)(B). Defendants' official budget for Fiscal Year 2021 reported over two billion dollars in federal grants under various federal grant programs, including grants under the ESEA.

Governor DeSantis and Commissioner RICHARD CORCORAN, acting in their official capacities are subject to suit under Title II of the ADA because they are responsible for enforcing the law or laws at issue in the State of Florida and has affirmatively established this Executive

Order. <u>Grizzle v. Kemp</u>, 634 F.3d 1314, 1319 (11th Cir. 2011) (citing <u>Ex Parte Young,</u> 209 U.S. 123, 161 (1908)). See also <u>National Association of the Deaf v. Florida</u>, 945 F.3d. 1339, 1352 (11th Cir. 2020) (organization of deaf or hard of hearing members was permitted to seek prospective injunctive relief against Florida officials in their official capacities for their ongoing violations of the ADA).

In deciding a Motion for Preliminary Injunction, the Court must determine (1) whether Plaintiffs are likely to succeed on the merits; (2) whether they are likely to suffer irreparable harm in the absence of the preliminary relief; (3) whether the balance of hardships favors the Plaintiffs; and (4) whether the injunction is in the public interest. <u>Winter v. Natural Res. Def. Council, Inc</u>., 555 U.S. 7, 20 (2008); <u>Ingram v. Ault</u>, 50 F.3d 898, 900 (11th Cir. 1995). Plaintiffs meet each of the four elements and are entitled to receive injunctive relief.

1. **Intervenors are qualified individuals with disabilities and have standing to bring this action**

The term qualified individual with a disability means "an individual with a disability, who with or without reasonable modifications to rules, policies or practices…meets the essential eligibility requirements for the…participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Plaintiffs are individuals with disabilities who have disabilities that place them at high risk for death or injury due to COVID-19.

Under the ADA, an individual has a disability if he has a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A)(B). As these children have disabilities and an Individualized Education Plan or a Section 504 plan, they "meet the essential eligibility requirements" to benefit from this government service or program.

**2.  Intervenors were excluded from participation in or denied the benefits of the services, programs, or activities of a public entity or otherwise discriminated against by such entity by reason of such disability**

A public entity may not, in providing any aid, benefit, or service,  "[d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service[,] [a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others[,]" or "[p]rovide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others[.]" 28 C.F.R. §§ 35.130(b)(1)(i)-(iii); accord 45 C.F.R. § 84.4(b)(1)(ii)-(iii) (Rehabilitation Act).  Nor can a public entity employ unnecessary policies, practices, criteria or methods of administration that have the effect or tendency of excluding or discriminating against persons with disabilities. 28 C.F.R. § 35.130(b)(3), (8).

Defendant's actions constitute unlawful discrimination against Plaintiffs under four separate provisions of the ADA: (1) failing to make a reasonable modification under circumstances where it is required (28 C.F.R. § 35.130(b)(7)); (2) excluding Plaintiffs from the participation in public education (42 U.S.C. § 12132; 28 C.F.R. § 35.130); (3) failing to make its services, programs, and activities "readily accessible" to disabled individuals (28 C.F.R. § 35.150); and (4) administering a policy that has the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability (28 C.F.R. § 35.130(b)(3)). This brief will proceed by addressing in turn each of these four ways in which Defendants' actions constitute discrimination against one or all of Plaintiffs.

Moreover, the refusal to provide a safe atmosphere by allowing masks and other common-sense precautions to the spread of COVID-19 violates the following provisions of the ADA.

(1)  failing to make a reasonable modification under circumstances where it is required (28 C.F.R. § 35.130(b)(7); 34 C.F.R. § 104.34(a))

(2)  excluding Plaintiffs from the participation in public education (42 U.S.C. § 12132; 28 C.F.R. § 35.130; 34 C.F.R. § 104.34(a)))

(3)  failing to make its services, programs, and activities "readily accessible" to disabled individuals (28 C.F.R. § 35.150; 34 C.F.R. § 104.34(a)))

(4)  administering a policy that has the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and That has the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities. (28 C.F.R. § 35.130(b)(3))

(5)  failing to permit a public entity to administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities. (28 C.F.R. § 35.130(d); 34 C.F.R. § 104.34(a))

This policy undoubtedly has the effect of subjecting qualified disabled children to discrimination on the basis of disability. Children with disabilities who are susceptible to serious injury or death from COVID would be excluded from school activities with other children, classrooms with other children, and otherwise denied the opportunity to participate in the services of the school district, in violation of 28 C.F.R. § 35.130(b)(3) and 42 U.S.C. § 12132.

The deprivation of funding as a penalty for failure to comply with the Executive Order is prohibited criteria or methods of administration "[t]hat have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability [or t]hat have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public

entity's program with respect to individuals with disabilities." 28 C.F.R. § 35.130(b)(3)(i). This method of administration is to direct the Florida Commissioner of Education to withholding state funds from noncompliant school boards that, at a minimum, shall at minimum allow parents to direct that their kids remain unmasked to a child that may be seriously injured as a result of that parent's decision to exercise his or her "freedoms" to remain unmasked.

### 3. The Proposed Emergency Rule Regarding COVID-19 Hope Scholarship Transfer Procedures adds further insult to injury.

In the newest edition of the Florida Register, the State Board of Education acknowledges the danger posed to children with disabilities and has proposed to extend emergency HOPE Scholarships, under § 1002.40 Florida Statutes. In its notice of an emergency meeting, the posting was as follows:

> DEPARTMENT OF EDUCATION
> The State Board of Education announces an emergency meeting to which all persons are invited.
> DATE AND TIME: August 6, 2021, 11:00 a.m.
> PLACE: Conference Call: 1(800)367-2403, Confirmation Code: 8000177. This meeting will also be webcast on the Florida Channel at https://thefloridachannel.org/.
> GENERAL SUBJECT MATTER TO BE CONSIDERED: This is an emergency meeting of the State Board of Education to consider Emergency Rules 6AER21-01, Pupil Attendance Records for COVID-19 and 6AER21-02, COVID-19 Hope Scholarship Transfer Procedures.
> These two emergency rules address attendance and the Hope Scholarship to provide additional flexibility in light of health protocols issued by the Department of Health and implemented by school districts when school begins as soon as next week, in some school districts. Emergency Rule 6AER21-01, Pupil Attendance Records, will provide criteria to avoid learning loss and consider a student in attendance, when under a "stay-home" directive due to COVID-19. Emergency Rule 6AER21-02, COVID-19 Hope Scholarship Transfer Procedures, provides parents with a mechanism to transfer a child to a private school or another school district under a Hope Scholarship when a school district's COVID-19 health protocols, including masking, pose a health or educational danger to their child.
> Health protocols for schools including masking, will be addressed by the Department of Health. **The agency finds that the potential for student learning loss and educational disruption with schools starting next week, creates an immediate danger to the public health, safety and welfare of students and requires emergency action.** The

procedure for this emergency meeting is fair under the circumstances because the notice was posted as soon as possible, and notice of the meeting was widely circulated.

The agenda will be posted prior to the meeting on the Department's website at http://www.fldoe.org/policy/stateboard-of-edu/meetings. For more information, you may contact: Chris Emerson at Christian.Emerson@fldoe.org.

Fla. Admin. Reg., Vol 47, Number 151, 8/5/2021.[10]  (emphasis ours). "Separate but equal" is not permitted under the ADA, IDEA, or the 14th Amendment to the United States Constitution. Attendance at a child's zoned school, or a school of choice where applicable, is a benefit generally provided children in school districts across the nation. Many parents, when selecting where to live, place great importance on the schools zoned for their home's location; they expect that their children can attend these schools with siblings and neighbors. The Americans with Disabilities Act seeks to remedy more than outright exclusion. Indeed, in enacting the ADA, Congress explicitly found that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of . . . overprotective rules and policies, failure to make modifications to existing . . . practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5). Thus, Title II's implementing regulations, consistent with Congressional intent, require public entities, such as Governor DeSantis and the Florida Board of Education, to also afford individuals with disabilities ***equal*** benefits to the benefits afforded to others. See 28 C.F.R. § 35.130.

The ADA mandates that children with disabilities be afforded that same opportunity, unless placing them elsewhere is necessary to provide them with benefits or services as effective

---

[10] https://www.flrules.org/Faw/FAWDocuments/FAWVOLUMEFOLDERS2021/47151/47151doc.pdf (last accessed 8/5/2021)

as those provided to others. 28 C.F.R. § 35.130(b)(iv). And if reasonable modifications to policies, practices, or procedures would permit a child with disabilities to safely attend his or her zoned school, the school district must make those modifications unless doing so would fundamentally alter the nature of the service, program, or activity being provided. 28 C.F.R. § 35.130(b)(7). Thus, while the ADA contemplates and permits differential treatment of individuals with disabilities in some instances, the State of Florid **cannot** justify paying to transferring a child away from his or her school based on political preferences of the administration.

In addition, the use of the HOPE scholarship requires parents to waive their right to a free appropriate public education in the least restrictive environment. Rule 6A-6.0331(1), F.A.C. The district's obligation to ensure FAPE does not apply to students enrolled in private or home school program. Private schools do not have to meet the highly qualified special education teacher requirements of 34 CFR §300.18. (34 CFR §300.18(h) and §300.138(a)). Private schools do not have to follow individualized education plans. 34 CFR §300.140(a). there are no procedural safeguards and other protections like the right to file a request for due process when there is a disagreement. 34 CFR §300.140(a). The school district is not required to provide transportation between the student's home and the private school. 34 CFR §300.139(b). Any obligations that do remain for parentally placed private school students with disabilities only remain if the student attends a nonprofit school. 34 CFR §300.130; 34 CFR §300.13; 34 CFR §300.36. In addition, the scholarship is limited and may not cover the entire private school tuition, requiring parents to pay the rest. Many families cannot afford to pay the difference and cannot afford to pay for transportation. In reality, even if they could afford it, many families cannot find a private school that accepts scholarships and can provide an appropriate education. Their only option is the public

school system. An expansion of the HOPE scholarship alone is insufficient to address the needs of students with disabilities.

### C. Irreparable injury will be suffered unless the injunction issues; and the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party.

To satisfy her burden on this prong, Plaintiffs need only demonstrate that irreparable harm "is likely in the absence of an injunction." Winter v. Nat'l Res. Def. Council, 555 U.S. 7, 22 (2008) (emphasis in original). "An injury is irreparable 'if it cannot be undone through monetary remedies.'" Scott v. Roberts, 612 F.3d 1279, 1295 (11th Cir. 2010) (citation omitted).  Irreparable injuries are those that are non-compensable or cannot be adequately compensated by money damages, such as emotional, psychological, and physical damage. Cate v. Oldham, 707 F.2d 1176, 1189 (11th Cir. 1983). The loss of educational opportunities is a paradigmatic example of irreparable harm, as it is both intangible and deeply damaging. Further, as noted by their own

As the Eleventh Circuit stated, "the gravity of the harm is vast and far reaching when a child is deprived of his or her education. Ass'n for Disabled Ams., Inc. v. Fla. Int'l Univ., 405 F.3d 954, 958 (11th Cir. Fla. 2005) (citing Brown v. Board of Educ., 347 U.S. 483, 493 (1954) ("[E]ducation is perhaps the most important function of state and local governments" because "it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education.").

Numerous courts have issued preliminary injunctions in order to immediately stop the irreparable harm deriving from a child's absence in school. See, e.g., Sullivan v. Vallejo City Unified Sch. Dist., 731 F. Supp. 947, 961 (E.D. Cal. 1990); Alejandro v. Palm Beach State College, 843 F. Supp. 2d 1263, 1270-71 (S.D. Fla. 2011) (concluding that missing school classes constitutes irreparable harm, and granting the temporary injunctive relief); Borough of Palmyra,

Bd. of Educ. v. F.C., 2 F. Supp. 2d 637, 645 (D.N.J. 1998) (holding that the loss of an appropriate education is an irreparable harm under preliminary injunction analysis).

In this matter, the Governor is forcing parents with children with disabilities to choose between their child's health or their child's education. Furthermore, the School Districts or the Governor cannot avoid their obligations under the ADA even if compliance may violate state law. To the extent that any relief may violate the "Parent's Bill of Rights" such acts would readily fall by the U.S. Constitution's Supremacy Clause. Under the Supremacy Clause, U.S. Const. Art. VI, Cl. 2, the laws of the United States "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." State law must give way to the extent it "conflicts with federal law." Crosby v. Nat'l Foreign Trade Council, 530 U.S. 363, 378 (2000). Such conflicts exist not only where "it is impossible . . . to comply with both state and federal law," but also "where under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Id. at 372-73 (internal citation and quotation marks omitted). The Supreme Court has "held repeatedly that state laws can be pre-empted by federal regulations as well as by federal statutes," Hillsborough County v. Automated Med. Labs, Inc., 471 U.S. 707, 713 (1985), and that "[f]ederal regulations have no less pre-emptive effect than federal statutes," Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 153 (1982). The courts of appeals have repeatedly applied such principles in holding that federal disability rights laws, including the ADA, preempt state statutes to the extent that state laws conflict with federal mandates. See, e.g., Astralis Condo. Ass'n v. HUD, 620 F.3d 62, 69-70 (1st Cir. 2010) (defendant could not permissibly rely on Puerto Rico law to refuse to provide an accommodation required under the Fair Housing Act for a person with a disability); Crowder

v. Kitagawa, 81 F.3d 1480 (9th Cir. 1996) (concluding that Hawaii's animal quarantine law, as applied to guide dogs, denied plaintiffs access to state services, programs, and activities in violation of the ADA); Barber v. Colorado Dep't of Revenue, 562 F.3d 1222, 1233 (10th Cir.2009) (emphasizing that proposed accommodation under federal disability law is not unreasonable simply because it might require defendants to violate state law). As the Tenth Circuit has emphasized, "[r]eliance on state statutes to excuse non-compliance with federal law is simply unacceptable under the Supremacy Clause." Barber, 562 F.3d at 1233. Simply put, a defendant "is duty bound not to enforce a [state] statutory provision if doing so would either cause or perpetrate unlawful discrimination" under federal law. Astralis, 620 F.3d at 69. To the extent Florida law or regulation impedes any School Board's ability to comply with its ADA obligations, state law must "give way." North Carolina State Bd. of Educ. v. Swann, 402 U.S. 43, 45 (1971).

### D.  If issued, the injunction would not be adverse to the public interest.

Congress has mandated that the public interest requires equal treatment for persons with disabilities, thereby maximizing their independence. An injunction here supports that public interest, toward the ends which the federal law requires. It is against the public interest to allow a state to continue to violate federal law, because the Supremacy Clause requires that federal law be paramount.

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Winter, 555 U.S. at 24 (quoting Weinberger v. Romero– Barcelo, 456 U.S. 305, 312 (1982)). "[T]he court must ensure that the 'public interest would not be disserved' by the issuance of a preliminary injunction." Salinger v. Colting, 607 F.3d 68, 80 (2d Cir. 2010) (*quoting* eBay Inc. v. Mercexchange LLC., 547 U.S. 388, 391 (2006)). With little administrative burden and no discernible costs associated

with the requested modification, the balance of the hardships is greatly in favor of the Plaintiffs and the Motion for Preliminary Injunction should be granted.

**WHEREFORE**, Plaintiffs, on behalf of their children with disabilities, respectfully request that this Court **immediately enjoin enforcement** of Defendant Governor DeSantis' Executive Order 21-175 and allow the school districts to implement these children's IEP and 504 plans to ensure that each child receives a free and appropriate education in the least restrictive and the most integrated environment – without jeopardizing their lives or safety.

Respectfully submitted this 6th day of August 2021.

By: /s/*Matthew W. Dietz*
Matthew W. Dietz, Esq.
Florida Bar No. 84905
Stephanie Langer, Esq.
Florida Bar No. 149720
2990 Southwest 35th Avenue
Miami, Florida 33133
T: (305) 669-2822 / F: (305) 442-4181
slanger@justDIGit.org
mdietz@justdigit.org
aa@justdigit.org