# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:21-CV-22863-KMM

JUDITH ANNE HAYES, individually
and on behalf of W.H., a minor, et al.,

      Plaintiffs,

  v.

GOVERNOR RONALD DION
DESANTIS, in his official Capacity as
Governor of the State of Florida, et al.,

      Defendants.

## STATE DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY INJUNCTION

Raymond Treadwell (FBN 93834)
Chief Deputy General Counsel
EXECUTIVE OFFICE OF THE GOVERNOR
The Capitol, PL-5
400 S. Monroe Street
Tallahassee, Florida 32399-6536
Ray.Treadwell@eog.myflorida.com
Gov.legal@eog.myfloirda.com
(850) 717-9310

*Counsel for Governor Ronald Dion DeSantis*

Anastasios Kamoutsas (FBN 109498)
General Counsel
FLORIDA DEPARTMENT OF EDUCATION
Turlington Building, Suite 1244
325 West Gaines Street
Tallahassee, Florida 32399-0400
Anastasios.Kamoutsas@fldoe.org
(850) 245-0442

*Counsel for Commissioner Richard Corcoran
and Florida Department of Education*

Rocco E. Testani (*pro hac* pending)
Stacey M. Mohr (*pro hac* pending)
Lee A. Peifer (*pro hac* pending)
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, N.E., Suite 2300
Atlanta, Georgia 30309
roccotestani@eversheds-sutherland.com
staceymohr@eversheds-sutherland.com
leepeifer@eversheds-sutherland.com
(404) 853-8000

*Of counsel for State Defendants*

## TABLE OF CONTENTS

I.      Introduction ................................................................................................................. 1

II.     Background ................................................................................................................. 1

        A.      The Executive Order ................................................................................... 1

        B.      The Departments' Emergency Rules ........................................................... 2

        C.      Local School District Policies on COVID-19 Mitigation Measures ........... 3

        D.      Plaintiffs' Claims and the Injunctive Relief Sought ................................... 4

        E.      The Procedural Safeguards Available to Plaintiffs Under the IDEA. ........... 6

III.    Argument and Citation of Authorities ........................................................................ 8

        A.      Plaintiffs Are Not Likely to Succeed on the Merits. ................................... 9

                1.      Plaintiffs' claims alleging denial of a "free appropriate public education" fail because they failed to exhaust administrative remedies. .................................... 9

                2.      Plaintiffs lack Article III standing to pursue their claims for preliminary injunctive relief. ................................................................ 13

        B.      There Is No Threat of Imminent, Irreparable Injury. ................................. 17

        C.      The Balance of Potential Harms and Public Interest Do Not Warrant a Preliminary Injunction. .......................................................................... 18

IV.     Conclusion ............................................................................................................... 20

# I.   INTRODUCTION

In this case, Plaintiffs claim that an Executive Order of the Governor of Florida, directing certain agencies of the State to adopt rules allowing parents to determine whether or not their children will wear masks in public schools, must be enjoined for their children with disabilities to receive a "free and appropriate public education in the most integrated and least restrictive environment." (Compl. ¶ 45) (ECF No. 1) Plaintiffs, however, have not pursued the extensive administrative remedies available to them under the Individuals with Disabilities Education Act (IDEA)—as they are required to do under the express terms of that Act and binding precedent from the U.S. Supreme Court and the Court of Appeals for the Eleventh Circuit. Plaintiffs' claims therefore are barred for failure to exhaust administrative remedies as well as lack of standing, and Plaintiffs have otherwise failed to meet the requirements for preliminary injunctive relief. Their motion should be denied.

# II.   BACKGROUND

## A.   The Executive Order

Plaintiffs are 11 parents of a total of 16 students enrolled in eight different Florida public school districts. Plaintiffs have sued the Governor of Florida, the Florida Department of Education, and the Florida Education Commissioner (the "State Defendants"), as well as the local boards governing the eight school districts, seeking to strike down an Executive Order of the Governor that takes the position that current law allows parents the option to exclude their children from locally imposed mask requirements.[1]

---

[1] This case is one of a number of pending cases challenging this same Executive Order. None of the other cases were filed in federal court, and all challenge the order on state-law grounds. The state circuit court in Leon County currently is holding a three-day trial in one of these cases, deciding the plaintiffs' motion for a preliminary injunction to stop enforcement of the Executive Order and the Department of Health rule adopted pursuant to the order. The court has indicated

The Executive Order at issue does not direct or require any particular action from school districts. *See* Exec. Order 21-175 (July 30, 2021), https://www.flgov.com/wp-content/uploads/orders/2021/EO_21-175.pdf. Rather, it directs the Florida Department of Health (not a party here) and the Florida Department of Education to issue and enforce rules "to ensure safety protocols for controlling the spread of COVD-19 in schools that" are in accordance with the Parents' Bill of Rights, H.B. 241,[2] which was passed by the Florida Legislature and signed into law earlier in the summer. (EO at 3–4.) Specifically, such rules must ensure that safety protocols in schools do not "violate Floridians' constitutional freedoms" or "violate parents' right[s] under Florida law to make health care decisions for their minor children" and do "[p]rotect children with disabilities or health conditions who would be harmed by certain protocols such as face masking requirements." (*Id.*) The Executive Order also directed the Commissioner of Education to "pursue all legal means available to ensure school districts adhere to Florida law, including but not limited to withholding state funds from noncompliant school boards violating any rules or agency action." (*Id.* at 4.)

**B.      The Departments' Emergency Rules**

Pursuant to their rulemaking authority, on August 6, 2021, the Florida Department of Health and the Florida Department of Education each issued emergency rules dealing with various issues related to COVID-19 and public schools. The Florida Department of Health issued one emergency rule. As related to wearing of masks, that rule, which was signed by the Florida State Surgeon General, provides, "Students may wear masks or facial coverings as a mitigation

---

that a ruling on the motion will be issued this week. *See McCarthy v. DeSantis*, Case No. 2021-CA-1382 (Fla. 2d Cir. Ct.).

[2] The Parents' Bill of Rights is codified at sections 1014.01–.06, Florida Statutes. *See* Ch. 2021-199, Laws of Fla., http://laws.flrules.org/2021/199.

measure; however, the school must allow for a parent or legal guardian of the student to opt-out the student from wearing a face covering or mask." Emergency Rule 64DER21-12(1)(d), Fla. Admin. Reg., Vol. 47/153 (Aug. 9, 2021), https://www.flrules.org/gateway/ruleNo.asp?id=64 DER21-12. The rule further requires that "[s]tudents whose parents or legal guardian have opted them out of a mask or face covering requirement shall not be subject to any harassment or discriminatory treatment." *Id*. 64DER21-12(6).

The Florida Department of Education issued two emergency rules. The first deals with attendance policies in the event of "stay-home" directives due to COVID-19 exposure and does not discuss masks. *See* Emergency R. 6AER21-01, Fla. Admin. Reg. Vol. 47/153 (Aug. 9, 2021), https://www.flrules.org/gateway/ruleNo.asp?id=6AER21-01. The second rule allows students to obtain a "Hope Scholarship" to transfer to a private school or another Florida school district if the student is subject to harassment "in relation to, or as a result of, school district protocols for COVID-19, including masking requirements, the separation or isolation of students, or COVID-19 testing requirements, that have the effect of substantially interfering with a student's educational performance, opportunities or benefits." Emergency R. 6AER21-02(1), Fla. Admin. Reg. Vol. 47/153 (Aug. 9, 2021), https://www.flrules.org/gateway/ruleNo.asp?id=6AER21-02.

Neither Plaintiffs' complaint nor their motion for preliminary injunction asks the Court to review, invalidate, or enjoin any of these rules.  This case deals solely with the Governor's Executive Order.

## C.     Local School District Policies on COVID-19 Mitigation Measures

Leading up to the current (2021–2022) school year, local school boards and district administrators throughout Florida have considered and issued various (and changing) policies and procedures related to controlling the spread of COVID-19 in schools through various

mitigation measures, including optional or required mask wearing, both before and after the Executive Order was issued on July 30.

Since the Executive Order was issued, the eight school districts in which the Plaintiffs' children are enrolled have taken various approaches to mask policies. In five of the eight districts—Alachua County, Broward County, Hillsborough County, Miami-Dade County, and Palm Beach County—the local school boards have enacted policies purporting to require all students to wear masks, with exceptions allowed only upon submission of medical documentation. (*See, e.g.*, Hillsborough Emergency Rule (ECF No. 41-1 at 3–4); Broward Rule 2170 (ECF No. 44-1); Palm Beach Mot. & Resp. (ECF No. 49 at 2).)

**D.      Plaintiffs' Claims and the Injunctive Relief Sought**

Plaintiffs' complaint alleges that the Executive Order violates the right of each of their children to "have a free and appropriate public education in the most integrated and least restricted environment" as required "under the Individuals with Disabilities Education Act, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act." (Compl. ¶ 45.) Specifically, they allege that each of their children has "an individualized education plan or 504 plan in the school districts in the counties in which they live" and that "[t]hey are all at higher risk for severe illness or death due to COVID-19 and will not go to public school because of the higher risk of severe illness or death." (*Id.* ¶ 47.) Further, Plaintiffs allege that "Defendants have argued publicly that students can attend virtual programs or be given a voucher to attend a private school," but that these options do not "provide students with disabilities FAPE [a free and appropriate public education] in the LRE [least restrictive environment]." (*Id.* ¶ 84.) Each Plaintiff alleges that, due to their child's disability, the child cannot attend school without "mandatory masking." (*E.g.*, *id.* ¶ 98) Plaintiffs further allege that certain alternatives such as

"virtual programs and vouchers do not provide FAPE in the [least restrictive environment]." (*Id.* at 17 (capitalization adjusted).)

The complaint brings three separate counts: Count 1 alleges violation of the Americans with Disabilities Act (ADA); Count 2 alleges violation of Section 504 of the Rehabilitation Act; and Count 3 alleges violation of the Florida Education Equity Act. Counts 1 and 2 seek a declaration that Defendants have violated the ADA and Section 504, respectively, as well as preliminary and permanent injunctions "enjoining the Defendants from interfering with their rights to a free and appropriate public education in the least restrictive environment by refusing to allow them to go to public school in a safe environment," "to otherwise immediately cease discriminating against students with disabilities," and "to otherwise enjoin[] the Defendants from any practice, policy and/or procedure which would deny students with disabilities equal access to and benefit of Defendants services." (Compl. ¶¶ 178, 187.) Plaintiffs also seek attorneys' fees, costs, and expenses, as well as damages under Count 3.

Plaintiffs' motion for preliminary injunction is based on Counts 1 and 2 of the complaint—the ADA and Section 504 claims. Like the complaint, the motion for preliminary injunction cites, and claims violations of "obligations under the Individuals with Disabilities Education Act, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act." (Am. Mot. Prelim. Inj. 3 (ECF No. 17).) The preliminary relief sought in the motion is for the Court to "**immediately enjoin enforcement** of Defendant Governor DeSantis' Executive Order 21-175 and allow the school districts to implement these children's IEP and 504 plans to ensure that each child receives a free and appropriate education in the least restrictive and the most integrated environment." (Am. Mot. Prelim. Inj. 21.) Again, Plaintiffs' motion does not seek to

enjoin the Departments' emergency rules that are the actual, operative laws about which they complain.

The evidence attached to the motion includes declarations from each of the Plaintiffs, all of which conclude with a statement that he or she is "seeking a reinstatement of a 'full panoply of services' including but not limited to requirements to follow CDC guidelines including the wearing of masks in schools and live synchronous and asynchronous instruction with the same curriculum as in-person instruction and the ability to interact with a student's teacher and peers equal to the options provided to nondisabled students." (Am. Mot. Prelim. Inj. Ex. A (ECF No. 17-1).) Although each of the Plaintiffs state that their children have either an IEP (an "Individualized Education Program" under the IDEA) or a 504 plan with their respective school, none of the affidavits identify any measures taken to seek FAPE—or any necessary services, curriculum, or other accommodations—from any of the children's schools through their individualized programs or plans. Plaintiffs' motion nevertheless seeks to "have their IEP and 504 plan[s] implemented with care and heed taken for their individual circumstances as demanded by the educational laws" by enjoining statewide enforcement of the Governor's Executive Order. (Am. Mot. Prelim. Inj. 4.)

**E.      The Procedural Safeguards Available to Plaintiffs Under the IDEA**

The IDEA provides parents with extensive procedural safeguards to ensure that each student is provided the free appropriate public education ("FAPE") sought by Plaintiffs here. 20 U.S.C. § 1400 *et seq*. These procedures must meet detailed requirements set out in federal regulation, 34 C.F.R. Part 300, and govern all aspects of providing educational services to students with disabilities, from ensuring prompt identification and evaluation, to constituting school-based teams to develop an individualized plan for each student, to providing efficient dispute resolution options. (*See* Declaration of Melissa Ramsey (Ramsey Decl.).)

At the center of this process is the IEP—the "individualized education plan" (or "program") developed for each student by an "IEP team" comprised of specific individuals with knowledge of the student, including parents, teachers, and a qualified representative of the school or district, among others. (Ramsey Decl. ¶ 6.) This team must meet at least once a year, although more frequent meetings may be convened by members of the team, including parents. (*Id*. ¶ 8.)

Because each IEP is based on the student's particular circumstances, the instruction, related services, accommodations, and educational placements will vary widely. (*Id*. ¶ 9.) Some, for example, may provide for accommodations within the general education classroom, while others may place the student at a specific school or facility, and others may require services be provided in a hospital or home setting. (*Id*.) These methods, and more, have been used by IEP teams to serve students with varying needs during the COVID-19 pandemic. (*Id*. ¶ 10.) Accommodations have included, for example, direct teacher instruction through online platforms, personnel providing in-home service, instruction in smaller classroom settings, and clustering of medically vulnerable students. (*Id*. ¶ 11.) School districts also offer virtual school programs, as well as the statewide Florida Virtual School, all of which are available if appropriate as part of a student's IEP. (*Id*. ¶ 12; *see also* https://www.flvs.net/about/programs/exceptional-student-education.) If a particular service or setting is not assisting a student in making sufficient progress, the IEP team must consider other accommodations. (*Id*. ¶ 8.)

Finally, a parent who is not satisfied with the IEP or its implementation has several avenues for resolving this dispute. (*Id*. ¶¶ 15–17.) The IDEA and Florida law set out a number of procedural safeguards available to parents to ensure that students are receiving FAPE, *see* §§ 1003.57 & 1003.571, Fla. Stat.; Fla. Admin. Code R. 6A-6.03311. In Florida, a parent who disagrees with the school district as to the student's education, including appropriate

accommodations or setting, can take advantage of several dispute resolution options: (1) state-sponsored facilitated IEP meetings; (2) mediation with a state-provided third-party mediator; (3) a state complaint process through the Florida Department of Education; and (4) a due process complaint heard by an impartial hearing officer with the Division of Administrative Hearings. (*Id.* ¶ 19 & Ex. 3.) Plaintiffs do not allege that they have attempted to avail themselves of the IEP process or any of these dispute resolution procedures, and the Department of Education has no record of them doing so. (*Id.* ¶ 22.)

### III.   ARGUMENT AND CITATION OF AUTHORITIES

Plaintiffs have not made the showing necessary for a preliminary injunction. "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). "Indeed, the grant of a preliminary injunction is 'the exception rather than the rule.'" *Brown v. Sec'y, U.S. Dep't of Health & Hum. Servs.*, 4 F.4th 1220, 1224 (11th Cir. 2021) (citation omitted).

To obtain a preliminary injunction, a movant must show "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Swain v. Junior*, 961 F.3d 1276, 1284–85 (11th Cir. 2020) (citation omitted). "Failure to show any of the four factors is fatal." *ACLU of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009).

Here, Plaintiffs seek an injunction to prevent the enforcement of an Executive Order that, in relevant part, merely directs the Florida Department of Health (a non-party) and the Florida Department of Education to issue rules and take other steps to allow individual parents to decide the extent to which their own children—including students with disabilities—should wear masks

8

in public schools. But Plaintiffs have failed to exhaust their administrative remedies, lack standing to pursue their claims for preliminary injunctive relief, and face no threat of irreparable injury to be prevented or redressed by their proposed injunction. The motion for a preliminary injunction therefore should be denied.

## A.      Plaintiffs Are Not Likely to Succeed on the Merits.

"The first requirement [for a preliminary injunction]—that the plaintiff show a substantial likelihood of success on the merits—is 'most important.'" *Yelapi v. Desantis*, 487 F. Supp. 3d 1278, 1283 (N.D. Fla. 2020) (quoting *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1232 (11th Cir. 2005)). "It is also where plaintiffs suffer 'the most common failure.'" *Id.* (quoting *ACLU*, 557 F.3d at 1198). In this case, Plaintiffs are unlikely to succeed (and further, *cannot* succeed) on the merits.

### 1.      Plaintiffs' claims alleging denial of a "free appropriate public education" fail because they failed to exhaust administrative remedies.

The claims on which Plaintiffs seek a preliminary injunction[3] fail because Plaintiffs have not exhausted their administrative remedies under the IDEA. Before suing under "the Americans with Disabilities Act of 1990, title V [including Section 504] of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities … seeking relief that is also available under [the IDEA], the procedures under [20 U.S.C. § 1415] subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under [the IDEA]." 20 U.S.C. § 1415(*l*). As this Court has previously recognized,

---

[3] Plaintiffs' motion for a preliminary injunction generally tracks the claims asserted in Count 1 (ADA) and Count 2 (Section 504) of the Complaint. Plaintiffs' motion does not cite or discuss their purported state-law claim under the Florida Educational Equity Act (Count 3). And for good reason: "[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984).

> "[A]ny student who wants 'relief that is available under' the IDEA must use the IDEA's administrative system, even if he invokes a different statute." *M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153, 1158 (11th Cir. 2006) (citing *Babicz v. Sch. Bd.*, 135 F.3d 1420, 1422 n.10 (11th Cir. 1998)). "[C]laims asserted under Section 504 and/or the ADA are subject to Section 1415(f)'s requirement that litigants exhaust the IDEA's administrative procedures to obtain relief that is available under the IDEA before bringing suit under Section 504 and/or the ADA." *Id.*

*N.N.J. v. Broward Cty. Sch. Bd.*, No. 06-61282-CIV, 2007 WL 3120299, at *2 (S.D. Fla. Oct. 23, 2007) (Moore, J.) (granting motion to dismiss).

The complaint here could hardly be clearer that Plaintiffs are "seeking relief that is also available under" the IDEA for purposes of the statutory exhaustion requirement. 20 U.S.C. § 1415(*l*). For one, the complaint (like the motion for preliminary injunction) explicitly cites the IDEA. (Compl. ¶¶ 45, 49; *see also* Am. Mot. Prelim. Inj. 3.) But it also relies on the alleged denial of, and requests relief related to, a "free appropriate public education" (FAPE) at least a dozen times—including in the prayers for relief on their ADA and Section 504 claims. (*E.g.*, Compl. ¶¶ 45, 56, 80, 85, 87, 89, 162; *id.* at 32, 34.) The motion for a preliminary injunction is similarly express: "Plaintiffs, on behalf of their children with disabilities, respectfully request that this Court **immediately enjoin enforcement** of Defendant Governor DeSantis' Executive Order 21-175 and allow the school districts to implement these children's IEP and 504 plans to ensure that each child receives a free and appropriate education in the least restrictive and the most integrated environment." (Am. Mot. Prelim. Inj. 21.)

In other words, Plaintiffs' claims directly implicate the IDEA's exhaustion requirement, regardless of how those claims have been styled under the ADA (Count 1) and Section 504 (Count 2). As the Supreme Court explained in *Fry v. Napoleon Community Schools*,

> [The IDEA's] exhaustion rule hinges on whether a lawsuit seeks relief for the denial of a free appropriate public education. If a lawsuit charges such a denial, the plaintiff cannot escape §1415(*l*) merely by bringing her suit under a statute other than the IDEA—as when, for example, the

10

> plaintiffs … claimed that a school's failure to provide a FAPE also violated the Rehabilitation Act. Rather, that plaintiff must first submit her case to an IDEA hearing officer, experienced in addressing exactly the issues she raises.

137 S. Ct. 743, 754 (2017) (footnote omitted); *see also id.* at 755 ("A court deciding whether § 1415(*l*) applies must therefore examine whether a plaintiff's complaint—the principal instrument by which she describes her case—seeks relief for the denial of an appropriate education.… Section 1415(*l*) is not merely a pleading hurdle. It requires exhaustion when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way."). When Plaintiffs contend that "[t]hey would like to have their IEP and 504 plan[s] implemented with care and heed taken for their individual circumstances as demanded by the educational laws" (Am. Mot. Prelim. Inj. 4), that is *precisely* the purpose of the extensive procedural protections and FAPE requirements under the IDEA.[4]

Plaintiffs thus "cannot circumvent the IDEA's exhaustion requirement by suing for a FAPE deprivation under a different federal statute." *Durbrow v. Cobb Cty. Sch. Dist.*, 887 F.3d 1182, 1190 (11th Cir. 2018). "The same misconduct committed by a school district may warrant relief under the IDEA, § 504, or the ADA. But if the complaint essentially alleges the denial of a FAPE, then the plaintiff must exhaust his administrative remedies." *Id.* And "to properly exhaust a claim that seeks relief for the denial of a free appropriate public education, the claim *must*

---

[4] *See generally N.B. by D.G. v. Alachua Cty. Sch. Bd.*, 84 F.3d 1376, 1378–79 (11th Cir. 1996) ("The philosophy of the [IDEA] is that plaintiffs are required to utilize the elaborate administrative scheme established by the [IDEA] before resorting to the courts to challenge the actions of the local school authorities. Key reasons for requiring the exhaustion of administrative remedies are as follows: 1) to permit the exercise of agency discretion and expertise on issues requiring these characteristics; 2) to allow the full development of technical issues and a factual record prior to court review; 3) to prevent deliberate disregard and circumvention of agency procedures established by Congress; and 4) to avoid unnecessary judicial decisions by giving the agency the first opportunity to correct any error." (internal quotation marks and citations omitted)).

proceed through an administrative hearing and receive a final decision from an administrative judge *before* review may be sought from a federal district court." *Id.* at 1191 (emphasis added).

Plaintiffs' ADA and Section 504 claims are therefore due to be dismissed—and cannot support their request for preliminary injunctive relief. *See Durbrow*, 887 F.3d at 1197 ("The district court properly dismissed the Durbrows' § 504 and ADA claims for failure to exhaust administrative remedies ….").

Finally on this point, Plaintiffs' conclusory assertion that "exhaustion would be futile" (Compl. ¶ 164) does not excuse their failure to pursue administrative remedies. "The burden of demonstrating futility is on the party seeking exemption from the exhaustion requirement." *M.T.V.*, 446 F.3d at 1159. And Plaintiffs' "speculative allegations of futility … simply fail to sustain this burden." *Id.* "Parties cannot know if adequate relief is unavailable unless they ask for it and go through the process." *C.T. v. Necedah Area Sch. Dist.*, 39 Fed. App'x 420, 423 (7th Cir. 2002), *quoted with approval in J.S. ex rel. J.S. v. Houston Cty. Bd. of Educ.*, No. 1:12-CV-666-MEF, 2014 WL 3172035, at *6 (M.D. Ala. July 8, 2014); *cf. N.B. by D.G.*, 84 F.3d at 1379 ("A procedure that may result in *any* substantial relief is not futile." (emphasis added) (quoting *Waterman v. Marquette-Alger Intermediate Sch. Dist.*, 739 F. Supp. 361, 368 (W.D. Mich. 1990)). Even at the pleading stage, Plaintiffs' assertion that exhaustion would be futile is just an unsupported "conclusion"—not a well-pleaded factual allegation sufficient to avoid dismissal for failure to exhaust. *B.I. v. Montgomery Cty. Bd. of Educ.*, 750 F. Supp. 2d 1280, 1286 (M.D. Ala. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations.")) (dismissing IDEA claim against state department of education).

2.   **Plaintiffs lack Article III standing to pursue their claims for preliminary injunctive relief.**

Plaintiffs' claims also fail for lack of standing. Regardless of whether their children are "qualified individuals with disabilities" (Am. Mot. Prelim. Inj. 12), "[p]laintiffs cannot show a likelihood of success on the merits without showing they likely have standing" to pursue claims under Article III of the U.S. Constitution, *Yelapi*, 487 F. Supp. 3d at 1283.

> Under current doctrine, a plaintiff has to make three showings in order to demonstrate Article III standing. First, he must establish that he has suffered an "injury in fact"—an invasion of a legally protected interest that is both (1) "concrete and particularized" and (2) "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (quotation marks omitted). Second, he must demonstrate that there is a "causal connection" between this injury and the conduct of which he complains—*i.e.*, the injury must be "fairly traceable" to the defendant's challenged actions and not the result of "the independent action of some third party not before the court." *Id.*; *see Spokeo, Inc. v. Robins*, 578 U.S. 856, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016). Finally, he must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560 (quotation marks omitted).

*Support Working Animals, Inc. v. Governor of Fla.*, --- F.4th ---, No. 20-12665, 2021 WL 3556779, at *2 (11th Cir. Aug. 12, 2021); *see also Lujan*, 504 U.S. at 561 ("The party invoking federal jurisdiction bears the burden of establishing these elements [of standing].").

With respect to the claims for which they seek preliminary injunctive relief, Plaintiffs cannot make any of these three essential showings.

a.   *Plaintiffs' alleged injury—the loss of educational opportunities—is conjectural and hypothetical.*

The injury alleged in the complaint—and cited as the threatened "irreparable" injury in Plaintiffs' motion for a preliminary injunction—is *not* the risk of exposure to COVID-19.[5]

---

[5] Plaintiffs allege that they "will not go to public school because of the higher risk of severe illness or death" if all other students are not required to wear masks. (Compl. ¶ 47.)

13

Instead, Plaintiffs focus on the potential "loss of educational opportunities" (Am. Mot. Prelim. Inj. 18) if they decide to pursue "an alternative educational placement" on their own (Compl. ¶ 55). But any alleged loss of educational opportunities is entirely too speculative, particularly where Plaintiffs have not even attempted to determine what accommodations are available to them through the procedures to which they are entitled under the IDEA.

These potential injuries are too conjectural and hypothetical to confer Article III standing. As noted above, "[p]arties cannot know if adequate relief is unavailable [through the IDEA's administrative procedures] unless they ask for it and go through the process." *C.T.*, 39 F. App'x at 423. Plaintiffs concede that options for remote or virtual instruction are available statewide and in their respective school districts. And though they quibble with (most of) those options,[6] they have not shown that their purported concerns about virtual, in-home, or other alternatives to sharing a traditional classroom in districts that do not adopt and enforce universal mask mandates, or in schools where students are allowed to opt out of those mandates, could not be addressed through the more flexible IEP and 504 processes. Indeed, there are a myriad of ways school districts could (and have) accommodated such concerns, whether through specialized virtual instruction, homebound instruction with one-on-one instruction, or other in-school options formulated by the IEP team. (Ramsey Decl. ¶¶ 6–14.)

The Court should not adopt Plaintiffs' speculative assumption that *if* they are required to explore other accommodations or modifications to account for their disabilities, then they will *necessarily* have been denied a free appropriate public education. "A '*possible* future injury' does

---

[6] Even without having gone through the IDEA administrative process, Plaintiffs allege that the Palm Beach County School District encouraged families with safety concerns to consider enrolling in the "Hendry County Virtual School," which Plaintiffs agree "might arguably provide a free appropriate public education (FAPE) to students with disabilities." (Compl. ¶ 127; *id.* ¶ 77 n.1.)

not confer standing." *Wood v. Raffensperger*, No. 1:20-cv-5155-TCB, 2020 WL 7706833, at *2 (N.D. Ga. Dec. 28, 2020) (emphasis added) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)), *aff'd* No. 20-14813, 2021 WL 3440690 (11th Cir. Aug. 6, 2021) (unpublished); *see also id.* at *5 ("[A]llegations [that] show only the possibility of future injury based on a series of events … fall[] short of the requirement to establish a concrete injury." (internal quotation marks and citation omitted)).

<b>b.      <i>Plaintiffs' alleged injury is not fairly traceable to the Executive Order</i>.</b>

Nor are Plaintiffs' alleged lost educational opportunities fairly traceable to the Executive Order that they challenge. That Executive Order primarily directed the Florida Department of Education and non-party Florida Department of Health to consider rules and other steps to allow parents to participate in decisions about whether their individual children should be required to wear masks in school. But Plaintiffs have not challenged the resulting rules or shown that the Governor's Executive Order *itself* will cause the denial of FAPE. Florida's county school districts and the families with students attending public schools in those districts have responded to the challenges presented by COVID-19 in varying ways, and Plaintiffs cannot show that the Governor's Executive Order—which says nothing about remote learning options, in-school alternatives, or other potential accommodations or modifications for individual students with disabilities[7]—is preventing school districts and local school administrators from responding to FAPE concerns on the individualized, case-by-case basis required by federal law. And at any

---

[7] The Executive Order does direct the state departments of health and education to "ensure safety protocols for controlling the spread of COVID-19 in schools" that "[p]rotect children with disabilities or health conditions," including (but not limited) to the extent that those students might be "harmed by certain protocols such as face masking requirements." Exec. Order 21-175.

15

rate, the Executive Order cannot be blamed for Plaintiffs' *own* decision not to pursue administrative remedies under the IDEA.

### c.   *Plaintiffs' theory that enjoining implementation of the Executive Order would redress their alleged injury is merely speculative.*

For similar reasons, Plaintiffs' requested preliminary injunction is unlikely to redress their alleged injuries. *See Support Working Animals*, 2021 WL 3556779, at *2 (noting that "traceability and redressability—often travel together"). Article III's redressability requirement means that "it must be *the effect of the court's judgment on the defendant*—not an absent third party—that redresses the plaintiff's injury." *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (internal quotation marks and citation omitted). But enjoining further enforcement of the Executive Order itself will not set aside the rules since adopted by the state health and education departments; will not prevent school districts from making or reversing their own decisions about local mask policies; will not require school administrators and teachers to enforce those policies uniformly; and will not force students to comply with those policies (such as they are) with a perfect track record. With respect to the adoption and enforcement of local mask policies in particular, "a plaintiff's injury isn't redressable by prospective relief [e.g., against the Governor] where other state actors, who aren't parties to the litigation, would remain free and clear of any judgment and thus free to engage in the conduct that the plaintiffs say injures them." *Support Working Animals*, 2021 WL 355677, at *5.[8]

More importantly, the Executive Order has no bearing on the educational alternatives or accommodations that may be available to students whose disabilities may make them reluctant to

---

[8] Although Plaintiffs have joined their county school districts as "indispensable but not adverse" parties (Compl. ¶¶ 31–38; *see also id.* ¶ 39), Plaintiffs have not sought an injunction to prevent those school districts from implementing or amending mask policies that might permit other students to refrain from wearing masks, including exceptions for health or other reasons.

share a traditional classroom with other students who may not (or cannot) wear masks. Put another way, "it is not substantially likely, without making several unguaranteed assumptions regarding the manner in which the relief may impact Plaintiffs, that the requested relief will remedy the alleged injury in fact." *Samuels v. Fed. Hous. Fin. Agency*, 54 F. Supp. 3d 1328, 1333 (S.D. Fla. 2014); *see also id.* ("Plaintiffs' effective relief is contingent on the acts of numerous third parties not before the Court, and is therefore impermissibly speculative." (internal quotation marks omitted)). Plaintiffs have not pursued the administrative remedies that not only are required, but actually are best suited, to address their particular students' individual circumstances and needs—the very purpose of the IDEA exhaustion requirements.

**B.      There Is No Threat of Imminent, Irreparable Injury.**

The traceability and redressability analyses above similarly undermine Plaintiffs' contention that they face a threat of *irreparable* injury tied to the Executive Order's potential enforcement against the Departments to whom the Order was directed. Yet even without the Article III standing concerns, Plaintiffs have not shown that the alleged "loss of educational opportunities" that they describe (Am. Mot. Prelim. Inj. 18) qualifies as an irreparable injury sufficient to warrant a preliminary injunction.

First, the cases cited in Plaintiffs' motion on this issue (*see* Am. Mot. Prelim. Inj. 18–19) are easily distinguished. *Association for Disabled Americans, Inc. v. Florida International University*, 405 F.3d 954, 958 (11th Cir. 2005), was a decision about Eleventh Amendment immunity—not about irreparable injuries under the IDEA, ADA, or Section 504. Two of the other cases cited by Plaintiffs (*Sullivan* and *Alejandro*) concerned service dogs. And the third, *Borough of Palmyra, Board of Education v. F.C.*, 2 F. Supp. 2d 637 (D.N.J. 1998), involved an injunction to comply with an administrative law judge's order pending appeal—a far cry from this case, in which Plaintiffs have decided not to pursue their administrative remedies at all.

Plaintiffs have also overlooked cases acknowledging that rejecting, or delaying action on, a disabled student's request to be placed in a specific educational setting or otherwise accommodated in a particular fashion does not *ipso facto* constitute an irreparable injury—or even any injury at all. *See, e.g.*, *C.B. v. Bd. of Sch. Comm'rs*, 261 F. App'x 192, 194 (11th Cir. 2008) ("In this case, the district court did not abuse its discretion by denying C.B.'s motion for a preliminary injunction because he failed to establish that he would suffer immediate and irreparable harm if such relief were not granted.… [T]he School Board has not denied educational services to C.B. altogether, but has denied authorization for him to receive those services at the school of his choice."); *Marshall v. Georgetown Indep. Sch. Dist.*, No. A-06-CA-127-LY, 2007 WL 9701220, at *9 (W.D. Tex. Aug. 29, 2007) ("IDEA 'leaves the substance and details of [an] education [that is responsive to a child's needs] to state and local school officials.' *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1044 (5th Cir. 1989). Any argument that Marshall's IEP"—which was "based on the conclusion that there were no special-education or related services that would enable Marshall to receive his instruction on a regular campus" because of his immunodeficiency—"was not administered in the least restrictive environment 'to the maximum extent appropriate' is not supported by the record.").

Plaintiffs have thus failed to show that they are likely to suffer an irreparable injury if they are required to pursue administrative remedies or temporary alternatives to traditional classroom instruction. Even if Plaintiffs were likely to prevail on the merits (they are not) their motion for a preliminary injunction still must be denied.

## C.    The Balance of Potential Harms and Public Interest Do Not Warrant a Preliminary Injunction.

Given Plaintiffs' inability to demonstrate a likelihood of success on the merits or an imminent threat of irreparable injury, analyzing the balance of potential harms to the parties and

the public interest in an injunction is unnecessary. Suffice it to say, however, that Plaintiffs have

not cited *any* authority for the remarkable proposition that requiring *all other* students in a school

district to wear masks could qualify as a reasonable accommodation for an individual student

with a disability. Plaintiffs' suggestion that federal disability laws require public schools to

accommodate their respective disabilities by imposing school- or district-wide behavioral

requirements on *all other students*—and even students who may attend class with a disabled

student's siblings (*cf.* Compl. ¶ 136)—is inconsistent with the concept of an *individualized* plan

to accommodate the needs of disabled students on a case-by-case-basis. *Cf.* 28 C.F.R.

§ 35.130(b)(7) ("A public entity shall make reasonable modifications in policies, practices, or

procedures when the modifications are necessary to avoid discrimination on the basis of

disability, *unless the public entity can demonstrate that making the modifications would*

*fundamentally alter the nature of the service, program, or activity*." (emphasis added)).

The sweeping breadth of Plaintiffs' proposed injunction—preventing enforcement of a

statewide Executive Order to address Plaintiffs' localized concerns about individual students

attending specific schools in some but not all of Florida's county school districts—also raises

significant federalism concerns. "Principles of federalism and separation of powers impose

stringent limitations on the equitable power of federal courts." *Lewis v. Casey*, 518 U.S. 343, 385

(1996). Under these principles, "Article III cannot be understood to authorize the federal

judiciary to take control of core state institutions like prisons, schools, and hospitals, and assume

responsibility for making the difficult policy judgments that state officials are both

constitutionally entitled and uniquely qualified to make." *Id.*

Even if one were to accept for the sake of argument that Plaintiffs' alleged FAPE injuries

were non-speculative and tied to the Governor's Executive Order (they are not), "[t]he remedy

must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Id.* at 357. Especially in the context of challenging and ongoing policy debates (and state-court litigation) about competing priorities and sources of authority under Florida law, "granting a remedy beyond what [would be] necessary to provide relief to [these *individual* Plaintiffs] [i]s therefore improper." *Id.* at 360; *cf. Dayton Bd. of Educ. v. Brinkman*, 433 U.S. 406, 420 (1977) ("The remedy must be designed to redress [the specific harm], and only if there has been a systemwide impact may there be a systemwide remedy.").

Again, this case is ultimately about Plaintiffs' *individualized* remedies under federal disability law—not about the State's and school districts' authority and responsibility for mask policies during the pandemic. Nor does this case require the Court to decide the wisdom of the competing views on those policy issues at the State, local, and household levels. Plaintiffs have failed to show a likelihood of success on the merits or a threat of irreparable injury, and their motion for preliminary injunction should be denied on either (or both) of those grounds.

## IV.    CONCLUSION

The proper resolution of this matter—in accordance with federal law and long-standing precedent—is for Plaintiffs to work with their schools to design an individualized solution to accommodate their particular student's educational and health needs. There are many ways that solutions can be accomplished, but the injunction sought here is not one of them. Plaintiffs' motion for a preliminary injunction therefore must be denied.

Respectfully submitted this 24th day of August 2021.

*/s/ Raymond Treadwell*

Raymond Treadwell (FBN 93834)
Chief Deputy General Counsel
Executive Office of the Governor
The Capitol, PL-5
400 S. Monroe Street
Tallahassee, Florida 32399-6536
Ray.Treadwell@eog.myflorida.com
Gov.legal@eog.myfloirda.com
(850) 717-9310

*Counsel for Governor Ronald Dion DeSantis*

*/s/ Anastasios Kamoutsas*

Anastasios Kamoutsas (FNB 109498)
General Counsel
Florida Department of Education
Turlington Building, Suite 1244
325 West Gaines Street
Tallahassee, Florida 32399-0400
Anastasios.Kamoutsas@fldoe.org
(850) 245-0442

*Counsel for Commissioner Richard Corcoran
and Florida Department of Education*

Rocco E. Testani (*pro hac* pending)
Stacey McGavin Mohr (*pro hac* pending)
Lee A. Peifer (*pro hac* pending)
Eversheds Sutherland (US) LLP
999 Peachtree Street, N.E., Suite 2300
Atlanta, Georgia 30309
roccotestani@eversheds-sutherland.com
staceymohr@eversheds-sutherland.com
leepeifer@eversheds-sutherland.com
(404) 853-8000

*Of counsel for State Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 24, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  I also further certify that the foregoing document is being served this day on all counsel of record or all parties identified on the attached Service List in the manner specified, either via electronic transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

*/s/ Raymond Treadwell*
Raymond Treadwell

<u>**SERVICE LIST**</u>

Matthew W. Dietz
Stephanie Langer
Disability Independence Group, Inc.
2990 Southwest 35th Avenue
Miami, Florida 33133
mdietz@justdigit.org
slanger@justDIGit.org
aa@justdigit.org
*Attorneys for Plaintiffs*

Michael T. Burke
Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A.
2455 East Sunrise Boulevard, Suite 1000
Fort Lauderdale, Florida 33304
Burke@jambg.com
Cardona@jambg.com
*Attorneys for Defendant, Broward County School Board*

Jason L. Margolin
Zarra R. Elias
Melissa Torres
Akerman LLP
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
jason.margolin@akerman.com
zarra.elias@akerman.com
melissa.torres@akerman.com
*Attorneys for Defendant, Hillsborough County School Board*

Sara M. Marken
Luis M. Garcia
The School Board of Miami-Dade County, Florida
1450 NE 2nd Avenue, Suite 430
Miami, Florida 33132
smarken@dadeschools.net
lmgarcia2@dadeschools.net
*Attorney for Defendant, Miami-Dade County School Board*

Amy Pitsch
Susana Cristina Garcia
Greenspoon Marder LLP
201 E. Pine Street, Suite 500
Orlando, Florida 32801
amy.pitsch@gmlaw.com
tina.garcia@gmlaw.com
Melissa.spinner@gmlaw.com
*Attorneys for Defendant, Orange County School Board*

J. Erik Bell
Sean Fahey
Anna Patricia Morales Christensen
Laura Esterman Pincus
Lisa A. Carmona
Office of General Counsel
3318 Forest Hill Boulevard, Suite C-331
West Palm Beach, Florida 33406
jon.bell@palmbeachschools.org
sean.fahey@palmbeachschools.org
anna.morales@palmbeachschools.org
laura.pincus@palmbeachschools.org
lisacarmona@palmbeachschools.org
merrie.mckenziesewell@palmbeachschools.org
*Attorneys for Defendant, Palm Beach County School Board*

Dennis J. Alfonso
McClain Alfonzo, P.A.
Post Office Box 4
37908 Church Avenue
Dade City, Florida 33526-0004
DAlfonso@mcclainalfonso.com
Eserve@mcclainalfonso.com
*Attorney for Defendant, Pasco County School Board*

Leanetta McNealy
Chair of the Alachua County School Board
620 East University Avenue
Gainesville, Florida 32601

Jordan Madrigal
Attorney for Miami Dade County School Board
1450 NE 2nd Avenue, Suite 700
Miami, Florida 33132

24

Linda Cuthbert
Chair of the Volusia County School Board
200 North Clara Avenue
DeLand, Florida 32720