IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:21-cv-22863-KMM

JUDITH ANNE HAYES, individually and on behalf of
W.H., a minor, et al.,

    Plaintiffs,

v.

GOVERNOR RONALD DION DESANTIS, in his official
Capacity as Governor of the State of Florida; et al,

    Defendants.
_____/

## OMNIBUS REPLY TO RESPONSES TO PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY INJUNCTION

**COMES NOW**, Plaintiffs, JUDITH ANNE HAYES, individually and on behalf of W.H., a minor., et al., by and through the undersigned counsel, and hereby files this omnibus reply to Defendants' responses to their amended motion for preliminary injunction, and in support of their motion, states as follows:

    I.    **Summary and Introduction**

It is uncontroverted and a matter of common sense that vulnerable children with disabilities (especially when unvaccinated) have a much higher probability of getting sicker and potentially dying if they get infected with COVID-19. In refusing to allow school districts to implement commonly accepted protections for these children, such as a mask requirement, the Florida Governor and his executive departments, have essentially excluded them from the public schools, and made parents of children with disabilities have to choose between their child's life and health, and the rights of other parents who do not want their children to be told they must wear a piece of cloth on their face. By the lack of any substantive response, it is clear that the well-being of our

state's most vulnerable students was omitted from the political calculus of the governor's ban on mask mandates and other viable options for school districts to ensure that these children with disabilities can attend school safely and in the least restrictive environments.

However, the procedural objections are just as misguided. As the Supreme Court was clear in Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743, 197 L. Ed. 2d 46 (2017), students can bring Americans with Disabilities Act cases and Section 504 of the Rehabilitation Act cases where the issue involves more than the educational modalities of the discrimination claims, and the same claims can be brought by a non-student, or in other governmental facilities or public accommodations. Safe access for a person with a disability during COVID-19, including mask-wearing, has been a commonplace issue throughout society as a whole. Furthermore, the exigent circumstances as demonstrated by the tens of thousands of children who are currently sick and quarantined in Florida demonstrates the imminency of the risk and the need for an immediate injunction to allow school districts to implement all reasonable accommodations that would protect these children with disabilities, and which would not be a fundamental alteration or undue burden to the school district.

**II.    Traceability, Redressability, and the Defendants' Actions Since the Filing of the Complaint and Preliminary Injunction.**

On one hand, the State Defendant's argument limits the Plaintiff's relief to the Executive Order of the Governor and not the effects of the order and implies that there are no further actions that these defendants can be responsible for. On the other hand, one of the school districts (Miami-Dade [DE 50])[1] claims that the motion is moot, as they have defied the governor, and there will

---

[1] The Miami-Dade issue cannot be moot, as of 8/27, and after Judge Cooper issued his ruling from the bench, Defendant Corcoran issued the same violation letter to the superintendent and school board chair of Miami-Dade County

be no further repercussions. These arguments ignore the realities of the situation where the State is demanding that protections for children with disabilities be removed and threatens the districts who break their law.

Prospective relief must fit the remedy to the wrong or injury that has been established. Salazar v. Buono, 559 U.S. 700, 718, 130 S. Ct. 1803, 1818, 176 L. Ed. 2d 634 (2010). "A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need" United States v. Swift & Co., 286 U.S. 106, 114, 52 S. Ct. 460, 462, 76 L. Ed. 999 (1932). In 1917, Justice Oliver Wendell Holmes addressed the need for a court to act in equity to stop and contain the threatening effects of a continuing violation: "To speak accurately, it is not the statute that gives a right to relief in equity, but the fact that in the particular case the threatening effects of a continuing violation of the statute are such as only equitable process can prevent. The right to equitable relief does not depend upon the nature or source of the substantive right whose violation is threatened, but upon the consequences that will flow from its violation." Paine Lumber Co. v. Neal, 244 U.S. 459, 476, 37 S. Ct. 718, 722, 61 L. Ed. 1256 (1917)

The Governor issued his executive order, E.O. 21-175, on July 30, 2021.[2] In response to the Executive Order, on August 6, the Plaintiffs filed the Complaint [DE 1] and Preliminary Injunction [DE 3]. Later that same day, the Florida Department of Health and Florida Department of Education promulgated rules, including Rule No. 64DER21 -12,[3] which "conforms to Executive order Number 21-175" and directed that "Students may wear masks or facial coverings as a mitigation measure; however, the school must allow for a parent or legal guardian of the student

---

[2] https://www.flgov.com/2021/07/30/governor-desantis-issues-an-executive-order-ensuring-parents-freedom-to-choose/
[3] https://www.flgov.com/wp-content/uploads/2021/08/8.6.21-DOH-Rule.pdf

to opt-out the student from wearing a face covering or mask."[4] The regulation specifically prohibits discrimination against mask "objectors" that they are suggesting should be done to students with disabilities:

> (6) NON-DISCRIMINATION. Students whose parents or legal guardian have opted them out of a mask or face covering requirement shall not be subject to any harassment or discriminatory treatment, including but not limited to:
> (a) Relegation to certain physical locations;
> (b) Isolation during school activities; or
> (c) Exclusion from any school-sponsored events or activities.

64DER21 -12(6). Governor DeSantis wasted no time to enforce this emergency regulation and by August 9, issued statements that the Department of Education would withhold the salaries of superintendents and school board members who implemented mask mandates.[5]  That same day, Department of Education Commissioner Richard Corcoran sent letters to the Superintendents and Chairs of the School Board of both Alachua[6] and Broward[7] Counties informing them about their violation of the mask regulation. The letter did not mince words when it came to the authority to enforce:

> Section 1008.32, Florida Statutes, states, "The State Board of Education shall oversee the performance of district school boards and the Florida College System institution board of trustees in enforcement of all laws and rules." Further, section 1008.32(2)(a), Florida Statutes, states that the "Commissioner of Education may investigate allegations of noncompliance with law or state board rule and determine probable cause."
>
> Based on this authority established in law, I am immediately initiating an investigation of noncompliance with rules adopted by the Florida Department of Health and the Florida State Board of Education on August 6, 2021.
> …

---

[4] https://www.flgov.com/wp-content/uploads/2021/08/8.6.21-DOH-Rule.pdf
[5] https://miami.cbslocal.com/2021/08/11/ron-desantis-state-education-board-withhold-salaries-superintendents-school-board-members-mask-mandates/
[6] https://www.fldoe.org/core/fileparse.php/20001/urlt/Alachua3.pdf
[7] https://www.fldoe.org/core/fileparse.php/20001/urlt/Broward2.pdf

> **There is no room for error or leniency when it comes to ensuring compliance with policies that allow parents and guardians to make health and educational choices for their children.**[8]

Notwithstanding the threat, Defendant Broward County voted 8-1 to keep the mask mandate.[9] This was soon followed by Defendant Alachua County.[10] Governor DeSantis continued to make statements indicating his intent to pursue his directive,[11] and the Florida Department of Education send notices of probable cause and met to decide appropriate penalties for the school districts that made the decision not to comply with the mask-optional requirement.[12] At open hearing, the members of the Department of Education lambasted the Superintendents of Alachua and Broward Counties, voted on monetary sanctions and requested to know what further sanctions there could be for these board members and superintendents. Thereafter, on August 20, 2021, the Defendant Board of Education issued an order to withhold funds equal to a portion of the compensation of the school board members and monitor the school board's activities.[13] The Department of Education issued a press release to announce the decision and threatened further action if the violation of law is not remedied within 48 hours. These additional penalties included detailed monitoring requirements for those instances where a student was penalized for not wearing a mask (¶ 9) and recommend further penalties and impose further sanctions and additional enforcement action to bring the violating school boards into compliance.[14] According to the emergency meeting, this included even removing duly elected members of school boards.

---

[8] Id. (emphasis ours)
[9] https://browardschools.granicus.com/player/clip/107?view_id=1&redirect=true
[10] https://www.youtube.com/watch?v=z3eZAYr9Sds
[11] https://www.rev.com/blog/transcripts/florida-gov-ron-desantis-surfside-press-conference-transcript-august-10
[12] https://thefloridachannel.org/videos/8-17-21-state-board-of-education-emergency-conference-call/
[13] https://www.fldoe.org/newsroom/latest-news/state-board-of-education-orders-school-boards-of-alachua-and-broward-counties-to-follow-the-law.stml
[14] https://www.fldoe.org/core/fileparse.php/20001/urlt/Broward4.pdf

In upholding the decision to impose the sanctions on these rogue school districts, Commissioner Corcoran did not focus on the legitimacy or rational of the rule, but the fact that the rule is law, and the school districts must follow the law:

> "It is important to remember that this issue is about ensuring local school board members, elected politicians, follow the law. These public officials have sworn an oath to uphold the Constitution of the United States and the Constitution of the State of Florida. We cannot have government officials pick and choose what laws they want to follow," **said Commissioner of Education Corcoran**. "These are the initial consequences to their intentional refusal to follow state law and state rule to purposefully and willingly violate the rights of parents. This is simply unacceptable behavior."[15]

Furthermore, the press release also focused on the open-ended nature of future sanctions against school districts that refuse to follow the law:

> **As an initial step**, the Florida Department of Education will then begin to withhold from state funds, on a monthly basis, an amount equal to 1/12 of the total annual compensation of the school board members who voted to impose the unlawful mask mandates until each district demonstrates compliance. The Commissioner of Education and State Board of Education retain the right and duty to impose additional sanctions and take additional enforcement action to bring each school district into compliance with state law and rule.[16]

Notwithstanding further threats by Commissioner Corcoran and Governor DeSantis,[17] other school districts decided to follow Alachua and Broward – Miami Dade County (August 18),[18] Hillsborough County (August 18),[19] Sarasota County (August 20),[20] Leon County (August 22),[21]

---

[15] https://www.fldoe.org/newsroom/latest-news/state-board-of-education-orders-school-boards-of-alachua-and-broward-counties-to-follow-the-law.stml (emphasis in original)
[16] Id. (emphasis ours)
[17] August 19, 2021 - Ron DeSantis Criticizes Biden Over Kids Wearing Masks in School Transcript https://www.rev.com/blog/transcripts/ron-desantis-criticizes-biden-over-kids-wearing-masks-in-school-transcript ; https://www.youtube.com/watch?v=XBU4aTDqd_s
[18] https://mcps.eduvision.tv/Default.aspx?q=3SfVi13wT7QmSXqk22lNuHfJBhsJkHGrh7orwU%252f0YSe5KH%252bzxzuOxw%253d%253d
[19] https://schoolboard.hcpswebcasts.com/text/hcsb2021-08-18.html
[20] https://www.youtube.com/watch?v=LsVwHq5qrQo
[21] https://www.tallahassee.com/story/news/local/2021/08/22/lcs-masks-mandatory-florida-gov-ron-desantis-leon-county-schools-superintendent-rocky-hanna/8234373002/

Duval County (August 23),[22] Orange County (August 24th),[23] Palm Beach County (August 20),[24] and Indian River County (August 24).[25] Most of these requirements from these counties are valid for a set number of days, whether 30, 60 or 90 days. As recently as August 26th, Governor DeSantis endorsed a private cause of action for parents to sue schools when their children are required to wear a mask. ("When you have a bill of rights, if your individual right as a parent is violated, you have the ability to go in and seek individual vindication, they're obviously doing the opposite there in Tallahassee, they're trying to basically nullify the parents bill of rights, but you can also do it from the other [side].)[26] Further, in this conference, he misrepresents that children with disabilities who cannot wear a mask for disability-related reasons will not be given a medical exemption to such mask mandates. (See infra, footnote 24).

In a case that was filed contemporarily with this case in a Florida state Court, McCarthy v. DeSantis, Case No. 2021-CA-1382, Circuit Court Judge John Cooper made findings of fact in accord with the above but found that the Governor and the Department of Education did not have the emergency authority to issue the executive order and all issues springing for, and the political question issue does not arise.[27] Following the issuance of the findings from the bench, a spokesperson for the governor stated, "It's not surprising that Judge Cooper would rule against parent's rights and their ability to make the best educational and medical decisions for their family, but instead rule in favor of elected politicians. This ruling was made with incoherent justifications,

---

[22] https://duvalschools.viebit.com/player.php?hash=5w60dQfP05ka
[23] https://www.youtube.com/watch?v=JaParksQKhQ
[24] https://p14cdn4static.sharpschool.com/UserFiles/Servers/Server_270532/File/News/FINAL_ENGLISH_08202021LetterRegardingReturnTo%20School_Facial%20CoveringRequirement.pdf
[25] https://www.sebastiandaily.com/health/school-district-of-indian-river-county-mandates-masks-for-grades-k-8-30271/
[26] https://www.wptv.com/rebound/state-of-education/politicians-who-violated-the-law-regarding-mask-mandates-will-be-penalized-gov-ron-desantis-says (25 seconds to 42 seconds in the news conference)
[27] The order will be submitted in a notice of additional authority.

not based in science and facts -- frankly not even remotely focused on the merits of the case presented."[28]

In Plaintiffs' complaint and preliminary injunction motion, the Plaintiffs have included the Governor and the Department of Education and its Commissioner. The Complaint and Preliminary Injunction were filed on August 6th, and the Court denied the motion without prejudice as the record did not show that service was completed. [DE 7]. Plaintiffs Amended Motion for Preliminary Injunction was filed on August 10th [DE 17] after demonstrating that the prior motion was served with the complaint. The Plaintiffs did not substantively amend the Amended Motion, as to not prejudice any defendant who were served with the original motion [DE 3]. The Emergency Rule (64 DER 21-12) which directs the school districts was derived directly from the Governor's executive order, and contains the following:

> This emergency rule conforms to Executive Order Number 21-175, which ordered the Florida Department of Health and the Florida Department of Education to ensure safety protocols for controlling the spread of COVID-19 in schools that (1) do not violate Floridians' constitutional freedoms; (2) do not violate parents' rights under Florida law to make health care decisions for their minor children; and (3) protect children with disabilities or health conditions who would be harmed by certain protocols, such as face masking requirements. The order, which is incorporated by reference, directs that any COVID- 19 mitigation actions taken by school districts comply with the Parents' Bill of Rights, and "protect parents' right to make decisions regarding masking of their children in relation to COVID-19."

To satisfy the causation requirement of standing, plaintiffs' injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Lujan v. Defs. of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). The order and rules therefrom are fairly traceable to the Governor, and the entity that enforces the rules on the school districts is the Florida Department of Education, under

---

[28] https://www.cnn.com/2021/08/27/us/florida-school-mask-ban-governor-desantis/index.html

the specific direction though press releases and public statement of Governor DeSantis. These are the entities and people that enforce penalties and have threatened penalties against the various school boards, and the defendants in this action. This is completely distinguishable from <u>Support Working Animals, Inc. v. Governor of Fla</u>., No. 20-12665, 2021 WL 3556779, at *1 (11th Cir. Aug. 12, 2021). In <u>Working Animals</u>, the plaintiffs sued the attorney general to get a determination that the ban on greyhound racing was unconstitutional and prohibit the attorney general from enforcing the law. <u>Id</u> at 1. The Court found that the plaintiffs lacked standing because the Attorney general had no authority to enforce the law which they deemed to be unconstitutional or had done "anything else to cause the plaintiffs' harm" <u>Id</u> at *3-*4. Because the Governor, Commissioner, and Department of Education both promulgated and enforced orders and regulations discriminating against them, these entities contributed to their harm and therefore meets Article III's traceability requirement. <u>Lewis v. Governor of Ala</u>., 944 F.3d 1287, 1301 (11th Cir. 2019) (en banc).

The issue of standing, traceability and redressability is also intertwined with the issue of mootness. The issue of mootness was the subject of the response by the Miami-Dade School Board as it has asserted that it had already established a mask mandate which would protect children with disabilities. However, because the offending behavior continues, and the orders for each of the districts that have imposed mask mandates are time limited, there is no doubt that this case cannot be moot. <u>Troiano v. Supervisor of Elections in Palm Beach Cty., Fla</u>., 382 F.3d 1276, 1283 (11th Cir. 2004).

The continuing pressure on the School Districts to violate the rights of children with disabilities is an injury to these parents and children, and not only continually violates their rights under the ADA and Section 504 but penalizing the school districts and threatening them with a

barrage of civil litigation under the parent's bill of rights is an active violation of the retaliation provisions of both the ADA and Section 504. See 42 U.S.C. § 12203 (prohibiting retaliation, interference and coercion under the ADA); 34 C.F.R. §104.61 and 34 C.F.R. §100.7(e)(Same under Section 504).

### III.     Imminence

There was no rebuttal of the fact that as unvaccinated persons with co-morbidities, children with disabilities are more susceptible to getting sicker and dying of COVID, especially the new Delta strain. Pursuant to the Declaration of Dr. Jeffrey Goldhagen attached hereto as Exhibit "A", as of August 19th, the number of child cases have increased exponentially, and now are 22.4% of reported weekly COVID cases. Florida led the nation in kids hospitalized for COVID-19, with 32 pediatric hospitalizations per day. At Joe DiMaggio Children's Hospital in Broward County, pediatricians treated just over 20 children with COVID in June and more than 240 children with COVID in July. In just the first 10 days of August, they have treated 160 children with COVID. An infected child in a confined indoor space would infect approximately nine other children and adults if all were unmasked. Based on a number of studies, mask wearing will prevent between 70% and 100% of infection transmission. Due to the spike in cases and imminence and severity of the harm, this is a public health emergency.

Furthermore, the Federal Department of Education released a letter to its Special Education partners on August 24, 2021,[29] again recommending putting in place "layered preventions strategies including promoting vaccination and universal and correct mask-wearing in schools."

Even with the Order from Judge Cooper, and the upcoming appeal of that order, it is necessary for this Court to issue an injunction to ensure that this Department of Education and the

---

[29] https://sites.ed.gov/idea/files/rts-idea-08-24-2021.pdf

Governor cease enforcement of these discriminatory acts. Even though Judge Cooper struck down this law, it was done so based upon state law issues regarding the governor's authority to enact the law. He found that, based upon the facts, that the safety reasons for enacting the law was without basis and without an emergency. The merits of the litigation in this case rests with whether the Florida law interferes and discriminates against persons with disabilities, and the standard in this case is slight - whether a disabled child's access to the schoolhouse should be blocked for the failure of another child to wear a piece of cloth over his mouth and nose.

### IV. There is no requirement to exhaust administrative conditions for an access issue

The arguments of the State Defendants [DE 51] and Palm Beach County [DE 48] assert that the exhaustion requirements of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415(i), applies to all claims in this case and the plaintiffs are required to exhaust administrative remedies prior to seeking relief under the IDEA. Whether or not a claim is subject to the exhaustion requirement includes an examination of the gravamen or essence of the claims to determine whether the complaint seeks to determine if a "complaint against a school concerns the denial of a FAPE [Free and Appropriate Public Education], or instead addresses disability-based discrimination." Fry, 137 S.Ct. at 756. Furthermore, even if educational issues involved that would otherwise require exhaustion, exhaustion is not required because "resort to administrative remedies would be 1) futile or 2) inadequate."

### A. The gravamen of these claims is disability discrimination not exclusive to the provision of special education

In Fry and the very similar decision in Alboniga v. Sch. Bd. of Broward County Fla., 87 F. Supp. 3d 1319 (S.D. Fla. 2015), the school districts refused to permit service animals for a child with a disability as the districts claimed that the school could provide the same services as the

animal. Both courts held that exhaustion was not required as the disability issue was not related to the ways in which the districts provided an education. Alboniga, 87 F. Supp at 1329. To determine whether a complaint seeks relief under the specific provisions of FAPE and the IDEA and when it seeks general discrimination claims, the Supreme Court offered a test of two hypothetical questions:

> One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

Fry, 137 S. Ct. at 756. For the first question – "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school—say, a public theater or library?" – the answer is yes, as there is a plethora cases across the country related to the legitimacy of mask limitations for both public and private entities under the Americans with Disabilities Act and other laws. See e.g. Pletcher v. Giant Eagle Inc., 2020 WL 6263916, at *1 (W.D. Pa. Oct. 23, 2020)(ADA claim that no exception to face mask requirement in grocery store violated rights of person with multiple disabilities); Giles v. Sprouts Farmers Mkt., Inc., 2021 WL 2072379, at *1 (S.D. Cal. May 24, 2021)(Plaintiff filed claim that she was denied entry into a market when she refused to wear either a face covering or a face shield); Emanuel v. The Walt Disney Co., 2021 WL 2454462, at *2 (E.D. Pa. June 16, 2021)(Person who lives with Autism that prevented him from wearing a mask denied entry into a Disney Store); Blandino v. Eighth Judicial

Dist. Court in & for County of Clark, 478 P.3d 936 (Nev. App. 2021)(petitioner filed mandamus action to challenge COVID-19 administrative orders wearing masks); Chew v. Legislature of Idaho, 512 F. Supp. 3d 1124, 1126 (D. Idaho 2021)(Ohio legislature mask wearing). Also, claims have been made for safety protections from COVID in prisons, Ahlman v. Barnes, 445 F. Supp. 3d 671, 688 (C.D. Cal. 2020) (Granting preliminary injunctions requiring protections to incarcerated people to prevent infection under the ADA), and psychiatric facilities, Costa v. Bazron, 464 F. Supp. 3d 132 (D.D.C. 2020) Legal authorities have published over one thousand articles and commentaries regarding the implementation of protections for customers and employees for all types of premises. See, e.g Nikki C. Day, Jennifer R. Cowan, Noah M. Daiker, Governing Through the "New Normal": Covid-19 Lessons Learned on Local Government Law, the Constitution, and Balancing Rights in Times of Crises, 50 Stetson L. Rev. 547, 563 (2021); Gary J. Simsona, et al., Its Alright, Ma, Its Life and Life Only: Have Universities Been Meeting Their Legal Obligations to High-Risk Faculty During the Pandemic? 48 Pepp. L. Rev. 649 (2021). Lastly, this Court has its own requirements for all employees and members of the public, which includes required face masks and social distancing.[30]

For the second question – "could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?" – Again, of course. As shown above, any member of the public who has standing can challenge a policy that prohibits (or requires) masks. School districts in Florida, and across the country, have implemented requirements for employees and members of the public relating to wearing masks and other protections in schools.[31] In addition,

---

[30] See https://www.flsd.uscourts.gov/sites/flsd/files/NoticeRegardingPublicAccess.pdf.
[31] - **Miami-Dade** - Facial coverings are mandatory for all students, employees, volunteers, and visitors while in M-DCPS facilities and on school buses. https://www3.dadeschools.net/news/32086/details

the EEOC has established detailed guidance on reasonable accommodations for employees during the COVID-19 Pandemic. See Coronavirus and COVID-19, found at https://www.eeoc.gov/coronavirus. The issue of masking or other personal protective gear is discussed as a reasonable accommodation, along with other ideas for the flexible requirement for reasonable accommodations, as follows:

> G.5. What are examples of accommodation that, absent undue hardship, may eliminate (or reduce to an acceptable level) a direct threat to self? (5/5/20)
>
> Accommodations may include additional or enhanced protective gowns, masks, gloves, or other gear beyond what the employer may generally provide to employees returning to its workplace. Accommodations also may include additional or enhanced protective measures, for example, erecting a barrier that provides separation between an employee with a disability and coworkers/the public or increasing the space between an employee with a disability and others. Another possible reasonable accommodation may be elimination or substitution of particular "marginal" functions (less critical or incidental job duties as distinguished from the "essential" functions of a particular position). In addition, accommodations may include temporary modification of work schedules (if that decreases contact with coworkers and/or the public when on duty or commuting)

---

- **Leon County**- Temporary use of masks is required for Pre-K - 12th grade students while indoors throughout the Leon County School District. Ex: In Class, transportation (buses), after school programs, etc. Masks are not required outside. Parents can opt out;           Temporary use of masks is required for district employees when six feet of distancing cannot be maintained; Temporary use of masks is required for visitors, volunteers, mentors and outside vendors at all schools and district sites during the school day. https://www.leonschools.net/MaskOptOut
- **Sarasota** - School Board voted to implement a temporary emergency policy making face masks mandatory for all students, employees, visitors, and vendors for the next 90 days (November 23rd), unless they have a medical exception or if wearing a face mask would not be consistent with a student's Individualized Education Plan (IEP). https://www.sarasotacountyschools.net/Page/4667
- **Broward County** - Subject to the exceptions set forth below, each student, employee, visitor, vendor or other person are always required to properly wear a face covering while at or inside a school/facility, or other vehicle owned, leased or operated by The School Board.
https://www.browardschools.com/cms/lib/FL01803656/Centricity/ModuleInstance/19887/face%20mask%20covering.pdf
- **Alachua County** - requiring all school staff, volunteers and visitors (including vendors) to wear appropriate face masks/coverings on school grounds
https://go.boarddocs.com/fl/alaco/Board.nsf/goto?open&id=BURM3K589D30
- **Hillsborough** - Hillsborough County School Board voted to make face coverings mandatory for all students and staff with a medical exemption opt-out, effective for 30 days
https://www.hillsboroughschools.org/site/default.aspx?PageType=3&DomainID=4&ModuleInstanceID=278&ViewID=6446EE88-D30C-497E-9316-3F8874B3E108&RenderLoc=0&FlexDataID=47757&PageID=1
- **Duval** - All Duval County Public Schools employees, district vendors and visitors will be required to wear masks or face coverings in the district's schools and facilities for a period of 30 days
https://www.news4jax.com/news/local/2021/07/30/duval-county-school-staff-not-students-must-wear-masks-for-30-days/

or moving the location of where one performs work (for example, moving a person to the end of a production line rather than in the middle of it if that provides more social distancing).[32]

As such, there should be no question that the use of a mask or other prophylactic device to prevent the transmission of COVID-19 is not an educational issue, but a disability discrimination issue that is mainly covered by the discrimination provisions of ADA and 504.

Examples of items that would be required under to exhaust administrative preconditions include denial of a paraprofessional (Moragas v. Sch. Bd. of Miami-Dade County, 2019 WL 3252229, at *4 (S.D. Fla. 2019)), failure to allow a parent to attend an IEP meeting (Prunty v. Desoto County Sch. Bd. & Dist., 738 Fed. Appx. 648, 651 (11th Cir. 2018)), failure of the adequacy of the educational program for a student with ADHD (Durbrow v. Cobb Cty. Sch. Dist., 887 F.3d 1182, 1190 (11th Cir. 2018)). On the other hand, issues that are discriminatory at any place of public accommodation or governmental entity would be actionable, such as bullying, singling out, or targeting a student with a disability (S.V.S by & through Varner v. Broward County Pub. Sch., 2019 WL 10092978, at *5 (S.D. Fla. 2019)), segregation of students into different classrooms (Georgia Advoc. Off. v. Georgia, 447 F. Supp. 3d 1311, 1315 (N.D. Ga. 2020); physical abuse or isolation of a disabled student (N.R. by Ragan v. Sch. Bd. of Okaloosa County, Florida, 418 F. Supp. 3d 957, 993–94 (N.D. Fla. 2019), J.S., III by & through J.S. Jr. v. Houston County Bd. of Educ., 877 F.3d 979, 986 (11th Cir. 2017)) Another example of the exemption is when care is needed for a medical condition:

> Significantly, AP has not brought any claims under the IDEA. ... AP's parents asked District 11 to accommodate AP's diabetes so that he would be safe and healthy at

---

[32] See What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws found at https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-lawsA policy statement is not entitled to Cheveron-style deference but is entitled to respect and does have the power to persuade. Bhogaita v. Altamonte Heights Condo. Ass'n, Inc., 765 F.3d 1277, 1286 (11th Cir. 2014) (*quoting* Christensen v. Harris Cnty.*, 529 U.S. 576, 587, 120 S.Ct. 1655, 1662–63, 146 L.Ed.2d 621 (2000))

> Adventures Plus; this is more like asking District 11 to accommodate a wheelchair-bound student by installing a ramp or widening doors than it is like asking for specific educational services.

AP ex rel. Peterson v. Anoka-Hennepin Indep. Sch. Dist. No. 11, 538 F. Supp. 2d 1125, 1146–47 (D. Minn. 2008). See also B.M. v. Bd. of Educ. of Scott Cnty., Ky., 2008 WL 4073855, at *6 (E.D.Ky. Aug. 29, 2008) (exhaustion not required where allegations arising from "concerns about how blood sugar monitoring would be conducted and insulin administered" at school, were "not related to the way that Defendants provided an education" and were "independent" of the IDEA); Sullivan by & through Sullivan v. Vallejo City Unified Sch. Dist., 731 F.Supp. 947, 951 (E.D.Cal.1990) (no exhaustion for relief under Rehabilitation Act where disabled student sought to be accompanied by service dog at school but did not dispute the adequacy of educational program or aver that service dog was educationally necessary).

### B. In any event, any exhaustion would be futile and/or inadequate under the IDEA.

Even assuming that this is not clearly disability discrimination excluded from the exhaustion requirement, the exhaustion of the administrative remedies is not required where resort to administrative remedies would be 1) futile or 2) inadequate. .N.B. by D.G. v. Alachua Cty. Sch. Bd., 84 F.3d 1376, 1379 (11th Cir. 1996); M.T.V. v. DeKalb County School District, 446 F.3d 1153, 1159 (11th Cir 2006). Exhaustion is not required in very limited circumstances, such as where exhaustion is futile or inadequate, where the question presented is purely legal, where the administrative process cannot grant relief, or where exhaustion would work a severe or irreparable harm upon a litigant. D.M. v. New Jersey Dept. of Educ., 801 F.3d 205 (3d Cir. 2015). Springer v. Wal–Mart Assocs. Group Health Plan, 908 F.2d 897, 901 (11th Cir.1990)(To substantiate a claim of futility the Petitioners must make a "clear and positive" showing of futility); *see also* McGraw v. Prudential Ins. Co. of Am., 137 F.3d 1253, 1264 (10th Cir.1998) (noting that futility

exception is limited to those situations where resort to administrative remedies would be "clearly useless"). Determinations of futility are left to sound discretion of the court. S. Fla. Blood Bank, Inc. v. Futch, 764 So. 2d 724, 725 (Fla. 4th DCA 2000).

Here exhaustion is not required because the administrative process would be unable to grant relief. *See generally*, Hollis v. Davis, 912 F.2d 1343, 1346-1347 (11th Cir. 1990). If the school district refused to require children to wear masks, there is no jurisdiction or authority for the administrative law judge to order districts to impose or not impose a mask mandate. Thus, the child with a disability would then fall under the prohibitions of rule 64DER21 -12(6):

> (6) NON-DISCRIMINATION. Students whose parents or legal guardian have opted them out of a mask or face covering requirement shall not be subject to any harassment or discriminatory treatment, including but not limited to:
> (a) Relegation to certain physical locations;
> (b) Isolation during school activities; or
> (c) Exclusion from any school-sponsored events or activities.

Ironically, all of the activities cited by the State defendants would be considered discrimination under their own regulation and would similarly violate the integration mandate of the ADA. See Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 119 S. Ct. 2176, 144 L. Ed. 2d 540 (1999). They also violated the requirement to education students in the least restrictive environment. 20 U.S.C. section 1412(a)(5)(A). Accordingly, any relief would be futile as an administrative law judge could not order the school districts to violate the rules promulgated pursuant to the executive order.

Further, exhaustion would be futile and inadequate as the administrative court does not have jurisdiction over the Governor, the Commissioner of Education, or the Department of Education. P.J.S. v. School Bd. Of Citrus Cty., 951 So. 2d 53 (Fla. 5th DCA 2007)(noting that only school boards and parents are proper parties to a due process hearing). Hearing officers can only resolve disputes between a parent and a school district. See 20 U.S.C. § 1415(f)(1)(A). As

noted by the school districts in their responses, the gravamen of this dispute is between the school districts and Governor thus any relief the administrative court could award would be inadequate.

V. **Defendant School Districts**

The Responses to the Defendants school districts that differ from the State's responses were focused on venue and whether they were necessary parties and whether this was a dispute between the students and the state. Pursuant to 28 U.S.C. § 1391, "Venue in general. --A civil action may be brought in--(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." In this matter, **all** of the defendants reside in the state of Florida, and plaintiffs brought the case in a district in which several defendants reside. As such, venue is appropriate. Further, due to the overall issues of law in dispute in this case and the use of remote proceedings, *forum non conveniens* is a non-issue, especially so when each defendant contends that each of its location is a proper forum. Lastly, the "Home Venue Privilege" is inapplicable. It provides that, absent waiver or exception, venue in a suit against the State, or an agency or subdivision of the State, is proper only in the county in which the State, or the agency or subdivision of the State, maintains its principal headquarters. Fla. Pub. Serv. Comm'n v. Triple "A" Enters., Inc., 387 So.2d 940, 942 (Fla.1980). Primarily, state created procedural rights must cede to federal rules and procedures. See Hanna v. Plumer, 380 U.S. 460, 473–74, 85 S. Ct. 1136, 1145, 14 L. Ed. 2d 8 (1965)("To hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel *474 either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act."). The most adequate response comes from Broward County [DE 44] which claims that with its rule, it is in compliance with the ADA and Section 504, and the court should decide whether the state defendants are a question for this court.

Pursuant to Rule 19(a)(1)(A), Fed. R. Civ. P., to the extent that the local school districts are required to enforce the orders stemming from the Executive Order, then, without their participation in this case, this Court cannot accord complete relief for the Plaintiffs herein.

### VI. Plaintiff's injury

The State Defendants claim that the Plaintiffs "quibble" with the educational options that could be provided to kids with disabilities. The State Defendants imply that kids with disabilities should be satisfied with "virtual, in-home, or other alternatives to sharing a traditional classroom in districts that do not adopt and enforce universal mask mandates." [DE 51, p. 16]. This argument ironically states that kids with disabilities could be discriminated against using their own definition of discrimination under 64DER21 -12(6). Unjustified segregation of children with disabilities violates the integration mandate of the ADA and the IDEA. Georgia Advoc. Off. 447 F. Supp. 3d at 1322 (N.D. Ga. 2020) *analyzing* Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 593–94, 119 S.Ct. 2176, 144 L.Ed.2d 540 (1999)28 C.F.R. § 35.130(d) ("A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.") It is hardly justified when integration can be achieved with a simple reasonable accommodation. Again, this is no different than a school that does not permit nuts because of a child with a nut allergy, or a school that installs ramps to ensure access for students with mobility impairments. Defendant's definition of "loss of educational opportunities" with the explanation that there are other options for educational opportunities for the Plaintiffs in order to avoid being at risk of injury or death is the very issue that the ADA sought to abolish- the segregation and exclusion of persons with disabilities – especially when integration can be achieved with a simple accommodation. See 42 U.S.C. § 12101("individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion,

the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities).

WHEREFORE, the Plaintiffs respectfully requests that this Court enjoin Governor DeSantis, Commissioner Corcoran, and the Department of Education from enforcing the Governor's Executive order and the regulations developed therefrom that restricts a school board from implementing reasonable protections necessary to allow children with disabilities to safely attend their public school.

Respectfully submitted this 27th day of August 2021.

By: /s/*Matthew W. Dietz*
Matthew W. Dietz, Esq.
Florida Bar No. 84905

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 27, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties and counsel of record, or in some other authorized manner for those counsel or parties who are not authorized to receive notices electronically.

By: /s/*Matthew W. Dietz*
Matthew W. Dietz, Esq.
Florida Bar No. 84905
Stephanie Langer, Esq.
Florida Bar No. 149720
2990 Southwest 35th Avenue
Miami, Florida 33133
T: (305) 669-2822 / F: (305) 442-4181
slanger@justDIGit.org
mdietz@justdigit.org
aa@justdigit.org