# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:21-CV-22863-KMM

JUDITH ANNE HAYES, individually
and on behalf of W.H., a minor, et al.,

      Plaintiffs,

    v.

GOVERNOR RONALD DION
DESANTIS, in his official Capacity as
Governor of the State of Florida, et al.,

      Defendants.

## STATE DEFENDANTS' MOTION TO DISMISS
## AND INCORPORATED MEMORANDUM OF LAW

Raymond Treadwell (FBN 93834)
Chief Deputy General Counsel
EXECUTIVE OFFICE OF THE GOVERNOR
The Capitol, PL-5
400 S. Monroe Street
Tallahassee, Florida 32399-6536
Ray.Treadwell@eog.myflorida.com
Gov.legal@eog.myflorida.com
(850) 717-9310

*Counsel for Governor Ronald Dion DeSantis*

Anastasios Kamoutsas (FBN 109498)
General Counsel
FLORIDA DEPARTMENT OF EDUCATION
Turlington Building, Suite 1244
325 West Gaines Street
Tallahassee, Florida 32399-0400
Anastasios.Kamoutsas@fldoe.org
(850) 245-0442

*Counsel for Commissioner Richard Corcoran
and Florida Department of Education*

Rocco E. Testani (*pro hac vice*)
Stacey M. Mohr (*pro hac vice*)
Lee A. Peifer (*pro hac vice*)
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, N.E., Suite 2300
Atlanta, Georgia 30309
roccotestani@eversheds-sutherland.com
staceymohr@eversheds-sutherland.com
leepeifer@eversheds-sutherland.com
(404) 853-8000

*Counsel for State Defendants*

**TABLE OF CONTENTS**

I.    Introduction ............................................................................................................ 1

II.   Background ............................................................................................................. 1

      A.   The Executive Order ........................................................................................ 2

      B.   The Departments' Emergency Rules ................................................................ 3

      C.   Local School District Policies on COVID-19 Mitigation Measures ............................ 4

      D.   Plaintiffs' Claims and the Relief Sought ........................................................ 5

      E.   The Procedural Safeguards Available to Plaintiffs Under the IDEA ............................ 6

III.  Argument and Citation of Authorities ...................................................................... 8

      A.   Plaintiffs' ADA and Section 504 Claims Fail Because They Have Not Exhausted
           Administrative Remedies ................................................................................. 9

      B.   Plaintiffs Lack Article III Standing to Pursue Their Claims in Federal Court ............. 12

           1.   Plaintiffs' alleged injury—the loss of educational opportunities—is conjectural
                and hypothetical ........................................................................................... 13

           2.   Plaintiffs' alleged injury is not fairly traceable to the Executive Order ............. 15

           3.   Plaintiffs' theory that enjoining implementation of the Executive Order would
                redress their alleged injury is merely speculative ........................................... 16

      C.   Plaintiffs' State-Law Claim Fails Under Both Federal and Florida Law .................... 17

           1.   Plaintiffs' state-law claim is barred by the Eleventh Amendment ..................... 17

           2.   Plaintiffs have failed to state a plausible claim for relief available under the
                Florida Educational Equity Act ..................................................................... 18

           3.   The court should not exercise supplemental jurisdiction over Plaintiffs' state-
                law claim after dismissing their claims under federal law ............................... 19

IV.   Conclusion ............................................................................................................. 20

## I.    INTRODUCTION

Plaintiffs have "fail[ed] to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), and their claims also fail for lack of subject-matter jurisdiction under Rule 12(b)(1). For many of the same reasons set forth in the State Defendants' opposition to Plaintiffs' amended motion for a preliminary injunction (ECF No. 51)[1]—and for the additional reasons below— Plaintiffs have not asserted any claims on which they could succeed in this Court. First, with respect to their purported claims under the Americans with Disabilities Act (Count 1) and Section 504 of the Rehabilitation Act (Count 2), Plaintiffs have not exhausted their extensive administrative remedies as required by well-settled federal law. Second, Plaintiffs lack standing to pursue their claims because they have not alleged a non-speculative injury that is fairly traceable to and likely to be redressed by enjoining enforcement of the executive order that they challenge. Third, Plaintiffs' state-law claim under the Florida Educational Equity Act (Count 3) is barred by the State Defendants' immunity under the Eleventh Amendment of the U.S. Constitution, as well as by Plaintiffs' failure to plead the elements necessary to pursue such a claim under Florida law, and the Court in any event should decline to exercise supplemental jurisdiction over that claim. All of the claims asserted in the Complaint thus fail, and it should be dismissed in its entirety.

## II.    BACKGROUND

This case turns on Plaintiffs' contention that a statewide "executive order conflicts with the school districts['] obligations [to the individual Plaintiffs] under the Individuals with Disabilities Education Act, the Americans with Disabilities Act, and Section 504 of the

---

[1] The "State Defendants" are Governor Ron DeSantis, the Florida Department of Education, and the Commissioner of the Florida Department of Education.

Rehabilitation Act." (Compl. ¶ 49 (ECF No. 1).) Despite their tag-along claim under state law and request for damages, Plaintiffs primarily seek a finding "that Governor DeSantis does not have the authority to interfere with these children's rights under" federal law. (*Id.*) This background section summarizes the key allegations of the Complaint (as if true, though only for purposes of this motion) and relevant provisions of state and federal law.

**A.      The Executive Order**

Plaintiffs are 11 parents of a total of 16 students enrolled in eight different Florida public school districts. Plaintiffs have sued the Governor of Florida, the Florida Department of Education, and the Florida Education Commissioner, as well as the local boards governing the eight school districts, seeking to strike down the Governor's Executive Order 21-175 (July 30, 2021), https://www.flgov.com/wp-content/uploads/orders/2021/EO_21-175.pdf  (the "Executive Order" or "EO"), which (in part) directed certain state agencies to take steps to ensure that parents of students in public schools could opt out of any locally imposed mask requirements. (*See* Comp. ¶¶ 42, 70.)[2]

The Executive Order does not direct or require any particular action from school districts. Rather, it directs the Florida Department of Health (not a party here) and the Florida Department of Education to issue and enforce rules "to ensure safety protocols for controlling the spread of COVD-19 in schools that" are in accordance with the Parents' Bill of Rights, H.B. 241,[3] which

---

[2] As noted in the State Defendants' opposition to a preliminary injunction, there are pending cases challenging the same Executive Order in state court. Last Friday, the judge presiding over one of those cases, *McCarthy v. DeSantis*, No. 2021-CA-1382 (Fla. 2d Cir. Ct. filed Aug. 6, 2021), ruled in part for the plaintiffs—some of whom are also Plaintiffs here—and indicated that an order addressing the scope of injunctive relief would be forthcoming this week. None of the state-law issues in that case have any bearing on the defenses requiring dismissal in this case.

[3] The Parents' Bill of Rights is codified at sections 1014.01–.06, Florida Statutes. *See* Ch. 2021-199, Laws of Fla., http://laws.flrules.org/2021/199. (*See* Compl. ¶ 68.)

was passed by the Florida Legislature and signed into law earlier in the summer. (EO at 3–4; *see also* Compl. ¶ 43.) Specifically, those rules must ensure that safety protocols in schools do not "violate Floridians' constitutional freedoms" or "violate parents' right[s] under Florida law to make health care decisions for their minor children" and do "[p]rotect children with disabilities or health conditions who would be harmed by certain protocols such as face masking requirements." (EO at 3–4.) The Executive Order also directed the Commissioner of Education to "pursue all legal means available to ensure school districts adhere to Florida law, including but not limited to withholding state funds from noncompliant school boards violating any rules or agency action." (*Id*. at 4.)[4]

**B.      The Departments' Emergency Rules**

Pursuant to their rulemaking authority, on August 6, 2021, the Florida Department of Health and the Florida Department of Education each issued emergency rules dealing with various issues related to COVID-19 and public schools.

The Florida Department of Health issued one emergency rule. As it concerned masks, that rule provides, "Students may wear masks or facial coverings as a mitigation measure; however, the school must allow for a parent or legal guardian of the student to opt-out the student from wearing a face covering or mask." Emergency Rule 64DER21-12(1)(d), Fla. Admin. Reg., Vol. 47/153 (Aug. 9, 2021), https://www.flrules.org/gateway/ruleNo.asp?id=64DER21-12. The rule further requires that "[s]tudents whose parents or legal guardian have opted them out of a mask or face covering requirement shall not be subject to any harassment or discriminatory treatment."

---

[4] The Complaint mischaracterizes this part of the Executive Order, which does not *itself* "withhold state funding to any noncompliant school boards." (Compl. ¶ 70.) But this mistaken legal conclusion cannot prevent the dismissal of Plaintiffs' claims.

*Id.* 64DER21-12(6). Plaintiffs have not challenged this rule or even joined the Department of Health as a party.[5]

The Florida Department of Education issued two emergency rules. The first deals with attendance policies in the event of "stay-home" directives due to COVID-19 exposure and does not discuss masks. *See* Emergency R. 6AER21-01, Fla. Admin. Reg. Vol. 47/153 (Aug. 9, 2021), https://www.flrules.org/gateway/ruleNo.asp?id=6AER21-01. The second rule allows students to obtain a "Hope Scholarship" to transfer to a private school or another Florida school district if the student is subject to harassment "in relation to, or as a result of, school district protocols for COVID-19, including masking requirements, the separation or isolation of students, or COVID-19 testing requirements, that have the effect of substantially interfering with a student's educational performance, opportunities or benefits." Emergency R. 6AER21-02(1), Fla. Admin. Reg. Vol. 47/153 (Aug. 9, 2021), https://www.flrules.org/gateway/ruleNo.asp?id=6AER21-02.

Again, the Complaint does not ask the Court to review, invalidate, or enjoin any of these rules. This case deals solely with the Governor's Executive Order.

## C.      Local School District Policies on COVID-19 Mitigation Measures

Leading up to the current (2021–2022) school year, local school boards and district administrators throughout Florida have considered and issued various (and changing) policies and procedures related to controlling the spread of COVID-19 in schools through various mitigation measures, including optional or required mask wearing, both before and after the Executive Order was issued on July 30. For example, even the Complaint—though incomplete in this regard—describes various virtual programs to offer remote instruction for students outside

---

[5] There is a separate (and direct) challenge to this rule pending in state court before Florida's Fourth District Court of Appeal. *Fla. State Conference of NAACP v. Fla. Dep't of Health*, No. 4D21-2463 (Fla. 4th DCA filed Aug. 20, 2021).

the traditional classroom, as well as scholarships (or "vouchers") for students who wish to transfer to other schools. (*See, e.g.*, Compl. ¶¶ 61–64 (describing certain options for remote instruction during previous school year); *id.* ¶ 77 n.1 ("There is one district whose virtual school program might arguably provide a free appropriate public education (FAPE) to students with disabilities."); *id.* ¶¶ 84–87 (acknowledging, though criticizing, other virtual options and vouchers). Plaintiffs also allege that some (but not all) of their county school districts have attempted to implement various mask mandates on a temporary basis. (Compl. ¶¶ 37, 149.)[6]

**D.     Plaintiffs' Claims and the Relief Sought**

Plaintiffs allege that the Executive Order violates their children's' rights to "have a free and appropriate public education in the most integrated and least restricted environment" as required "under the Individuals with Disabilities Education Act, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act." (Compl. ¶ 45.) Specifically, they allege that each of their children has "an individualized education plan or 504 plan in the school districts in the counties in which they live" and that "[t]hey are all at higher risk for severe illness or death due to COVID-19 and will not go to public school because of the higher risk of severe illness or death." (*Id.* ¶ 47.) Plaintiffs also allege that "Defendants have argued publicly that students can attend virtual programs or be given a voucher to attend a private school" but that these options do not "provide students with disabilities FAPE [a free and appropriate public education] in the LRE [least restrictive environment]." (*Id.* ¶ 84.) Each Plaintiff alleges that due to their child's disability, the child cannot attend school without "mandatory masking." (*E.g.*, *id.* ¶ 98.) Plaintiffs

---

[6] The State Defendants' opposition to a preliminary injunction provided more details about the status of various local approaches to this issue.

further allege that certain alternatives such as "virtual programs and vouchers do not provide FAPE in the [least restrictive environment]." (*Id.* at 17 (capitalization adjusted).)

The Complaint has three separate counts: Count 1 alleges violation of the Americans with Disabilities Act (ADA); Count 2 alleges violation of Section 504 of the Rehabilitation Act; and Count 3 alleges violation of the Florida Educational Equity Act, § 1000.05, Fla. Stat. Counts 1 and 2 seek a declaration that the State Defendants have violated the ADA and Section 504, respectively, as well as preliminary and permanent injunctions "enjoining the Defendants from interfering with their rights to a free and appropriate public education in the least restrictive environment by refusing to allow them to go to public school in a safe environment," "to otherwise immediately cease discriminating against students with disabilities," and "to otherwise enjoin[] the Defendants from any practice, policy and/or procedure which would deny students with disabilities equal access to and benefit of Defendants services." (Compl. ¶¶ 178, 187.) Plaintiffs also seek costs and attorney's fees under Counts 1 and 2, as well as damages under Count 2. In Count 3, under the Florida Educational Equity Act, Plaintiffs do not seek declaratory relief or an injunction and instead request only "damages, together with their attorney's fees and costs, and such further relief as the court deems just and equitable." (*Id.* at 35.)

## E.     The Procedural Safeguards Available to Plaintiffs Under the IDEA

The Individuals with Disabilities in Education Act (IDEA) provides parents with extensive procedural safeguards to ensure that each student is provided the free appropriate public education ("FAPE") that Plaintiffs seek. 20 U.S.C. § 1400 *et seq*. These procedures must meet detailed requirements set out in federal regulations, 34 C.F.R. Part 300, and govern all aspects of providing educational services to students with disabilities—from ensuring prompt

identification and evaluation, to constituting school-based teams to develop an individualized plan for each student, to providing efficient dispute resolution options.[7]

At the center of this process is the IEP—the "individualized education plan" (or "program") developed for each student by an "IEP team" including individuals with knowledge of the student, such as parents, teachers, and a qualified representative of the school or district, among others. 34 C.F.R. §§ 300.320–322. This team must meet at least once a year, but more frequent meetings may be convened by members of the team, including parents. *Id*. § 300.324.

Because each IEP is based on the student's particular circumstances, the instruction, related services, accommodations, and educational placements vary widely. Some, for example, may provide for accommodations within the general-education classroom, while others may place the student at a specific school or facility, and others may require services be provided in a hospital or home setting. *See* 20 U.S.C. § 1401(29) (defining "special education" to include "specially designed instruction, at no cost to parents, to meet the unique needs of a child with a disability, including—(A) instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings"); § 1003.57(1)(b)4, Fla. Stat. (requiring districts to "[p]rovide instruction to homebound or hospitalized students"); *cf. Renee J. v. Hous. Indep. Sch. Dist.*, 913 F.3d 523, 529 (5th Cir. 2019) ("If a child is unable to attend classes due to his or her disability, the school district must offer homebound instruction to provide the child with a FAPE."). And if a particular service or setting is not assisting a student in making sufficient progress, the IEP team must consider other accommodations and revise the IEP as appropriate. *See* 34 C.F.R. § 300.324(b).

---

[7] These procedures were described in more detail in the Declaration of Melissa Ramsey submitted with the State Defendants' opposition to a preliminary injunction (ECF No. 51-1), but this motion relies only on the relevant FAPE provisions of federal and state law.

Finally, a parent who is not satisfied with the IEP or its implementation has several avenues for resolving this dispute. The IDEA and Florida law set out a number of procedural safeguards available to parents to ensure that students are receiving FAPE *See, e.g.*, §§ 1003.57, 1003.571, Fla. Stat. For example, a parent who disagrees with the school district as to the student's education, including appropriate accommodations or educational setting, can take advantage of several dispute resolution options: (1) state-sponsored facilitated IEP meetings; (2) mediation with a state-provided third-party mediator; (3) a state complaint process through the Florida Department of Education; and (4) a due process complaint heard by an impartial hearing officer with the Division of Administrative Hearings. *See* Fla. Admin. Code R. 6A-6.03311. Plaintiffs do not allege that they have attempted to avail themselves of the IEP process or any of these dispute-resolution procedures.

## III.   ARGUMENT AND CITATION OF AUTHORITIES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). Thus,

> [a] complaint must contain enough facts to plausibly allege the required elements. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295–96 (11th Cir. 2007). A pleading that offers 'a formulaic recitation of the elements of a cause of action will not do.' [*Ashcroft v.*] *Iqbal*, 556 U.S. [662] at 678 [2009] (quoting *Twombly*, 550 U.S. at 555). "Conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

*Tropical Soup Corp. v. City of Key W.*, No. 4:20-cv-10132-KMM, 2021 WL 611351, at * 2 (S.D. Fla. Feb. 9, 2021) (internal brackets omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Plaintiffs' claims do not meet this standard, and the Court also lacks jurisdiction over their claims. They have failed to exhaust administrative remedies as necessary before pursuing FAPE claims under federal law, they lack standing to assert any of their claims in federal court under Article III of the U.S. Constitution, and they could not pursue their state-law claim in this Court in any event. The Complaint should be dismissed.[8]

**A.    Plaintiffs' ADA and Section 504 Claims Fail Because They Have Not Exhausted Administrative Remedies.**

Before suing under "the Americans with Disabilities Act of 1990, title V [including Section 504] of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities . . . seeking relief that is also available under [the IDEA], the procedures under [20 U.S.C. § 1415] subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under [the IDEA]." 20 U.S.C. § 1415(*l*). As this Court has previously recognized,

> "[A]ny student who wants 'relief that is available under' the IDEA must use the IDEA's administrative system, even if he invokes a different statute." *M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153, 1158 (11th Cir. 2006) (citing *Babicz v. Sch. Bd.*, 135 F.3d 1420, 1422 n.10 (11th Cir. 1998)). "[C]laims asserted under Section 504 and/or the ADA are subject to Section 1415(f)'s requirement that litigants exhaust the IDEA's administrative procedures to obtain relief that is available under the IDEA before bringing suit under Section 504 and/or the ADA." *Id.*

---

[8] Some of these arguments overlap with the arguments developed in the State Defendants' opposition to a preliminary injunction—in particular with respect to arguments that the Plaintiffs are unlikely to succeed on the merits on their ADA and Section 504 claims. Those overlapping arguments are nevertheless repeated here so that the State Defendants' request to dismiss the Complaint is fully supported by this motion and incorporated memorandum of law.

*N.N.J. v. Broward Cty. Sch. Bd.*, No. 06-61282-CIV, 2007 WL 3120299, at *2 (S.D. Fla. Oct. 23, 2007) (Moore, J.) (granting motion to dismiss). Plaintiffs have not alleged—and cannot allege— that they exhausted these remedies, so their federal-law claims necessarily fail.

The Complaint here could hardly be clearer that Plaintiffs are "seeking relief that is also available under" the IDEA for purposes of the statutory exhaustion requirement. 20 U.S.C. § 1415(*l*). Indeed, the Complaint *explicitly* cites the IDEA. (Compl. ¶¶ 45, 49.) But it also relies on the alleged denial of, and requests relief related to, a "free appropriate public education" (FAPE) at least a dozen times—including in the prayers for relief on their ADA and Section 504 claims. (*E.g.*, Compl. ¶¶ 45, 56, 80, 85, 87, 89, 162; *id.* at 32, 34.)

In other words, Plaintiffs' claims directly implicate the IDEA's exhaustion requirement, regardless of how those claims have been styled under the ADA (Count 1) and Section 504 (Count 2). As the Supreme Court explained in *Fry v. Napoleon Community Schools*,

> [The IDEA's] exhaustion rule hinges on whether a  lawsuit seeks relief for the denial of a free appropriate public education. If a lawsuit charges such a denial, the plaintiff cannot escape §1415(*l*) merely by bringing her suit under a statute other than the IDEA—as when, for example, the plaintiffs . . . claimed that a school's failure to provide a FAPE also violated the Rehabilitation Act. Rather, that plaintiff must first submit her case to an IDEA hearing officer, experienced in addressing exactly the issues she raises.

137 S. Ct. 743, 754 (2017) (footnote omitted); *see also id.* at 755 ("A court deciding whether § 1415(*l*) applies must therefore examine whether a plaintiff's complaint—the principal instrument by which she describes her case—seeks relief for the denial of an appropriate education.… Section 1415(*l*) is not merely a pleading hurdle. It requires exhaustion when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way."). When Plaintiffs contend that they "are seeking to have their IEP and 504 plan implemented with care and heed taken for their individual

10

circumstances as demanded by the educational laws" (Compl. ¶ 47), that is *precisely* the purpose of the extensive procedural protections and FAPE requirements under the IDEA.

Plaintiffs thus "cannot circumvent the IDEA's exhaustion requirement by suing for a FAPE deprivation under a different federal statute." *Durbrow v. Cobb Cty. Sch. Dist.*, 887 F.3d 1182, 1190 (11th Cir. 2018). "The same misconduct committed by a school district may warrant relief under the IDEA, § 504, or the ADA. But if the complaint essentially alleges the denial of a FAPE, then the plaintiff must exhaust his administrative remedies." *Id.* And "to properly exhaust a claim that seeks relief for the denial of a free appropriate public education, the claim *must* proceed through an administrative hearing and receive a final decision from an administrative judge *before* review may be sought from a federal district court." *Id.* at 1191 (emphasis added).

Plaintiffs' ADA and Section 504 claims are therefore due to be dismissed. *See Durbrow*, 887 F.3d at 1197 ("The district court properly dismissed the Durbrows' § 504 and ADA claims for failure to exhaust administrative remedies.").

Finally on this point, Plaintiffs' conclusory assertion that "exhaustion would be futile" (Compl. ¶ 164) does not excuse their failure to pursue administrative remedies. "The burden of demonstrating futility is on the party seeking exemption from the exhaustion requirement." *M.T.V.*, 446 F.3d at 1159. And Plaintiffs' "speculative allegations of futility . . . simply fail to sustain this burden." *Id.* "Parties cannot know if adequate relief is unavailable unless they ask for it and go through the process." *C.T. v. Necedah Area Sch. Dist.*, 39 Fed. App'x 420, 423 (7th Cir. 2002), *quoted with approval in J.S. ex rel. J.S. v. Houston Cty. Bd. of Educ.*, No. 1:12-CV-666-MEF, 2014 WL 3172035, at *6 (M.D. Ala. July 8, 2014); *cf. N.B. by D.G. v. Alachua Cty. Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996) ("A procedure that may result in *any* substantial relief is not futile." (emphasis added) (quoting *Waterman v. Marquette-Alger Intermediate Sch. Dist.*, 739

F. Supp. 361, 368 (W.D. Mich. 1990)).[9] Even at the pleading stage, Plaintiffs' assertion that

exhaustion would be futile is just an unsupported "conclusion"—not a well-pleaded factual

allegation sufficient to avoid dismissal for failure to exhaust. *B.I. v. Montgomery Cty. Bd. of

Educ.*, 750 F. Supp. 2d 1280, 1286 (M.D. Ala. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679

(2009) ("While legal conclusions can provide the complaint's framework, they must be

supported by factual allegations." (dismissing IDEA claim against state department of

education)).

**B.      Plaintiffs Lack Article III Standing to Pursue Their Claims in Federal Court.**

Plaintiffs' claims also fail for lack of standing and thus subject-matter jurisdiction under

Federal Rule of Civil Procedure 12(b)(1). Regardless of whether their children are "qualified

individuals with disabilities" (Compl. ¶ 46), they lack standing to pursue claims under Article III

of the U.S. Constitution.

> Under current doctrine, a plaintiff has to make three showings in order to
> demonstrate Article III standing. First, he must establish that he has
> suffered an "injury in fact"—an invasion of a legally protected interest that
> is both (1) "concrete and particularized" and (2) "actual or imminent, not
> conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560,
> 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (quotation marks omitted).
> Second, he must demonstrate that there is a "causal connection" between
> this injury and the conduct of which he complains—*i.e.*, the injury must be
> "fairly traceable" to the defendant's challenged actions and not the result
> of "the independent action of some third party not before the
> court." *Id.*; *see Spokeo, Inc. v. Robins*, 578 U.S. 856, 136 S. Ct. 1540,
> 1547, 194 L. Ed. 2d 635 (2016). Finally, he must show that it is "likely, as

---

[9] That Plaintiffs purport to seek a statewide injunction against the enforcement of an executive order instead of individualized accommodations in their local schools does not relieve them of their obligation to exhaust administrative remedies. *See N.B.*, 84 F.3d at 1379 ("[I]f the plaintiff's argument is to be accepted, then future litigants could avoid the exhaustion requirement simply by asking for relief that administrative authorities could not grant. This goes against the very reason that we have the exhaustion requirement, which is to prevent deliberate disregard and circumvention of agency procedures established by Congress." (internal brackets and quotation marks omitted)).

opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560 (quotation marks omitted).

*Support Working Animals, Inc. v. Governor of Fla.*, --- F.4th ---, No. 20-12665, 2021 WL 3556779, at *2 (11th Cir. Aug. 12, 2021); *see also Lujan*, 504 U.S. at 561 ("The party invoking federal jurisdiction bears the burden of establishing these elements [of standing].").

Plaintiffs cannot make these three essential showings with respect to any of their claims.

### 1.    Plaintiffs' alleged injury—the loss of educational opportunities—is conjectural and hypothetical.

The specific injury alleged in the Complaint is *not* the risk of exposure to COVID-19. On that point, Plaintiffs allege to the contrary that they simply "*will not go* to public school because of the higher risk of severe illness or death" if all other students are not required to wear masks. (Compl. ¶ 47 (emphasis added).) Plaintiffs instead focus on the potential loss of educational opportunities if they decide to pursue "an alternative educational placement" on their own because they believe they are unable "to safely return to brick-and-mortar schools and [have] no alternatives for a public education." (*Id.* ¶¶ 55, 76; *see also id.* ¶¶ 172.b, 184.b ("The Defendants are excluding Plaintiffs from the participation in public education [under the ADA] . . . ."); *id.* ¶ 187 ("The failure to provide access to FAPE in an alternative setting, thereby excluding all students with disabilities who are unable to return to brick-and-mortar schools is a violation of Section 504."); *id.* ¶ 191 ("The discriminatory acts and omissions by the Defendant results in the exclusion of thousands of students from participation in, benefits of the public-school program are discrimination [under the Florida Educational Equity Act].").) But any alleged loss of educational opportunities is entirely speculative, particularly where Plaintiffs have not even attempted to determine what accommodations may be possible through the procedures available to them under the IDEA.

Plaintiffs' potential injuries are accordingly too conjectural and hypothetical to confer Article III standing. As noted above, "[p]arties cannot know if adequate relief is unavailable [through the IDEA's administrative procedures] unless they ask for it and go through the process." *C.T.*, 39 Fed. App'x at 423. Plaintiffs concede that options for remote or virtual instruction are available statewide and in their respective school districts. And though they quibble with (most of) those options,[10] they have not shown that their purported concerns about virtual, in-home, or other alternatives to sharing a traditional classroom in districts that do not adopt and enforce universal mask mandates, or in schools where students are allowed to opt out of those mandates, could not be addressed through the more flexible IEP and 504 processes. There are many ways school districts could accommodate those concerns, whether through virtual instruction, homebound instruction with one-on-one instruction, or other in-school options formulated by the IEP team. *See generally* discussion *supra* Part II.E.

The Court should not adopt Plaintiffs' speculative assumption that *if* they are required to explore other accommodations or modifications to account for their disabilities, then they will *necessarily* have been denied a free appropriate public education. "A '*possible* future injury' does not confer standing." *Wood v. Raffensperger*, No. 1:20-cv-5155-TCB, 2020 WL 7706833, at *2 (N.D. Ga. Dec. 28, 2020) (emphasis added) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)), *aff'd* No. 20-14813, 2021 WL 3440690 (11th Cir. Aug. 6, 2021) (unpublished); *see also id.* at *5 ("[A]llegations [that] show only the possibility of future injury based on a series of events . . . fall[] short of the requirement to establish a concrete injury." (internal

---

[10] Even without having gone through the IDEA administrative process, Plaintiffs allege the Palm Beach County School District encouraged families with safety concerns to consider enrolling in the "Hendry County Virtual School," which Plaintiffs agree "might arguably provide a free appropriate public education (FAPE) to students with disabilities." (Compl. ¶ 127; *id.* ¶ 77 n.1.)

quotation marks and citation omitted)). Nor do their conclusory, formulaic, and passing requests for "damages" under the ADA and the Florida Educational Equity Act (Compl. 34, 35)—the latter of which does not permit the recovery of damages at all, as argued below—constitute well-pleaded factual allegations sufficient to demonstrate an actual injury in fact.

**2.    Plaintiffs' alleged injury is not fairly traceable to the Executive Order.**

Plaintiffs' alleged lost educational opportunities are not fairly traceable to the Executive Order that they challenge either. That Executive Order primarily directed the Florida Department of Education and non-party Florida Department of Health to consider rules and other steps to allow parents to participate in decisions about whether their individual children should be required to wear masks in school. But Plaintiffs have not challenged the resulting rules or shown that the Governor's Executive Order *itself* will cause the denial of FAPE. Florida's county school districts and the families with students attending public schools in those districts have responded to the challenges presented by COVID-19 in varying ways, and Plaintiffs cannot show that the Governor's Executive Order—which says nothing about remote learning options, in-school alternatives, or other potential accommodations or modifications for individual students with disabilities[11]—is preventing school districts and local school administrators from responding to FAPE concerns on the individualized, case-by-case basis required by federal law. And at any rate, the Executive Order cannot be blamed for Plaintiffs' *own* decision not to pursue administrative remedies under the IDEA.

---

[11] The Executive Order does direct the state departments of health and education to "ensure safety protocols for controlling the spread of COVID-19 in schools" that "[p]rotect children with disabilities or health conditions," including (but not limited) to the extent that those students might be "harmed by certain protocols such as face masking requirements." Exec. Order 21-175.

3.      **Plaintiffs' theory that enjoining implementation of the Executive Order would redress their alleged injury is merely speculative.**

For similar reasons, the relief sought in the Complaint is unlikely to redress Plaintiffs' alleged injuries. *See Support Working Animals*, 2021 WL 3556779, at *2 (noting that "traceability and redressability—often travel together"). Article III's redressability requirement means that "it must be *the effect of the court's judgment on the defendant*—not an absent third party—that redresses the plaintiff's injury." *Lewis v. Governor of Ala*., 944 F.3d 1287, 1301 (11th Cir. 2019) (internal quotation marks and citation omitted). But enjoining further enforcement of the Executive Order itself will not set aside the rules since adopted by the state health and education departments; will not prevent school districts from making or reversing their own decisions about local mask policies; will not require school administrators and teachers to enforce those policies uniformly; and will not force students to comply with those policies (such as they are) with a perfect track record. With respect to the adoption and enforcement of local mask policies in particular, "a plaintiff's injury isn't redressable by prospective relief [e.g., against the Governor] where other state actors, who aren't parties to the litigation, would remain free and clear of any judgment and thus free to engage in the conduct that the plaintiffs say injures them." *Support Working Animals*, 2021 WL 355677, at *5.[12]

More importantly, the Executive Order has no bearing on the educational alternatives or accommodations that may be available to students whose disabilities may make them reluctant to share a traditional classroom with *other* students who may not (or cannot) wear masks. Put another way, "it is not substantially likely, without making several unguaranteed assumptions

---

[12] Although Plaintiffs have joined their county school districts as "indispensable but not adverse" parties (Compl. ¶¶ 31–38; *see also id.* ¶ 39), Plaintiffs have not sought an injunction to prevent those school districts from implementing or amending mask policies that might permit other students to refrain from wearing masks, including exceptions for health or other reasons.

regarding the manner in which the relief may impact Plaintiffs, that the requested relief will remedy the alleged injury in fact." *Samuels v. Fed. Hous. Fin. Agency*, 54 F. Supp. 3d 1328, 1333 (S.D. Fla. 2014) (granting motion to dismiss); *see also id.* ("Plaintiffs' effective relief is contingent on the acts of numerous third parties not before the Court, and is therefore impermissibly speculative." (internal quotation marks omitted)). Plaintiffs have not pursued the administrative remedies that not only are required, but actually are best suited, to address their particular students' individual circumstances and needs—the very purpose of the IDEA exhaustion requirements.

**C.     Plaintiffs' State-Law Claim Fails Under Both Federal and Florida Law.**

Count 3 of the Complaint, under the Florida Educational Equity Act, § 1000.05, Fla. Stat., should also be dismissed—not only for lack of Article III standing (as shown above), but also because it is barred by the State Defendants' Eleventh Amendment immunity and by Plaintiffs' failure to plead the necessary elements for such a claim under Florida law. Finally, even if the Court were not inclined to dismiss Count 3 of the Complaint on those grounds, the Court should decline to exercise supplemental jurisdiction over this state-law claim after dismissing the claims asserted under federal law.

**1.     Plaintiffs' state-law claim is barred by the Eleventh Amendment.**

Under the Eleventh Amendment, "nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). Accordingly, "federal courts have no jurisdiction over states, or jurisdiction over official-capacity claims against state officials, when those defendants are accused of violating state law and the relief sought will have an impact directly on the state itself." *Bradley v. Franklin*, 786 Fed. App'x 918, 925 (11th Cir. 2019) (citing *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89 (1984)). And "a federal court may not entertain a cause of action against a state for alleged

violations of state law, even if that state claim is pendent to a federal claim which the district court could adjudicate." *DeKalb Cty. Sch. Dist. v. Schrenko*, 109 F.3d 680, 688 (11th Cir. 1997) (citing *Pennhurst*, 465 U.S. at 117–23).

All of the State Defendants are protected by the Eleventh Amendment here. Plaintiffs have not alleged that the State has waived its immunity to suit in federal court under the Florida Educational Equity Act, and Count 3 of the Complaint should be dismissed on that ground alone. *See Irwin v. Miami-Dade Cty. Pub. Schs.*, No. 06-23029-CIV, 2009 WL 465038, at *3 (S.D. Fla. Feb. 24, 2009) ("Irwin cannot assert state tort claims against an arm of the state in federal court, unless there has been an 'explicitly and definitely stated waiver' of Eleventh Amendment immunity. Fla. Stat. § 768.28(18); *see also Hamm v. Powell*, 874 F.2d 766, 770 n.3 (11th Cir. 1989). Irwin asserts violations of several Florida statutes [including the Florida Educational Equity Act]; however, he does not claim that there is a waiver of Eleventh Amendment immunity with respect to these statutes." (granting motion to dismiss complaint)); *Schultz v. Bd. of Trs.*, No. 3:06cv442, 2007 WL 1490714, at *3 (N.D. Fla. May 21, 2007) ("I find it appropriate that the parties be permitted to submit memoranda on whether Florida has waived its immunity under the Eleventh Amendment so as to permit Plaintiff to assert a claim arising under the FEEA [i.e., the Florida Educational Equity Act] against the State of Florida."); *Schultz v. Bd. of Trs.*, No. 3:06cv442/RS/MD, 2007 WL 2066183, at *1 (N.D. Fla. July 13, 2007) (noting that the court had subsequently "granted the University's motions for partial summary judgment on Plaintiff's Title IX and FEEA claims and dismissed those claims with prejudice").

**2.    Plaintiffs have failed to state a plausible claim for relief available under the Florida Educational Equity Act.**

Count 3 of the Complaint also fails under state law. For one thing, Plaintiffs primarily seek not an injunction but *damages* under that statute, which permits only "equitable relief."

18

§ 1000.05(8), Fla. Stat. Plaintiffs also do not allege the "deliberate indifference" that is a prerequisite to "recovery under the Florida Educational Equity Act" *C.P. v. Leon Cty. Sch. Bd.*, No. 4:03cv65-RH/WCS, 2005 WL 6074568, at \*4 n.9 (N.D. Fla. Aug. 27, 2005) (citing *Hawkins v. Sarasota Cty. Sch. Bd.*, 322 F.3d 1279, 1284 (11th Cir. 2003).). A formulaic and conclusory allegation of "discriminatory acts and omissions" (Compl. ¶ 191) on the basis of the facially neutral Executive Order cannot satisfy the plausibility requirement to state a claim, even under state law, in federal court. *See Bell v. Twombly*, 550 U.S. 544, 555 (2007).

### 3.  The court should not exercise supplemental jurisdiction over Plaintiffs' state-law claim after dismissing their claims under federal law.

Finally, even if the Court were not inclined to dismiss Count 3 under the Eleventh Amendment or state law, once the Court dismisses Plaintiffs' claims arising under federal law, it should decline to exercise further jurisdiction over their state-law claim under 28 U.S.C. § 1367(c)(3) (permitting dismissal of state-law claims if "the district court has dismissed all claims over which it has original jurisdiction") and (c)(4) (permitting dismissal when "there are other compelling reasons for declining jurisdiction"). As this Court has explained in prior cases, "[i]f [any] one § 1367(c) factor is present, the court is within its discretion not to exercise supplemental jurisdiction." *Truman Annex Master Prop. Owners' Ass'n v. United States*, No. 07-10033-CIV-MOORE, 2007 WL 3120282, at \*5 (S.D. Fla. Oct. 23, 2007) (citing *Palmer v. Hosp. Auth. of Randolph Cty.*, 22 F. 3d 1559, 1569 (11th Cir. 1994)). In addition, "[t]he Eleventh Circuit *encourages* district courts to dismiss any remaining state claims when the federal claims are dismissed prior to trial." *Tropical Soup*, 2021 WL 611351, at \*4 (emphasis added). And because questions related to the authority and wisdom underlying the Governor's Executive Order are already being litigated in parallel state-court proceedings (albeit not under Florida Educational Equity Act), the Court should also "choose[] not to exercise supplemental

jurisdiction" over the state-law claim here "based upon the compelling reason that there is a very similar action pending in Florida state court." *Truman Annex,* 2007 WL 3120282, at *5 (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18 (1976) (holding that pending state court actions are not a bar to Federal proceedings, but pending state court action is a factor in deciding whether to dismiss or abstain from adjudication)).

## IV.  CONCLUSION

Plaintiffs have failed to state a claim upon which relief can be granted, or over which this Court has jurisdiction, in any of the three counts in the Complaint. Their claims under federal law should be dismissed for failure to exhaust comprehensive remedies available under the IDEA; *all* of their claims should be dismissed for lack of Article III standing; and their state-law claim should be dismissed for a variety of additional reasons under both federal and state law. The entire Complaint therefore should be dismissed under Federal Rule of Civil Procedure 12(b)(1) and (6).

Respectfully submitted this 30th day of August 2021.


| | |
|---|---|
| */s/ Raymond Treadwell* | */s/ Anastasios Kamoutsas* |
| Raymond Treadwell (FBN 93834) | Anastasios Kamoutsas (FNB 109498) |
| Chief Deputy General Counsel | General Counsel |
| EXECUTIVE OFFICE OF THE GOVERNOR | FLORIDA DEPARTMENT OF EDUCATION |
| The Capitol, PL-5 | Turlington Building, Suite 1244 |
| 400 S. Monroe Street | 325 West Gaines Street |
| Tallahassee, Florida 32399-6536 | Tallahassee, Florida 32399-0400 |
| Ray.Treadwell@eog.myflorida.com | Anastasios.Kamoutsas@fldoe.org |
| Gov.legal@eog.myflorida.com | (850) 245-0442 |
| (850) 717-9310 | |

*/s/ Raymond Treadwell*
Raymond Treadwell (FBN 93834)
Chief Deputy General Counsel
EXECUTIVE OFFICE OF THE GOVERNOR
The Capitol, PL-5
400 S. Monroe Street
Tallahassee, Florida 32399-6536
Ray.Treadwell@eog.myflorida.com
Gov.legal@eog.myflorida.com
(850) 717-9310

*Counsel for Governor Ronald Dion DeSantis*

*/s/ Anastasios Kamoutsas*
Anastasios Kamoutsas (FNB 109498)
General Counsel
FLORIDA DEPARTMENT OF EDUCATION
Turlington Building, Suite 1244
325 West Gaines Street
Tallahassee, Florida 32399-0400
Anastasios.Kamoutsas@fldoe.org
(850) 245-0442

*Counsel for Commissioner Richard Corcoran and Florida Department of Education*

Rocco E. Testani (*pro hac vice*)
Stacey McGavin Mohr (*pro hac vice*)
Lee A. Peifer (*pro hac vice*)
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, N.E., Suite 2300
Atlanta, Georgia 30309
roccotestani@eversheds-sutherland.com
staceymohr@eversheds-sutherland.com
leepeifer@eversheds-sutherland.com
(404) 853-8000

*Counsel for State Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 30, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system.  I also further certify that the foregoing document is being served this day on all counsel of record or all parties identified on the attached Service List in the manner specified, either via electronic transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

*/s/ Raymond Treadwell*
Raymond Treadwell

## SERVICE LIST

Matthew W. Dietz
Stephanie Langer
Disability Independence Group, Inc.
2990 Southwest 35th Avenue
Miami, Florida 33133
mdietz@justdigit.org
slanger@justDIGit.org
aa@justdigit.org
*Attorneys for Plaintiffs*

Natasha S. Mickens
David Delaney
Dell Graham, P.A.
2631 NW 41st Street, Building B
Gainesville, Florida 32606
natasha.mickens@dellgraham.com
david.delaney@dellgraham.com
elizabeth.whisler@dellgraham.com
leann.campbell@dellgraham.com
*Attorneys for Defendant, Alachua County School Board*

Michael T. Burke
Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A.
2455 East Sunrise Boulevard, Suite 1000
Fort Lauderdale, Florida 33304
Burke@jambg.com
Cardona@jambg.com
*Attorneys for Defendant, Broward County School Board*

Jason L. Margolin
Zarra R. Elias
Melissa Torres
Akerman LLP
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
jason.margolin@akerman.com
zarra.elias@akerman.com
melissa.torres@akerman.com
*Attorneys for Defendant, Hillsborough County School Board*

Sara M. Marken
Luis M. Garcia
Jordan Madrigal
The School Board of Miami-Dade County, Florida
1450 NE 2nd Avenue, Suite 430
Miami, Florida 33132
smarken@dadeschools.net
lmgarcia2@dadeschools.net
jordanmadrigal@dadeschools.net
*Attorney for Defendant, Miami-Dade County School Board*

Amy Pitsch
Susana Cristina Garcia
Greenspoon Marder LLP
201 E. Pine Street, Suite 500
Orlando, Florida 32801
amy.pitsch@gmlaw.com
tina.garcia@gmlaw.com
Melissa.spinner@gmlaw.com
*Attorneys for Defendant, Orange County School Board*

J. Erik Bell
Sean Fahey
Anna Patricia Morales Christensen
Laura Esterman Pincus
Lisa A. Carmona
Office of General Counsel
3318 Forest Hill Boulevard, Suite C-331
West Palm Beach, Florida 33406
jon.bell@palmbeachschools.org
sean.fahey@palmbeachschools.org
anna.morales@palmbeachschools.org
laura.pincus@palmbeachschools.org
lisacarmona@palmbeachschools.org
merrie.mckenziesewell@palmbeachschools.org
*Attorneys for Defendant, Palm Beach County School Board*

Dennis J. Alfonso
McClain Alfonzo, P.A.
Post Office Box 4
37908 Church Avenue
Dade City, Florida 33526-0004
DAlfonso@mcclainalfonso.com
Eserve@mcclainalfonso.com
*Attorney for Defendant, Pasco County School Board*

3

Theodore R. Doran
Aaron Wolfe
Carol A. Yoon
Doran, Sims, Wolfe & Yoon
1020 W. Inernational Speedway Boulevard
Daytona Beach, Florida 32114
awolfe@doranlaw.com
cyoon@doranlaw.com
*Attorneys for Volusia County School Board*