# Exhibit - 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:21-cv-22863-KMM

JUDITH ANNE HAYES, individually and on behalf
of W.H., a minor, et. al.,

    Plaintiffs,

v.

GOVERNOR RONALD DION DESANTIS, in his official
Capacity as Governor of the State of Florida; et.al.,

    Defendants.
_____/

## **SECOND DECLARATION OF JUDITH ANNE GARABO HAYES**

COMES NOW, Judith Anne Garabo Hayes and pursuant to 28 U.S.C. § 1748, declares under penalty of perjury that the foregoing is true and correct:

1. My name is Judith Anne Garabo Hayes, and I am over 18 years old and have personal knowledge of the facts as stated herein.

2. I am a resident of Orange County, Florida.

3. My son, W.H., is ten (10) years old and therefore not currently eligible to be vaccinated against Covid-19.

4. W.H. is currently at home. Thus far all my requests for accommodations have been denied. My hope is to be able to return him to school at some point in the near future.

5. W.H. has been identified by Orange County public schools as a student in need of exceptional student education supports and services and has been provided with an individualized education plan (IEP). He was so identified in early 2014 when transitioning from Early Steps, which provided speech, occupational and physical therapy to him since birth as a direct result of his Down syndrome diagnosis.

6. W.H. is educated on an access point or modified curriculum that was put in place during the 2020-21 school year. Prior to that time, he had continuously been educated in a general education classroom with general education curriculum, which he accessed with supports including but not limited to a paraprofessional and minor modifications such as limitation of choices on multiple choice tests.

DocuSign Envelope ID: B12A5764-5B1E-4C78-8628-07878BAE02E7

7. Down syndrome in and of itself renders W.H. Several times more susceptible to severe illness, hospitalization or death should he contract Covid-19. It is of the utmost importance to shield him from the virus, and we have undertaken drastic measures to do so since March of 2020. In addition to the physiological complications of the virus, his communication skills render it difficult for him to convey that he is feeling poorly and could delay treatment or otherwise hinder potential recovery.

8. W.H. had always attended the same public k-8 school in a general education classroom. He has never before been segregated or separated from his same age peers. He enrolled in his current school in February of 2014 and has remained enrolled continuously since. In March of 2020, he pivoted to virtual instruction along with the rest of his class, and continued to receive instruction and related services virtually throughout the summer. In August of 2020, he was placed into an all-virtual third grade class and remained so throughout the school year. At the end of the 2020-21 school year, virtual services were eliminated and foreclosed his opportunity to attend Extended School Year summer school, which he ordinarily would have done.

9. School began on August 10, 2021. Orange County Public Schools had rescinded their previous mask policy on or about July 13, 2021. It was replaced with a temporary mask "mandate" that allowed parents to opt their children out by simply signing and sending in a note. This opt-out provision rendered the ersatz mask "mandate" useless and ineffectual to protect W.H. and others from becoming infected. The governor's executive order dated July 30, 2021, threatening to defund any districts imposing a reasonable and necessary mask mandate is rendered school inaccessible to our child. The state has actually withheld funds in two school districts thus far.

10. Prior to the start of the school year, on August 4, 2021, I requested a reasonable accommodation to allow for W.H. to appear in his classroom virtually, until it became safe for him to return to school once vaccinated, with a universal mask mandate, and with the school following the CDC guidelines related to social distancing, contact tracing and the like. This request was made of his IEP team which included the school principal, local education authority, staffing specialist, and district ESE representative.

11. The district denied my request for an accommodation because, according to the district, the education commissioner's directive from April 2021 forbade them from offering a virtual accommodation even where, as here, it was reasonable and cost effective and helped to keep W.H. in the least restrictive placement. Their plan was to place W.H. in an already overcrowded classroom without adequate ventilation or social distancing and without any assurance that other students and adults would be wearing masks. This would have placed him in an untenable situation and was completely unacceptable.

12. The district suggested that if we opted not to send him to school in person, we should register W.H. with hospital homebound as our only option to remain enrolled in public school. W.H., however, does not qualify for hospital homebound. The other option presented to us was to withdraw him from his zoned public school and register with Florida Virtual School, which does not provide any of the support services he requires, nor does it

provide any direct instruction on a modified curriculum. That would require significant support from me during the school day, and I am not trained to provide that kind of support. None of these options would have provided W.H. with a free and appropriate public education.

13. We, his parents, then had to decide whether to send him back to public school in person, in an unsafe environment, risking significant harm to his health and safety, or lose his IEP plan and the supports and services contained therein, which we had worked to secure for more than seven years.

14. At the time (early August 2021), the Delta variant was shredding its way through the community. Kids were starting to get sicker, and more frequently. The school system was wholly unprepared to meet the challenge of managing this outbreak. We were still sheltering W.H. at home, barely even taking him out for an occasional visit with his vaccinated grandparents. He was not socializing with any peers or participating in the sports he had enjoyed prior to the pandemic like tennis and soccer. He was not visiting theme parks or going on vacation or even eating meals in his favorite restaurants. Prior to the pandemic, W.H. enjoyed a robust social life and thrived on visiting with friends, family, and acquaintances, as well as experiential learning opportunities like grocery shopping with me, learning to count money and add up sums, practicing reading labels and other life skills. He got to know all the local vendors by name - his barber, the fishmonger, the clerks at the library, his friends' parents and grandparents.

15. The pandemic has dampened his participation in many life activities and losing his involvement in his education as well has been devastating to him. Having been at the same school since he was three, along with his big brother whom he idolizes, was a tremendous learning experience for him as well as other children and adults who may not have interacted with a child who has Down syndrome before. He liked to help with putting library books away, maintain the classroom schedule, and scale the monkey bars at recess with terrifying aplomb. All of that is a distant memory now.

16. I decided to keep W.H. home and not send him to school, because his health and safety are of paramount concern. Without assurances that the school would be willing and able to take the simplest and most reasonable measures to protect him - such as universal masking - we simply could not risk his health and safety to obtain an education.

17. After a mask mandate was put into place, it was still too dangerous for W.H. to return to school because of the number of students how have been able to opt out of the mandate. The ability to obtain a letter from even a chiropractor has made the mandate illusory. The class W.H. is slated to return to has students who are not required to wear a mask because they have been able to opt out.

18. He has now lost the benefit of the supports and services contained in his IEP and is not receiving any formal education. At this point, it seems most likely that he will go through life with the functional equivalent of a third-grade education. I have become his teacher, paraprofessional, services provider and support provider. He is still able to read short

DocuSign Envelope ID: B12A5764-5B1E-4C78-8628-07878BAE02E7

  sentences and write simple words, and we are working to maintain his accomplishments in arithmetic, but he is not learning anything new.

19. He has lost the benefit of the supports and services contained in his IEP.

20. My older son, who is 13 and fully vaccinated, attends the same school in person but on a reduced schedule to limit his exposure to unvaccinated and unmasked teachers and students. He comes home before lunch to avoid high traffic situations in the school building. He has been elected class representative for the student government association and was selected to be the president of the school's National Junior Honor Society chapter, and we are hoping to find a safe way for him to participate in those extracurricular activities without imperiling his brother. He had to forego two electives he enjoyed virtually last year with his peers, journalism and Spanish, and he has stopped playing tennis, which he had been playing one or two days per week prior to the Delta variant outbreak. In addition, when my older son comes home from school, he immediately removes his clothing and showers before he is allowed to interact with his brother, W.H. In school he wears two masks (one n95 and one cloth) and we have had him tested for Covid after any possible Covid exposure call from the public schools. This has happened twice since school began on August 10.

21. I had returned to work full time practicing law in 2019, after having practiced part-time off and on for many years since having children. At that time, with my children in second and sixth grade, I was able to manage a full-time job. When the school closed in March 2020, I was no longer able to do so, and have not been able to return to work since. I am an attorney by profession, I have been continuously licensed by the Florida Bar since 1999, and I am not a teacher or service provider. My husband has also not returned to his physical office and works from home when practical, which is the majority of the time. This is primarily intended to limit exposure for W.H.

22. I am continuing to reach out to the district to find an accommodation that the district will approve that provides an appropriate and inclusive education for my son, W.H. There is finally a meeting schedule with the district on September 10th. If the district will agree to accommodations, such as mask wearing in his classroom by the staff and students, safe place to eat lunch, regular testing for those who are unmasked for medical reasons, then I will return W.H. to school.

23. During this time, the district has provided no education or supports or services to W.H. He last attended class and received speech and occupational therapies virtually in May of 2021.

24. Throughout W.H.'s life, we have fought tooth and nail to help him obtain an education. In 2014, we sold our home and moved to a different school zone where he could be accommodated in a varying exceptionalities prekindergarten. I have sacrificed my legal career to care for and educate him, with the reasonable expectation that he, like his typical brother, would at some point be sufficiently integrated in public school that I could return to work. We have done our level best to educate him, but we are not educators, and should be entitled to rely on a robust and accessible taxpayer-funded public education system to

do so. The physical, emotional, mental, social, and financial toll the pandemic has exerted on our family has been exacerbated by the school system's failure to meet the needs of our child.

FURTHER DECLARANT SAYETH NAUGHT.

_____     9/3/2021
Judith Anne Garabo Hayes            _____
                                    Date