# Exhibit - 7

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:21-cv-22863-KMM

JUDITH ANNE HAYES, individually and on behalf
of W.H., a minor, et. al.,

    Plaintiffs,

v.

GOVERNOR RONALD DION DESANTIS, in his official
Capacity as Governor of the State of Florida; et.al.,

    Defendants.
_____/

## SECOND DECLARATION OF TOM COLLINS

COMES NOW, Tom Collins and pursuant to 28 U.S.C. § 1748, declares under penalty of perjury that the foregoing is true and correct:

1. My name is Tom Collins, and I am over 18 years old and have personal knowledge of the facts as stated herein.

2. I am a resident of Palm Beach County, Florida.

3. My son, Q.C., is ten (10) years and not eligible for a vaccine.

4. Q.C. has been identified by the Palm Beach County public schools as a student with a disability and has been provided with a 504 plan.

5. School began on August 10, 2021.

6. I kept our children out of school for the first three days of the school year, worried about the risk due to the Delta variant.

7. My wife and I work so we finally decided to send them to school but had to direct them to keep their distance from any child not wearing a mask, especially when indoors. Forcing them into this constant vigilance in the name of their own health and safety in school was only necessary because of the lack of a universal mask mandate. The ability to maintain distance in school seems limited. My children have reported sitting close to one another, sometimes on rugs inside the classroom with unmasked children next to those with masks.

8. On Aug. 23, a universal mask mandate was put into effect by the school board, helping to ease this worry and strain.

9. But I am concerned that if the governor's executive order is not ruled to be unlawful by the court, masks will again become optional, and the health risk will increase again and my children will be required again to stay on the lookout for children with masks so that they can avoid getting too close.

10. When my children returned to school, I asked that they be released to me during lunchtime, so that they could avoid being in a crowded environment where they are not masked and no other children are wearing masks. We were told by the principal, "That is something that I'm not able to accommodate."

11. This left me in the position either of putting my son in an environment where he would be at a much higher risk of infection or forcing the issue in an adversarial way with the leadership of the school my son attends. To protect the health of my son, I chose the latter.

12. After obtaining a note from their pediatrician and sending an attorney letter to the school and school district, the request was granted. The process of lunch release has gone smoothly, but I worry that if I'm late by a minute or two arriving or returning him to school, this arrangement could be revoked, considering that the school made it clear that it never wanted to put the arrangement in place to begin with. And the process of getting to that point was stressful, time-consuming and unpleasant.

13. I am now taking him out for lunch every day, between 11:15 and 11:45.

14. I am also taking our other child out of school for lunch every day, between 11:50 and 12:20, in part to limit the risk of him becoming infected so that he doesn't then risk infect his brother who has asthma.

15. We are now more inclined to say no to invitations even to outdoor gatherings that we would otherwise have attended. We are not eating in restaurants, even in outdoor settings. We are limiting trips to the homes of family, such as grandparents and aunts and uncles, and when we do make those trips, we are masking indoors.

16. My time for work during the day is considerably reduced due to having to pull my children out of school for lunch every day. Including the drive, it's a process that takes 1 hour, 45 minutes a day.

FURTHER DECLARANT SAYETH NAUGHT.

*Thomas Collins*　　　　　　　　　　　9/3/2021
_____　　　_____
Tom Collins　　　　　　　　　　　　　Date