IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:21-cv-22863-KMM

JUDITH ANNE HAYES, individually and on behalf
of W.H., a minor, et. al.,

    Plaintiffs,

v.

GOVERNOR RONALD DION DESANTIS, in his official
Capacity as Governor of the State of Florida; et.al.,

    Defendants.
_____/

## PLAINTIFF'S RESPONSE TO THE SCHOOL DISTRICT OF PALM BEACH MOTION TO DISMISS

**COMES NOW**, Plaintiffs, JUDITH ANNE HAYES, individually and on behalf of W.H., a minor., et al., by and through the undersigned counsel, and hereby files response to the Motion to Dismiss filed by the School Board of Palm Beach County [DE-48], and states as follows:

In response to Plaintiffs' Complaint, Palm Beach County submitted a perfunctory Motion to dismiss stating that the Plaintiffs failed to exhaust administrative preconditions. In the "Preliminary Injunction" statement, the School Board also alleges that the matter is moot, since the "Executive Order being challenged in this matter has no bearing upon plaintiff's located in Palm Beach County, and Palm Beach takes no position as to the merits of Plaintiffs' claims for injunctive relief.." DE 48, p. 2. In the motion, the Defendant fails to even mention the claims that the individual plaintiffs have or how they could be precluded under <u>Fry</u>.

    I.    **Facts:**

In this matter, the Plaintiffs who live in Palm Beach County are Amanda Banek, Alisha Todd and Tom Collins. [DE 1, p 3-5]. Two of Ms. Banak's sons, D.B., who is 5, and B.B. who is

12, both have asthma and have been identified by their schools as children with disabilities. DE1, p. 21-22. Their doctors advised Ms. Banek that it is to dangerous for them to go to school in person when their school does not follow the CDC guidelines, which includes mandatory masking and regular testing. DE 1, p. 22. The Baneks do not want to place their children in virtual school as it does not have the supports, services and accommodations their IEPs and they are not with their peers. Id.

Alicia Todd's son, J.T., is ten years old, is medically complex and has been identified by her school as a child with a disability. He lives with an autism spectrum disorder. Hyperekplexia and also has a Chiari malformation. Id. Hyperekplexia is a rare hereditary, neurological disorder and Chiari malformation is a problem in which a part of the brain (the cerebellum) at the back of the skull bulges through a normal opening in the skull where it joins the spinal canal. Id. This puts pressure on parts of the brain and spinal cord. Id.

Because of his developmental disability, he is on the Access Points curriculum which is modified for those with developmental or intellectual disabilities. Id. There are no options for distance learning for J.T. because the school is not permitted to offer the same type of services for J.T. with the same curriculum as he could receive if he attended school. Id. at 23. In fact, Palm Beach Schools stated that he should go outside the district to get the services which would provide him an equal education. Id. J.T. had brain surgery for his Chiari malformation on June 29, 2021, and his doctors have advised that it is too dangerous for J.T. to go to school in person when their school does not follow the CDC guidelines, which includes mandatory masking and regular testing. DE 1, p. 23, DE 90-3, p. 2

J.T. has been waiting to go on the Hospital Homebound program that isolates him for learning at home. DE 80-3, p. 1-2. Ms. Todd would absolutely want J.T. to attend school in-person

Hayes. v. DeSantis
Case No.: 1:21-cv-22863-KMM
Page 3 of 11

as he receives significant support in school to work on social skills and peer interaction, two skills that he is not able to practice virtually or in hospital-homebound. DE 80-3 p. 2. To date, J.T., has not received any direct instruction this year. Id. When she first learned that Palm Beach has implemented a mask mandate without parental opt out, Ms. Todd was advised that children would remain unmasked and that there would be no social distancing, portable air units or any other safety protocols. Id. at 3. She offered to purchase air purifiers, but her offer was refused. Id. Ms. Todd is still in constant contact with the school to find a method to allow him to attend safely and cannot leave the school system because he will then lose his rights to an IEP or the supports and therapies that he can receive in the schools. Id. at 3.

Tom Collins son Q.C. is ten years old and has asthma and anxiety and has been identified by his school as a child with a disability. DE1, p. 28. Q.C's doctors have also advised that it is too dangerous for him. to go to school in person when their school does not follow the CDC guidelines, which includes mandatory masking and regular testing. DE 1, p. 23. Mr. Collins kept his children out of school for the first three days of the school year, but then decided to send them back to school and directed them to be extra vigilant. DE 80-7, p. 1  During the mask mandate, he picks his kids up for lunch so they are not around kids who are not wearing masks or social distancing. Id at p. 2. He is concerned when the Mask mandate expires or if the Governor's order is not ruled unlawful, and his children will be at increased risk. Id.

The Pam Beach County School Board implemented a mask mandate on August 20, 2021, ten days after school had started. Prior to the policy on August 20th, more than 10,000 district

students provided a parental opt-out and were maskless.[1] On April 18th, the Palm Beach County School Board passed a mask mandate without a parental opt-out to be in effect as of August 20, 2021. Policy 5.326 Student Protocols due to COVID-19.[2] The District Safety Guidelines required mandatory masking, unless a disability prevented the wearing of a mask, social distancing, and left the door open to other safety protocols. See Id.,¶3. However, the policy expires in 90 days from August 18th or, can be unilaterally suspended, revoked, or rescinded by the superintendent based upon updates from the CDC, State or Local Authorities. Id.at ¶ 11. This policy was not limited to classrooms, but affected transportation to and from the school, as well as all programs and services of the schools.

On the same day that the emergency masking procedures were amended to require students wear a mask, the guidelines for employees were amended to comply with the CDC, State and local guidelines. See Policy 3.82, amended 8/18/2021.[3] Similar to the child standards, this policy had always required social distancing and masking. Id. at p. 5. Lastly, the visitation protocols on District Property had always been to have masking and social distancing in compliance with CDC guidelines and to ensure masking and social distancing. See Policy 2.065[4]

After the mask mandate was implemented, they were threatened with sanctions by Commissioner Corcoran and the Department of Education [DE 80-15] and described the "explosion" of COVID-19 cases that caused this change after a week and a half:

---

[1] https://www.palmbeachpost.com/story/news/education/2021/08/18/palm-beach-county-public-schools-cancel-mask-opt-out-students/8190024002/ ; https://www.palmbeachpost.com/story/news/education/2021/08/12/1-25-palm-beach-county-students-opt-out-wearing-masks/8107737002/
[2] https://go.boarddocs.com/fl/palmbeach/Board.nsf/goto?open&id=C63KZ55315E8
[3] https://go.boarddocs.com/fl/palmbeach/Board.nsf/files/C5TU9V7B0604/$file/Policy%203.82%20-%20EMERGENCY%20ADOPTION%20-%20081821.pdf
[4] https://go.boarddocs.com/fl/palmbeach/Board.nsf/files/C6EMF75AFC3E/$file/Policy%202.065%20Visitation%20Protocols%20on%20District%20Property%20due%20to%20COVID-19.pdf

> The Policy was adopted after the experience of operating schools for a week and a half and seeing an explosion of COVID-19 cases. Cases have continued to soar. In the three weeks since school opened on August 10, the District has 3,470 reported cases of COVID-19 involving students and staff on our campuses. In the entirety of the 2020-2021 school year, the District had a total of 3,800 reported cases. The Policy is reasonable and there is not a less restrictive means in light of the lack of available vaccines for the majority of school-age students and the requirement that the Board provide in-person instruction.

[DE 80-15, p. 5].

II.     **Standard of Review**:

The Plaintiffs' complaint pleads sufficient facts and the law to withstand a motion to dismiss. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted if the allegations in the complaint fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the formal sufficiency of the allegations of claims for relief. The dismissal of a complaint is warranted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Glover v. Liggett Group, Inc., 459 F.3d 1304, 1308 (11th Cir. 2006).

When ruling on a motion to dismiss under Rule 12(b)(6) a court "accepts that allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Those "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 570). In short, the complaint cannot

merely allege misconduct, but must demonstrate that it is plausible that the pleader is entitled to relief. Id.

### III. There is no requirement to exhaust Plaintiffs claims under the IDEA

The Defendant contend that the Plaintiffs were required to exhaust administrative preconditions under the Individuals with Disabilities in Education Act. (IDEA), 20 U.S.C. § 1415(l). Section 1415(l) requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit "seek[s] relief that is also available" under the IDEA. Exhaustion is also not required if exhaustion would be futile or the relief available inadequate. N.B. by D.G. v. Alachua Cty. Sch. Bd., 84 F.3d 1376, 1379 (11th Cir. 1996); M.T.V. v. DeKalb County School District, 446 F.3d 1153, 1159 (11th Cir 2006).

In Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743, 753–54, 197 L. Ed. 2d 46 (2017), the Supreme Court found that the role of a hearing officer under the IDEA is to enforce a child's "substantive right" to a free appropriate public education (FAPE). Id. (*quoting* Smith v. Robinson, 468 U.S. 992, 1010, 104 S.Ct. 3457, 82 L.Ed.2d 746. (1984). When an action does not involve educational methods, and instead involves other types of disability discrimination, such as physical access or integration or transportation, exhaustion is not required. Id. To determine if exhaustion is required, the Fry Court offered a test of two hypothetical questions as follows:

> One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that

> subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

Fry, 137 S. Ct. at 756.

The widespread nature of cases across the United States regarding the validity and extent of the use of masks as preventative measures extends from public accommodations, such as retail stores, Pletcher v. Giant Eagle Inc., 2020 WL 6263916, at *1 (W.D. Pa. 2020)(grocery store); Emanuel v. The Walt Disney Co., 2021 WL 2454462, at *2 (E.D. Pa. 2021)(Disney Store); governmental entities, Blandino v. Eighth Judicial Dist. Court in & for County of Clark, 478 P.3d 936 (Nev. App. 2021)(court); Chew v. Legislature of Idaho, 512 F. Supp. 3d 1124, 1126 (D. Idaho 2021)( legislature); Ahlman v. Barnes, 445 F. Supp. 3d 671, 688 (C.D. Cal. 2020) (prison), Costa v. Bazron, 464 F. Supp. 3d 132 (D.D.C. 2020)(psychiatric facilities); and to the extent that this case involves accommodations at places of work, the EEOC has established guidelines for employers. *See* Coronavirus and COVID-19, found at https://www.eeoc.gov/coronavirus. Furthermore, as to the second question, an adult at the school, such as an employee or visitor, could file a claim under Section 504 or the ADA for the same claim. In this mater, Palm Beach County Schools created a similar rule for employees and for visitors.  There is nothing that would prevent visitors or employees them from bringing the identical case – had the Governor decided that employees and visitors can enter unmasked.  As such exhaustion is not required.

Notably, the injury in this case is that the failure to have a mask mandate without parental opt-out, or other health-related protections would exclude a child from a school, would segregate them from other children or would subject them to increased bodily harm. This would not only

include a classroom, but would also include transportation, hallways and bathrooms in a fully integrated school setting. The policy is specific in covering issues other than solely education. This is distinguishable from situations in which the use of a mask would affect the child's ability to learn. Whether a mask would hinder learning, whether the learning is academic or social, is a question of educational methods that would require exhaustion though the IDEA. *See* Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 207, 102 S. Ct. 3034, 3051, 73 L. Ed. 2d 690 (1982)("[C]hoosing the educational method most suitable to the child's needs [] was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child."). Safety is not an educational method; thus exhaustion is not required.

In addition to the Fry test, the exhaustion of the administrative remedies under the IDEA is not required where resort to administrative remedies would be 1) futile or 2) inadequate. N.B. by D.G. v. Alachua Cty. Sch. Bd., 84 F.3d 1376, 1379 (11th Cir. 1996); M.T.V. v. DeKalb County School District, 446 F.3d 1153, 1159 (11th Cir 2006). Exhaustion is not required in very limited circumstances, such as where exhaustion is futile or inadequate, where the question presented is purely legal, where the administrative process cannot grant relief, or where exhaustion would work a severe or irreparable harm upon a litigant. D.M. v. New Jersey Dept. of Educ., 801 F.3d 205 (3d Cir. 2015). Springer v. Wal–Mart Assocs. Group Health Plan, 908 F.2d 897, 901 (11th Cir.1990)(To substantiate a claim of futility the Petitioners must make a "clear and positive" showing of futility); *see also* McGraw v. Prudential Ins. Co. of Am., 137 F.3d 1253, 1264 (10th Cir.1998) (noting that futility exception is limited to those situations where resort to administrative remedies would be "clearly useless").

In this matter, a hearing officer would not be able to address a child's "substantive right" to a FAPE, such as requiring other students to wear masks, especially when such relief violates Florida law. Further, an administrative court does not have jurisdiction over the Governor, the Commissioner of Education, or the Department of Education. P.J.S. v. School Bd. Of Citrus Cty., 951 So. 2d 53 (Fla. 5th DCA 2007). Hearing officers can only resolve disputes between a parent and a school district. See 20 U.S.C. § 1415(f)(1)(A).

In this case, the facts themselves demonstrate the futility of administrative processes. For J.T., his mother was advised that if she wanted virtual schooling similar to what was available for Palm Beach County neurotypical children, she would need to have J.T. attend virtual school in Hendry county. His only option, because of the restrictions on what could be done, was hospital-homebound, which leaves him without the social instruction that he needs. Further, with the children with asthma, there is nothing that an administrative law judge could or could not do to other children in the classrooms, lunch room, hallways, or school busses. This physical segregation is the exact harm the ADA was meant to address that is not addressed by the IDEA, as suchm such relief would be futile and inadequate. See Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 119 S. Ct. 2176, 144 L. Ed. 2d 540 (1999).

**IV.  This matter is not moot**

In Roman Cath. Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 208 L. Ed. 2d 206 (2020), the Supreme Court recently analyzed the mootness issue when analyzing the changing restrictions due to the effect of the surges in the COVID-19 pandemic with regards to the limitations placed on places of worship. In doing so, the Court stated:

> The dissenting opinions argue that we should withhold relief because the relevant circumstances have now changed. After the applicants asked this Court for relief, the Governor reclassified the areas in question from orange to yellow, and this change means that the applicants may hold services at 50% of their maximum occupancy. The dissents would deny relief at this time but allow the Diocese and Agudath Israel to renew their requests if this recent reclassification is reversed.
>
> There is no justification for that proposed course of action. It is clear that this matter is not moot. See Federal Election Comm'n v. Wisconsin Right to Life, Inc., 551 U.S. 449, 462, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007); Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). And injunctive relief is still called for because the applicants remain under a constant threat that the area in question will be reclassified as red or orange. See, *e.g.*, Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014). The Governor regularly changes the classification of particular areas without prior notice. If that occurs again, the reclassification will almost certainly bar individuals in the affected area from attending services before judicial relief can be obtained. At most Catholic churches, Mass is celebrated daily, and "Orthodox Jews pray in [Agudath Israel's] synagogues every day." Application in No. 20A90, at 4. Moreover, if reclassification occurs late in a week, as has happened in the past, there may not be time for applicants to seek and obtain relief from this Court before another Sabbath passes. Thirteen days have gone by since the Diocese filed its application, and Agudath Israel's application was filed over a week ago. While we could presumably act more swiftly in the future, there is no guarantee that we could provide relief before another weekend passes. The applicants have made the showing needed to obtain relief, and there is no reason why they should bear the risk of suffering further irreparable harm in the event of another reclassification.

Roman Cath. Diocese of Brooklyn, 141 S. Ct. at 68–69. In this mater, the Governor decided to implement an Executive Order for a parental opt-out for a mask mandate on July 30, 2021, knowing that school began on August 10th. As of August 20th, Palm Beach County Schools had almost 3,500 children and staff infected when the new policy was implemented. The new policy which has been in place for the past two weeks is in effect for either 90 days, or at the total discretion of the superintendent.[5] Furthermore, the Commissioner of Education and the

---

[5] 'This emergency modification of this policy shall remain in effect for a period of no more than ninety (90) days from the date of the adoption. The Superintendent may suspend/revoke/rescind portions of this policy based on the updates/available information from the CDC, State, or local authorities regarding COVID-19 cases." Palm Beach County School Board Policy 5.326 ¶ 11.

*Disability Independence Group, Inc.  * 2990 SW 35th Avenue* Miami, FL 33133*

Department of Education has threatened to withhold the salaries for all of the members of the school board if this policy is not suspended/revoked/rescinded. D.E. 80-15.

In this matter the plaintiffs have been asking for relief prior to thousands of children have been infected, before the infection led to the change in the policy, before the threats from the governor, and there is nothing that would indicate that this case was moot, and the cycle of removing restrictions and infections would not begin anew.

**WHEREFORE,** Plaintiffs, JUDITH ANNE HAYES, individually and on behalf of W.H., a minor., et al., respectfully requests that this Court DENY the Defendant's motion to dismiss and grant any further relief as this court deems just and equitable.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 6, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties and counsel of record, or in some other authorized manner for those counsel or parties who are not authorized to receive notices electronically.

By: /s/*Matthew W. Dietz*
Matthew W. Dietz, Esq.
Florida Bar No. 84905
Stephanie Langer, Esq.
Florida Bar No. 149720
2990 Southwest 35th Avenue
Miami, Florida 33133
T: (305) 669-2822 / F: (305) 442-4181
slanger@justDIGit.org
mdietz@justdigit.org
aa@justdigit.org