IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:21-cv-22863-KMM

JUDITH ANNE HAYES, individually and on behalf
of W.H., a minor, et. al.,

    Plaintiffs,

v.

GOVERNOR RONALD DION DESANTIS, in his official
Capacity as Governor of the State of Florida; et.al.,

    Defendants.

_____/

### PLAINTIFFS' RESPONSE TO THE MIAMI-DADE SCHOOL BOARD'S MOTION TO DISMISS [DE-70]

**COMES NOW**, Plaintiffs, JUDITH ANNE HAYES, individually and on behalf of W.H., a minor., et al., by and through the undersigned counsel, and hereby files response to the Motion to Dismiss filed by the Miami-Dade School Board [DE-70], and states as follows:

In response to Plaintiffs' Complaint, The Miami-Dade School Board (MDSB) asserts that the Plaintiffs do not have claims against MDSB as they have been rendered boot by authorizing a policy on August 18th, and therefore, the Plaintiffs' claims are moot, otherwise, plaintiffs' claims have not exhausted the administrative requirements of the IDEA. The Defendant's temporary change in policy does not render Plaintiffs'' claims moot, and the Miami-Dade child, L.M., who has asthma, as well as an IEP, does not need to exhaust administrative preconditions to obtain this exigent relief.

    **I.**    **Facts:**

**A. Miami-Dade Parents John and Robyn McCarthy**

In this matter, the Plaintiffs who lives in Miami-Dade are Robyn and John McCarthy. (DE 1, p.2). The McCarthys are the parents of L.M., who is a six-year-old boy who has severe asthma, which is addressed through a 504 plan at their school. Id at p.3, 20. The McCarthy's were advised by L.M.'s doctor that it would be dangerous for him to return to school without following CDC guidelines, such as mandatory masking, and regular testing in schools. He attends a school with a magnet program, and if stays home, he will lose his spot in this program. Id. When school started on August 23rd, she discovered the classrooms were crowded and there was no room to social distance, and she was so concerned that she arranged to bring him home for lunch, as the students were unmasked during lunch and not socially distanced. DE 80-5, p. 2-3.

**B. Miami-Dade County School Board Facts:**

After this complaint [DE-1] was filed on August 6th, and Broward and Alachua Counties chose to implement mask mandates without a parental opt-out, the Miami-Dade County School Board met and debated the issue of parental opt outs. On August 18th, five (5) days prior to the start of the school year, MDSB adopted a temporary measure for requiring facial coverings as follows:

> 2.  update the implementation of the Board policies granting the Superintendent the authority to control communicable diseases and the spread of COVID-19, by authorizing the Superintendent to ~~explore the feasibility of requiring~~ **temporarily require, in a manner consistent with School Board policies and based on local COVID-19 positivity rates**, facial coverings for all students, **except those with medically endorsed accommodations, as defined in s. 1003.22 of the Florida Statutes. In addition, the requirement shall apply to all employees, contractors and visitors while inside M-DCPS school buildings** ~~except for students whose parents exercise their right to affirmatively elect not to have their child wear facial coverings in school;~~ **and while all students are on school buses. The Superintendent shall continuously review and assess local positivity rates and use such data and related information to modify and /or discontinue any established protocols and/or requirement for facial coverings. A written update shall be provided to the School Board on any modifications to protocols and/or requirement for facial coverings on a weekly basis.**

DE 70-1, p. 10-11 (emphasis, strike throughs and underlining in original). This board agenda was implemented at the start of school. The following changes are notable (1) it was a change from the policy existing at the time of the filing of the complaint that allowed a parental opt-out; (2) it is temporary and at the full discretion of the superintendent; (3) it applies to all school buildings and transportation; and (4) it applies to students, employees, contractors and visitors.

As with the other county school boards that had failed to implement the parental opt-out requirement of the executive order and the rules promulgated pursuant to the executive order, the Commissioner of Education, Defendant Richard Corcoran, sent a letter attempting to enforce Emergency Rule 64DER21-12 from the Florida Department of Health and threatened sanctions to MDSB, on August 27th for not allowing the parental ability to opt-out of a face covering or mask. See 80-20. On September 1, 2021, MDSB responded to Commissioner Corcoran's threatening letter, and stated that they were complying with the health needs of the student and the community, especially Judge Cooper ruling in Scott v. DeSantis, that is currently stayed and subject to appeal in the First District Court of Appeal. Id.

**II.    Standard of Review:**

The Plaintiffs' complaint pleads sufficient facts and the law to withstand a motion to dismiss. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted if the allegations in the complaint fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the formal sufficiency of the allegations of claims for relief. The dismissal of a complaint is warranted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Glover v. Liggett Group, Inc., 459 F.3d 1304, 1308 (11th Cir. 2006).

When ruling on a motion to dismiss under Rule 12(b)(6) a court "accepts that allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Those "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 570). In short, the complaint cannot merely allege misconduct, but must demonstrate that it is plausible that the pleader is entitled to relief. Id.

### III. Justiciability and Necessary Parties

In this matter, SBHC is a necessary and indispensable party. There is no question that the State Defendants would have filed a motion to dismiss in this matter for failure to add in necessary and indispensable parties under Rule 19, Fed.R.Civ.P. if the School Boards were not added in as necessary and indispensable parties as the Governor and the other State Defendants direct their authority through the school districts. In fact, In the State Defendants' Motion to Dismiss, the State Defendants asserted that by not naming the Florida Department of Health, the plaintiffs' injuries could not be redressed under Support Working Animals, Inc. v. Governor of Fla., 8 F.4th 1198 (11th Cir. 2021). In the same way, the failure to add in the School Boards would not address the parties that are obligated to implement the unlawful rules, promulgated, and enforced by the State Defendants.

As background, the Governor issued his executive order, E.O. 21-175, on July 30, 2021.[1] The executive order directed the Florida Department of Health and the Florida Department of Education, working together, to immediately execute rules that would "protect parents' right to make decisions regarding masking of their children in relation to COVID-19."

In response to the Executive Order, on August 6, the Plaintiffs filed their Complaint [DE 1] and Preliminary Injunction [DE 3]. Later that same day, the Florida Department of Health and Florida Department of Education promulgated rules, including Rule No. 64DER21-12, which "conforms to Executive order Number 21-175" and directed that "Students may wear masks or facial coverings as a mitigation measure; however, the school must allow for a parent or legal guardian of the student to opt-out the student from wearing a face covering or mask."[2]

In this case, the Governor and the State Defendants authorized actions against school districts that refused to comply with Florida Law and make school unsafe for children with disabilities by allowing them to be exposed, and at higher risk of becoming infected with COVID-19. At the time this suit was filed, there was a direction that the executive order be implemented and enforced upon the school districts. As such, the Plaintiffs could not cite or enjoin the inchoate rules. The Governor took no action directly against the plaintiffs; however, all action was through a school district which would have no option but to enforce the law or be in continual defiance of the law. Rule 19 was specifically enacted to ensure that all parties would be in a case to prevent inconsistent obligations in the event of declaratory or injunctive relief.

---

[1] [Governor DeSantis Issues an Executive Order Ensuring Parents' Freedom to Choose (flgov.com)](#)
[2] https://www.flgov.com/wp-content/uploads/2021/08/8.6.21-DOH-Rule.pdf

Under Rule 19(a) of the Federal Rules of Civil Procedure, participation of the County School Boards is required for a just adjudication of this matter. First, complete relief cannot be granted in the County's absence. Rule 19(a), Fed. R. Civ. P. provides as follows:

(a) Persons Required to Be Joined if Feasible.

  (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

  (A) in that person's absence, the court cannot accord complete relief among existing parties; or

  (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

   (i) as a practical matter impair or impede the person's ability to protect the interest; or

   (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19. This rule in equity predates the Federal Rules and the following rationale of the 1854 Supreme Court in Shields v. Barrow is still binding:

> The court here points out three classes of parties to a bill in equity. They are: 1. Formal parties. 2. Persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. These persons are commonly termed necessary parties; but if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties. 3. Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience,

Shields v. Barrow, 58 U.S. 130, 139, 15 L. Ed. 158 (1854); *followed* by Haas v. Jefferson Nat. Bank of Miami Beach, 442 F.2d 394, 396–397 (5th Cir. 1971). In this case, there is no question that the language is traceable to the Executive Order and its implementation through the

Department of Education, its commissioner, to SBHC. The obligations as stated by this Court should not be subject to differing courts from differing districts as to whether this law, as applied to each of the School Boards as well as the Department of Education and should be interpreted in a uniform matter for a uniform remedy.

> "Inconsistent obligations" are not ... the same as inconsistent adjudications or results. Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident. Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum.

Delgado v. Plaza Las Ams., Inc., 139 F.3d 1, 3 (1st Cir.1998) (per curiam) (citations omitted); accord Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ., 584 F.3d 253, 282 (6th Cir.2009) (en banc); Winn-Dixie Stores, Inc. v. Dolgencorp, LLC, 746 F.3d 1008, 1040 (11th Cir. 2014).

Furthermore, the issue regarding whether the implementation of the Executive Order into Rule No. 64DER21 -12, then to the Commissioner's enforcement of the rule, is of no effect as to the School Boards.  For purposes of the School Boards, they are subject to pressure from the State of Florida to violate their student's rights under the ADA and the RA.  The State Defendants have threatened to take further actions other than cutting state funding from the School Board defendants.  As to Defendants MDSB, this Defendants had permitted implemented a parental opt-out rule until August 18. This new rule is only temporary and can be revoked at the discretion of the superintendent.

Mr. and Mrs. McCarthy were aware of the imminent danger to their child from the promulgation of the Executive Order on July 30, and for almost three weeks were at severe risk of L.M. not being able to attend school because of the upcoming danger due to the operation of law,

and then, only five days prior to school beginning, MDSB decides to protect their children and violate Florida Law. This parental opt-out requirement leads to an environment that is dangerous to L.M. and will continue to be an imminent threat to him. Furthermore, the basis that MDSB provided to the State Defendants to be in defiance of their law, other than the extreme, imminent risk to human life, was the ruling of Judge Cooper, which now is in question. In addition, in their brief, MDSB mentions its pending petition for review of the administrative rule implementing the executive order in the Third District Court of Appeal, DE 70, p. 7 fn.3. While MDSB is challenging the authority to promulgate this rule instead of their associational rights for their own students with disabilities or their own obligations under federal or state law, it does not alter the fact that this case is far from moot, and this question is very ripe.

Because this is a fluid situation, with further implementation of the executive rule prospective relief must fit the remedy to the wrong or injury that has been established. Salazar v. Buono, 559 U.S. 700, 718, 130 S. Ct. 1803, 1818, 176 L. Ed. 2d 634 (2010). "A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need" United States v. Swift & Co., 286 U.S. 106, 114, 52 S. Ct. 460, 462, 76 L. Ed. 999 (1932). In 1917, Justice Oliver Wendell Holmes addressed the need for a court to act in equity to stop and contain the threatening effects of a continuing violation: "To speak accurately, it is not the statute that gives a right to relief in equity, but the fact that in the particular case the threatening effects of a continuing violation of the statute are such as only equitable process can prevent. The right to equitable relief does not depend upon the nature or source of the substantive right whose violation is threatened, but upon the consequences that will flow from its violation." Paine Lumber Co. v. Neal, 244 U.S. 459, 476, 37 S. Ct. 718, 722, 61 L. Ed. 1256 (1917)

  **IV. There is no requirement to exhaust Plaintiffs claims under the IDEA**

L.M. has severe asthma and has a 504 plan. There is nothing about L.M.'s educational methodology involved in this case. The issues are solely whether he can or cannot enter into a room or facility and be subject to a noxious environment that will cause him permanent injury or death. There is nothing about this matter that involves relief that can be provided by an Administrative Law Judge. The Defendant's contention that the Plaintiffs were required to exhaust administrative preconditions under the Individuals with Disabilities in Education Act. (IDEA), 20 U.S.C. § 1415(l). Section 1415(l) requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit "seek[s] relief that is also available" under the IDEA. Exhaustion is also not required if exhaustion would be futile or the relief available inadequate. N.B. by D.G. v. Alachua Cty. Sch. Bd., 84 F.3d 1376, 1379 (11th Cir. 1996); M.T.V. v. DeKalb County School District, 446 F.3d 1153, 1159 (11th Cir 2006).

In Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743, 753–54, 197 L. Ed. 2d 46 (2017), the Supreme Court found that the role of a hearing officer under the IDEA is to enforce a child's "substantive right" to a free appropriate public education (FAPE). Id. (*quoting* Smith v. Robinson, 468 U.S. 992, 1010, 104 S.Ct. 3457, 82 L.Ed.2d 746. (1984). When an action does not involve educational methods, and instead involves other types of disability discrimination, such as physical access or integration or transportation, exhaustion is not required. Id. To determine if exhaustion is required, the Fry Court offered a test of two hypothetical questions as follows:

> One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does

> not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

Fry, 137 S. Ct. at 756.

The widespread nature of cases across the United States regarding the validity and extent of the use of masks as preventative measures extends from public accommodations, such as retail stores, Pletcher v. Giant Eagle Inc., 2020 WL 6263916, at *1 (W.D. Pa. 2020)(grocery store); Emanuel v. The Walt Disney Co., 2021 WL 2454462, at *2 (E.D. Pa. 2021)(Disney Store); governmental entities, Blandino v. Eighth Judicial Dist. Court in & for County of Clark, 478 P.3d 936 (Nev. App. 2021)(court); Chew v. Legislature of Idaho, 512 F. Supp. 3d 1124, 1126 (D. Idaho 2021)( legislature); Ahlman v. Barnes, 445 F. Supp. 3d 671, 688 (C.D. Cal. 2020) (prison), Costa v. Bazron, 464 F. Supp. 3d 132 (D.D.C. 2020)(psychiatric facilities); and to the extent that this case involves accommodations at places of work, the EEOC has established guidelines for employers. *See* Coronavirus and COVID-19, found at https://www.eeoc.gov/coronavirus. Furthermore, as to the second question, an adult at the school, such as an employee or visitor, could file a claim under Section 504 or the ADA for the same claim. In this mater, students, employees and visitors are all subject to the same rule.  There is nothing that would prevent visitors or employees them from bringing the identical case – had the Governor decided that employees and visitors can enter unmasked.  As such exhaustion is not required.

Notably, the injury in this case is that the failure to have a mask mandate without parental opt-out, or other health-related protections would exclude a child from a school, would segregate them from other children or would subject them to increased bodily harm. This would not only

include a classroom, but would also include transportation, hallways and bathrooms in a fully integrated school setting. The policy is specific in covering issues other than solely education. This is distinguishable from situations in which the use of a mask would affect the child's ability to learn. Whether a mask would hinder learning, whether the learning is academic or social, is a question of educational methods that would require exhaustion though the IDEA. *See* Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 207, 102 S. Ct. 3034, 3051, 73 L. Ed. 2d 690 (1982)("[C]hoosing the educational method most suitable to the child's needs [] was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child."). Safety is not an educational method; thus exhaustion is not required.

In addition to the Fry test, the exhaustion of the administrative remedies under the IDEA is not required where resort to administrative remedies would be 1) futile or 2) inadequate. N.B. by D.G. v. Alachua Cty. Sch. Bd., 84 F.3d 1376, 1379 (11th Cir. 1996); M.T.V. v. DeKalb County School District, 446 F.3d 1153, 1159 (11th Cir 2006). Exhaustion is not required in very limited circumstances, such as where exhaustion is futile or inadequate, where the question presented is purely legal, where the administrative process cannot grant relief, or where exhaustion would work a severe or irreparable harm upon a litigant. D.M. v. New Jersey Dept. of Educ., 801 F.3d 205 (3d Cir. 2015). Springer v. Wal–Mart Assocs. Group Health Plan, 908 F.2d 897, 901 (11th Cir.1990)(To substantiate a claim of futility the Petitioners must make a "clear and positive" showing of futility); *see also* McGraw v. Prudential Ins. Co. of Am., 137 F.3d 1253, 1264 (10th Cir.1998) (noting that futility exception is limited to those situations where resort to administrative remedies would be "clearly useless").

In this matter, a hearing officer would not be able to address a child's "substantive right" to a FAPE, such as requiring other students to wear masks, especially when such relief violates Florida law. Further, an administrative court does not have jurisdiction over the Governor, the Commissioner of Education, or the Department of Education. <u>P.J.S. v. School Bd. Of Citrus Cty</u>., 951 So. 2d 53 (Fla. 5th DCA 2007). Hearing officers can only resolve disputes between a parent and a school district. See 20 U.S.C. § 1415(f)(1)(A). The mere fact that remedies are not available, even after the due process hearing occurs, would make the process, by definition futile and inadequate. In this matter, the need for a safe environment is beyond the scope of the due process hearing. See <u>Weber v. Cranston Sch. Comm</u>., 212 F.3d 41, 52 (1st Cir.2000) (observing that a state's implementation of the IDEA may render exhaustion futile where a plaintiff's complaint lies beyond "the scope of the due process hearing"); <u>McGraw v. Prudential Ins. Co. of Am</u>., 137 F.3d 1253, 1264 (10th Cir.1998) (noting that futility exception is limited to those situations where resort to administrative remedies would be "clearly useless").

Furthermore. systemic violations, such as a widespread legal violation or a practice, are an example of such inadequate or futile events which would not require exhaustion, exhaustion is similarly deemed to be inadequate and not necessary when "an emergency situation exists (e.g., the failure to take immediate action will adversely affect a child's mental or physical health)." <u>Komninos by Komninos v. Upper Saddle River Bd. of Educ</u>., 13 F.3d 775, 778–79 (3d Cir. 1994)(quoting H.R.Rep. No. 296, 99th Cong., 1st Sess. 7 (1985)). In this case, the regulation, in and of itself, is an emergency regulation. The mere fact that the due process timeline under Florida Administrative Code 6A06.03311(9) provides at least 75 days for a decision makes relief futile. This is not including the court delays that have also been systemic due to the pandemic.

One of the protections that is usually provided to a student is the IDEA's stay put provision. Section 1415(j) establishes a student's right to a stable learning environment during what may be a lengthy administrative and judicial review. <u>Tenn. Dep't of Mental Health & Mental Retardation v. Paul B.</u>, 88 F.3d 1466, 1472 (6th Cir.1996). If the child is ejected from his or her current educational placement while the administrative process sorts out where the proper interim placement should be, then the deprivation of education is complete. And, when such deprivation cannot be satisfied by the stay put provision, then again, immediate relief is essential to vindicate a child's right. See <u>Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.</u>, 297 F.3d 195, 199–200 (2d Cir. 2002); <u>L.A. v. New York City Dep't of Educ.</u>, 2020 WL 5202108, at *3 (S.D.N.Y. Sept. 1, 2020). In this matter, there is no protections afforded to a child in the delay, as the stay-put option places more harm to the child's education and health. Furthermore, the situation with surges of COVID are so fluid, that the complying with such conditions each time an arbitrary rule placing children with disabilities in danger would make relief always impossible. See <u>Roman Cath. Diocese of Brooklyn v. Cuomo</u>, 141 S. Ct. 63, 208 L. Ed. 2d 206 (2020)

In this case, the facts themselves demonstrate the futility of administrative processes. For G.D., she could not get the services that she needed for her emotional disability through any alternate means than by-in person education. Further, with the children with asthma, there is nothing that an administrative law judge could or could not do to other children in the classrooms, lunch room, hallways, or school busses. This physical segregation is the exact harm the ADA was meant to address that is not addressed by the IDEA, as such relief would be futile and inadequate. See <u>Olmstead v. L.C. ex rel. Zimring</u>, 527 U.S. 581, 119 S. Ct. 2176, 144 L. Ed. 2d 540 (1999).

**V.     This matter is not moot**

In light of the daily changes that have been occurring with the dangerousness of COVID-19, as well as the obligations of the parties, and the enforcement of penalties as to School Boards, this is as live as a controversy can possibly be.

In Roman Cath. Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 208 L. Ed. 2d 206 (2020), the Supreme Court recently analyzed the mootness issue when analyzing the changing restrictions due to the effect of the surges in the COVID-19 pandemic with regards to the limitations placed on places of worship. In doing so, the Court stated:

> The dissenting opinions argue that we should withhold relief because the relevant circumstances have now changed. After the applicants asked this Court for relief, the Governor reclassified the areas in question from orange to yellow, and this change means that the applicants may hold services at 50% of their maximum occupancy. The dissents would deny relief at this time but allow the Diocese and Agudath Israel to renew their requests if this recent reclassification is reversed.
> There is no justification for that proposed course of action. It is clear that this matter is not moot. See Federal Election Comm'n v. Wisconsin Right to Life, Inc., 551 U.S. 449, 462, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007); Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). And injunctive relief is still called for because the applicants remain under a constant threat that the area in question will be reclassified as red or orange. See, *e.g*., Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014). The Governor regularly changes the classification of particular areas without prior notice. If that occurs again, the reclassification will almost certainly bar individuals in the affected area from attending services before judicial relief can be obtained. At most Catholic churches, Mass is celebrated daily, and "Orthodox Jews pray in [Agudath Israel's] synagogues every day." Application in No. 20A90, at 4. Moreover, if reclassification occurs late in a week, as has happened in the past, there may not be time for applicants to seek and obtain relief from this Court before another Sabbath passes. Thirteen days have gone by since the Diocese filed its application, and Agudath Israel's application was filed over a week ago. While we could presumably act more swiftly in the future, there is no guarantee that we could provide relief before another weekend passes. The applicants have made the showing needed to obtain relief, and there is no reason why they should bear the risk of suffering further irreparable harm in the event of another reclassification.

Roman Cath. Diocese of Brooklyn, 141 S. Ct. at 68–69. In this mater, the Governor decided to implement an Executive Order for a parental opt-out for a mask mandate on July 30, 2021,

knowing that school began across the state after August 10th. This mask policy is not permanent and is temporary and subject to the discretion of the superintendent, MDSB has even sued the Department of Health regarding the rulemaking validity of their rule so they do not need to continue to act in defiance of Florida law. Furthermore, the Commissioner of Education and the Department of Education has threatened to withhold the salaries for all of the members of the school board if this policy is not suspended/revoked/rescinded. D.E. 80-12.

In this matter the plaintiffs have been asking for relief prior to thousands of children have been infected, before the infection led to the change in the policy, before the threats from the governor, and there is nothing that would indicate that this case was moot, and the cycle of removing restrictions and infections would not begin anew.

VI. **Plaintiffs concede that there are no individual claims for the parent.**

In this circumstance, the defendant is correct in that there are no individual claims for the parents under any of the claims asserted by the Plaintiff herein.

**WHEREFORE,** Plaintiffs, JUDITH ANNE HAYES, individually and on behalf of W.H., a minor., et al., respectfully requests that this Court DENY the Defendant's motion to dismiss and grant any further relief as this court deems just and equitable.

Respectfully submitted this 13th day of September 2021.

By: /s/*Matthew W. Dietz*_____
Matthew W. Dietz, Esq.
Florida Bar No. 84905

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 13, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties and counsel of record, or in some other authorized manner for those counsel or parties who are not authorized to receive notices electronically.

By: /s/*Matthew W. Dietz*
Matthew W. Dietz, Esq.
Florida Bar No. 84905
Stephanie Langer, Esq.
Florida Bar No. 149720
2990 Southwest 35th Avenue
Miami, Florida 33133
T: (305) 669-2822 / F: (305) 442-4181
slanger@justDIGit.org
mdietz@justdigit.org
aa@justdigit.org