IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:21-cv-22863-KMM

JUDITH ANNE HAYES, individually and on behalf
of W.H., a minor, et. al.,

    Plaintiffs,

v.

GOVERNOR RONALD DION DESANTIS, in his official
Capacity as Governor of the State of Florida; et.al.,

    Defendants.
_____/

## PLAINTIFFS' RESPONSE TO BROWARD COUNTY SCHOOL BOARD'S MOTION TO DISMISS [DE-68]

**COMES NOW**, Plaintiffs, JUDITH ANNE HAYES, individually and on behalf of W.H., a minor., et al., by and through the undersigned counsel, and hereby files response to the Motion to Dismiss filed by the Broward County School Board [DE-68], and states as follows:

In response to Plaintiffs' Complaint, Broward County School Board goes far beyond the four corners of the pleadings and asserts that there is no standing due to the passing of a mask mandate. Further, there is no basis to claim that a medically complex child with kidney disease would need to exhaust IDEA remedies when all he needs is a safe environment to attend school.

**I.**     **Facts:**

**A. Broward County Parent Chris Rodriguez,**

Chris Rodriguez is the mother of J.D.-F. who is now a five year-old boy who lives with chronic kidney disease – stage 3. His kidneys are only working at 50% capacity. DE.1, p.24. He attends Broward County public schools and Broward County Public Schools (BCPS) has identified J.D.-F. as being in need of exceptional student education services. Id. J.D.-F. has an IEP and

attends a public-school program that provides direct special education instruction and related services like speech therapy. Id. There is no online option and to maintain his spot in this program, J.D.-F. must attend in person or find another school to attend.

For the 2021-2022 academic year, J.D.-F.'s treating doctors and specialists have informed his parents that it is too dangerous to return to brick-and mortar school without such precautions as following the recommended CDC guidelines of mandatory masking and regular testing in schools. His doctors have advised that if he catches the COVID-19 virus it could be fatal. Id.

While Broward school board has put a mandate in place, it is only temporary. The interim superintendent said just last night on national television that the mandate is only in place through Labor Day. DE 80-9, p. 3. J.D.-F. would need a mask mandate to be in place for longer in order to be able to return to school safely. There would further need to a decision to follow other CDC guidelines such as social distancing; masks at recess and a plan to be able to eat lunch safely since the students will necessarily need to be unmasked. out of the mask mandate to be tested on a regular basis, thus the risk to J.D.-F. remains too high. Id.

**B. Broward County School Board Facts:**

According to the Press Release from Broward County Schools:[1]

> On Tuesday, August 10, 2021, The School Board of Broward County, Florida, held a Special School Board Meeting to approve the District's School Reopening Plan: Phase 3, which included addressing Florida Governor Ron DeSantis' Executive Order 21-175 and the subsequent Emergency Rule – Protocols for Controlling COVID-19 in School Settings issued through Florida Department of Health and Florida Department of Education.

---

[1] https://www.browardschools.com/site/default.aspx?PageType=3&DomainID=210&ModuleInstanceID=60855&ViewID=6446EE88-D30C-497E-9316-3F8874B3E108&RenderLoc=0&FlexDataID=234677&PageID=413

> After listening to comments from 48 public speakers and reviewing more than 350 written comments submitted by community members, the School Board voted eight to one to implement the rules set forth by the Department of Health and the Florida Board of Education, with the exception of section 1D, which stated schools must allow for a parent or legal guardian of the student to opt out of wearing a face covering or mask.
>
> As a result of today's School Board vote, face coverings will continue to be mandatory, based on School Board Policy 2170, for students, staff and visitors at all District schools and facilities. Requests to opt out of this requirement will be considered due to medical need, Individual Education Plans (IEP) or Section 504 accommodations as currently allowed in the policy.

School Board Policy 2170 applies to students, visitors, vendors, teachers, staff and employees and applies to all school premises. However, School Bord Policy 2170 is effective at the discretion of the superintendent:

> **II. DELEGATION OF AUTHORITY**:
>
> In consultation with and guidance from public health officials, the Superintendent has the authority to determine when the Face Covering Policy will be implemented and when it will no longer be required. Further, as new face coverings are developed and produced the Superintendent is authorized to change the types of face coverings that would be both in compliance and not in compliance with this policy.

On August 10th, the Commissioner of Education, Defendant Richard Corcoran, sent a letter attempting to enforce Emergency Rule 64DER21-12 from the Florida Department of Health and threatened sanctions to BCSB for not allowing the parental ability to opt-out of a face covering or mask. See 80-12. According to the Commissioner, this rule specifically gave him the power to investigate and determine probable cause of these rules and recommend that the Department of Education withhold funds from BCSB equal to the members of the School Board's salary as well as other sanctions. Id. In closing, the Commissioner stated as follows: "There is no room for error or leniency when it comes to ensuring compliance with policies that allow parents and guardians to make health and educational choices for their children." Id.

On August 13, 2021, BCSB responded to Commissioner Corcoran's threatening letter, with their health, reality, and science-based rationale for insuring that person are masked. Id. As part of the rationale, the BCSB cited this case as a reason for implementing the rule:

> The School Board has over 37,000 students with disabilities. A significant number of students with disabilities are students with medical conditions such as asthma, diabetes and cancer, whose immune systems are stressed or compromised. These students are at an increased risk of being infected with the COVID-19 virus without the protection of a mask requirement. The requirement that a mask be used by all students, staff and visitors alike, in accordance with the CDC, serves to ensure their safety as well as the safety of their peers and teachers. The mask requirement would ensure that the district does not run afoul of the Americans with Disabilities Act (ADA), Section 504 of the Rehabilitation Act, and the Individual with Disabilities Education Act (IDEA).
>
> The Broward School Board is currently a defendant in a complaint concerning the mask requirement. See Case 1:21-cv-22863-KMM Hayes, el.al. v. Governor Ronald Dion Desantis, et.al. (August 6, 2021). This complaint was filed by families with students who have disabilities and alleges ADA violations, specifically, the failure to provide access to a free appropriate public education. The named families allege, out of concern for the health and safety of their students, they cannot send their students safely to school, absent a mask requirement in order to mitigate the airborne transmittal of COVID-19. Similarly, under the IDEA, the School Board is charged with educating students in the least restrictive environment. Without a mask mandate, families may be confronted with the choice of sending their medically compromised students into a school environment without reasonable precautions taken for the safety of their student or keeping them home. Students educated in the home setting when a public-school selling is available violates the IDEA. Thus, a mask requirement would facilitate the School Board's role in educating all students within its district.

Id. Notwithstanding this strong rationale, the BCSB was recommended for a penalty by Commissioner of Education and was When Broward and Alachua School Boards decided to keep their mask mandates without an opt-out provision for parental choice, on August 20, 2021, the Defendant Board of Education issued an order to withhold funds equal to a portion of the compensation of the school board members and monitor the school board's activities. [44-2]. The Department of Education issued a press release to announce the decision and threatened further

action if the violation of law is not remedied within 48 hours.[2] These additional penalties included detailed monitoring requirements for those instances where a student was penalized for not wearing a mask (¶ 9) and recommend further penalties and impose further sanctions and additional enforcement action to bring the violating school boards into compliance. Gov. DeSantis has further endorsed a private cause of action for parents to sue schools when their children are required to wear a mask. The Governor specifically stated, "When you have a bill of rights, if your individual right as a parent is violated, you have the ability to go in and seek individual vindication, they're obviously doing the opposite there in Tallahassee, they're trying to basically nullify the parents bill of rights, but you can also do it from the other [side]."[3]

**II.     Standard of Review**:

The Plaintiffs' complaint pleads sufficient facts and the law to withstand a motion to dismiss. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted if the allegations in the complaint fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the formal sufficiency of the allegations of claims for relief. The dismissal of a complaint is warranted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Glover v. Liggett Group, Inc., 459 F.3d 1304, 1308 (11th Cir. 2006).

When ruling on a motion to dismiss under Rule 12(b)(6) a court "accepts that allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." Hill v.

---

[2] https://www.fldoe.org/newsroom/latest-news/state-board-of-education-orders-school-boards-of-alachua-and-broward-counties-to-follow-the-law.stml
[3] https://www.wptv.com/rebound/state-of-education/politicians-who-violated-the-law-regarding-mask-mandates-will-be-penalized-gov-ron-desantis-says (25 seconds to 42 seconds in the news conference)

White, 321 F.3d 1334, 1335 (11th Cir. 2003). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Those "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 570). In short, the complaint cannot merely allege misconduct, but must demonstrate that it is plausible that the pleader is entitled to relief. Id.

### III.  Justiciability and Necessary Parties

In this matter, BCSB is a necessary and indispensable party. There is no question that the State Defendants would have filed a motion to dismiss in this matter for failure to add in necessary and indispensable parties under Rule 19, Fed.R.Civ.P. if the School Boards were not added in as necessary and indispensable parties as the Governor and the other State Defendants direct their authority through the school districts. In fact, In the State Defendants' Motion to Dismiss, the State Defendants asserted that by not naming the Florida Department of Health, the plaintiffs' injuries could not be redressed under Support Working Animals, Inc. v. Governor of Fla., 8 F.4th 1198 (11th Cir. 2021). In the same way, the failure to add in the School Boards would not address the parties that are obligated to implement the unlawful rules, promulgated, and enforced by the State Defendants.

As background, the Governor issued his executive order, E.O. 21-175, on July 30, 2021.[4] The executive order directed the Florida Department of Health and the Florida Department of

---

[4] Governor DeSantis Issues an Executive Order Ensuring Parents' Freedom to Choose (flgov.com)

Education, working together, to immediately execute rules that would "protect parents' right to make decisions regarding masking of their children in relation to COVID-19."

In response to the Executive Order, on August 6, the Plaintiffs filed their Complaint [DE 1] and Preliminary Injunction [DE 3]. Later that same day, the Florida Department of Health and Florida Department of Education promulgated rules, including Rule No. 64DER21-12, which "conforms to Executive order Number 21-175" and directed that "Students may wear masks or facial coverings as a mitigation measure; however, the school must allow for a parent or legal guardian of the student to opt-out the student from wearing a face covering or mask."[5]

In this case, the Governor and the State Defendants authorized actions against school districts that refused to comply with Florida Law and make school unsafe for children with disabilities by allowing them to be exposed, and at higher risk of becoming infected with COVID-19. At the time this suit was filed, there was a direction that the executive order be implemented and enforced upon the school districts. As such, the Plaintiffs could not cite or enjoin the inchoate rules. The Governor took no action directly against the plaintiffs; however, all action was through a school district which would have no option but to enforce the law or be in continual defiance of the law. Rule 19 was specifically enacted to ensure that all parties would be in a case to prevent inconsistent obligations in the event of declaratory or injunctive relief.

Under Rule 19(a) of the Federal Rules of Civil Procedure, participation of the County School Boards is required for a just adjudication of this matter. First, complete relief cannot be granted in the County's absence. Rule 19(a), Fed. R. Civ. P. provides as follows:

(a) Persons Required to Be Joined if Feasible.

---

[5] https://www.flgov.com/wp-content/uploads/2021/08/8.6.21-DOH-Rule.pdf

(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19. This rule in equity predates the Federal Rules and the following rationale of the 1854 Supreme Court in Shields v. Barrow is still binding:

> The court here points out three classes of parties to a bill in equity. They are: 1. Formal parties. 2. Persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. These persons are commonly termed necessary parties; but if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties. 3. Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience,

Shields v. Barrow, 58 U.S. 130, 139, 15 L. Ed. 158 (1854); *followed* by Haas v. Jefferson Nat. Bank of Miami Beach, 442 F.2d 394, 396–397 (5th Cir. 1971). In this case, there is no question that the language is traceable to the Executive Order and its implementation through the Department of Education, its commissioner, to SBHC. The obligations as stated by this Court should not be subject to differing courts from differing districts as to whether this law, as applied to each of the School Boards as well as the Department of Education and should be interpreted in a uniform matter for a uniform remedy.

> "Inconsistent obligations" are not ... the same as inconsistent adjudications or results. Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident. Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum.

Delgado v. Plaza Las Ams., Inc., 139 F.3d 1, 3 (1st Cir.1998) (per curiam) (citations omitted); accord Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ., 584 F.3d 253, 282 (6th Cir.2009) (en banc); Winn-Dixie Stores, Inc. v. Dolgencorp, LLC, 746 F.3d 1008, 1040 (11th Cir. 2014).

### IV.     There is no requirement to exhaust Plaintiffs claims under the IDEA

J.D.-F has chronic kidney disease which makes him medically complex. The main disability relating to J.D-F is predominantly whether he can or cannot enter into a room or facility and be subject to a noxious environment that will cause him permanent injury or death.  There is nothing about this relief that involves relief that can be provided by an Administrative Law Judge. The Defendant contend that the Plaintiffs were required to exhaust administrative preconditions under the Individuals with Disabilities in Education Act. (IDEA), 20 U.S.C. § 1415(l). Section 1415(l) requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit "seek[s] relief that is also available" under the IDEA. Exhaustion is also not required if exhaustion would be futile or the relief available inadequate. N.B. by D.G. v. Alachua Cty. Sch. Bd., 84 F.3d 1376, 1379 (11th Cir. 1996); M.T.V. v. DeKalb County School District, 446 F.3d 1153, 1159 (11th Cir 2006).

In Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743, 753–54, 197 L. Ed. 2d 46 (2017), the Supreme Court found that the role of a hearing officer under the IDEA is to enforce a child's "substantive right" to a free appropriate public education (FAPE). Id. (*quoting* Smith v. Robinson,

468 U.S. 992, 1010, 104 S.Ct. 3457, 82 L.Ed.2d 746. (1984). When an action does not involve educational methods, and instead involves other types of disability discrimination, such as physical access or integration or transportation, exhaustion is not required. Id. To determine if exhaustion is required, the Fry Court offered a test of two hypothetical questions as follows:

> One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

Fry, 137 S. Ct. at 756.

The widespread nature of cases across the United States regarding the validity and extent of the use of masks as preventative measures extends from public accommodations, such as retail stores, Pletcher v. Giant Eagle Inc., 2020 WL 6263916, at *1 (W.D. Pa. 2020)(grocery store); Emanuel v. The Walt Disney Co., 2021 WL 2454462, at *2 (E.D. Pa. 2021)(Disney Store); governmental entities, Blandino v. Eighth Judicial Dist. Court in & for County of Clark, 478 P.3d 936 (Nev. App. 2021)(court); Chew v. Legislature of Idaho, 512 F. Supp. 3d 1124, 1126 (D. Idaho 2021)( legislature); Ahlman v. Barnes, 445 F. Supp. 3d 671, 688 (C.D. Cal. 2020) (prison), Costa v. Bazron, 464 F. Supp. 3d 132 (D.D.C. 2020)(psychiatric facilities); and to the extent that this case involves accommodations at places of work, the EEOC has established guidelines for employers. See Coronavirus and COVID-19, found at https://www.eeoc.gov/coronavirus. Furthermore, as to the second question, an adult at the school, such as an employee or visitor, could

file a claim under Section 504 or the ADA for the same claim. In this mater, students, employees and visitors are all subject to the same rule. There is nothing that would prevent visitors or employees them from bringing the identical case – had the Governor decided that employees and visitors can enter unmasked. As such exhaustion is not required.

Notably, the injury in this case is that the failure to have a mask mandate without parental opt-out, or other health-related protections would exclude J.D.-F. from his school, would segregate them from other children or would subject him to potentially fatal results. This would not only include a classroom, but would also include transportation, hallways and bathrooms in a fully integrated school setting. The policy is specific in covering issues other than solely education. This is distinguishable from situations in which the use of a mask would affect the child's ability to learn. Whether a mask would hinder learning, whether the learning is academic or social, is a question of educational methods that would require exhaustion though the IDEA. *See* Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 207, 102 S. Ct. 3034, 3051, 73 L. Ed. 2d 690 (1982)("[C]hoosing the educational method most suitable to the child's needs [] was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child."). Safety is not an educational method; thus exhaustion is not required.

In addition to the Fry test, the exhaustion of the administrative remedies under the IDEA is not required where resort to administrative remedies would be 1) futile or 2) inadequate. N.B. by D.G. v. Alachua Cty. Sch. Bd., 84 F.3d 1376, 1379 (11th Cir. 1996); M.T.V. v. DeKalb County School District, 446 F.3d 1153, 1159 (11th Cir 2006). Exhaustion is not required in very limited circumstances, such as where exhaustion is futile or inadequate, where the question presented is purely legal, where the administrative process cannot grant relief, or where exhaustion would work

a severe or irreparable harm upon a litigant. D.M. v. New Jersey Dept. of Educ., 801 F.3d 205 (3d Cir. 2015). Springer v. Wal–Mart Assocs. Group Health Plan, 908 F.2d 897, 901 (11th Cir.1990)(To substantiate a claim of futility the Petitioners must make a "clear and positive" showing of futility); *see also* McGraw v. Prudential Ins. Co. of Am., 137 F.3d 1253, 1264 (10th Cir.1998) (noting that futility exception is limited to those situations where resort to administrative remedies would be "clearly useless").

In this matter, a hearing officer would not be able to address a child's "substantive right" to a FAPE, such as requiring other students to wear masks, especially when such relief violates Florida law. Further, an administrative court does not have jurisdiction over the Governor, the Commissioner of Education, or the Department of Education. P.J.S. v. School Bd. Of Citrus Cty., 951 So. 2d 53 (Fla. 5th DCA 2007). Hearing officers can only resolve disputes between a parent and a school district. See 20 U.S.C. § 1415(f)(1)(A). The mere fact that remedies are not available, even after the due process hearing occurs, would make the process, by definition futile and inadequate. In this matter, the need for a safe environment is beyond the scope of the due process hearing. See Weber v. Cranston Sch. Comm., 212 F.3d 41, 52 (1st Cir.2000) (observing that a state's implementation of the IDEA may render exhaustion futile where a plaintiff's complaint lies beyond "the scope of the due process hearing"); McGraw v. Prudential Ins. Co. of Am., 137 F.3d 1253, 1264 (10th Cir.1998) (noting that futility exception is limited to those situations where resort to administrative remedies would be "clearly useless").

Furthermore. systemic violations, such as a widespread legal violation or a practice, are an example of such inadequate or futile events which would not require exhaustion, exhaustion is similarly deemed to be inadequate and not necessary when "an emergency situation exists (e.g., the failure to take immediate action will adversely affect a child's mental or physical health)."

Komninos by Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778–79 (3d Cir. 1994)(quoting H.R.Rep. No. 296, 99th Cong., 1st Sess. 7 (1985)). In this case, the regulation, in and of itself, is an emergency regulation. The mere fact that the due process timeline under Florida Administrative Code 6A06.03311(9) provides at least 75 days for a decision makes relief futile. This is not including the court delays that have also been systemic due to the pandemic.

One of the protections that is usually provided to a student is the IDEA's stay put provision. Section 1415(j) establishes a student's right to a stable learning environment during what may be a lengthy administrative and judicial review. Tenn. Dep't of Mental Health & Mental Retardation v. Paul B., 88 F.3d 1466, 1472 (6th Cir.1996). If the child is ejected from his or her current educational placement while the administrative process sorts out where the proper interim placement should be, then the deprivation of education is complete. And, when such deprivation cannot be satisfied by the stay put provision, then again, immediate relief is essential to vindicate a child's right. See Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 199–200 (2d Cir. 2002); L.A. v. New York City Dep't of Educ., 2020 WL 5202108, at *3 (S.D.N.Y. Sept. 1, 2020). In this matter, there is no protections afforded to a child in the delay, as the stay-put option places more harm to the child's education and health. Furthermore, the situation with surges of COVID are so fluid, that the complying with such conditions each time an arbitrary rule placing children with disabilities in danger would make relief always impossible. See Roman Cath. Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 208 L. Ed. 2d 206 (2020)

In this case, the facts themselves demonstrate the futility of administrative processes. For J.D.-F., he would be put at danger and there is nothing that an administrative law judge could or could not do to other children in the classrooms, lunch room, hallways, or school busses. This physical segregation is the exact harm the ADA was meant to address that is not addressed by the

IDEA, as such relief would be futile and inadequate. See <u>Olmstead v. L.C. ex rel. Zimring</u>, 527 U.S. 581, 119 S. Ct. 2176, 144 L. Ed. 2d 540 (1999).

V.  **This matter is not moot**

In light of the daily changes that have been occurring with the dangerousness of COVID-19, as well as the obligations of the parties, and the enforcement of penalties as to School Boards, this is as live as a controversy can possibly be.

In <u>Roman Cath. Diocese of Brooklyn v. Cuomo</u>, 141 S. Ct. 63, 208 L. Ed. 2d 206 (2020), the Supreme Court recently analyzed the mootness issue when analyzing the changing restrictions due to the effect of the surges in the COVID-19 pandemic with regards to the limitations placed on places of worship. In doing so, the Court stated:

> The dissenting opinions argue that we should withhold relief because the relevant circumstances have now changed. After the applicants asked this Court for relief, the Governor reclassified the areas in question from orange to yellow, and this change means that the applicants may hold services at 50% of their maximum occupancy. The dissents would deny relief at this time but allow the Diocese and Agudath Israel to renew their requests if this recent reclassification is reversed. There is no justification for that proposed course of action. It is clear that this matter is not moot. See <u>Federal Election Comm'n v. Wisconsin Right to Life, Inc.</u>, 551 U.S. 449, 462, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007); <u>Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.</u>, 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). And injunctive relief is still called for because the applicants remain under a constant threat that the area in question will be reclassified as red or orange. See, *e.g.*, <u>Susan B. Anthony List v. Driehaus</u>, 573 U.S. 149, 158, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014). The Governor regularly changes the classification of particular areas without prior notice. If that occurs again, the reclassification will almost certainly bar individuals in the affected area from attending services before judicial relief can be obtained. At most Catholic churches, Mass is celebrated daily, and "Orthodox Jews pray in [Agudath Israel's] synagogues every day." Application in No. 20A90, at 4. Moreover, if reclassification occurs late in a week, as has happened in the past, there may not be time for applicants to seek and obtain relief from this Court before another Sabbath passes. Thirteen days have gone by since the Diocese filed its application, and Agudath Israel's application was filed over a week ago. While we could presumably act more swiftly in the future, there is no guarantee that we could provide relief before another weekend passes. The applicants have made the showing needed to obtain relief, and

> there is no reason why they should bear the risk of suffering further irreparable harm in the event of another reclassification.

Roman Cath. Diocese of Brooklyn, 141 S. Ct. at 68–69. In this mater, the Governor decided to implement an Executive Order for a parental opt-out for a mask mandate on July 30, 2021, knowing that school began on August 10th. The new policy is both temporary and is highly disputed between all parties. Broward has been cited and penalized for being in defiance of Florida law. Furthermore, the School Board of Broward County has filed a petition of a determination of invalidity regarding the Department of Health rule (81-1). While BCSB is challenging the authority to promulgate this rule instead of their associational rights for their own students with disabilities or their own obligations under federal or state law, it does not alter the fact that this case is far from moot, and this question is very ripe.

In this matter the plaintiffs have been asking for relief prior to thousands of children have been infected, before the infection led to the change in the policy, before the threats from the governor, and there is nothing that would indicate that this case was moot, and the cycle of removing restrictions and infections would not begin anew.

**WHEREFORE,** Plaintiffs, JUDITH ANNE HAYES, individually and on behalf of W.H., a minor., et al., respectfully requests that this Court DENY the Defendant's motion to dismiss and grant any further relief as this court deems just and equitable.

Respectfully submitted this 13th day of September 2021.

By: /s/*Matthew W. Dietz*
Matthew W. Dietz, Esq.
Florida Bar No. 84905

*Hayes. v. DeSantis*
*Case No.: 1:21-cv-22863-KMM*
*Page 16 of 16*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 13, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties and counsel of record, or in some other authorized manner for those counsel or parties who are not authorized to receive notices electronically.

By: /s/*Matthew W. Dietz*
Matthew W. Dietz, Esq.
Florida Bar No. 84905
Stephanie Langer, Esq.
Florida Bar No. 149720
2990 Southwest 35th Avenue
Miami, Florida 33133
T: (305) 669-2822 / F: (305) 442-4181
slanger@justDIGit.org
mdietz@justdigit.org
aa@justdigit.org

*Disability Independence Group, Inc. * 2990 SW 35th Avenue* Miami, FL 33133*