IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:21-cv-22863-KMM

JUDITH ANNE HAYES, individually and on behalf
of W.H., a minor, et. al.,

    Plaintiffs,

v.

GOVERNOR RONALD DION DESANTIS, in his official
Capacity as Governor of the State of Florida; et.al.,

    Defendants.

_____/

## PLAINTIFF'S RESPONSE TO THE SCHOOL BOARD OF HILLSBOROUGH COUNTY MOTION TO DISMISS [DE-67]

**COMES NOW**, Plaintiffs, JUDITH ANNE HAYES, individually and on behalf of W.H., a minor., et al., by and through the undersigned counsel, and hereby files response to the Motion to Dismiss filed by the School Board of Hillsborough County [DE-67], and states as follows:

In response to Plaintiffs' Complaint, The School Board of Hillsborough County (SBHC) asserts that the Plaintiffs do not have claims against Hillsborough County as they have established a thirty (30) day mask mandate on August 18th, and therefore, the Plaintiffs' claims are moot, otherwise, plaintiffs' claims should be transferred to the Middle District of Florida, and lastly, Plaintiffs claims should be subject to administrative conditions under the IDEA because the Plaintiffs intoned the term "Free and Appropriate Public Education." The Plaintiffs have clearly stated a claim of exclusion and segregation under the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act (RA) caused by the Executive Order, transforming into the law of Florida, which is required to be applied by the Defendant SBHC. The temporary reprieve which expires by the time the reply brief is due do not make the claims any less imminent.

I.      Facts:

**Hillsborough County Parent Eren Dooley**

In this matter, one of the Plaintiffs who lives in Hillsborough County is Eren Dooley who is the mother of G.D, a ten-year-old girl who lives with asthma and anxiety. DE 1, p. 5. She is in a general education setting and has an Individualized Educational Plan otherwise known as an IEP. DE 3-1, p. 5-6.  G.D. has an IEP under the eligibility of emotional behavioral disability (EBD). It took years of support and interventions to get G.D. to a point in a classroom where she was not having anxious meltdowns that severely impacted her ability to learn. Her need to be in school cannot be understated. It would be devasting for her emotional wellbeing not to be able to remain in school. DE 80-2, p.2.G.D.'s anxiety is triggered by being in school without everyone wearing masks and her anxiety is triggered by staying home and being isolated. DE 3-1, p. 5.

G.D. also suffers from virus/allergen onset asthma. She has been treated by a specialist and been prescribed medications throughout her life to ensure that even a small cold does not trigger a dangerous asthmatic response requiring hospitalization. DE 80-2, p.2.  Her pediatrician has stated that she cannot attend school without masks while the coronavirus is impacting our community to this extent. Id.

This anxiety is impacting her education. Her parents are in a "no win" situation. Id.  Her treating doctors and specialists have informed her that it is dangerous to return to brick-and-mortar school without such precautions as following the recommended CDC guidelines of mandatory masking and regular testing in schools. Id.  If she is segregated out of regular schools, she will not receive equal services or opportunities as live, brick-and-mortar schools, as Florida Virtual School or other online programs do not provide FAPE or the necessary supports, services and accommodations, including direct instruction and socialization with her peers. Id.

Initially, prior to school starting, the school counselor advised Ms. Dooley that it was a reasonable accommodation to ask kids in G.D.'s classrooms to mask and to allow her to eat somewhere besides the cafeteria for her safety and wellbeing in accordance with her IEP. DE 80-2, p.2.  However, the counselor then called her back the next day and said at this time they were not allowed to ask any child to mask under any circumstances and that G.D. would have to be in the cafeteria for mealtimes. Ms. Dooley's request for a reasonable accommodation was denied. Id.

G.D. was home until a 30-day mask mandate was put into place on August 19th by Hillsborough County School Board. DE 80-2. During the time G.D. was at home she received no education. She also did not receive any of the supports and services contained in her IEP. Id.  If the mandate is not extended, Ms. Dooley will remove G.D. from school and she will lose het supports and services in her IEP.

**Hillsborough County Parent – Kas Arone-Miller**

Kas Arone-Miller is the mother of R.M. and L.M. R.M., who is three years old and L.M. who is seven years old, both live with autism spectrum disorders, and currently attend school, in person, in Hillsborough County, Florida. DE 1, p. 21. Both girls have an autism spectrum disorder and both children have IEPs. R.M. attends a public-school program specifically designed for disabled students. Id. The school setting provides direct special education instruction and related services like therapy and social emotional supports. Id DE 17-1, 19-20. There is no online option and to maintain her spot in this program, she must attend in person or find another school to attend. L.M. also has an autism spectrum disorder and attends public school. DE 1, p. 21. The children's treating doctors and specialists have informed the sister's mother that it is too dangerous to return to brick-and mortar school without such precautions as following the recommended CDC guidelines of mandatory masking and regular testing in schools. Id

**Hillsborough County Facts:**

The SBHC implemented a mask mandate on August 18, 2021, after school had already started on August 10th. On August 18th, SBHC implemented a policy which only permits an opt-out for persons with medical reasons to do so for a period of 30 days. DE 67, p. 3. As rationale for the Emergency policy, the preliminary clauses detailed the immense harm to the students and staff of the School District and stated:

> **WHEREAS**, The 2021-2022 school year began on August 10, 2021 in Hillsborough County; and
>
> **WHEREAS**, As of August 18, 2021, the school district released the following information showing 10,384 students in isolation or in quarantine and 338 employees in isolation or quarantine;
>
> **WHEREAS**, Based on the large number of quarantines and cases, there was an immediate danger to public health, safety, and welfare that required emergency action; and
>
> **WHEREAS**, The Chair of the School Board called an Emergency meeting of the School Board to immediately address the emergency; and WHEREAS, The School Board of Hillsborough County met in Emergency session on August 18, 2021; and
>
> **WHEREAS**, The School Board of Hillsborough County heard from the Hillsborough County Department of Health and medical experts and doctors from Tampa General Hospital; and
>
> **WHEREAS**, The Hillsborough County Department of Health provided data about the spread of COVID-19 in Hillsborough County that is attached to this Rule as Exhibit A; and
>
> **WHEREAS**, The first week of school in August 2020, 51 students and 17 staff reported a positive COVID-19 diagnosis; and
>
> **WHEREAS**, The first week of school in August 2021, 307 students and 59 staff reported a positive COVID-19 diagnosis; and
>
> **WHEREAS**, Of the approximately 214,920 number of students within the district, 14.7% are under the age of 12, and therefore, not eligible for the vaccine at

this time (in addition to other, older students, who may not be able to take the vaccine for reasons unrelated to their age); and

**WHEREAS**, The doctors and medical experts from Tampa General testified that the wearing of masks and vaccines are the most effective tools for controlling the spread of COVID-19 in schools; and

**WHEREAS**, Vaccination and masks are the most effective practice to mitigate any type of transmission in the school setting. Masks protect the wearer and those around them by protecting against the transmission of large droplets from child to another.

**WHEREAS**, Mask usage is beneficial to keeping children in school for in-person learning because when two students both wear masks and one tests positive for COVID-19, this is not considered a close contact, thereby eliminating the need for the student who did not test positive for COVID-19 to quarantine; and

**WHEREAS**, The U.S. Food & Drug Administration ("FDA") previously stated: "There is no adequate, approved, and available alternative to the emergency use of face masks for source control by the general public … to help prevent the spread of the virus due to face mask shortages during the COVID-19 pandemic"; and

**WHEREAS**, The 7-day average positivity rate for COVID-19 in Hillsborough County as of August 14 is 21.73%; and

**WHEREAS**, On August 14, 2020, the 7-day average positivity rate in Hillsborough County was 8.65%; and …

DE 67-1, p 1-3. The SBHC policy applies to student, teachers, staff and employees. Id at p.3, and applied to all areas at or inside any building, facility, bus, or other vehicle owned or operated by SBHC. Id. However, the rule only applied from August 19th to September 17th. Id. at p. 4.

On August 27th, the Commissioner of Education, Defendant Richard Corcoran, sent a letter attempting to enforce Emergency Rule 64DER21-12 from the Florida Department of Health and threatened sanctions to SBHC for not allowing the parental ability to opt-out of a face covering or mask. See 80-14. According to the Commissioner, this rule specifically gave him the power to investigate and determine probable cause of these rules and recommend that

the Department of Education withhold funds from SBHC equal to the members of the School Board's salary as well as other sanctions. Id. In closing, the Commissioner stated as follows: "Parents have a fundamental right to direct the upbringing, education and care of their minor children. The Department of Education will protect that right."

On September 1, 2021, SBHC responded to Commissioner Corcoran's threatening letter, mainly using the statistics above, and relying on the decision from Judge Cooper in Scott v. DeSantis, that is currently stayed and subject to appeal in the First District Court of Appeal. Id. at p. 4-5. Gov. DeSantis has further endorsed a private cause of action for parents to sue schools when their children are required to wear a mask. The Governor specifically stated, "When you have a bill of rights, if your individual right as a parent is violated, you have the ability to go in and seek individual vindication, they're obviously doing the opposite there in Tallahassee, they're trying to basically nullify the parents bill of rights, but you can also do it from the other [side]."[1]

II.     **Standard of Review**:

The Plaintiffs' complaint pleads sufficient facts and the law to withstand a motion to dismiss. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted if the allegations in the complaint fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the formal sufficiency of the allegations of claims for relief. The dismissal of a complaint is warranted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Glover v. Liggett Group, Inc., 459 F.3d 1304, 1308 (11th Cir. 2006).

---

[1] https://www.wptv.com/rebound/state-of-education/politicians-who-violated-the-law-regarding-mask-mandates-will-be-penalized-gov-ron-desantis-says (25 seconds to 42 seconds in the news conference)

When ruling on a motion to dismiss under Rule 12(b)(6) a court "accepts that allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Those "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 570). In short, the complaint cannot merely allege misconduct, but must demonstrate that it is plausible that the pleader is entitled to relief. Id.

### III.     Justiciability, Necessary Parties, and Proper Venue

In this matter, SBHC is a necessary and indispensable party. There is no question that the State Defendants would have filed a motion to dismiss in this matter for failure to add in necessary and indispensable parties under Rule 19, Fed.R.Civ.P. if the School Boards were not added in as necessary and indispensable parties as the Governor and the other State Defendants direct their authority through the school districts.  In fact, In the State Defendants' Motion to Dismiss, the State Defendants asserted that by not naming the Florida Department of Health, the plaintiffs' injuries could not be redressed under Support Working Animals, Inc. v. Governor of Fla., 8 F.4th 1198 (11th Cir. 2021).  In the same way, the failure to add in the School Boards would not address the parties that are obligated to implement the unlawful rules, promulgated, and enforced by the State Defendants.

As background, the Governor issued his executive order, E.O. 21-175, on July 30, 2021.[2] The executive order directed the Florida Department of Health and the Florida Department of Education, working together, to immediately execute rules that would "protect parents' right to make decisions regarding masking of their children in relation to COVID-19."

In response to the Executive Order, on August 6, the Plaintiffs filed their Complaint [DE 1] and Preliminary Injunction [DE 3]. Later that same day, the Florida Department of Health and Florida Department of Education promulgated rules, including Rule No. 64DER21 -12, which "conforms to Executive order Number 21-175" and directed that "Students may wear masks or facial coverings as a mitigation measure; however, the school must allow for a parent or legal guardian of the student to opt-out the student from wearing a face covering or mask."[3]

In this case, the Governor and the State Defendants authorized actions against school districts that refused to comply with Florida Law and make school unsafe for children with disabilities by allowing them to be exposed, and at higher risk of becoming infected with COVID-19.  At the time this suit was filed, there was a direction that the executive order be implemented and enforced upon the school districts.  As such, the Plaintiffs could not cite or enjoin the inchoate rules. The Governor took no action directly against the plaintiffs; however, all action was through a school district which would have no option but to enforce the law or be in continual defiance of the law. Rule 19 was specifically enacted to ensure that all parties would be in a case to prevent inconsistent obligations in the event of declaratory or injunctive relief.

---

[2] [Governor DeSantis Issues an Executive Order Ensuring Parents' Freedom to Choose (flgov.com)](https://flgov.com)
[3] https://www.flgov.com/wp-content/uploads/2021/08/8.6.21-DOH-Rule.pdf

*Hayes. v. DeSantis*
Case No.: 1:21-cv-22863-KMM
Page 9 of 19

Under Rule 19(a) of the Federal Rules of Civil Procedure, participation of the County School Boards is required for a just adjudication of this matter. First, complete relief cannot be granted in the County's absence. Rule 19(a), Fed. R. Civ. P. provides as follows:

(a) Persons Required to Be Joined if Feasible.

   (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
   (A) in that person's absence, the court cannot accord complete relief among existing parties; or
   (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
      (i) as a practical matter impair or impede the person's ability to protect the interest; or
      (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19. This rule in equity predates the Federal Rules and the following rationale of the 1854 Supreme Court in Shields v. Barrow is still binding:

> The court here points out three classes of parties to a bill in equity. They are: 1. Formal parties. 2. Persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. These persons are commonly termed necessary parties; but if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties. 3. Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience,

Shields v. Barrow, 58 U.S. 130, 139, 15 L. Ed. 158 (1854); *followed* by Haas v. Jefferson Nat. Bank of Miami Beach, 442 F.2d 394, 396–397 (5th Cir. 1971). In this case, there is no question that the language is traceable to the Executive Order and its implementation through the Department of Education, its commissioner, to SBHC. The obligations as stated by this Court should not be subject to differing courts from differing districts as to whether this law, as applied

to each of the School Boards as well as the Department of Education and should be interpreted in a uniform matter for a uniform remedy.

> "Inconsistent obligations" are not ... the same as inconsistent adjudications or results. Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident. Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum.

Delgado v. Plaza Las Ams., Inc., 139 F.3d 1, 3 (1st Cir.1998) (per curiam) (citations omitted); accord Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ., 584 F.3d 253, 282 (6th Cir.2009) (en banc); Winn-Dixie Stores, Inc. v. Dolgencorp, LLC, 746 F.3d 1008, 1040 (11th Cir. 2014).

Furthermore, the issue regarding whether the implementation of the Executive Order into Rule No. 64DER21 -12, then to the Commissioner's enforcement of the rule, is of no effect as to the School Boards.  For purposes of the School Boards, they are subject to pressure from the State of Florida to violate their student's rights under the ADA and the RA.  The State Defendants have threatened to take further actions other than cutting state funding from the School Board defendants.  As to Defendants SBHC, these Defendants had implemented a parental opt-out rule from August 10 to August 17th, and it is being threatened again to be re-implemented on September 20, 2021. This parental opt-out requirement led to an environment that was dangerous for these children, and will continue to be an imminent threat to these children.  Because this is a fluid situation, with further implementation of the executive rule prospective relief must fit the remedy to the wrong or injury that has been established. Salazar v. Buono, 559 U.S. 700, 718, 130 S. Ct. 1803, 1818, 176 L. Ed. 2d 634 (2010). "A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need" United States v. Swift & Co.,

286 U.S. 106, 114, 52 S. Ct. 460, 462, 76 L. Ed. 999 (1932). In 1917, Justice Oliver Wendell Holmes addressed the need for a court to act in equity to stop and contain the threatening effects of a continuing violation: "To speak accurately, it is not the statute that gives a right to relief in equity, but the fact that in the particular case the threatening effects of a continuing violation of the statute are such as only equitable process can prevent. The right to equitable relief does not depend upon the nature or source of the substantive right whose violation is threatened, but upon the consequences that will flow from its violation." Paine Lumber Co. v. Neal, 244 U.S. 459, 476, 37 S. Ct. 718, 722, 61 L. Ed. 1256 (1917)

The Plaintiffs' focus on one forum to resolve the issues relates to the need for uniformity and settled expectations, but it is also directly attributable to the venue issues that are involved in this case. Pursuant to 28 U.S.C. § 1391,

> Venue in general. --A civil action may be brought in--(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located.

In this matter, all of the defendants reside in the state of Florida, and plaintiffs brought the case in a district in which several defendants reside. As such, venue is appropriate. There are no exceptions to the venue rule other than forum non-convenience. However, due to the overall issues of law in dispute in this case and the use of remote proceedings during the pandemic, *forum non conveniens, 29 U.S.C. § 1404(a)* is a non-issue, especially so when each defendant contends that each of its locations is a proper forum. The Defendants have not stated any specific reason why the Northern District, or the Middle District would be more convenient than the southern district, other than to sever the claims, which again, would bring inconsistent adjudications and would further delay the immediate relief that the Plaintiffs are requesting, and the same immediate relief would also inure

to the benefits of the Defendants who should want their legal obligations resolved in light of the danger to their students.

Lastly, the "Home Venue Privilege" is inapplicable. It provides that, absent waiver or exception, venue in a suit against the State, or an agency or subdivision of the State, is proper only in the county in which the State, or the agency or subdivision of the State, maintains its principal headquarters. Fla. Pub. Serv. Comm'n v. Triple "A" Enters., Inc., 387 So.2d 940, 942 (Fla.1980). Primarily, state created procedural rights must cede to federal rules and procedures. See Hanna v. Plumer, 380 U.S. 460, 473–74, 85 S. Ct. 1136, 1145, 14 L. Ed. 2d 8 (1965)("To hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act."). The procedural requirements of 28 U.S.C. 1391 supersede Florida law as to appropriate venue.

## IV. There is no requirement to exhaust Plaintiffs claims under the IDEA

The Defendant contend that the Plaintiffs were required to exhaust administrative preconditions under the Individuals with Disabilities in Education Act. (IDEA), 20 U.S.C. § 1415(l). Section 1415(l) requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit "seek[s] relief that is also available" under the IDEA. Exhaustion is also not required if exhaustion would be futile or the relief available inadequate. N.B. by D.G. v. Alachua Cty. Sch. Bd., 84 F.3d 1376, 1379 (11th Cir. 1996); M.T.V. v. DeKalb County School District, 446 F.3d 1153, 1159 (11th Cir 2006).

In Fry v. Napoleon Cmty. Sch., 137 S. Ct. 743, 753–54, 197 L. Ed. 2d 46 (2017), the Supreme Court found that the role of a hearing officer under the IDEA is to enforce a child's

"substantive right" to a free appropriate public education (FAPE). Id. (*quoting* Smith v. Robinson, 468 U.S. 992, 1010, 104 S.Ct. 3457, 82 L.Ed.2d 746. (1984). When an action does not involve educational methods, and instead involves other types of disability discrimination, such as physical access or integration or transportation, exhaustion is not required. Id. To determine if exhaustion is required, the Fry Court offered a test of two hypothetical questions as follows:

> One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions. First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward. But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

Fry, 137 S. Ct. at 756.

The widespread nature of cases across the United States regarding the validity and extent of the use of masks as preventative measures extends from public accommodations, such as retail stores, Pletcher v. Giant Eagle Inc., 2020 WL 6263916, at *1 (W.D. Pa. 2020)(grocery store); Emanuel v. The Walt Disney Co., 2021 WL 2454462, at *2 (E.D. Pa. 2021)(Disney Store); governmental entities, Blandino v. Eighth Judicial Dist. Court in & for County of Clark, 478 P.3d 936 (Nev. App. 2021)(court); Chew v. Legislature of Idaho, 512 F. Supp. 3d 1124, 1126 (D. Idaho 2021)( legislature); Ahlman v. Barnes, 445 F. Supp. 3d 671, 688 (C.D. Cal. 2020) (prison), Costa v. Bazron, 464 F. Supp. 3d 132 (D.D.C. 2020)(psychiatric facilities); and to the extent that this case involves accommodations at places of work, the EEOC has established guidelines for employers. *See* Coronavirus and COVID-19, found at https://www.eeoc.gov/coronavirus.

Furthermore, as to the second question, an adult at the school, such as an employee or visitor, could file a claim under Section 504 or the ADA for the same claim. In this mater, students, employees and visitors are all subject to the same rule. There is nothing that would prevent visitors or employees them from bringing the identical case – had the Governor decided that employees and visitors can enter unmasked. As such exhaustion is not required.

Notably, the injury in this case is that the failure to have a mask mandate without parental opt-out, or other health-related protections would exclude a child from a school, would segregate them from other children or would subject them to increased bodily harm. This would not only include a classroom, but would also include transportation, hallways and bathrooms in a fully integrated school setting. The policy is specific in covering issues other than solely education. This is distinguishable from situations in which the use of a mask would affect the child's ability to learn. Whether a mask would hinder learning, whether the learning is academic or social, is a question of educational methods that would require exhaustion though the IDEA. *See* Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 207, 102 S. Ct. 3034, 3051, 73 L. Ed. 2d 690 (1982)("[C]hoosing the educational method most suitable to the child's needs [] was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child."). Safety is not an educational method; thus exhaustion is not required.

In addition to the Fry test, the exhaustion of the administrative remedies under the IDEA is not required where resort to administrative remedies would be 1) futile or 2) inadequate. N.B. by D.G. v. Alachua Cty. Sch. Bd., 84 F.3d 1376, 1379 (11th Cir. 1996); M.T.V. v. DeKalb County School District, 446 F.3d 1153, 1159 (11th Cir 2006). Exhaustion is not required in very limited circumstances, such as where exhaustion is futile or inadequate, where the question presented is

purely legal, where the administrative process cannot grant relief, or where exhaustion would work a severe or irreparable harm upon a litigant. D.M. v. New Jersey Dept. of Educ., 801 F.3d 205 (3d Cir. 2015). Springer v. Wal–Mart Assocs. Group Health Plan, 908 F.2d 897, 901 (11th Cir.1990)(To substantiate a claim of futility the Petitioners must make a "clear and positive" showing of futility); *see also* McGraw v. Prudential Ins. Co. of Am., 137 F.3d 1253, 1264 (10th Cir.1998) (noting that futility exception is limited to those situations where resort to administrative remedies would be "clearly useless").

In this matter, a hearing officer would not be able to address a child's "substantive right" to a FAPE, such as requiring other students to wear masks, especially when such relief violates Florida law. Further, an administrative court does not have jurisdiction over the Governor, the Commissioner of Education, or the Department of Education. P.J.S. v. School Bd. Of Citrus Cty., 951 So. 2d 53 (Fla. 5th DCA 2007). Hearing officers can only resolve disputes between a parent and a school district. See 20 U.S.C. § 1415(f)(1)(A). The mere fact that remedies are not available, even after the due process hearing occurs, would make the process, by definition futile and inadequate. In this matter, the need for a safe environment is beyond the scope of the due process hearing. See Weber v. Cranston Sch. Comm., 212 F.3d 41, 52 (1st Cir.2000) (observing that a state's implementation of the IDEA may render exhaustion futile where a plaintiff's complaint lies beyond "the scope of the due process hearing"); McGraw v. Prudential Ins. Co. of Am., 137 F.3d 1253, 1264 (10th Cir.1998) (noting that futility exception is limited to those situations where resort to administrative remedies would be "clearly useless").

Furthermore. systemic violations, such as a widespread legal violation or a practice, are an example of such inadequate or futile events which would not require exhaustion, exhaustion is similarly deemed to be inadequate and not necessary when "an emergency situation exists (e.g.,

the failure to take immediate action will adversely affect a child's mental or physical health)." Komninos by Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778–79 (3d Cir. 1994)(quoting H.R.Rep. No. 296, 99th Cong., 1st Sess. 7 (1985)). In this case, the regulation, in and of itself, is an emergency regulation. The mere fact that the due process timeline under Florida Administrative Code 6A06.03311(9) provides at least 75 days for a decision makes relief futile. This is not including the court delays that have also been systemic due to the pandemic.

One of the protections that is usually provided to a student is the IDEA's stay put provision. Section 1415(j) establishes a student's right to a stable learning environment during what may be a lengthy administrative and judicial review. Tenn. Dep't of Mental Health & Mental Retardation v. Paul B., 88 F.3d 1466, 1472 (6th Cir.1996). If the child is ejected from his or her current educational placement while the administrative process sorts out where the proper interim placement should be, then the deprivation of education is complete. And, when such deprivation cannot be satisfied by the stay put provision, then again, immediate relief is essential to vindicate a child's right. See Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 199–200 (2d Cir. 2002); L.A. v. New York City Dep't of Educ., 2020 WL 5202108, at *3 (S.D.N.Y. Sept. 1, 2020). In this matter, there is no protections afforded to a child in the delay, as the stay-put option places more harm to the child's education and health. Furthermore, the situation with surges of COVID are so fluid, that the complying with such conditions each time an arbitrary rule placing children with disabilities in danger would make relief always impossible. See Roman Cath. Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 208 L. Ed. 2d 206 (2020)

In this case, the facts themselves demonstrate the futility of administrative processes. For G.D., she could not get the services that she needed for her emotional disability through any alternate means than by-in person education. Further, with the children with asthma, there is

nothing that an administrative law judge could or could not do to other children in the classrooms, lunch room, hallways, or school busses. This physical segregation is the exact harm the ADA was meant to address that is not addressed by the IDEA, as such relief would be futile and inadequate. See Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 119 S. Ct. 2176, 144 L. Ed. 2d 540 (1999).

V.    **This matter is not moot**

In light of the daily changes that have been occurring with the dangerousness of COVID-19, as well as the obligations of the parties, and the enforcement of penalties as to School Boards, this is as live as a controversy can possibly be.

In Roman Cath. Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 208 L. Ed. 2d 206 (2020), the Supreme Court recently analyzed the mootness issue when analyzing the changing restrictions due to the effect of the surges in the COVID-19 pandemic with regards to the limitations placed on places of worship. In doing so, the Court stated:

> The dissenting opinions argue that we should withhold relief because the relevant circumstances have now changed. After the applicants asked this Court for relief, the Governor reclassified the areas in question from orange to yellow, and this change means that the applicants may hold services at 50% of their maximum occupancy. The dissents would deny relief at this time but allow the Diocese and Agudath Israel to renew their requests if this recent reclassification is reversed.
> There is no justification for that proposed course of action. It is clear that this matter is not moot. See Federal Election Comm'n v. Wisconsin Right to Life, Inc., 551 U.S. 449, 462, 127 S.Ct. 2652, 168 L.Ed.2d 329 (2007); Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). And injunctive relief is still called for because the applicants remain under a constant threat that the area in question will be reclassified as red or orange. See, *e.g.*, Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014). The Governor regularly changes the classification of particular areas without prior notice. If that occurs again, the reclassification will almost certainly bar individuals in the affected area from attending services before judicial relief can be obtained. At most Catholic churches, Mass is celebrated daily, and "Orthodox Jews pray in [Agudath Israel's] synagogues every day." Application in No. 20A90, at 4. Moreover, if reclassification occurs late in a week, as has happened in the past, there may not be time for applicants to seek and obtain relief from this Court before another Sabbath passes. Thirteen days

> have gone by since the Diocese filed its application, and Agudath Israel's application was filed over a week ago. While we could presumably act more swiftly in the future, there is no guarantee that we could provide relief before another weekend passes. The applicants have made the showing needed to obtain relief, and there is no reason why they should bear the risk of suffering further irreparable harm in the event of another reclassification.

Roman Cath. Diocese of Brooklyn, 141 S. Ct. at 68–69. In this mater, the Governor decided to implement an Executive Order for a parental opt-out for a mask mandate on July 30, 2021, knowing that school began on August 10th. As of August 18th, HCPS had 10,384 students in isolation or in quarantine and 338 employees in isolation or quarantine as reasoning for the new policy. The new policy which has been in place for the past two weeks is in effect for another two weeks. Furthermore, the Commissioner of Education and the Department of Education has threatened to withhold the salaries for all of the members of the school board if this policy is not suspended/revoked/rescinded. D.E. 80-12.

In this matter the plaintiffs have been asking for relief prior to thousands of children have been infected, before the infection led to the change in the policy, before the threats from the governor, and there is nothing that would indicate that this case was moot, and the cycle of removing restrictions and infections would not begin anew.

**WHEREFORE,** Plaintiffs, JUDITH ANNE HAYES, individually and on behalf of W.H., a minor., et al., respectfully requests that this Court DENY the Defendant's motion to dismiss and grant any further relief as this court deems just and equitable.

Respectfully submitted this 13th day of September 2021.

By: /s/*Matthew W. Dietz*
Matthew W. Dietz, Esq.
Florida Bar No. 84905

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 13, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties and counsel of record, or in some other authorized manner for those counsel or parties who are not authorized to receive notices electronically.

By: /s/*Matthew W. Dietz*
Matthew W. Dietz, Esq.
Florida Bar No. 84905
Stephanie Langer, Esq.
Florida Bar No. 149720
2990 Southwest 35th Avenue
Miami, Florida 33133
T: (305) 669-2822 / F: (305) 442-4181
slanger@justDIGit.org
mdietz@justdigit.org
aa@justdigit.org