**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:21-CV-22863-KMM

JUDITH ANNE HAYES, individually
and on behalf of W.H., a minor, et al.,

    Plaintiffs,

v.

GOVERNOR RONALD DION
DESANTIS, in his official Capacity as
Governor of the State of Florida, et al.,

    Defendants.

**STATE DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

| | |
|---|---|
| Raymond Treadwell (FBN 93834) | Anastasios Kamoutsas (FBN 109498) |
| Chief Deputy General Counsel | General Counsel |
| EXECUTIVE OFFICE OF THE GOVERNOR | FLORIDA DEPARTMENT OF EDUCATION |
| The Capitol, PL-5 | Turlington Building, Suite 1244 |
| 400 S. Monroe Street | 325 West Gaines Street |
| Tallahassee, Florida 32399-6536 | Tallahassee, Florida 32399-0400 |
| Ray.Treadwell@eog.myflorida.com | Anastasios.Kamoutsas@fldoe.org |
| Gov.legal@eog.myflorida.com | (850) 245-0442 |
| (850) 717-9310 | |
| | *Counsel for Commissioner Richard Corcoran* |
| *Counsel for Governor Ronald Dion DeSantis* | *and Florida Department of Education* |

Rocco E. Testani (*pro hac vice*)
Stacey M. Mohr (*pro hac vice*)
Lee A. Peifer (*pro hac vice*)
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, N.E., Suite 2300
Atlanta, Georgia 30309
roccotestani@eversheds-sutherland.com
staceymohr@eversheds-sutherland.com
leepeifer@eversheds-sutherland.com
(404) 853-8000

*Counsel for State Defendants*

**TABLE OF CONTENTS**

I.   Introduction ................................................................................................................... 1

II.  Argument and Citation of Authorities ........................................................................... 1

    A.   Plaintiffs Must Exhaust Administrative Remedies Before Asserting Their ADA and Section 504 Claims Premised on the Denial of a Free Appropriate Public Education. 1

    B.   Plaintiffs' Claims Should Be Dismissed for Lack of Standing. .................................... 5

    C.   Plaintiffs' State-Law Claim Should Be Dismissed as Well. ......................................... 9

III. Conclusion .................................................................................................................. 10

## I. INTRODUCTION

The Complaint in this case could not be more clear: Plaintiffs explicitly and repeatedly allege that they are suing over concerns about a "free appropriate public education" (FAPE). And the statewide injunction that they seek would not resolve their individualized local concerns in any event. This Court has already denied Plaintiffs' motion for a preliminary injunction, concluding in part that they have not exhausted their administrative remedies as required by applicable law. (ECF No. 98.) That conclusion was correct in the context of the requested injunction and also warrants outright dismissal. Although the Court did not fully address standing in its order denying the injunction, Plaintiffs' lack of standing is yet another fundamental—and jurisdictional—flaw that requires dismissal of the Complaint in its entirety.

## II. ARGUMENT AND CITATION OF AUTHORITIES

**A. Plaintiffs Must Exhaust Administrative Remedies Before Asserting Their ADA and Section 504 Claims Premised on the Denial of a Free Appropriate Public Education.**

Plaintiffs' response to the State Defendants' motion to dismiss (ECF No. 88, hereinafter "Resp.") relies on construing this lawsuit as very different from the case they actually brought. Even though the Complaint refers to FAPE no fewer than 28 times, Plaintiffs now insist that "[t]here is no difference in this matter from the denial of a ramp to the school for a child in a wheelchair, or the denial of being permitted to enter school with a service animal." (*Id.* at 7.) But the test to determine whether Plaintiffs must exhaust administrative remedies as required by the Individuals with Disabilities in Education Act (IDEA), 20 U.S.C. § 1415(*l*), is not whether they *could* have asserted claims for non-FAPE relief in another hypothetical lawsuit. Nor is the test whether an administrative law judge could impose all of the most extraordinary remedies sought in their prayer for relief. The *right* question is whether "the gravamen of the plaintiff's suit is something *other* than the denial of the IDEA's core guarantee" of a "free appropriate public

1

education." *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 748 (2017) (emphasis added). And Plaintiffs cannot "avoid the exhaustion requirement simply by asking for relief"—such as a statewide injunction against the Executive Order here—"that administrative authorities could not grant." *N.B. by D.G. v. Alachua Cty. Sch. Bd.*, 84 F.3d 1376, 1379 (11th Cir. 1996).

Try as they might to recharacterize their claims as seeking general access to public schools, Plaintiffs' insistence that the "gravamen" of this suit is anything other than their expressly alleged concerns about FAPE (*e.g.*, Resp. 5) does not make it so. There is no need to search for "clue[s]" about the nature of Plaintiffs' claims, *Fry*, 137 S. Ct. at 756, because the Complaint *tells* us—over and over again—that Plaintiffs seek to vindicate their rights to a "free appropriate public education." (*E.g.*, Compl. 32, 34 (requesting "a permanent injunction enjoining the Defendants from interfering with their rights to a free and appropriate public education in the least restrictive environment").) This is not a case about wheelchair ramps or service animals—much less a case in which Plaintiffs assert claims that could just as well have been brought by "an employee or visitor" concerning "a public theater or library." *Fry*, 137 S. Ct. at 756 (*quoted in* Resp. 11).

Quite the contrary; the Complaint is brimming with allegations about the alleged denial of the plaintiffs' individualized FAPE (and IDEA) rights to specific educational programs and services. For example:

- "The children whose parents are plaintiffs are all children who have an individualized education plan or 504 plan in the school districts in the counties in which they live. . . . The families are seeking to have their IEP and 504 plan[s] implemented with care and heed taken for their *individual circumstances* as demanded by the educational laws . . . ." (Compl. ¶ 47 (emphasis added).)

- "The children Plaintiffs would like the school district to implement their IEP and 504 plans as required by Federal Law . . . ." (*Id.* ¶ 48.)

- "On its face, this executive order conflicts with the school districts['] obligations *under the Individuals with Disabilities Education Act*, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act . . . " (*Id.* ¶ 49 (emphasis added).)

- "FAPE is established with the creation of an Individualized Education Plan (IEP) for each ESE student." (*Id.* ¶ 81.)

- Plaintiff W.H. in Orange County complains that his school district does not provide a "'full panoply of services' including live synchronous and asynchronous instruction with the same curriculum as in person instruction" in a remote setting, with "the necessary supports, services and accommodations as identified in his IEP, including direct instruction from a special education teacher." (*Id.* ¶¶ 99, 100.)

- Plaintiffs L.M. in Miami Dade County and R.K. in Volusia County "cannot return to school safely"—period—because "[n]o one can guarantee [their] safety." (*Id.* ¶¶ 104, 130.) L.M.'s principal complaint in this regard, though not R.K.'s, is that he still wants to "remain in his magnet school program and receive all the benefits of that program," presumably through remote instruction. (*Id.* ¶ 106.)

- Plaintiffs R.M. and L.M. in Hillsborough County, along with several individual Plaintiffs in Palm Beach and other counties, complain that the "Florida Virtual School or other online programs" available to them in their local school districts do not "provide FAPE." (*Id.* ¶ 114; *see also id.* ¶¶ 121, 127, 142, 148, 154.) But "[t]here is one district whose virtual school program might arguably provide a free appropriate public education (FAPE) to students with disabilities. Hendry County Public Schools is the only district that provides access point curriculum for students with disabilities through its virtual platform." (*Id.* ¶ 77 n.1.) And Defendant "Palm Beach County suggested that families with children on access point curriculums leave the Palm Beach Public Schools and enroll in Hendry County Virtual School." (*Id.* ¶ 127.)

- Plaintiff Q.C. in Palm Beach County "would *consider* participating in district learning," presumably with appropriate accommodations for remote instruction, but alleges that the current "Florida Virtual School or Palm Beach County Virtual school" options do not "provide[] an equal education." (*Id.* ¶¶ 159, 160 (emphasis added).)

- "The Plaintiffs are seeking practical solutions. There is an understanding and appreciation for the competing interests. . . . The Plaintiffs are seeking a reinstatement of a 'full panoply of services' including live synchronous and asynchronous instruction with the

3

same curriculum as in person instruction and the ability to interact with a student's teacher and peers." (*Id.* ¶ 162.)

These individualized allegations and the claims pleaded in the Complaint are *not* focused on any "systemic" violation that should be "considered to be outside of the IDEA" (Resp. 8).[1] Despite Plaintiffs' newfound briefing emphasis on "*access* to their educational and non-educational benefits of being a child in school" (*id.* at 3 (emphasis added)), the *Complaint's* references to "access" primarily concern a specific curriculum or the sufficiency of options for remote instruction from time to time in various school districts. (*E.g.* Compl. ¶ 82 (defining "Access Points" curriculum); *see also id.* ¶ 59 ("The term 'distance learning' became the phrase used to describe children learning at home and accessing their education online remotely.").)[2] And Count 2 of the Complaint specifically alleges that "failure to provide access to FAPE *in an alternative setting* . . . is a violation of Section 504." (Compl. ¶ 187 (emphasis added).)

The State Defendants are not improperly relying on "magic words" here, *Fry*, 137 S. Ct. at 755, or trying to play gotcha "just because the Plaintiffs intoned the acronym 'FAPE'" (Resp. 5). Plaintiffs are the masters of their Complaint, which—again—says *explicitly* that they "seek[]

---

[1] The cases that Plaintiffs cite about "systemic" violations or remedies under the IDEA (Resp. 8–10) are inapposite. For example, this lawsuit is not a class action purporting to raise common issues or typical claims and defenses related to a uniform policy that allegedly violates the IDEA's procedural requirements. *Cf. L.M.P. ex rel. E.P. v. Sch. Bd. of Broward Cty.*, 516 F. Supp. 2d 1294, 1305 (S.D. Fla. 2007) ("Under the [specific] facts alleged here, exhaustion *by class members* would be needless and futile." (emphasis added)) (*cited in* Resp. 8); *Ass'n for Cmty. Living v. Romer*, 992 F.2d 1040, 1045 (10th Cir. 1993) ("Although we hold that the plaintiffs in this case failed to satisfy the IDEA's exhaustion requirement, we do not hold that every plaintiff in a class action must exhaust the IDEA's administrative remedies.") (*cited in* Resp. 8). And the only Eleventh Circuit decision that Plaintiffs cite on this issue, *L.J. v. School Board of Broward County*, 927 F.3d 1203 (11th Cir. 2019), did not address the plaintiff's undisputed exhaustion of administrative remedies.

[2] *Compare* Compl. ¶ 85 ("Virtual programs do not provide students with disabilities a free appropriate public education . . . ."), *with id.* ¶¶ 77 n.1, 85 n.2, 127 (favorably comparing virtual options allegedly available through Hendry County programs).

4

to have their IEP and 504 plan[s] implemented with care and heed taken for their *individual circumstances* as demanded by the educational laws" because the Governor's Executive Order "conflicts with the school districts['] obligations *under the Individuals with Disabilities Education Act*." (Compl. ¶¶ 47, 49 (emphasis added).) *Cf. Borrero v. United HealthCare of N.Y., Inc.*, 610 F.3d 1296, 1303 (11th Cir. 2010) (requiring dismissal of claims as pleaded because "the plaintiff is the master of the complaint" (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987)).

With respect to the IDEA's statutory exhaustion requirement, this is not a close case.[3] Binding Supreme Court and Eleventh Circuit precedent require the ADA and Section 504 claims to be dismissed because Plaintiffs have not exhausted their administrative remedies. *Fry*, 137 S. Ct. 743; *Durbrow v. Cobb Cty. Sch. Dist.*, 887 F.3d 1182, 1190 (11th Cir. 2018) ("Since the only remedy available under the IDEA is injunctive relief for the wrongful denial of a FAPE, any such claim must undergo an administrative hearing before proceeding to state or federal court, whether the claim arises under the IDEA, § 504, the ADA, or any other federal law. The rationale is clear: plaintiffs cannot circumvent the IDEA's exhaustion requirement by suing for a FAPE deprivation under a different federal statute." (internal citation omitted)). Counts 1 and 2 of the Complaint therefore should be dismissed.

**B.    Plaintiffs' Claims Should Be Dismissed for Lack of Standing.**

Plaintiffs' lack of standing has been thoroughly addressed, not only in the State Defendants' opening brief supporting dismissal but also in connection with Plaintiffs'

---

[3] This lawsuit is unlike the mask cases cited by Plaintiffs as pending in federal district courts in Iowa and Tennessee, where the complaints did not repeatedly allege the deprivation of a FAPE—as this Court noted in its order denying Plaintiffs' motion for a preliminary injunction (ECF No. 98, at 17 nn.3, 4). The gravamen of the ADA and Section 504 claims in the Complaint *here* is such that Plaintiffs must first exhaust their administrative remedies under the IDEA.

unsuccessful motion for a preliminary injunction. And although none of the evidence related to the injunction motion is *necessary* to conclude that the Complaint should be dismissed for lack of standing, Plaintiffs' assertion that "the motion [to dismiss] should be decided on the four corners of the complaint" (Resp. 16) is misplaced. The State Defendants' standing defense implicates the Court's subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and "in determining subject matter jurisdiction we are permitted to look at all of the evidence presented, including affidavits and testimony relating to a motion for a preliminary injunction." *Fla. Family Policy Council v. Freeman*, 561 F.3d 1246, 1253 (11th Cir. 2009).

Without reiterating arguments previously made, the State Defendants note that Plaintiffs' response to the motion to dismiss barely touches on standing. But Plaintiffs continue to assert, incorrectly, that the relief they seek in this litigation would somehow eliminate the "risk of serious injury or death if they go back to school" or ensure "equal access to the programs and services of similarly situated able bodied kids in the school district." (Resp. 4.) That assertion is belied by the allegations in the Complaint, the terms of the Executive Order that Plaintiffs seek to enjoin, and their own prior submissions to the Court.

Regardless of whether Plaintiffs' alleged injuries are properly construed as the risk of lost educational opportunities and the denial of FAPE if they choose to seek accommodations under federal disability law, or more broadly construed as risks to their personal health and safety if they choose to attend in-person public schools, those injuries are not fairly traceable to the Governor's Executive Order and could not be redressed by the relief that they seek in this case.

As noted above, the Complaint alleges that the individual Plaintiffs are differently situated with respect to their individual disabilities, preferences for virtual instruction or other accommodations, and willingness to attend in-person classes with or without a local mask

6

mandate. But a common theme throughout the Complaint is the allegation, repeated for each Plaintiff, that it would be "too dangerous to return to brick-and mortar school without . . . mandatory masking and regular [COVID-19] testing in schools." (Compl. ¶¶ 98, 105, 113, 120, 125, 131, 135, 141, 147, 153, 158; *see also id.* ¶ 136 (alleging that Plaintiff J.D.-F.'s disability requires "mandatory masking and regular testing" to be implemented in his *siblings'* schools).)

It is not "likely, as opposed to merely speculative," *Support Working Animals, Inc. v. Governor of Fla.*, --- F.4th ---, No. 20-12665, 2021 WL 3556779, at *2 (11th Cir. Aug. 12, 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quotation marks omitted)), that granting the relief sought in the Complaint, by enjoining enforcement of an Executive Order that encourages school districts to let parents opt out of local mask mandates (*see* Compl. ¶ 42–44), would redress Plaintiffs' alleged concerns. Nor could such a remedy possibly "guarantee" student safety in every circumstance (*id.* ¶¶ 104, 125, 130, 147), especially when the potential health risks that Plaintiffs identify are, as a practical matter, subject to "the independent action of some third part[ies] not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. at 560.

Plaintiffs' assumptions about traceability and redressability are inconsistent with their own allegations and indisputable facts in the record. The examples below are more than sufficient to show that Plaintiffs lack standing to pursue their claims, because their requested injunction against the Executive Order would not solve any of the following potential problems:

- If Plaintiffs believe that "mandatory masking" is essential for them to obtain a FAPE, the injunction they seek would not achieve that goal. Even without the Executive Order, individual county school districts could (as far as *this* case is concerned) adopt, implement, limit, or terminate local mask mandates in their discretion. Plaintiffs' own submissions in support of their motion for a preliminary injunction show that some districts have imposed mask mandates notwithstanding the Executive Order, while others (as in Pasco County) have expressed little or no interest in doing so.

7

- Similarly, enjoining enforcement of the Executive Order would not require school districts to enforce their own mask mandates, if or when they chose to impose them. Nor would such an injunction require students to wear masks at all times, such as during lunch, or without regard to any medical exemptions that might permit some students (e.g., those with certain disabilities) to avoid wearing masks in class. And teachers and staff might be entirely exempt from any local mask mandates imposed by the individual county school districts.

- Plaintiffs themselves have alleged in the Complaint that some of them are not willing to attend in-person classes *even if* their county school districts impose local mask mandates. (*Compare* Compl. ¶¶ 104, 130 (alleging without qualification that at least two Plaintiffs "cannot return to school safely"), *with id.* ¶ 89 (alleging "the only option for students with disabilities to receive a free appropriate public education (FAPE) in the Least Restrictive Environment (LRE) is to return to a brick-and-mortar school building"). Some Plaintiffs further confirmed that reluctance in sworn declarations submitted to the Court, while others indicated a willingness to attend school in-person even in districts without mask mandates. (*Compare* ECF No. 80-1 ¶ 17 ("After a mask mandate was put into place, it was still too dangerous for W.H. to return to school [in Orange County] . . . ."), *with* ECF No. 80-6 ¶ 6 ("Two of my children [with disabilities] are currently in public school attending in person education [in Pasco County, with no local mask mandate]. My youngest child [with a disability] was removed . . . . We instead placed her in Florida Virtual School (FLVS).").)

- If Plaintiffs believe "regular [COVID] testing" is necessary to a FAPE, the Executive Order does not speak to that issue *at all*. Executive Order No. 21-175 (July 30, 2021), https://www.flgov.com/wp-content/uploads/orders/2021/EO_21-175.pdf.

- For Plaintiffs who would "consider" district-sponsored alternatives to in-person instruction with better options or accommodations for virtual learning (*see* Compl. ¶ 159), enjoining the Executive Order would do nothing to improve or modify those existing options.

- Insofar as Plaintiffs take issue with the Department of Health's emergency rule in response to the Executive Order, Emergency Rule 64DER21-12(1)(d), Fla. Admin. Reg., Vol. 47/153 (Aug. 9, 2021), https://www.flrules.org/gateway/ruleNo.asp?id=64DER21-12—which requires schools to "allow for a parent or legal guardian of the student to opt-out the student from wearing a face covering or mask"—Plaintiffs have failed to join the Department of Health as a party or to seek any injunctive relief against the enforcement of that particular rule, which would remain in effect on its terms regardless of whether the parties here are enjoined from enforcing the Executive Order.

Finally, Plaintiffs' "collateral estoppel" arguments (Resp. 16–17) should be rejected out of hand. This Court has already noted that the injunction issued by Judge John Cooper in Florida state court has been "stayed pending appeal." (ECF No. 98, at 10 (citing ECF No. 89, at 1).) Setting aside the important differences between this litigation and the case before Judge Cooper, the judgment there is not "final," the parties are not identical, and Judge Cooper's "findings" on the issues that Plaintiffs emphasize here were not critical or necessary to his conclusions about the Executive Order under state law.[4] *See generally Goodman v. Aldrich & Ramsey Enters.*, 804 So. 2d 544, 546 (Fla. 2d DCA 2002), *cited with approval in Wingard v. Emerald Venture Fla. LLC*, 438 F.3d 1288, 1293 (11th Cir. 2006). Because Judge Cooper's decision thus does not have preclusive effect under Florida law, it cannot bind this Court. *See Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011) ("In considering whether to give preclusive effect to state-court judgments under res judicata or collateral estoppel, the federal court must apply the rendering state's law of preclusion.").

## C.     Plaintiffs' State-Law Claim Should Be Dismissed as Well.

Plaintiffs have not rebutted the State Defendants' arguments to dismiss their Florida Educational Equity Act claim, which is barred by the Eleventh Amendment, fails under Florida law, and over which this Court should not retain supplemental jurisdiction. Their citations to cases drawing a distinction between injunctive relief and damages remedies for violations of *federal* law (Resp. 19–20) do not change the rule that federal courts cannot enjoin the State Defendants from committing alleged violations of *state* law (*see* State Defs' Mot. Dismiss 17–18

---

[4] Judge Cooper enjoined enforcement of the Executive Order to the extent that he thought it violated the Parents' Bill of Rights, Ch. 2021-199, Laws of Fla., http://laws.flrules.org/2021/199 (codified at §§ 1014.01–.06, Fla. Stat.), a Florida statute that Plaintiffs have not invoked or challenged in this case.

(ECF No. 69))—especially when any claims under federal law have been dismissed for failure to exhaust and lack of jurisdiction.

### III.    CONCLUSION

Plaintiffs have failed to state a claim upon which relief can be granted or over which this Court has jurisdiction. The entire Complaint therefore should be dismissed under Federal Rule of Civil Procedure 12(b)(1) and (6).

Respectfully submitted this 16th day of September 2021.

*/s/ Raymond Treadwell*
Raymond Treadwell (FBN 93834)
Chief Deputy General Counsel
EXECUTIVE OFFICE OF THE GOVERNOR
The Capitol, PL-5
400 S. Monroe Street
Tallahassee, Florida 32399-6536
Ray.Treadwell@eog.myflorida.com
Gov.legal@eog.myflorida.com
(850) 717-9310

*Counsel for Governor Ronald Dion DeSantis*

*/s/ Anastasios Kamoutsas*
Anastasios Kamoutsas (FNB 109498)
General Counsel
FLORIDA DEPARTMENT OF EDUCATION
Turlington Building, Suite 1244
325 West Gaines Street
Tallahassee, Florida 32399-0400
Anastasios.Kamoutsas@fldoe.org
(850) 245-0442

*Counsel for Commissioner Richard Corcoran and Florida Department of Education*

Rocco E. Testani (*pro hac vice*)
Stacey McGavin Mohr (*pro hac vice*)
Lee A. Peifer (*pro hac vice*)
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, N.E., Suite 2300
Atlanta, Georgia 30309
roccotestani@eversheds-sutherland.com
staceymohr@eversheds-sutherland.com
leepeifer@eversheds-sutherland.com
(404) 853-8000

*Counsel for State Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 16, 2021, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I also further certify that the foregoing document is being served this day on all counsel of record or all parties identified on the attached Service List in the manner specified, either via electronic transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

/s/ *Anastasios Kamoutsas*
Anastasios Kamoutsas

**SERVICE LIST**

Matthew W. Dietz
Stephanie Langer
Disability Independence Group, Inc.
2990 Southwest 35th Avenue
Miami, Florida 33133
mdietz@justdigit.org
slanger@justDIGit.org
aa@justdigit.org
*Attorneys for Plaintiffs*

Natasha S. Mickens
David Delaney
Dell Graham, P.A.
2631 NW 41st Street, Building B
Gainesville, Florida 32606
natasha.mickens@dellgraham.com
david.delaney@dellgraham.com
elizabeth.whisler@dellgraham.com
leann.campbell@dellgraham.com
*Attorneys for Defendant, Alachua County School Board*

Michael T. Burke
Hudson C. Gill
Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A.
2455 East Sunrise Boulevard, Suite 1000
Fort Lauderdale, Florida 33304
Burke@jambg.com
hgill@jambg.com
Cardona@jambg.com
Diaz@jambg.com
*Attorneys for Defendant, Broward County School Board*

Jason L. Margolin
Zarra R. Elias
Akerman LLP
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
jason.margolin@akerman.com
zarra.elias@akerman.com

Christine B. Gardner
Akerman LLP
777 South Flagler Drive, Suite 1100 West Tower
West Palm Beach, Florida 33401
Christine.gardner@akerman.com
lella.proveste@akerman.com
*Attorneys for Defendant, Hillsborough County School Board*

Sara M. Marken
Luis M. Garcia
Jordan Madrigal
The School Board of Miami-Dade County, Florida
1450 NE 2nd Avenue, Suite 430
Miami, Florida 33132
smarken@dadeschools.net
lmgarcia2@dadeschools.net
jordanmadrigal@dadeschools.net
*Attorney for Defendant, Miami-Dade County School Board*

Amy Pitsch
Susana Cristina Garcia
Greenspoon Marder LLP
201 E. Pine Street, Suite 500
Orlando, Florida 32801
amy.pitsch@gmlaw.com
tina.garcia@gmlaw.com
Melissa.spinner@gmlaw.com
*Attorneys for Defendant, Orange County School Board*

J. Erik Bell
Sean Fahey
Anna Patricia Morales Christensen
Laura Esterman Pincus
Lisa A. Carmona
Office of General Counsel
3318 Forest Hill Boulevard, Suite C-331
West Palm Beach, Florida 33406
jon.bell@palmbeachschools.org
sean.fahey@palmbeachschools.org
anna.morales@palmbeachschools.org
laura.pincus@palmbeachschools.org
lisacarmona@palmbeachschools.org
merrie.mckenziesewell@palmbeachschools.org
*Attorneys for Defendant, Palm Beach County School Board*

3

Dennis J. Alfonso
McClain Alfonzo, P.A.
Post Office Box 4
37908 Church Avenue
Dade City, Florida 33526-0004
DAlfonso@mcclainalfonso.com
Eserve@mcclainalfonso.com
*Attorney for Defendant, Pasco County School Board*

Theodore R. Doran
Aaron Wolfe
Carol A. Yoon
Doran, Sims, Wolfe & Yoon
1020 W. International Speedway Boulevard
Daytona Beach, Florida 32114
awolfe@doranlaw.com
cyoon@doranlaw.com
*Attorneys for Volusia County School Board*