IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:21-cv-22863-KMM

JUDITH ANNE HAYES, individually and on behalf
of W.H., a minor, et. al.,

    Plaintiffs,

v.

GOVERNOR RONALD DION DESANTIS, in his official
Capacity as Governor of the State of Florida; et.al.,

    Defendants.
_____/

## PLAINTIFF'S RESPONSE TO THE SCHOOL BOARD OF VOLUSIA COUNTY MOTION TO DISMISS [DE-85]

**COMES NOW**, Plaintiffs, JUDITH ANNE HAYES, individually and on behalf of W.H., a minor., et al., by and through the undersigned counsel, and hereby files response to the Motion to Dismiss filed by the School Board of Volusia County [DE-85], and states as follows:

R.F., the nine-year-old daughter of Jamie Kinder is extremely immunocompromised due to gastrointestinal issues. 80-8. ¶ 4,5. R.K. has a weakened immune system and a reduced ability to fight infections making her vulnerable to severe illness and death due to COVID-19. DE 1, p. 23. Because of her weakened immune system, she cannot return to school safety. Id. at ¶ 130. She is in the gifted program in Volusia Schools, and because of the pandemic, she is currently enrolled in virtual classes.

School began on August 16,2021, but because of the parental opt-out of the mask mandate, and many children opting-out of wearing a mask, R.F. was not able to attend school because of her disability. 80-5, ¶ 6, 9. As a result, R.F. attends the Volusia Virtual School. Id at ¶ 9. The virtual school is different from her in-person school because it does not meet her Gifted needs and only

gives her 120 minutes of live interaction with a teacher per week. She only receives two special areas - Art and PR – but she does not get music or media & technology classes. R.K. has no access to student services like guidance counseling and SEL. R.K. is also missing out on all extracurricular activities, social activities and like assembles and birthday celebrations. Id. at ¶ 10.

After Judge Cooper ruled that the mandate was unconstitutional under Florida Law on August 27th, Volusia County decided to vote a temporary mask mandate in place starting on September 7th through October 15th and would only provide a medical opt out. Id. at ¶ 7. [1] However, once the First District Court of Appeal stayed Judge Cooper's Order, the Volusia School Board revoked their rule on September 14th – Stating "**In the end, school board members said that even if they think requiring masks is a good idea, they believe their hands are tied legally with a recent judge's ruling that allowed Gov. Ron DeSantis's ban on school mask mandates to stand.**"[2]

R.F.'s in-school needs spring from her immunocompromised state and has nothing to do with changes in the course structure or teaching methodology, other than her ability to go to gifted classes. Because of her immunocompromised state, R.F. has been subject to discrimination as follows:

1. Ms. Kinder asked for several reasonable accommodations including asking for her classmate's teacher to be masked and that R.K. be able to eat and drink in an outdoor seating area. (Much like peanut allergy classroom will not allow teachers or students to eat peanuts to protect one student with an allergy). She was told no that those 'protections' are voluntary. Ms. Kinder

---

[1] https://www.clickorlando.com/news/local/2021/09/01/volusia-county-schools-to-put-in-mask-mandate-for-five-weeks/
[2] https://www.mynews13.com/fl/orlando/news/2021/09/14/volusia-county-schools-mask-mandate

asked for the same type of reasonable accommodation as a peanut allergy because she was never told that the peanut protections were voluntary.  When theywere in a "food allergy classroom" a letter went home from the principal and teacher, and it was unequivocal – "no peanuts' because a student could suffer serious illness up to and including death. Changing classrooms was not offered either. It was the law of the classroom. Every single family complied in the name of keeping one child safe. 80-8, ¶25-26.

2. The Defendants stated that no accommodations would be provided regardless of her 504, blaming the state and the Parents Bill of Rights. They implied R.K.'s rights are now limited because parents' rights supersede all of hers and her 504.80-8 ¶27

3. The virtual program is abysmal this year because the district has not properly funded the same because of threats made by the Florida Department of Education, pursuant to the governor's order, to pull district funding of any district that offers asynchrony or synchronous learning for student who are not in quarantine. 80-8 ¶ 24.

4. R.K. can no longer play safely with any of her friends who attend school because of their possible exposure and transmission of COVID -19 to R.K. 80-8 ¶12

5. R.K.'s friends have been through her long medical journey with her and watched her fight, some of them even made the long journey to the hospital to visit her over the years. Now it is too dangerous for them to closely interact with R.K. 80-8 ¶13

6. R.K. is feeling isolated, depressed and lonely. R.K. wants more independence. She does not like spending so much time with her parents who are now her teachers, and support providers as well as her parents. R.K. hates being on a laptop all the top, as she says she wants to learn, "with her whole body and her friends, not alone on a screen!" 80-8 ¶14

7. Due to the failure to have a mask mandate, R.K.'s older sister contracted COVID in Volusia Schools and had to live separate from R.K. during her quarantine and convalescence. 80-8 29-33.

8. Because of the failure to adequately protect R.K. and provide a safe environment in the schools, the responsibility for teaching, supporting and providing services which would be provided by the school falls on the shoulders of her mother, Jamie Kinder. 80-8, ¶ 11, Because of this Jamie Kinder cannot work the same amount of time in which she would have, as 5-7 hours per day is being R.K.'s learning coach. 80-8, ¶34-35.

Without effective masking in schools, R.K. cannot obtain any other less onerous preventive measures that would mitigate the harm. As long as many children remain unmasked, she will be placed at harm at all areas on the school, from transportation, to the bathroom, cafeteria and classroom.

Less than three weeks prior to the beginning of the school year in Volusia County, Gov. DeSantis issued his executive order, E.O. 21-175, on July 30, 2021, which protected "the freedoms and statutory rights of students and parents by resting with the parents the decision whether their children should wear masks in school." Ten days prior to the beginning of school, the Florida Departments of Health and Education promulgated polices pursuant to this Order.  This included providing a parent a direct cause of action in the event that their child who was opted-out was segregated, isolated or excluded from school sponsored events or activities. 64DER21 -12(6). Gov. DeSantis wasted no time to enforce this emergency regulation and by August 9, issued public statements that the Department of Education would withhold the salaries of superintendents and

school board members who implemented mask mandates.³ This was followed by a plethora of enforcement actions against non-compliant districts.

I. **<u>Standard of Review</u>**:

The Plaintiffs' complaint pleads sufficient facts and the law to withstand a motion to dismiss. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) should be granted if the allegations in the complaint fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the formal sufficiency of the allegations of claims for relief. The dismissal of a complaint is warranted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." <u>Glover v. Liggett Group, Inc.</u>, 459 F.3d 1304, 1308 (11th Cir. 2006).

When ruling on a motion to dismiss under Rule 12(b)(6) a court "accepts that allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." <u>Hill v. White</u>, 321 F.3d 1334, 1335 (11th Cir. 2003). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009). Those "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. at 679 (citing <u>Twombly</u>, 550 U.S. at 570). In short, the complaint cannot merely allege misconduct, but must demonstrate that it is plausible that the pleader is entitled to relief. <u>Id.</u>

---

³https://miami.cbslocal.com/2021/08/11/ron-desantis-state-education-board-withhold-salaries-superintendents-school-board-members-mask-mandates/

## II. R.K. and her mother states a claim upon which relief may be granted.

Notwithstanding the fact that a request for modification does not need to be made when such request would be futile, Jamie Kinder has made request, and has been denied. However, for purposes of this complaint, and due to the existence of the law, any request would be futile as it would conflict with Florida Law. In cases where there is actual notice that a person or organization would fail to comply with ADA provision, the Futile gesture doctrine applies. International Brotherhood of Teamsters v. U.S., 431 U.S. 324, 365-66 (1977)(" "[w]hen a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application."). An ADA claimant is not required "to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply ..."42 U.S.C. § 12188(a)(1). A plaintiff may have "actual notice" by either having "encountered discrimination or [having] learned of the alleged violations through expert findings or personal observation." Resnick v. Magical Cruise Co., Ltd., 148 F.Supp.2d 1298, 1302 (M.D. Fla. 2001) (quoting Parr v. L& L Drive-Inn Rest, 96 F.Supp.2d 1065, 1081 (D. Haw. 2000)). This has been applied to architectural barriers in public schools under Title II of the ADA, see Greer v. Richardson Indep. Sch. Dist., 752 F. Supp. 2d 746, 758 (N.D. Tex. 2010), aff'd, 472 F. App'x 287 (5th Cir. 2012)

## III. Failure to Exhaust Administrative Preconditions.

As this case is identical to G.S. by & through Schwaigert v. Lee, No. 21-CV-02552-SHL-ATC, 2021 WL 4057812, at *3 (W.D. Tenn. Sept. 3, 2021), as R.K. is similar to Plaintiff G.S. and Plaintiff S.T, who both suffer from conditions that make them immunocompromised, and the governor of Tennessee also ordered a mask mandate – similar to the case at bar. In that case, the

District Court Judge found that not only did G.S. and S.T. stated a claim, but were likely to succeed, as follows:

> In addition to standing, Defendant Lee argues that another prerequisite to these claims has not been fulfilled, specifically exhaustion of administrative remedies. Defendant Lee contends that Plaintiffs first must exhaust administrative remedies under the Individuals with Disabilities Education Act (IDEA) before proceeding to the merits of claims under the ADA or Rehabilitation Act. (ECF No. 24 at PageID 118.) However, as is discussed below, the IEPs for G.S. and S.T. are not the crux of this case. Instead, Plaintiffs seek to protect their bodily health within a public educational setting – protection provided by the Shelby County Health Department through the enforcement of a mask mandate applicable to schools in the County, now restricted by Governor Lee's Executive Order. Because Plaintiffs seek redress from the harm caused by an Executive Order that prevents their ability to access critical public programs and services, the exhaustion requirement under IDEA does not apply. Therefore, the Court has also not "exceeded its jurisdiction" by considering these claims. See Metro. Bd. of Public Educ. v. Guest, 193 F.3d 457, 463 (6th Cir. 1999) (jurisdictional challenge applying only to when district court is reviewing administrative decisions).
>
> The IDEA "compels exhaustion when a plaintiff seeks 'relief' that is 'available' under" the statute. Fry v. Napoleon Cmty. Sch., ⸺ U.S. ⸺, 137 S. Ct. 743, 753, 197 L.Ed.2d 46 (2017). Even if a plaintiff "proceed[s] under the auspices of the ADA [and] the Rehabilitation Act ..., the IDEA nonetheless requires them to first exhaust its administrative procedures and remedies" before proceeding with claims under other statutes where a claim could be brought under the IDEA. Sagan v. Sumner Cty. Sch. Bd., 726 F. Supp. 2d 868, 880 (M.D. Tenn. 2010). However, "if the remedy sought is not for the denial of a free appropriate public education (FAPE), then exhaustion of the IDEA's procedures is not required." Fry, 137 S. Ct. at 754.
>
> To determine whether a plaintiff is seeking relief for the denial of a FAPE, the Supreme Court has instructed that "a court should look to the gravamen of the Plaintiffs' complaint." Id.; see also Perez v. Sturgis Pub. Sch., 3 F.4th 236, 241 (6th Cir. 2021) ("[T]he Supreme Court has told us to look beyond the surface of the pleadings and ask: is the crux of the complaint the denial of a free appropriate education?"). The petitioners in Fry, parents of a child with cerebral palsy, requested permission for her service dog to accompany her to kindergarten. Fry, 137 S. Ct. at 751. School officials refused the request because the child already had a "human aide" included as part of her IEP. Id. Overturning the Sixth Circuit's requirement of exhaustion under the IDEA for petitioner, the Supreme Court concluded that petitioners' claims under the Rehabilitation Act and ADA may not simply be "educational," as the Sixth Circuit had found, but appeared rooted in a more fundamental concern regarding "non-discriminatory access to public

institutions." Id. at 756. Even with some "overlap in coverage" between the three statutes, the petitioners' ADA and Rehabilitation Act claims could go forward if the issue was about accessing education, not about the education itself. Id.

Two questions provided in Fry, and reiterated by the Sixth Circuit in Perez, serve as "clues" to determining the gravamen of a complaint: "could the plaintiff have brought 'essentially the same claim' against a different kind of public facility, like a public theater or library? ... And could an adult at the school, like an employee or a visitor, have 'pressed essentially the same grievance?" Perez, 3 F.4th at 240-41.

In Perez, the answer to both questions was no. Perez, a 23-year old deaf student whose assigned classroom aide was ineffective, filed a complaint focused on "the adequacy of his education," and the fact that "the school failed to provide him with the educational services he needed." Id. at 241. The Sixth Circuit concluded that Perez "could not bring essentially the same claim against a facility that had no responsibility to educate him and no opportunity to conceal his lack of progress." Id. Furthermore, the school would not have a similar obligation to an adult to provide necessary educational services, so an adult could not have pressed this grievance. Id. Accordingly, IDEA exhaustion was required.

In this case, Defendant Lee argues that the answer is no to both questions, meaning that Plaintiffs must first exhaust administrative requirements under IDEA before filing suit in federal court. In response, Plaintiffs argue that the answer to both questions is yes. The Court agrees with Plaintiffs. First, Plaintiffs, children with disabilities suffering from a severe threat of injury if exposed to COVID-19, could similarly be denied access to the benefits of other public entities, such as public transportation or a public hospital. Moreover, the Governor's Executive Order No. 84 is applicable in school settings that are not directly related to a child's learning, including "on a school bus, or at [undefined] school functions." Thus the threat of exposure to unmasked children with COVID-19 is present in non-educational areas of schools as well as in other public facilities.

Further, activities that Plaintiffs cannot access at school are not solely educational. For instance, G.S.'s mother testified that he is not allowed to go to P.E. class, preventing him from obtaining physical exercise and neurotypical peer interaction. (ECF No. 26, Brittany Schwaigert testimony.) In addition, G.S. must come to school 15 minutes late every day to be sure he does not expose himself to COVID-19 by walking in the hallways at the same time as other kids – hardly an essential component of an education, but more akin to other non-educational public settings. (Id.) Thus, Plaintiffs could bring this claim against different kinds of public facilities, and have raised this claim involving non-educational aspects of their schools. The answer to question one of Fry's inquiry is yes.

Second, a school employee could likely file the same sort of grievance as Plaintiffs have in this case, if by virtue of their disability they were similarly under threat of severe illness or death by exposure to COVID-19, and their job (as a teacher, custodial employee, or otherwise) brought them into contact with children who opted out of the County's mask mandate pursuant to Governor Lee's Executive Order. Their claim for employment discrimination based on disability could not, in this instance, be brought under IDEA or remedied through an IEP, but could possibly be brought under the ADA or Rehabilitation Act. Question two demands a "yes" answer as well.

A commonsense analysis of this situation reinforces the answers to these two critical questions. Plaintiffs are not suing for individualized, specific claims under their IEPs. In fact, G.S.'s mother stated that G.S. had already received accommodations under the IEP that were still not sufficient because it only required masking by adults providing services to him, but not by children who are all around him. (ECF No. 2-2 at Page 46.) In this instance, nothing could be put in place sufficient to reasonably protect G.S. and others with disabilities while Governor Lee's Executive Order still stands. It follows that the type of relief sought in this case is not contemplated through the IEP or administrative process. This matter does not turn on an individualized education plan; it turns on whether Governor Lee's ban on the enforcement of public health regulations promulgated by the County violates the ability of individuals with disabilities to access these public programs and services. The "gravamen" of Plaintiffs' claims is their access to education through a reasonable modification – indeed, one supported by the County's own Health Department and applicable to Plaintiffs' schools. As such, this claim rightfully must be considered an ADA and Rehabilitation Act claim, not one under the IDEA. No exhaustion requirements apply here.

G.S. by & through Schwaigert v. Lee, No. 21-CV-02552-SHL-ATC, 2021 WL 4057812, at *5–7 (W.D. Tenn. Sept. 3, 2021). There is no difference between 11th Circuit law and 6th Circuit law in this respect and was aptly illustrated by Judge Bloom in Alboniga v. Sch. Bd. of Broward Cty. Fla., 87 F. Supp. 3d 1319 (S.D. Fla. 2015).

The two differences in this case is that Governor Lee did not relentlessly enforce his Orders thought the Department of Education and attempt to revoke the school board member's salaries and that the in regulation relating to the requirement of a parental opt-out, the drafters provided a direct cause of action under the parents' bill of rights, § 1014.01, Fla. Stat., et seq. when a child who chooses not to wear a mask is subject to discrimination.

(6) NON-DISCRIMINATION. Students whose parents or legal guardian have opted them out of a mask or face covering requirement shall not be subject to any harassment or discriminatory treatment, including but not limited to:

(a) Relegation to certain physical locations;
(b) Isolation during school activities; or
(c) Exclusion from any school-sponsored events or activities.

rule 64DER21-12(6). Ironically, R.K. has been subject to ALL these forms of discrimination because others will not wear a mask for her.

The sole rationale by this Court in Denying the Motion for Preliminary Injunction was the intoning (and, necessarily, **bolding**) the terms "FAPE" or "least restrictive environment" without recognizing that the **gravamen** of the case, that the refusal of entry into the schoolhouse is the **gravamen** of the case, as in both G.S. and in ARC of Iowa v. Reynolds both found that access to the schoolhouse was the gravamen of the case.

Specifically, with R.K., there is *no* difference from her situation and the plaintiffs in G.S.

IV. **Futility and ineffectiveness**

In addition to the Fry test, the exhaustion of the administrative remedies under the IDEA is not required where resort to administrative remedies would be 1) futile or 2) inadequate. N.B. by D.G. v. Alachua Cty. Sch. Bd., 84 F.3d 1376, 1379 (11th Cir. 1996); M.T.V. v. DeKalb County School District, 446 F.3d 1153, 1159 (11th Cir 2006). Exhaustion is not required in very limited circumstances, such as where exhaustion is futile or inadequate, where the question presented is purely legal, where the administrative process cannot grant relief, or where exhaustion would work a severe or irreparable harm upon a litigant. D.M. v. New Jersey Dept. of Educ., 801 F.3d 205 (3d Cir. 2015). Springer v. Wal–Mart Assocs. Group Health Plan, 908 F.2d 897, 901 (11th Cir.1990)(To substantiate a claim of futility the Petitioners must make a "clear and positive" showing of futility); *see also* McGraw v. Prudential Ins. Co. of Am., 137 F.3d 1253, 1264 (10th

Cir.1998) (noting that futility exception is limited to those situations where resort to administrative remedies would be "clearly useless").

In this matter, a hearing officer would not be able to address a child's "substantive right" to a FAPE, such as requiring other students to wear masks, especially when such relief violates Florida law. Further, an administrative court does not have jurisdiction over the Governor, the Commissioner of Education, or the Department of Education. P.J.S. v. School Bd. Of Citrus Cty., 951 So. 2d 53 (Fla. 5th DCA 2007). Hearing officers can only resolve disputes between a parent and a school district. See 20 U.S.C. § 1415(f)(1)(A). The mere fact that remedies are not available, even after the due process hearing occurs, would make the process, by definition futile and inadequate. In this matter, the need for a safe environment is beyond the scope of the due process hearing. See Weber v. Cranston Sch. Comm., 212 F.3d 41, 52 (1st Cir.2000) (observing that a state's implementation of the IDEA may render exhaustion futile where a plaintiff's complaint lies beyond "the scope of the due process hearing"); McGraw v. Prudential Ins. Co. of Am., 137 F.3d 1253, 1264 (10th Cir.1998) (noting that futility exception is limited to those situations where resort to administrative remedies would be "clearly useless").

Furthermore. systemic violations, such as a widespread legal violation or a practice, are an example of such inadequate or futile events which would not require exhaustion, exhaustion is similarly deemed to be inadequate and not necessary when "an emergency situation exists (e.g., the failure to take immediate action will adversely affect a child's mental or physical health)." Komninos by Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778–79 (3d Cir. 1994)(quoting H.R.Rep. No. 296, 99th Cong., 1st Sess. 7 (1985)). In this case, the regulation, in and of itself, is an emergency regulation. The mere fact that the due process timeline under Florida

Administrative Code 6A06.03311(9) provides at least 75 days for a decision makes relief futile. This is not including the court delays that have also been systemic due to the pandemic.

One of the protections that is usually provided to a student is the IDEA's stay put provision. Section 1415(j) establishes a student's right to a stable learning environment during what may be a lengthy administrative and judicial review. Tenn. Dep't of Mental Health & Mental Retardation v. Paul B., 88 F.3d 1466, 1472 (6th Cir.1996). If the child is ejected from his or her current educational placement while the administrative process sorts out where the proper interim placement should be, then the deprivation of education is complete. And, when such deprivation cannot be satisfied by the stay put provision, then again, immediate relief is essential to vindicate a child's right. See Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 199–200 (2d Cir. 2002); L.A. v. New York City Dep't of Educ., 2020 WL 5202108, at *3 (S.D.N.Y. Sept. 1, 2020). In this matter, there is no protections afforded to a child in the delay, as the stay-put option places more harm to the child's education and health. Furthermore, the situation with surges of COVID are so fluid, that the complying with such conditions each time an arbitrary rule placing children with disabilities in danger would make relief always impossible. See Roman Cath. Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 208 L. Ed. 2d 206 (2020).

In this case, the facts themselves demonstrate the futility of administrative processes. For G.D., she could not get the services that she needed for her emotional disability through any alternate means than by-in person education. Further, with the children with asthma, there is nothing that an administrative law judge could or could not do to other children in the classrooms, lunch room, hallways, or school busses. This physical segregation is the exact harm the ADA was meant to address that is not addressed by the IDEA, as such relief would be futile and inadequate. See Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 119 S. Ct. 2176, 144 L. Ed. 2d 540 (1999).

V.      **Venue and Forum**

The Plaintiffs' focus on one forum to resolve the issues relates to the need for uniformity and settled expectations, but it is also directly attributable to the venue issues that are involved in this case. Pursuant to 28 U.S.C. § 1391,

> Venue in general. --A civil action may be brought in--(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located.

In this matter, all of the defendants reside in the state of Florida, and plaintiffs brought the case in a district in which several defendants reside. As such, venue is appropriate. There are no exceptions to the venue rule other than forum non-convenience. However, due to the overall issues of law in dispute in this case and the use of remote proceedings during the pandemic, *forum non conveniens, 29 U.S.C. § 1404(a)* is a non-issue, especially so when each defendant contends that each of its locations is a proper forum. The Defendants have not stated any specific reason why the Northern District, or the Middle District would be more convenient than the southern district, other than to sever the claims, which again, would bring inconsistent adjudications and would further delay the immediate relief that the Plaintiffs are requesting, and the same immediate relief would also inure to the benefits of the Defendants who should want their legal obligations resolved in light of the danger to their students.

Lastly, the "Home Venue Privilege" is inapplicable. It provides that, absent waiver or exception, venue in a suit against the State, or an agency or subdivision of the State, is proper only in the county in which the State, or the agency or subdivision of the State, maintains its principal headquarters. Fla. Pub. Serv. Comm'n v. Triple "A" Enters., Inc., 387 So.2d 940, 942 (Fla.1980). Primarily, state created procedural rights must cede to federal rules and procedures. See Hanna v. Plumer, 380 U.S. 460, 473–74, 85 S. Ct. 1136, 1145, 14 L. Ed. 2d 8 (1965)("To hold that a Federal

Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power in the Enabling Act."). The procedural requirements of 28 U.S.C. 1391 supersede Florida law as to appropriate venue.

**WHEREFORE,** Plaintiffs, JUDITH ANNE HAYES, individually and on behalf of W.H., a minor., et al., respectfully requests that this Court DENY the Defendant's motion to dismiss and grant any further relief as this court deems just and equitable.

Respectfully submitted this 21th day of September 2021.

By: /s/*Matthew W. Dietz*
Matthew W. Dietz, Esq.
Florida Bar No. 84905

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 21, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties and counsel of record, or in some other authorized manner for those counsel or parties who are not authorized to receive notices electronically.

By: /s/*Matthew W. Dietz*
Matthew W. Dietz, Esq.
Florida Bar No. 84905
Stephanie Langer, Esq.
Florida Bar No. 149720
2990 Southwest 35th Avenue
Miami, Florida 33133
T: (305) 669-2822 / F: (305) 442-4181
slanger@justDIGit.org
mdietz@justdigit.org
aa@justdigit.org