IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:21-cv-22863-KMM

JUDITH ANNE HAYES, individually and on behalf
of W.H., a minor, et. al.,

    Plaintiffs,

v.

GOVERNOR RONALD DION DESANTIS, in his official
Capacity as Governor of the State of Florida; et.al.,

    Defendants.
_____/

**PLAINTIFF'S MOTION FOR RECONSIDERATION – EXPEDITED MOTION[1]**

**COMES NOW**, Plaintiffs, JUDITH ANNE HAYES, individually and on behalf of W.H., a minor., et al., by and through the undersigned counsel, and pursuant to Fed. R. Civ. P. 59(e) and Fed. R. Civ. P. 60, hereby moves the Court for reconsideration the Order denying Preliminary Injunction [DE-98], and in support thereof state as follows:

**I. Introduction**

Since the parties argued the Motion for Preliminary Injunction and the Court issued its Order [DE 98], the return to school has even become more dangerous to these plaintiffs and all children with disabilities that would be placed in dire risk if becoming infected with COVID-19. Now, instead of only dealing with the prospect of having children without masks, immunocompromised children also must be in contact with these same children who may be

---

[1] This motion is an expedited motion pursuant to Local Rule 7.1(d). The reason as to why it is expedited is due to the health and safety of the plaintiffs and all other children with disabilities in the state of Florida, and to ensure that all issues are before the District Court.

exposed to COVID-19 are asymptomatic. Such conditions are untenable for children with disabilities and will lead to these children being excluded from school or, if not, at risk of death.

1. After Judge Cooper ruled that the mandate was unconstitutional under Florida Law on August 27th, Volusia County decided to vote in a temporary mask mandate between September 7th through October 15th, and would only provide a medical opt out. Id. at ¶ 7. [2] However, once the First District Court of Appeal stayed Judge Cooper's Order, the Volusia School Board revoked their decision on September 14th – Stating "In the end, school board members said that even if they think requiring masks is a good idea, they believe their hands are tied legally with a recent judge's ruling that allowed Gov. Ron DeSantis's ban on school mask mandates to stand."[3]   As a result of Volusia County School Board's reversal on a mask mandate, R.K., who is immunocompromised, cannot go back to school in person.

2. On September 22, 2021, Governor DeSantis chose a new surgeon general, known for being outspoken against vaccines and quarantines, and immediately promulgated a new regulation which allows children who are exposed to COVID-19 to return to school without masks and without quarantining.

3. Furthermore, when Alicia Todd went to an IEP meeting following this Court's Order denying the injunction and Governor's new regulation, when she asked if there was an appropriate classroom for him that the children would all be masked, Palm Beach County School Board attorney Lynn Pincus stated, "You need to assume that all children in his room are unmasked and COVID positive due to the governor's executive orders." Because there were no other options,

---

[2] https://www.clickorlando.com/news/local/2021/09/01/volusia-county-schools-to-put-in-mask-mandate-for-five-weeks/
[3] https://www.mynews13.com/fl/orlando/news/2021/09/14/volusia-county-schools-mask-mandate

including Florida Virtual School or other private or charter options, J.T. has no educational options for the year. See Exhibit A attached hereto.

3. Last week, Florida State Senator Manny Diaz, chair of Senate Health Policy Committee and the vice-chair of the Appropriations Subcommittee on Education, indicated publicly that during the 2022 session, it was time to review schools' vaccination requirements in light of a parents right to choose."[4]

4. On September 24, the Eastern District of Tennessee in *S.B. by & through M.B. v. Lee*, No. 321CV00317JRGDCP, ___ F. Supp. 3d ___, 2021 WL 4346232 (E.D. Tenn. Sept. 24, 2021), entered a preliminary injunction related to Tennessee's mask mandate on behalf of a class of children with disabilities for the anti-mask mandate provision denying the safe and fundamental access to the school building itself.

5. On September 28, the District of South Carolina in *Disability Rights South Carolina v. McMaster*, No 3:21-cv-02728, entered a preliminary injunction related to the anti-mask mandate required by the state legislature that barred schools from using funds appropriated or authorized to require students or employees wear a face mask. See Exhibit B attached hereto.

**Increase of Risk to Plaintiffs and Children**

When Plaintiffs first filed their petition for Preliminary Injunction with the Complaint on August 6th, Governor DeSantis' executive order was inchoate and its command needed to be implemented by his departments, the Department of Education and the Department of Health. As such, we sought to attack the Executive Order at the bud, before it could flower. After the complaint was filed, the Department of Health issued a regulation that allowed parents to opt out

---

[4] https://floridapolitics.com/archives/458805-diaz-review-vaccine-mandates/

of the mask mandate, and this week, the regulation allows children who are exposed to COVID-19, but are asymptomatic, not to quarantine or be tested, and be sent to school.

The new regulations imposed by the Defendants are contrary to the facts and studies accepted by the medical community, and especially places children with disabilities in danger. The Declaration attached hereto as Exhibit C is a declaration from Dr. Ryan Cantville. According to Dr. Cantville, "[w]ithout masking and with the presence of asymptomatic individuals who have been in close contact with known COVID carriers, there is no safe way for children with such high-risk factors to attend school in person." ¶8. The average carrier of SARS-CoV-2 will infect five others, according to the current best estimates. ¶ 35.

The prevalence of COVID-19 infection in schools has skyrocketed. As of September 16, 2021, there had been more than 5.5 million diagnosed cases of COVID-19 among children, more than 15% of the reported total of COVID-19 cases. This amounts to a rate of 7,332 cases per 100,000 children in the population. ¶19. Twenty percent of all child cases since the beginning of the pandemic were diagnosed between August 13, 2021, and September 16 2021. ¶ 21. As demonstrated in the declaration previously submitted by Dr. Jeffrey Goldhagen (63-1), Children and youth with developmental and/or intellectual disabilities have an exponentially higher risk than children without disabilities. ¶ 6. Furthermore, like adults with disabilities, children with disabilities have  make them more susceptible to becoming seriously ill or die due to COVID-19 infection, and Long haul COVID. Ex. B, ¶ 26-28.

Florida has been especially hard hit: it has reported more child COVID-19 cases (at least 399,064 cases) than any other state in the nation, and has the 8th highest number of cumulative cases per 100,000 children. ¶24. However, Florida only provides pediatric COVID case data for ages 14 and under. Given that the risk is greater in the 15- to 18-year-old range, these statistics

understate the impact of pandemic on the pediatric population in Florida. *Id*. at fn. 22. Florida does not report statistics on child hospitalizations. Id.

Quarantining is one of the most important measures for reducing the spread of highly contagious diseases such as COVID-19. Quarantining is the practice of separating people who have been recently exposed to COVID-19 from other people. Because people infected with SARS-CoV-2 can transmit the virus for at least two days before symptoms develop, or despite never becoming symptomatic, "quarantine is a critical measure to control transmission. ¶ 30. The CDC recommends quarantine for people who are not fully vaccinated and have been in "close contact" with someone with COVID-19.  As relevant here, "close contact" for a K–12 student includes spending 15 minutes or more over a 24-hour period within six feet of an infected person, but exclude classroom or structured outdoor settings where both the exposed student and the infected student were masked. ¶ 31.

Furthermore, the research literature confirms that masks are both effective and safe, and significantly reduces the spread of COVID-19. ¶ 40.  This is because, masks "reduce the emission of virus-laden droplets . . . which is especially relevant for asymptomatic or presymptomatic infected wearers who feel well and may be unaware of their infectiousness to others, and who are estimated to account for more than 50% of transmissions."  Cloth masks "not only effectively block most large droplets (i.e., 20-30 microns and larger) but they can also block the exhalation of fine droplets."  As a result, "[m]ulti-layer cloth masks can both block up to 50-70% of these fine droplets and particles," with "[u]pwards of 80% blockage" recorded in some studies.  To a slightly lesser extent, masks also "help reduce inhalation of these droplets by the wearer"; multi-layer cloth masks can filter out "nearly 50% of fine particles less than 1 micron. *Id*. Just this past Friday, the CDC released three new studies conducted during this school year, all of which found that "schools

without a universal masking policy in place were more likely to have COVID-19 outbreaks." This is no small increase in risk: one of the studies found that "the odds of a school-associated COVID-19 outbreak were 3.5 times higher in schools with no mask requirement than in those with a mask requirement." ¶ 41.

## II. Law

While this Motion does not attempt to reargue the Fry argument as, this Court's opinion is clear that if a child receives educational services through the IDEA, any element that involves the child's education, including entry into the place of education, is subject to administrative preconditions. While the Plaintiffs maintain, and in no way abandon the argument that this is error, the element that this Court did not consider is the futility of bringing a due process claim in which the desired relief is precluded by Florida Law, and the timeframe for engaging in such relief, will (hopefully) exceed that of the time it will take to see other prophylactic measures, such as waning of the virus, or effective (and required) administration of the vaccine.

The "purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Burger King Corp. v. Ashland Equities, Inc.,* 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002). In particular, there are three major grounds which justify reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *Id.* In order to reconsider a judgment there must be a reason why the court should reconsider its prior decision, and the moving party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. *Id.*

"A motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made . . ." *Tzoc v.*

*M.A.X. Trailer Sales & Rental, Inc.,* 2015 U.S. Dist. LEXIS 74385, *1 (S.D. Fla. 2015) (citing *Z.K. Marine. Inc. v. MN Archigetis,* 808 F. Supp. 1561, 1563 (S.D. Fla. 1992).

### III. Argument

In the less than two weeks since this Court denied the Plaintiff's Motion for Summary Judgment, two additional court ruled on preliminary injunction coming to an opposite conclusion as this Court. Based on court rulings, Volusia decided to backtrack and feels as it has no option but to comply with the current regulations on masking. Lastly, the Defendants, now emboldened, issued a new regulation stemming from the Executive Order, which allows children exposed to COVID-19, but asymptomatic, to enter (umasked) in schools.  As such, this completely forecloses some of the plaintiffs from returning to in-person school, and places all other children with disabilities who choose to go to school at risk.

In addition to the new case from the Eastern District of Tennessee and the District of South Carolina, the Plaintiffs also maintain that this court failed to take into account the futility of administrative remedies in this exact type of situation, where the health and safety of children are at issue, and that the 75 days to exhaust administrative conditions (even if clearly inadequate, as in this case), would just end in the delay until the emergency passes, or the child's educational opportunities for the semester had already passed.

**A. The Court failed to take into account when the remedies of the IDEA are futile and inadequate due to the emergency nature of the relief required and required to cure systemic discrimination.**

This Court found that the parental mask opt out was not to be affected by any of the remedies that could be provided to a child, and that children with disabilities could have remote learning or segregated learning, if other safety factors were not adequate. The exhaustion of administrative remedies is not required under the IDEA where resort to administrative remedies

would be 1) futile or 2) inadequate. Durbrow v. Cobb Cty. Sch. Dist., 887 F.3d 1182, 1191 (11th Cir. 2018). Exhaustion is not required where exhaustion is futile or inadequate, where the question presented is purely legal, where the administrative process cannot grant relief, or where exhaustion would work a severe or irreparable harm upon a litigant. D.M. v. New Jersey Dept. of Educ., 801 F.3d 205 (3d Cir. 2015).

While systemic violations, such as a widespread legal violation or a practice, are an example of such inadequate or futile events which would not require exhaustion, exhaustion is similarly deemed to be inadequate and not necessary when "an emergency situation exists (e.g., the failure to take immediate action will adversely affect a child's mental or physical health)." Komninos by Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778–79 (3d Cir. 1994)(quoting H.R.Rep. No. 296, 99th Cong., 1st Sess. 7 (1985)). In this case, the initial regulation, wasan emergency regulation. The new regulation which allows asymptomatic children exposed to COVID-19 to return to school without first quarantining and without masks, is an emergency regulation (passed by a state officer who has not been confirmed by the Senate). **The mere fact that the due process timeline under Florida Administrative Code 6A06.03311(9) provides at least 75 days (45 days plus 30 days allowed for settlement) for a decision makes relief futile.** This is not including the court delays that have also been systemic due to the pandemic. There are only two administrative judges handling education cases at this time. It is taking on average two months before a matter is even set for a hearing. In addition, there is no means by which to have these matters related to safe school environments heard in an expedited manner. The cases are set for hearing in the order they are filed. Knowing that this Court found that exhaustion was required, has emboldened school districts who are now denying every reasonable request for an accommodation under the ADA and Section 504 of the Rehabilitation

Act. Forcing families into due process for matters, the district knows, the administrative court cannot remedy.

Initially, the mere fact that remedies are not available, even after the due process hearing occurs, would make the process, by definition futile and inadequate. The administrative law judge could not provide a remedy that is foreclosed by Florida Regulations. Furthermore, in this matter, the need for a safe environment is beyond the scope of the due process hearing. See Weber v. Cranston Sch. Comm., 212 F.3d 41, 52 (1st Cir.2000) (observing that a state's implementation of the IDEA may render exhaustion futile where a plaintiff's complaint lies beyond "the scope of the due process hearing"); McGraw v. Prudential Ins. Co. of Am., 137 F.3d 1253, 1264 (10th Cir.1998) (noting that futility exception is limited to those situations where resort to administrative remedies would be "clearly useless"). The contention by counsel for the Defendant that administrative preconditions need to be exhausted when the process cannot garner the necessary relief or preconditions for such relief (i.e. finding a violation of section 504 to have a trial for damages) is false.

One of the protections that is usually provided to a student is the IDEA's stay put provision. Section 1415(j) establishes a student's right to a stable learning environment during what may be a lengthy administrative and judicial review. Tenn. Dep't of Mental Health & Mental Retardation v. Paul B., 88 F.3d 1466, 1472 (6th Cir.1996). If the child is ejected from his or her current educational placement while the administrative process sorts out where the proper interim placement should be, then the deprivation of education is complete. And, when such deprivation cannot be satisfied by the stay put provision, then again, immediate relief is essential to vindicate a child's right. See Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ., 297 F.3d 195, 199–200 (2d Cir. 2002); L.A. v. New York City Dep't of Educ., 2020 WL 5202108, at *3 (S.D.N.Y. Sept. 1,

2020). In this matter, there is no protections afforded to a child in the delay, as the stay-put option places more harm to the child's education and health. Furthermore, the situation with surges of COVID are so fluid, that complying with such preconditions each time an arbitrary rule placing children with disabilities in danger would make relief always impossible. See Roman Cath. Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 208 L. Ed. 2d 206 (2020).

**B. Two Courts decided that anti-mask rules violated the ADA**

The most succinct analysis as to why this case should not be subject to administrative preconditions to the ADA was South Carolina, in which the complaint also asserted that the children had IEPs, and had a right to FAPE in the Least Restrictive Environment, and said:

> Both Title II and Section 504 guarantee individuals with disabilities the same access to an education as those children without disabilities enjoy. But, Proviso 1.108's prohibition on allowing school districts to decide whether to mandate masks is effectively a barrier to such access.
>
> Years ago, ramps were added to schools to accommodate those with mobility-related disabilities so they could access a free public education. Today, a mask mandate works as a sort of ramp to allow children with disabilities access to their schools. Thus, the same legal authority requiring schools to have ramps requires that school districts have the option to compel people to wear masks at school.
>
> And, just as a law forbidding a school district to install ramps in its building would be held to be an affront to Title II and Section 504, so is Proviso 1.108, which proscribes a school district from mandating masks, even when it concludes it is appropriate to do so. Accordingly, masks must, at a minimum, be an option for school districts to employ to accommodate those with disabilities so they, too, can access a free public education.

Disability Rights South Carolina v. McMaster, No 3:21-cv-02728, at *19. Courts who have reviewed these same rights in this case have found this is a barrier to access, as whether the person has an IEP or not. Furthermore, On September 24th, the Eastern District of Tennessee in *S.B. by & through M.B. v. Lee,* No. 321CV00317JRGDCP, ___ F. Supp. 3d ___, 2021 WL 4346232 (E.D. Tenn. Sept. 24, 2021), entered a preliminary injunction in a putative class action enjoining the Tennessee governor from enforcing his executive order allowing parents to opt out of a mask

mandate and enjoined Knox County Board of Education from enforcing a vote against a mask mandate in Knox County. Id. *55. The putative class action was brought by parents of children with disabilities who are "unable to *safely* attend school without increased risks of serious injury or even death unlike their non-disabled peers." Id at *2-3. Unlike plaintiffs' case that only involve a few dozen children with various disabilities, *S.B.* involves thousands of children with a range of medical conditions, and probably thousands of different 504 plans and IEPs. Id * 4-5.

The Defendants in that case had brought the same defenses as the defendants in this case. The first was the same argument that the "case is about the suitability of Plaintiffs' education program, not physical access to the school" … in so "the crux of their complaint is that they are being denied a free public education." Id. at *8. This district court disposed of the exhaustion argument.

> In cases involving questions of meaningful access, one circuit court of appeals has observed that they "reflect, in light of Supreme Court guidance, a general pattern: Where the plaintiffs identify an obstacle that impedes their access to a government program or benefit, they likely have established that they lack meaningful access to the program or benefit." *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1267 (D.C. Cir. 2008). The Court sees shades of this general pattern here in Plaintiffs' case.

Id., at *5. The Court's conclusion after the Fry analysis was as follows:

> Plaintiffs were therefore not obligated to exhaust the IDEA's administrative procedures before filing suit in this Court under the ADA. Again, their claim is a failure-to-accommodate claim under the ADA. They request an accommodation of a community-wide mask mandate in Knox County Schools so they can safely access their school buildings. Knox County Board of Education argues that reasonable accommodations are already in place to protect Plaintiffs from COVID-19 in Knox County Schools, and even if they were not, it maintains that it has afforded them a reasonable alternative accommodation in the form of virtual learning. Plaintiffs disagree.

Id., at *7.

The Defendant in S.B. made the same standing and traceability argument as well, claiming that standing is not triggered until a parent opts out of the mask mandate. Similar to S.B., the plaintiffs

are foreclosed from asking from an accommodation for the anti mask mandate or anti quarantine mandate due to the new regulation:

> Standing requires the Court to determine whether the "door to federal court" is open to a plaintiff, *Buchholz v. Myer Njus Tanick*, 946 F.3d 855, 862 (6th Cir. 2020), but Governor Lee aims to stop Plaintiffs from even reaching the door's threshold so that the Court can make that determination. Because his executive order forestalls Plaintiffs from pursuing an alleged reasonable accommodation under the ADA, the Court clearly has license to enjoin his executive order and is likely to do so. See *Milliken v. Bradley*, 433 U.S. 267, 289 (1977) (affirming an injunction requiring state officials to "conform their conduct to the requirements of federal law"); cf. *Bd. of Trs. of Univ. of Al. v. Garrett*, 531 U.S. 356, 374 n.9 (2001) ("Title I of the ADA ... prescribes standards applicable to the States" and "can be enforced by ... private individuals in actions for injunctive relief[.]"). Plaintiffs have therefore satisfied the elements of standing.

Id. at *9. The forty pages following the analysis of the Americans with Disabilities and the likelihood of success and the other portions of the summary judgment that are identical to the issues in the case at bar. The only aspect that is different between the Tennessee issue and the Florida issue is that the risk of having children maskless and infected with COVID-19 poses a much greater harm than just children who do not wear masks.

**WHEREFORE**, Plaintiffs, JUDITH ANNE HAYES, individually and on behalf of W.H., a minor., et al., respectfully requests that this Court reconsider, or otherwise amend Order denying Plaintiffs' Motion for Preliminary Injunction [DE-98], and grant as any other such relief as this Court deems just and equitable.

Respectfully submitted this 29th day of September 2021.

By: /s/*Matthew W. Dietz*_____
Matthew W. Dietz, Esq.
Florida Bar No. 84905

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 29, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties and counsel of record, or in some other authorized manner for those counsel or parties who are not authorized to receive notices electronically.

By: /s/*Matthew W. Dietz*
Matthew W. Dietz, Esq.
Florida Bar No. 84905
Stephanie Langer, Esq.
Florida Bar No. 149720
2990 Southwest 35th Avenue
Miami, Florida 33133
T: (305) 669-2822 / F: (305) 442-4181
slanger@justDIGit.org
mdietz@justdigit.org
aa@justdigit.org