IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:21-cv-22863-KMM

JUDITH ANNE HAYES, individually and on behalf
of W.H., a minor, et. al.,

    Plaintiffs,

v.

GOVERNOR RONALD DION DESANTIS, in his official
Capacity as Governor of the State of Florida; et.al.,

    Defendants.

## PLAINTIFFS' MOTION FOR INJUNCTION PENDING APPEAL

Plaintiffs Judith Anne Hayes, individually and on behalf of W.H., a minor., et al., by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 62(d) and Federal Rule of Appellate Procedure 8(a)(1), respectfully moves for an injunction pending appeal staying or enjoining Governor DeSantis' Executive Order 21-175 pending the Plaintiffs' forthcoming appeal of this Court's ruling on the preliminary injunction. That ruling leaves the Plaintiffs and their children in the untenable position of having to decide whether to return to school—and risk serious illness or death if infected with COVID-19—or stay at home and lose the superior educational experience of in-person learning. The irreparable harm to the Plaintiffs and their children is manifest, and the balance of equities and public interest all favor a stay so that the Court of Appeals can consider the serious legal issues raised by this appeal.

### ARGUMENT

**I. THE COURT SHOULD ENJOIN ENFORCEMENT OF THE GOVERNOR'S ORDER PENDING AN APPEAL OF ITS ORDER DENYING THE PRELIMINARY INJUNCTION.**

This Court should enjoin the Governor's Order preventing schools from adopting

*Disability Independence Group, Inc.  * 2990 SW 35th Avenue* Miami, FL 33133*

reasonable requirements that children wear masks in schools and thus forcing disabled children to forego access to live instruction at their public schools. Each of the four factors for an injunction pending appeal is met here.

### A.     **Plaintiffs have a substantial likelihood of success on the merits.**

A district court may issue a preliminary injunction pending appeal when a party shows: (1) "a strong showing that he is likely to succeed on the merits," (2) irreparable injury, (3) that the injunction will not "substantially injure the other parties interested in the proceeding," and (4) that the injunction is in the "public interest." *Fed. Trade Comm'n v. On Point Glob. LLC*, No. 19-25046-CIV, 2020 WL 3268338, at *1 (S.D. Fla. Mar. 23, 2020) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009). "When the balance of equities on the latter three factors weigh in favor of granting a stay, the applicant is subject to the lower standard of presenting a 'substantial case on the merits' rather than the higher standard of likelihood of success on the merits." *Id.* (quoting *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986)).

Plaintiffs have demonstrated a strong showing of likely success on the merits. The Americans with Disabilities Act (ADA) prohibits discrimination against a disabled person by reason of the person's disability. *See* 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act of 1973 similarly provides that no "qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance," such as the Defendants here. 29 U.S.C. § 794(a); Compl. at 11-12. This mandate of the ADA and the Rehabilitation Act requires public entities, including public school districts and state school systems, to afford students with disabilities an equal opportunity to participate in or benefit from any aid, benefit, or service provided to others. 28 C.F.R. §§ 35.130(b)(1), (g). A public school

system cannot provide different services to children with disabilities or limit their enjoyment of the services enjoyed by others. 28 C.F.R. § 35.130(b)(1)(iv), (vii). Nor can a public entity employ unnecessary policies, practices, criteria or methods of administration that have the effect or tendency of excluding or discriminating against persons with disabilities. 28 C.F.R. § 35.130(b)(3), (8).

Defendants have unlawfully discriminated against Plaintiffs by refusing to allow local school districts the prerogative to allow masks and other common-sense precautions, as reasonable accommodations, to prevent the spread of COVID-19 that are necessary for disabled children to enjoy the same school services as their classmates. The Governor's Order adopts a policy, enforced by the Florida Department of Education against local school districts, that subjects qualified disabled children to discrimination on the basis of their disability, in violation of the ADA and § 504 of the Rehabilitation Act. 42 U.S.C. § 12132; 28 C.F.R. § 35.130(b)(3); Mot. Prelim. Inj. at 13-18.

This court found that Plaintiffs had not shown a likelihood of success on the merits because they should have first exhausted their administrative remedies through individualized administrative hearings pursuant to their children's IEP and 504 plans. *Hayes v. DeSantis*, No. 1:21-CV-22863-KMM, 2021 WL 4236698, at *6-12 (S.D. Fla. Sept. 15, 2021). But Plaintiffs raising constitutional claims against a state-wide policy have never been forced to litigate that claim through individual administrative hearings.

Administrative procedures "are intended for issues … which require expertise, factfinding, and individualized attention" rather than "broad constitutional adjudication." *Ass'n for Retarded Citizens of Alabama, Inc. v. Teague*, 830 F.2d 158, 162 n.5 (11th Cir. 1987). This makes sense, as individual administrative law judges have no authority to hold that statewide policies violate

federal law. Had the Plaintiffs here sought individualized review, the administrative judges would have had no authority to order other children in school to wear masks to ensure a safe learning environment for the Plaintiffs' children, as that would violate the Governor's Order.

The Eleventh Circuit has confirmed that when plaintiffs are "not seeking review of any individual proceeding," but are instead making a direct constitutional challenge to the legality of a government policy, then it is "unrealistic" to expect that administrative proceeding to provide the relief sought. *Haitian Refugee Ctr. v. Meese*, 791 F.2d 1489, 1499 (11th Cir.), *vacated in part on other grounds*, 804 F.2d 1573 (11th Cir. 1986). In *Haitian Refugee Center*, the Eleventh Circuit held that the plaintiffs, a class of political asylum applicants from Haiti, did not need to exhaust their claims that a government program accelerating their applications violated federal law by discriminating against Haitians. *Id.* In doing so, the Court of Appeals affirmed the district court's conclusion that exhaustion was not required—"[e]ven if the internal appeal procedures were adequate to consider such a claim—because the plaintiffs had alleged discrimination from "a single unconstitutional plan." *Haitian Refugee Ctr. v. Civiletti*, 503 F. Supp. 442, 469 (S.D. Fla. 1980), *modified sub nom. Haitian Refugee Ctr. v. Smith*, 676 F.2d 1023 (5th Cir. 1982).

Nor is there any special exception to this doctrine for educational claims. To the contrary, the Supreme Court held, in *Fry* that there is no exhaustion requirement when the gravamen of the complaint is a challenge that could be brought against any public facilities or by any adult. *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 756 (2017). That is the case here. There have been numerous challenges to mask limitations in other public facilities. *See* Resp. Mot. Prelim. Inj. at 12-13. Adults with disabilities are similarly faced with life-threatening consequences if exposed to COVID-19—a danger that could be prevented with a reasonable accommodation in the form of mask requirements. And any adult could have brought the same claim against the school. A school

that employs an immunocompromised hall monitor, who must interact with children as part of their required duties, could bring the same discrimination claim against the Governor's Order because it prevents the school from adopting mask mandates as part of a reasonable accommodation of the hall monitor's health risks. *See also ARC of Iowa v. Reynolds*, No. 4:21-CV-00264, 2021 WL 4166728, at *8 (S.D. Iowa Sept. 13, 2021) (holding that Plaintiffs challenging a similar mask ban in schools could bring their claims without administrative exhaustion under the IDEA because they "could bring their claims for the alleged discriminatory conduct occurring at another public facility, like a library. An adult, such as a teacher or a staff member at a public school, could also bring the claims alleged."); *S.B. by & through M.B. v. Lee*, No. 321CV00317JRGDCP, 2021 WL 4346232 (E.D. Tenn. Sept. 24, 2021) ("The crux of Plaintiffs' allegations is safe access to public, brick-and-mortar government buildings and not the denial of a FAPE … A medically compromised teacher, custodian, parent, grandparent, or visitor could bring an identical grievance int his case, whether based on safe and equal access to [the school] or to another public, government building like a library or a post office.").

This Court determined that this case did not satisfy *Fry*'s test because the "gravamen of Plaintiffs' claims concerns the denial of [free appropriate public education]." *Hayes*, 2021 WL 4236698, at *8. But that is incorrect. None of the Plaintiffs seek a change in the individualized education plans set out for their children. They instead challenge an outside force that is making it impossible for the school districts to implement those plans—the Governor's Order barring mask mandates. The effect of the Governor's Order is to deny Plaintiffs equal access to their schools, which in turn interferes with their ability to take advantage of their educational plans and their right to a free public education. No individualized hearing could remedy that harm, and so exhaustion would be futile and is not required.

Several other federal districts have found that the identical relief was not subject to administrative conditions under *Fry*, and have granted preliminary injunctions after weighing facts not as extreme as in Florida. In Tennessee, the district court noted that the state's ban on masks in public schools affected the children's right to a free appropriate public education and that the complaint had alleged an impact on the plaintiffs' children's education. "But it one takes a step back and analyzes why Plaintiffs' education was interrupted, it is due to Plaintiffs' inability to access their educational environment." *G.S. by & through Schwaigert v. Lee*, No. 21-CV-02552-SHL-ATC, 2021 WL 4268285, at *10 (W.D. Tenn. Sept. 17, 2021). Rather than being about "what services do or do not suffice" or "the quality of Plaintiffs' education," the court concluded that the complaint was about how "school-aged children with disabilities … who are a common, heightened vulnerability to the effects of COVID-19 if exposed … cannot even walk into or within the building in a manner that is equal to their non-disabled counterparts." *Id*. The gravamen of their complaint was that "under the Executive Order, Plaintiffs cannot attend school without exposing themselves to the severe risk that their unmasked classmates pose to their health—and their parents are forced to decide whether to keep these students home, or place them at risk." *Id. See also S.B. by & through M.B. v. Lee*, 2021 WL 4346232, at *6-7; *ARC of Iowa*, 2021 WL 4166728, at *8; *Disability Rts. S.C. v. McMaster*, No. CIV 3:21-02728-MGL, 2021 WL 4444841, at *1 (D.S.C. Sept. 28, 2021).

The same is true here. The gravamen of the complaint is that the Plaintiffs' children are being denied access to their public schools—not whether their individual education programs are satisfactory. There is thus no need for Plaintiffs to exhaust their claims, and any requirement would be futile. Plaintiffs have thus established a substantial likelihood of success on the merits.

**B.      Absent immediate injunctive relief, Plaintiffs will suffer irreparable harm.**

Plaintiffs have shown that they will be irreparable harmed unless this Court enjoins enforcement of the Governor's Order pending appeal. As the parties argued in their motion for reconsideration and a motion for preliminary injunction, school is a dangerous place for disabled children under the Governor's Order.

The prevalence of COVID-19 infection in schools has skyrocketed. As of September 16, 2021, there had been more than 5.5 million diagnosed cases of COVID-19 among children, more than 15% of the reported total of COVID-19 cases. This amounts to a rate of 7,332 cases per 100,000 children in the population. ECF 107-3. Twenty percent of all child cases since the beginning of the pandemic were diagnosed between August 13, 2021, and September 16, 2021. *Id*. Florida has been especially hard hit: it has reported more child COVID-19 cases (at least 399,064 cases) than any other state in the nation, and has the eighth highest number of cumulative cases per 100,000 children. *Id*.

Current evidence suggests that children with medical complexity, with genetic, neurologic, metabolic conditions, or with congenital heart disease can be at increased risk for severe illness from COVID-19. Similar to adults, children with obesity, diabetes, asthma or chronic lung disease, sickle cell disease, or immunosuppression can also be at increased risk for severe illness from COVID-19. *See* COVID-19, People with Certain Medical Conditions https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Accordingly, children with disabilities are more susceptible to becoming seriously ill, needing hospitalization or death due to COVID-19 infection. The COVID-19 pandemic has and continues to have a profound and disproportionate direct and indirect impact on the health and well-being of children with developmental and intellectual disabilities (DD/ID).

Tinker SC, Cogswell ME, Peacock G, Ryerson AB., *Important Considerations for COVID-19 Vaccination of Children with Developmental Disabilities*, Pediatrics (Oct. 2021), available at https://pediatrics.aappublications.org/content/148/4/e2021053190; ECF 63-1.

Prior to the surge of the Delta variant, COVID-19 incidence was three times greater among patients of all ages with intellectual disabilities than those without, with six times the mortality rate. *See* Gleason J, Ross W, Fossi A, Blonsky H, Tobias J, Stephens M., *The Devastating Impact of Covid-19 on Individuals with Intellectual Disabilities in the United States*, NEJM Catalyst (Mar. 2021), available at https://catalyst.nejm.org/doi/full/10.1056/CAT.21.0051. Children with Autism Spectrum Disorders, Intellectual Disabilities, Learning Disabilities and Attention Deficit Hyperactive Disorder (ADHD) are three to nine times more likely to be hospitalized. Karpur A, Vasudevan V, Shih A, Frazier T., *Brief Report: Impact of COVID-19 in Individuals with Autism Spectrum Disorders: Analysis of a National Private Claims Insurance Database*, J. Autism Dev. Disord. (May 2021), available at https://pubmed.ncbi.nlm.nih.gov/34041682/. The case fatality rate for children with DD younger than 17 years of age compared to those without DD is more than tenfold higher. Turk MA, Landes SD, Formica MK, Goss KD., *Intellectual and developmental disability and COVID-19 case-fatality trends*, Disability Health J. (July 2020), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7245650/. At the end of July, Florida led the nation in children hospitalized for COVID-19, with 32 pediatric hospitalizations per day between July 24 and 30. *Id.*[1] A child infected with the Delta variant who is in a confined indoor

---

[1] Wolfson Children's Hospital, in Jacksonville, Florida, has had a 500% increase in the number of children recently hospitalized in comparison to previous pandemic peaks. At Joe DiMaggio Children's Hospital in Broward County, pediatricians treated just over 20 children with COVID-19 in June and more than 240 children with COVID-19 in July. In just the first 10 days of August, they have treated 160 children with COVID-19 infections. *See* ECF 63-1.

space, like a classroom, can infect approximately nine other children and adults if all were unmasked, according to the Centers for Disease Control. [ECF 63-1].

This data provides a striking view of the life-threatening risks the Plaintiffs' children face should they return to school without a mask requirement. But because of Governor's Order, schools cannot lawfully accommodate the Plaintiff students. Plaintiffs thus face an impossible choice. If they send their children back to school, those children will be placed in classrooms with children who are unvaccinated, unmasked, and possibly asymptomatic carriers of COVID-19. If they keep their child home for virtual learning or homeschooling, their children receive an inferior education and will be isolated from their peers.

R.K. is one example. She is a severely immunocompromised nine-year-old girl in Volusia County. When her parents learned that many students could attend her school unmasked, they withdrew her from in-person learning and enrolled her in virtual school. Virtual school only provides 120 minutes of direct instruction from a teacher and does not include gifted classes, extracurricular activities, or most elective classes. She does not have access to any of her classmates or the school's staff, and receives none of the services listed in her 504-plan. She is excluded and isolated, leading to a heightened risk of emotional harm. Where she once had access to an education of the same quality as her peers, the Governor's Order has made it impossible for her to continue accessing that education. School is too dangerous for R.K. to attend. ECF 80-8.

J.T. is another example. He is a ten-year-old boy who lives with multiple disabilities, including autism spectrum disorder and hyperekplexia. His parents requested accommodations in his Palm Beach school, including a requirement that the staff and students around J.T. wear masks. The school rejected that request. Without these accommodations, J.T. cannot return to school in person. ECF 80-3. Following the denial of the preliminary injunction, she asked the

Palm Beach Schools Counsel for a classroom where the students would be masked, she was told "You need to assume that all children in his room are unmasked and COVID-19 positive due to the governor's executive orders." ECF 107-1.

The Governor's Order thus imposes three types of irreparable injuries: (1) it substantially increases Plaintiffs' children's risk of contracting COVID-19 if they stay in school; (2) the Governor's Order presents an ongoing violation of Plaintiffs' rights under the ADA and section 504 of the Rehabilitation Act; and (3) to avoid the harms imposed by the Governor's Order, Plaintiffs are forced to withdraw their children from in-person learning, which results in irreparable loss of educational opportunities. All three of those injuries are recognized as irreparable harms in this Circuit that require injunctive relief to remedy.

Increased risks of substantial illness or death are well-recognized irreparable harms. *See Thomas v. Bryant*, 614 F.3d 1288, 1319 (11th Cir. 2010) ("[I]t is also well-established that injunctive relief is appropriate 'to prevent a substantial risk of serious injury from ripening into actual harm.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *Florida Agency for Health Care Administration v. Bayou Shores SNF, LLC*, 828 F.3d 1297, 1302 (11th Cir. 2016) ("Immediate jeopardy exists if the nursing home's noncompliance has caused or is likely to cause 'serious injury, harm, impairment or death to a resident.'"); *Edmonds v. Levine*, 417 F. Supp. 2d 1323, 1342 (S.D. Fla. 2006) ("The denial of medical benefits, and resultant loss of essential medical services, constitutes an irreparable harm to these individuals.").

It is also well-established that irreparable harm is presumed from a violation of a civil rights statute. *See Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir. 1984) ("[I]rreparable injury may be presumed from the fact of discrimination and violations of fair housing statutes."); *Silver Sage Partners, Ltd. v. City of Desert Hot Springs*, 251 F.3d 814, 827

(9th Cir. 2001) ("[W]here a defendant has violated a civil rights statute, we will presume that the plaintiff has suffered irreparable injury from the fact of the defendant's violation."). Because Plaintiffs have shown a violation of the ADA and section 504 of the Rehabilitation Act, they have also shown an irreparable harm caused by the Defendants' violation of federal law.

If that were not enough, Plaintiffs also show irreparable harm in the form of lost educational opportunities. "[T]he gravity of the harm is vast and far reaching when a child is deprived of his or her education." *Ass'n for Disabled Ams., Inc. v. Fla. Int'l Univ.*, 405 F.3d 954, 958 (11th Cir. 2005). Numerous courts have found that even a short loss of education, such as missing school classes, constitutes an irreparable harm warranting injunctive relief. *See Alejandro v. Palm Beach State College*, 843 F. Supp. 2d 1263, 1270-71 (S.D. Fla. 2011); *see also Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 142 (3d Cir. 2017) ("[E]ven a 'few months' in an unsound program can make 'a world of difference in harm' to a child's educational development") (quoting *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 121-22 (1st Cir. 2003)).

This Court's order denying the preliminary injunction found that plaintiffs had not "establish[ed] irreparable harm because they have not been denied educational services all together." *Hayes v. DeSantis*, No. 1:21-CV-22863-KMM, 2021 WL 4236698, at *13 (S.D. Fla. Sept. 15, 2021). But that is not the standard. Instead, Plaintiffs have shown irreparable harm because they have shown that they will be functionally denied access to their public schools, incurring substantial emotional and educational injuries that cannot be remedies through later monetary damages.

The decision in *Ray v. School District of DeSoto County* is instructive. There, two children diagnosed with HIV were barred from attending school with other children, but were provided with an option for either segregated schooling or homebound instruction. *Ray v. Sch. Dist. of*

*DeSoto Cty.*, 666 F. Supp. 1524, 1528 (M.D. Fla. 1987). The district court entered a preliminary injunction against the school because it found that the children had been irreparably harmed. *Id.* at 1534-35. The children were "denied access, by the [School] Board, to an integrated classroom and all the social and educational benefits which flow from placement in that 'normal' classroom environment." *Id.* It made no difference that the school provided other educational opportunities. Their exclusion from the school was a "[d]enial of the opportunity to lead as normal an educational and social life as possible" given their disabilities. *Id.* at 1535.

The same irreparable injury is now being inflicted on the Plaintiffs' children.

**C.     The balance of equities and public interest favor an injunction.**

The Plaintiffs have also shown the balance of equities are decidedly in their favor. Where the government is the opposing party, balancing of the harm and the public interest merge. *See Nken*, 556 U.S. at 435. The court therefore looks at whether any significant "public consequences" would result from issuing the preliminary injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

First, there "can be no public interest in exposing vulnerable persons to increased risks of severe illness and death." *Fraihat v. U.S. Immigr. & Customs Enf't*, 445 F. Supp. 3d 709, 749 (C.D. Cal. 2020). Second, "the public has no interest in the enforcement of what is very likely an unconstitutional" executive order. *Odebrecht Constr., Inc. v. Sec'y, Fla. Dep't of Transp.*, 715 F.3d 1268, 1290 (11th Cir. 2013); *see also Milliken v. Bradley*, 433 U.S. 267, 289 (1977) (affirming an injunction requiring state officials to "conform their conduct to the requirements of federal law"). As the Court of Appeals recently held, "[f]rustration of federal statutes and prerogatives are not in the public interest" and the court could "discern no harm from the state's nonenforcement of invalid [laws]." *United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012).

Third, the public has a substantial interest in the Plaintiffs' requested injunction. The spread of COVID-19 through interactions between unvaccinated and maskless children increases the spread of the virus throughout the community. An injunction against the Governor's Order "advances the public interest by reducing the chance of community spread." *Swain v. Junior*, 457 F. Supp. 3d 1287, 1314 (S.D. Fla. 2020). "The public has a critical interest in preventing the further spread of the coronavirus," especially as hospitals continue to be overwhelmed and ICU beds and respirators become increasingly occupied. *Id.* (quoting *Castillo v. Barr*, 449 F. Supp. 3d 915, 923 (C.D. Cal. 2020)).

This benefit comes at little cost to the Defendants. There is "little harm" in "permitting the individual public school districts to return to the way in which they were operating" prior to the Governor's Order. *ARC of Iowa*, 2021 WL 4166728, at *12. The school boards have already made the decision to impose mask mandates in many of the districts, and it is "no great burden" to return that discretion. *Id.* And although "[t]he public interest certainly recognizes the rights of parents," a "universal mask mandate requirement to protect students' health does not significantly impact their ability to direct their education any more than would a uniform policy." *G.S. by & through Schwaigert*, 2021 WL 4268285, at *13. When the harm to the Plaintiffs "is much more drastic," then the "[p]ublic interest is served by an injunction." *Id.*

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero– Barcelo*, 456 U.S. 305, 312 (1982)). With little administrative burden and no discernible costs associated with the requested modification, the balance of the hardships is greatly in favor of the Plaintiffs and an injunction pending appeal should be granted.

**WHEREFORE,** Plaintiffs, JUDITH ANNE HAYES, individually and on behalf of W.H., a minor., et al., respectfully requests that this Court GRANT the Plaintiffs' motion pending appeal

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 1, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties and counsel of record, or in some other authorized manner for those counsel or parties who are not authorized to receive notices electronically.

By: /s/*Matthew W. Dietz*
Matthew W. Dietz, Esq.
Florida Bar No. 84905
Stephanie Langer, Esq.
Florida Bar No. 149720
2990 Southwest 35th Avenue
Miami, Florida 33133
T: (305) 669-2822 / F: (305) 442-4181
slanger@justDIGit.org
mdietz@justdigit.org
aa@justdigit.org