# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:21-cv-22863-KMM

JUDITH ANNE HAYES, individually and on behalf of W.H., a minor,
ROBYN MCCARTHY and JOHN MCCARTHY, individually
and on behalf of L.M., a minor, AMANDA BANEK, individually
and on behalf of D.B. and B.B, minor children, JAMIE KINDER,
individually and on behalf of R.K., a minor, KRISTEN THOMPSON,
individually and on behalf of P.T., a minor, EREN DOOLEY,
individually and on behalf of G.D., a minor,

   Plaintiffs,

v.

GOVERNOR RONALD DION DESANTIS, in his official
Capacity as Governor of the State of Florida; FLORIDA
DEPARTMENT OF EDUCATION, RICHARD CORCORAN,
in his official capacity as Commissioner of the Florida Department
of Education, FLORIDA DEPARTMENT OF HEALTH,
JOSEPH A LADAPO, in his official capacity as the State
Surgeon General, ORANGE COUNTY SCHOOL BOARD,
MIAMI DADE COUNTY SCHOOL BOARD, PALM BEACH
SCHOOL BOARD, HILLSBOROUGH COUNTY
SCHOOL BOARD, ALACHUA COUNTY SCHOOL
BOARD and VOLUSIA COUNTY SCHOOL BOARD,

   Defendants.

_____/

## **AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND JURY DEMAND**

   COME NOW the PLAINTIFFS, JUDITH ANNE HAYES individually and on behalf of

W.H., a minor, ROBYN MCCARTHY and JOHN MCCARTHY, individually and on behalf of

L.M., a minor, AMANDA BANEK, individually and on behalf of D.B. and B.B, minor children,

JAMIE KINDER, individually and on behalf of R.K., a minor, KRISTEN THOMPSON,

individually and on behalf of P.T., a minor, and EREN DOOLEY, individually and on behalf of

G.D., a minor, by and through the undersigned counsels sues GOVERNOR RON DESANTIS;

Judith Anne Hayes, et. al.  v. Governor DeSantis, et. al.
AMENDED COMPLAINT
Page 2 of 33

FLORIDA DEPARTMENT OF EDUCATION; COMMISSIONER RICHARD CORCORAN; FLORIDA DEPARTMENT OF HEALTH, JOSEPH A LADAPO, in his official capacity as the State Surgeon General, ORANGE COUNTY SCHOOL BOARD; MIAMI DADE COUNTY SCHOOL BOARD; HILLSBOROUGH COUNTY SCHOOL BOARD, PALM BEACH SCHOOL BOARD; ALACHUA COUNTY SCHOOL BOARD and VOLUSIA COUNTY SCHOOL BOARD and hereby alleges as follows:

## PARTIES

1.      The plaintiff, JUDITH ANNE HAYES , is an individual, *sui juris*, who resides in ORANGE County, Florida. Mrs. Hayes is the mother of W.H., a child with a disability.

2.      The plaintiff, W.H., is a minor who resides in ORANGE County, Florida. W.H. has Down syndrome and has been identified as a student with a disability.

3.      The plaintiff, ROBYN MCCARTHY, is an individual, *sui juris*, who resides in MIAMI DADE County, Florida. Ms. McCarthy is the mother of L.M., a child with a disability.

4.      The plaintiff, JOHN MCCARTHY, is an individual, *sui juris*, who resides in MIAMI DADE County, Florida. Mr. McCarthy is the father of L.M., a child with a disability. .

5.      The plaintiff, L.M., is a minor who resides in MIAMI DADE County, Florida. L.M. has severe asthma and has been identified as a student with a disability.

6.      The plaintiff, AMANDA BANEK, in an individual, *sui juris*, who resides in PALM BEACH County, Florida. Ms. Banek is the mother of D.B. and B.B.

7.      The plaintiff, D.B., is a minor who resides in PALM BEACH County, Florida. D.B. has severe asthma and a speech impairment and has been identified as a student with a disability.

8.      The plaintiff, B.B., is a minor who resides in PALM BEACH County, Florida. B.B. has severe asthma, a speech impairment, attention deficit hyperactivity disorder and anxiety and has been identified as a student with a disability.

9.      The plaintiff, JAMIE KINDER, in an individual, *sui juris*, who resides in VOLUSIA County, Florida, at all times relevant. Ms. Kinder is the mother of R.K. a child with a disability.

10.     The plaintiff, R.K., is a minor who resides in VOLUSIA County, Florida. R.K. is immunocompromised and has been identified as a student with a disability.

11.     The plaintiff, KRISTEN THOMPSON, *sui juris*, who resides in ALACHUA County, Florida. Ms. Thompson is the mother of P.T., a child with a disability.

12.     The plaintiff, P.T., is a minor who resides in ALACHUA County, Florida. P.T. has Trisomy-18 and breaths through a tracheotomy. P.T. has been identified as a student with a disability.

13.     The plaintiff, EREN DOOLEY, is an individual, *sui juris*, who resides in HILLSBOROUGH County, Florida. Ms. Dooley is the mother of G.D. a child with a disability.

14.     The plaintiff, G.D., is a minor who resides in HILLSBOROUGH County, Florida. G.D. has asthma and anxiety and has been identified as a student with a disability.

15.     The Defendant, RONALD DION DESANTIS, in his official capacity as Governor of the State of Florida ("Gov. DeSantis" or "DeSantis" or "Governor"). He is responsible under Florida law for ensuring "the laws be faithfully executed" and has the "authority to protect life, liberty, and property." Florida Statutes §§ 14.01, *et. seq*. Defendant DeSantis is sued for his official capacity as the Governor of the State of Florida.

16.     The FLORIDA DEPARTMENT OF EDUCATION ("FLDOE") is the state educational agency (SEA) responsible for educating all children within the state of Florida, including those who need special educational services because of a disability. FLDOE is a public entity pursuant to 42 U.S.C. § 12131(1)(B) and is subject to the mandates of Title II of the ADA and its implementing regulations. FLDOE receives federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(a).

17.     The Defendant RICHARD CORCORAN, in his official capacity as Commissioner of the Florida Department of Education, is responsible for the acts and omissions of the FLDOE.

18.     The FLORIDA DEPARTMENT OF HEALTH ("FLDOH") is the state executive branch agency, established in section § 20.43, Florida Statutes, and responsible to protect and promote the health of all residents and visitors in the state through organized state and community efforts, including cooperative agreements with counties. FLDOH is a public entity pursuant to 42 U.S.C. § 12131(1)(B) and is subject to the mandates of Title II of the ADA and its implementing regulations. FLDOE receives federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. § 794(a).

19.     The Defendant JOSEPH A LADAPO ("LADAPO"), in his official capacity as State Surgeon General is statutorily obligated to have advanced training or extensive experience in public health administration and allegedly spearheads the efforts of FDOH and oversees all matters of public health. LADOPO is responsible for the acts and omissions of the FLDOH.

20.     GOVERNOR RON DESANTIS; FLORIDA DEPARTMENT OF EDUCATION; COMMISSIONER RICHARD CORCORAN; FLORIDA DEPARTMENT OF HEALTH, and JOSEPH A LADAPO, are collectively referred to as "State Defendants."

21.     The Defendant, ORANGE COUNTY SCHOOL BOARD, ("OCPS"), as an indispensable but not adverse party, is a corporate and governmental agency duly empowered by the constitution and statutes of the state of Florida to administer, manage, and operate the Orange County Public Schools ("OCPS"). OCPS receives state and federal funding for the education of children with disabilities. OCPS meets the definition of a public entity under 42 U.S.C. § 12131.

22.     The Defendant, MIAMI DADE COUNTY SCHOOL BOARD, ("MDCPS"), as an indispensable but not adverse party, is a corporate and governmental agency duly empowered by the constitution and statutes of the state of Florida to administer, manage, and operate the Miami Dade County Public Schools. MDCPS receives state and federal funding for the education of children with disabilities. MDCPS meets the definition of a public entity under 42 U.S.C. § 12131.

23.     The Defendant, PALM BEACH COUNTY SCHOOL BOARD ("PBCPS"), as an indispensable but not adverse party, is a corporate and governmental agency duly empowered by the constitution and statutes of the state of Florida to administer, manage, and operate the Palm Beach County Public Schools. PBCPS receives state and federal funding for the education of children with disabilities. PBCPS meets the definition of a public entity under 42 U.S.C. § 12131.

24.     The Defendant, HILLSBOROUGH COUNTY SCHOOL BOARD, ("HCPS"), as an indispensable but not adverse party, is a corporate and governmental agency duly empowered by the constitution and statutes of the state of Florida to administer, manage, and operate the Hillsborough County Public Schools ("HCPS"). HCPS receives state and federal funding for

the education of children with disabilities. HCPS meets the definition of a public entity under 42 U.S.C. § 12131.

25.     The Defendant, ALACHUA COUNTY SCHOOL BOARD ("ACPS"), as an indispensable but not adverse party, is a corporate and governmental agency duly empowered by the constitution and statutes of the state of Florida to administer, manage, and operate the Alachua County Public Schools. ACPS receives state and federal funding for the education of children with disabilities. ACPS meets the definition of a public entity under 42 U.S.C. § 12131.

26.     The Defendant, VOLUSIA COUNTY SCHOOL BOARD, ("VCPS"), as an indispensable but not adverse party, is a corporate and governmental agency duly empowered by the constitution and statutes of the state of Florida to administer, manage, and operate the Volusia County Public Schools. VCPS receives state and federal funding for the education of children with disabilities. VCPS meets the definition of a public entity under 42 U.S.C. § 12131.

27.     ORANGE COUNTY SCHOOL BOARD; the MIAMI DADE COUNTY SCHOOL BOARD; HILLSBOROUGH COUNTY SCHOOL BOARD, PALM BEACH SCHOOL BOARD; ALACHUA COUNTY SCHOOL BOARD and VOLUSIA COUNTY SCHOOL BOARD are collectively referred to as the "School Board Defendants."

28.     The School Board Defendants are necessary and indispensable parties, and in their absence, the children who attend school in their districts would not be able to obtain complete relief and it may leave these defendants subject to a substantial risk of incurring inconsistent obligations because of their interests.

Judith Anne Hayes, et. al.  v. Governor DeSantis, et. al.
AMENDED COMPLAINT
Page 7 of 33

_____

## JURISDICTION AND VENUE

29.     Jurisdiction for this action vests pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) based upon claims brought under the Americans with Disabilities Act of 1990; 29 U.S.C. § 794, for claims brought under Section 504 of the Rehabilitation Act of 1973.

30.     Venue for this action lies pursuant to 28 U.S.C. § 1391(b) in that Defendants MIAMI DADE COUNTY SCHOOL BOARD and PALM BEACH SCHOOL BOARD; reside in this judicial district, and the children, L.M., D.B., B.B. reside and go to schools in this Judicial District.

## INTRODUCTION

31.     Florida is one of the states that lead the United States with the most COVID cases, which is 4.17 million cases and 62,504 deaths as of December 31, 2021. In the past week, COVID cases, with Omicron variant cases predominating, have been increasing exponentially from the week before.  The weekly new case positivity for the week of December 24 to December 30, 2021 were 298,455 new cases, which tower over the prior three weeks cases from December 3rd, 10th and 17th, of 13,451, 29,514, and 128,186, respectively.

32.     Pursuant to the Florida Education Association, in the 2021 to 2022 Academic year, the statistics are as follows:

a.      28 Florida Children have died from COVID-19 since July 2021

b.      231,060 Florida Children under age 16 have tested positive Since August 1, 2021.

c.      109 active educators have died from COVID-19 since July 2021.

d.      31 school closings or partial closings since August 2021 due to COVID.

Disability Independence Group, Inc., 2990 Southwest 35th Avenue, Miami, Florida 33133

33.     In the almost three hundred thousand cases in Florida just last week alone, 7,870 victims were under five years old, 12,804 victims were between 5 and 11 years old, and 26,740 were between 12-19 years old.

34.     This Omicron variant was expected, as well as the cyclical patters in COVID-19 infections. While private entities and local governments are increasing protections for their customers and residents, Florida's schools, including the School Board Defendants, have been hobbled in their duty to protect students, including the most vulnerable students with disabilities, by the State Defendants herein. The protections that are guaranteed by the Americans with Disabilities Act to accommodate these students was ignored by the State Defendants as well.

35.     The path for this practice of disregarding the protected rights of the Plaintiffs and other students with disabilities was laid in May of 2021.

36.     Ignoring the epidemiological data indicating that Florida was experiencing a surge at the time and that there is a cyclical pattern to surges in Covid-19 infections, on May 3, 2021, Governor DeSantis signed an executive order suspending all COVID -19 emergency order and related public health restrictions publicly stating that Florida was no longer in a state of emergency.

37.     On June 29, 2021, Governor DeSantis signed into law H.B. 241, the Parent's Bill of Rights which, prevents the state from infringing on the fundamental rights of a parent to direct the upbringing, education, health care or mental health of a minor child. § 1013.03 and 1013.04, Fla. Stat (2021)

38.     On July 31, 2021, Florida recorded 21,683 new cases in one day, the highest at any time in the pandemic. Florida's test positivity rate reached 18.82%, driven by the delta variant of COVID-19.

39.     As the numbers of COVID-19 infections and deaths continue to rise in Florida, School Bords across Florida attempted to put into place additional protections including mask mandates. Each of the School Board defendants had implemented mask mandates and quarantines for those students who were exposed to the COVID-19 virus.

40.     In direct response to school districts implementing protections to their students, Gov. DeSantis, through executive order 21-175, on July 30, 2021, made mask wearing optional in schools for the 2021-2022 school year. Stating that, "we should protect the freedoms and statutory rights of students and parents by resting with the parents the decision whether their children should wear masks in school; and…we should equally and uniformly protect the freedoms and rights of student and parents across the state." The order goes on to withhold state funding to any noncompliant school boards who attempt to put into place any type of mask mandate.

41.     Furthermore, the Governor DeSantis ordered that the FLORIDA DEPARTMENT OF HEALTH issue rules and safety protocols and the FLORIDA DEPARTMENT OF EDUCATION to enforce those protocols that must "at minimum be in accordance with Florida's "Parents' Bill of Rights" and protect parents' right to make decisions regarding masking of their children in relation to COVID-19."

42.     Later that same day, Rule No. 64DER21-12 was enacted, which directed that each "school must allow for a parent or legal guardian of the student to opt-out the student from wearing a face covering or mask."

43.     In addition to allowing children not to wear masks, the regulation required children who do not wear masks to be fully integrated into all school activities, the prohibitions of rule 64DER21-12(6), provides as follows:

Judith Anne Hayes, et. al.  v. Governor DeSantis, et. al.
AMENDED COMPLAINT
Page 10 of 33

(6) NON-DISCRIMINATION. Students whose parents or legal guardian have opted them out of a mask or face covering requirement shall not be subject to any harassment or discriminatory treatment, including but not limited to:

    (a) Relegation to certain physical locations;

    (b) Isolation during school activities; or

    (c) Exclusion from any school-sponsored events or activities.

44.    On August 2, Florida broke its record for the most daily COVID-19 cases since the start of the pandemic and had greatest number of COVID-19 hospitalizations in the state, surpassing its total recorded more than a year and a half prior to the widespread availability of COVID-19 vaccines. On August 6th, Florida continued to break records with 23,909 new cases, according to the CDC.

45.    Contrary to all basic tenets, basic practices of public health, and what was known about the ability of asymptomatic carriers of the Sars-CoV-2 virus to transmit the virus, on September 22, 2021, Defendant LADAPO signed an emergency rule 64DER21-15 to allow parents whose children who were exposed to COVID-19, but were asymptomatic, not to quarantine for any time, and to be integrated in all school-based activities.

46.    The State Defendants have actively penalized the School District Defendants for failing to comply with Rule No. 64DER21-12. The State of Florida withheld $877,851 from Alachua County, Brevard County, Broward County, Duval County, Leon County, Miami-Dade County, Orange County and Palm Beach County.

47.    Contrary to all basic tenets and basic practices of public health, and what is known about Sars-CoV-2 related to the ability of masks to prevent the spread of the virus, and effectiveness of vaccines to prevent infection and serious illness, on November 18, 2021, Governor

Disability Independence Group, Inc., 2990 Southwest 35th Avenue, Miami, Florida 33133

Ronald Dion DeSantis signed legislation passed during a special session of the Florida Legislature that included as follows:

a.   A school district may not require that an employee be required to be vaccinated against COVID-19. § Fla. Stat. 112.0441(2).

b.   Any school employee may not require a student to wear a face mask, a face shield, or any other facial covering that fits over the mouth or nose. § 1022.20, Fla. Stat.

c.   Any school employee may not prohibit a student or another school employee from attending school or school sponsored activities, being on school property, or subject to restrictions or disparate treatment, based on an exposure to COVID-19, so long as the student or employee remains asymptomatic and has not received a positive test for COVID-19. § 1022.20, Fla. Stat.

d.   The FLORIDA DEPARTMENT OF HEALTH has authority to enforce the measures relating to employees, and the statute provided a private cause of action for a parent of a child to enforce.

48.   On October 29, 2021, the FDA issued an emergency use authorization for one of the vaccines against COVID-19 for children aged 5-11, and on November 3rd, the CDC Advisory committee on immunization practices recommended that children receive the Pfizer vaccine, expanding eligibility to 28 million children across the nation.

Judith Anne Hayes, et. al.  v. Governor DeSantis, et. al.
AMENDED COMPLAINT
Page 12 of 33

_____

**Omicron Variant**

49.     On November 25th, scientists in South Africa announced they have found a new COVID-19 variant of concern, The variant's mutations are described as a "big jump in evolution" by one scientist.

50.     On December 2, the first Omicron case was confirmed in the United States in California, from an American who traveled to South Africa.

51.      On December 13, 2021, Pfizer 2-dose vaccine regimen is found to have only have a **22.5% efficacy** against symptomatic infection with the Omicron variant, but can still prevent severe disease. Those who receive a booster may be better protected. Furthermore, on December 16th, a new study demonstrates that two doses of the Moderna vaccine were **50 times** less effective at neutralizing the Omicron variant compared with the original variant of COVID-19, while those who received a third dose of Moderna showed antibodies highly effective at blocking the Omicron variant, which had similar effectiveness at blocking the Delta variant.

52.     However, the children herein are not eligible for the third "booster" dose.

53.     As the Omicron variant spreads rapidly across the country, US health officials warn of a surge in cases in January 2022. CDC data show prevalence of Omicron multiplied by seven in a single week while Delta cases are still increasing.

54.     The Omicron variant accounted for an estimated 58.6 percent of COVID-19 cases in the U.S. for the week ending Dec. 25

55.     2021's death toll surpasses that of 2020 by approximately 15,000. Even though 2020 was the deadliest year on-record in the nation's history,

Disability Independence Group, Inc., 2990 Southwest 35th Avenue, Miami, Florida 33133

56.     Current studies indicate that Omicron wave will grow slowly through December, rapidly in January, and then peak in February of 2022.

57.     The progression of mutations and surges of the COVID-19 virus demonstrate that this virus will continue to mutate into increasingly transmissible, and potentially more virulent strains, until herd immunity is reached. For example, the Delta variant was more transmissible (and virulent) than the original COVID-19, and now the Omicron variant is spreading faster and is now the most prevalent variant in the US.

58.     We are currently in the next surge, largest thus far, numbers are increasing in Florida, surge in pediatric hospitalizations.

59.     This Omicron surge primarily among unvaccinated, but breakthrough infections are greater with the Omicron variant than previous variants

60.     Until herd immunity is reached, a new variant and surges will be reoccurring every few months.

61.     On Thursday, December 30, 2021, MDCPS Superintendent Alberto Carvalho announced mask requirements for adults who go in MDCPS schools but stated that despite his need to protect his students, he could not create mask mandates for students and could not require students who have been exposed to COVID-19.  Furthermore, he plead that the Governor and the Commissioner of Education sent advice and guidance on mitigation strategies.

62.     Despite the critical need for mitigation efforts and the record setting COVID-19 positivity rates, the Defendants, GOVERNOR DESANTIS, COMMISSIONER CORCORAN, AND DR. LADAPO have actively thwarted the use of protections against the virus.

Judith Anne Hayes, et. al.  v. Governor DeSantis, et. al.
AMENDED COMPLAINT
Page 14 of 33

**PLAINTIFFS**

63.    Without the implementation of proven mitigation efforts, such as masking and quarantines, for thousands of students across the State of Florida it is too risky to return to brick-and-mortar schools.

64.    For schools that had implemented mask mandates in the Fall of 2021,

  a.    2.6 times lower student COVID-19 cases per capita in school districts starting the school year with mask requirements (Alachua, Broward, Miami-Dade) than school districts without mask requirements

  b.    School districts without mask requirements had nearly twice as many student COVID-19 cases as school districts requiring masks

  c.    School districts without mask requirements, had nearly 3.5 times higher student COVID-19 peak cases per capita than school districts requiring masks

  d.    The smallest school districts, without mask requirements, had four times higher student COVID-19 peak cases per capita than in the largest school districts where masks were required

  e.    Maskless Highlands County's peak cases per capita (12) were 600 times higher than in masked Miami-Dade and Broward counties (0.02)

  f.    0.69 peak cases per capita in school districts requiring masks; 0.98 peak cases per capita in school districts with mask parental opt-outs; 2.31 peak cases per capita in school districts with no mask requirements

  g.    Five largest school districts had average 0.48 peak cases per capita, while five smallest school districts had 1.82 peak cases per capita

Judith Anne Hayes, et. al.  v. Governor DeSantis, et. al.
AMENDED COMPLAINT
Page 15 of 33

65.     For the 2020-2021 school year, Florida had 2,795,691 students enrolled in public schools.  14.9% are students who have been recognized as having a disability.

66.     In the 2020-2021 academic year, 24,136 students were identified has having an intellectual disability; 47,667 students were identified as having an Autism Spectrum Disorder and 438 have traumatic brain injuries. 47,606 are identified as other health impaired.

67.     Due to the practicalities of a schoolhouse environment, other protections, such as social distancing or plexiglass shields are not effective. Children who are in school may go from classroom to classroom and be with many students in one class.

**W.H. in Orange County School District**

68.     W.H. is 10 years old and was born with Down syndrome.

69.     W.H. is enrolled in an Orange County public school. OCPS has recognized that W.H. has a disability.

70.     Even though W.H. has been vaccinated, W.H. currently has the Omicron strain of COVID-19.  Due to the differing variants and mutations, W.H. is subject to breakthrough infections.

71.     Children with Down syndrome have been 10 times more likely to be hospitalized and 4 times more like to die if they contracted COVID-19. Children with Down syndrome who may have immune deficiencies, and are at risk for Long COVID, multisystem inflammatory syndrome, and other long-term multiorgan effects,   may have substantially shorter life expectancies in comparison to children without trisomy 21.

72.     W.H.'s parents believe that it is too risky to return to brick-and-mortar school during the pandemic if OCPS ignores CDC recommended safety guidelines, public health

authorities and their doctors' recommended guidelines, such as vaccinations, mandatory masking, and evidence-based quarantine protocols.

73.    W.H., and his parents, would like W.H. to receive in-person instruction and have the ability to interact with his teacher and peers, as well as receiving the necessary supports, services and accommodations that he receives during the school day in his schoolhouse.

74.    W.H.'s mother has specifically requested that when the CDC recommends such measures, that the following modification be made to accommodate W.H.'s disability and to ensure that he is safe:

a.    That both students and employees wear a mask when in close proximity (closer than 6 feet) to W.H.;

b.    That staff of OCPS that have in-person interaction with W.H. be fully vaccinated (includes booster);

c.    That staff or students that are exposed to the Coronavirus be quarantined while there is a risk of infection.

75.    In response to this request for accommodation, W.H.'s mother has been ignored.

76.    It is clear that any relief that would keep her son safe would be futile in light of the new laws from the state of Florida.

77.    W.H.'s mother has decided not to place W.H. in school on January 4, 2022, because of the Omicron variant but will put him in school if masks are required and he is not exposed to persons who may be infected.

Judith Anne Hayes, et. al.  v. Governor DeSantis, et. al.
AMENDED COMPLAINT
Page 17 of 33

**L.M. in Miami Dade County School District**

78.     L.M. is 6 years old and lives with moderate to severe asthma and other suspected disabilities and MDCPS has recognized that L.M. has a disability.

79.     L.M. attends a Miami Dade County public school in a magnet program.

80.     L.M.'s parents believe that it is a risk for L.M. to go back to school during the pandemic and unless rigorous evidence-based mitigation precautions are implemented including mask and vaccine mandates, social distancing, and quarantining. They have taken precautions such as taking him home for lunch so that he can wear his mask throughout the day in school and not to be exposed to the virus during lunch.

81.      Even though L.M. has been fully vaccinated, L.M.'s parents believe that it is very risky to return to brick-and-mortar school if the school district does not follow the CDC and public health authorities safety guidelines and their doctors recommend guidelines, such as, such as vaccinations, mandatory masking, quarantining persons exposed to the virus.

82.     Children with respiratory diseases, such as asthma, like L.M. are especially susceptible to death and long-term injury from the COVID virus.  Children with asthma have increased susceptibility to the respiratory infection and complications caused by the SARS-CoV-2 virus.

83.     L.M., and his parents, would like L.M. to continue to go to school for in person instruction and have the ability to interact with his teacher and peers, as well as receiving the necessary supports, services and accommodations that he receives.

84.     L.M.'s parents specifically request that the following modifications be made to accommodate L.M's disability and to ensure that he is safe:

a.  That both students or employees wear a mask when in close proximity to L.M. (closer than 6 feet).;

b.  That staff of MDCPS that have in-person interaction with L.M.be vaccinated;

c.  That staff or students that are exposed to the Coronavirus be quarantined until there is no risk for further exposure.

85.     In response to this request for accommodation, L.M.'s parents have been ignored, but have heard the superintendent state that MDCPS would like to implement mask mandates and quarantines but cannot because of the current legislation.

86.     It is clear that any relief that would keep her son safe would be futile in light of the new laws from the state of Florida.

87.     L.M.'s parents are concerned that his is at increased risk, while they will continue to go to school, they feel that they have no choice.  They have bought him the Sonomask Pro with a 97% filtration efficacy of 3-micron particles and built-in antimicrobial properties so he would have the ultimate protection while in school.  In addition, they will continue to take him home during lunch, where there is an increased risk due to the spacing of students, and non-mask wearing while eating.

88.     L.M.'s parents have been told that if L.M. does not return to school in person, he will lose his spot in his choice program and will have to find another school to attend. No one from the district has provided his parents with any options or accommodations so that he can remain in his magnet school program and receive all the benefits of that program.

**D.B. and B.B. in Palm Beach County School District**

89.     D.B. is 6 years old and B.B. is 13 years old. B.B.

90.     D.B. and B.B. are siblings and attend public school in Palm Beach County.

91.     D.B. and B.B. both live with severe asthma. PBCS has recognized that both children are disabled.

92.     Their brother, R.B., also attends public school and is terrified he will bring the virus home to his siblings.

93.     D.B. and B.B. would like to continue to go to school for in person instruction and have the ability to interact with his teacher and peers, as well as receiving the necessary supports, services and accommodations that he receives.

94.     D.B.'s and B.B's parents believe that there is a substantial risk to their children to return to brick-and mortar school if the school district does not follow the CDC recommended safety guidelines and D.B.'s and B.B's treating doctors'  recommendations, such as vaccinations, mandatory masking,  and quarantining persons exposed to the virus.

95.     Even though D.B. and B.B. are vaccinated, D.B.'s and B.B.'s parents have specifically requested that when the CDC and public health authorities recommends such measures, that the following modification be made to accommodate D.B.'s and B.B.'s disabilities and to ensure that he is safe:

   a.   That both students or employees wear a mask when in close proximity to D.B. or B.B.

   b.   That staff or students that are exposed to the Coronavirus be quarantined until no longer a threat of infection.

96.     D.B.'s and B.B.'s parents were told that they could not even ask about vaccinations; however In response to this request for accommodation, D.B.'s and B.B.'s parents were advised

that the school was not permitted by Florida law to accommodate these requests for accommodation.

97.    It is clear that any relief that would keep her son safe would be futile in light of the new laws from the state of Florida.

98.    D.B.'s and B.B.'s parents are concerned that they are at increased risk, while they will continue to go to school, they feel that they have no choice.  They urge their children to remain masked and to frequently wash their hands.

### R.K. in Volusia County School District

99.    R.K. is 9 years old and is immunocompromised. R.K. has a weakened immune system and a reduced ability to fight infections making her vulnerable to severe illness and death due to COVID-19.

100.    R.K. attends a public school in Volusia County. Because of her disabilities she cannot return to school safely.

101.    No one can guarantee her safety.  Children with autoimmune diseases, such as R.K. are especially susceptible to serious illness and death.  Multisystem inflammatory syndrome and the effects thereof can be deadly to children like R.K.

102.    R.K. would like to continue to go to school for in person instruction and have the ability to interact with her teacher and peers, as well as receiving the necessary supports, services and accommodations that he receives in the schoolhouse.

103.    R.K.'s mother believes that it is too risky for R.K. to return to brick-and mortar school if the school district does not follow the CDC recommended safety guidelines and R.K..'s

treating doctors' recommendations, such as vaccinations, mandatory masking,  and quarantining persons exposed to the virus

104.    R.K.'s mother has specifically requested that when the CDC recommends such measures, that the following modification be made to accommodate R.K.'s disabilities and to ensure that he is safe:

    a.    That both students or employees wear a mask when in close proximity to R.K.;

    b.    That staff of VCPS that have in-person interaction with R.K..be vaccinated;

    c.    That staff or students that are exposed to the Coronavirus be quarantined until no longer a threat of infection.

105.    In response to this request for accommodation, R.K.'s mother was advised that the school was not permitted by Florida law to accommodate these requests for accommodation.

106.    It is clear that any relief that would keep her daughter safe would be futile in light of the new laws from the state of Florida.

107.    R.K.'s mother has decided to pull R.K. from school because of the surge of Omicron and the failure to require masks and other precautions, such as masks, quarantines and vaccines.

**P.T. in Alachua County School District**

108.    P.T. is 8 years old and has Trisomy-18. Trisomy-18 also known as Edwards syndrome is when someone is born with an extra chromosome. Trisomy-18 causes severe developmental delays.

109.    P.T. has severe developmental delays and has a tracheostomy and a g-tube. A tracheostomy is an opening created at the front of the neck so a tube can be inserted into the

Judith Anne Hayes, et. al.  v. Governor DeSantis, et. al.
AMENDED COMPLAINT
Page 22 of 33

windpipe (trachea) to help you breathe. P.T. also has a g-tube in which she receives all of her nutrition due to failure to thrive, which also makes her less resilient against infectious agents. P.T. is at a higher risk to get Covid-19 if people around her are not wearing masks.

110.   P.T. attends public school in Alachua County.

111.   Her parents believe that it is too risky for P.T.  to return to brick-and mortar school if the school district does not follow the CDC recommended safety guidelines and P.T's treating doctors'  recommendations, such as vaccinations, mandatory masking,  and quarantining persons exposed to the virus.

112.   P.T. would like to continue to go to school for in person instruction and have the ability to interact with her teacher and peers, as well as receiving the necessary supports, services and accommodations that she receives.

113.   P.T..'s parents have specifically requested that when the CDC and public health authorities recommends such measures, that the following modification be made to accommodate P.T.'s disability and to ensure that she is safe:

a.   That both students or employees wear a mask when in close proximity to P.T.;

b.   That staff of ACPS that have in-person interaction with P.T.be vaccinated;

c.   That staff or students that are exposed to the Coronavirus be quarantined until no longer a threat of infection.

114.   It is clear that any relief that would keep her daughter safe would be futile in light of the new laws from the state of Florida.

115.   The risks of contracting the COVID-19 virus, serious illness and death are substantially increases for a medically complex child, such as P.T.

116.     P.T.'s mother will only send her child to school if she determines that the staff in contact with her daughter will wear masks and were immunized.

### G.D. in Hillsborough County School District

117.     G.D. is 10 years old and has severe asthma and anxiety.

118.     G.D. attends a public school in Hillsborough County. HCPS has identified G.D. as a child with a disability

119.     G.D.'s anxiety is triggered by being in school without everyone wearing masks and her anxiety is triggered by staying home and being isolated. This anxiety is impacting her education. Her parents are in a "no win" situation.

120.     Her treating doctors and specialists have informed her mother that it is too dangerous to return to brick-and mortar school without such precautions as recommended by CDC guidelines of mandatory masking and regular testing in schools.

121.     Even though G.D. is vaccinated, children with respiratory diseases, such as asthma, like G.D. are especially susceptible to death and long-term injury from the COVID virus.  In addition to multisystem inflammatory syndrome, children with asthma will have increased susceptibility to the tiredness or fatigue, lung inflammation, muscle and joint pain, and cough.

122.     G.D.. would like to continue to go to school for in person instruction and have the ability to interact with his teacher and peers, as well as receiving the necessary supports, services and accommodations that she receives.

123.     G.D.'s parents have specifically requested that when the CDC recommends such measures, that the following modification be made to accommodate G.D.'s disability and to ensure that she is safe:

Judith Anne Hayes, et. al.  v. Governor DeSantis, et. al.
AMENDED COMPLAINT
Page 24 of 33

a.      That students or employees wear a mask when in close proximity to G.D.;

b.      That staff of HCPS that have in-person interaction with G.D..be vaccinated;

c.      That staff or students that are exposed to the Coronavirus be quarantined until no longer a threat of infection.

124.    In response to this request for accommodation, G.D..'s parents were advised by the principal that he was pushing for it, but it is unlikely because of the law.

125.    It is clear that any relief that would keep her daughter safe would be futile in light of the new laws from the state of Florida.

126.    G.D.'s mother has decided not to send her daughter to school until the surge ends or there is a masking protocol in place that would keep G.D. safe.

**GENERAL ALLEGATIONS**

127.    As part of a school district's obligations under the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act, all public-school children with disabilities are entitled to learn and interact with all other children, receive the same education as all other children, and do so while being safe and returning home as safe and healthy as possible.

128.    All children herein meet the definition of disability as set forth in the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

129.    The children whose parents are plaintiffs are all children with disabilities in the school districts in the counties in which they live.  They are all at higher risk for severe illness or death due to COVID-19, as well as its aftereffects, and cannot go to public school without being at much higher risk of severe illness or death.  The families are seeking to have their school district to protect their children in danger of getting sick.

Disability Independence Group, Inc., 2990 Southwest 35th Avenue, Miami, Florida 33133

Judith Anne Hayes, et. al.  v. Governor DeSantis, et. al.
AMENDED COMPLAINT
Page 25 of 33

---

130.    As Governor of Florida, Ron DeSantis, or any of the State Defendants, do not have the authority to threaten school districts with loss of funding if they protect their students with disabilities health and rights to be in an integrated learning environment. Furthermore, the State of Florida may not enact or enforce a law which penalizes children with disabilities when a disability-related accommodation is required by federal law.  By doing so, each State Defendant is violating the Americans with Disabilities Act and Rehabilitation Act by using criteria and methods of administration (i) That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; [and] (ii) That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities. 28 C.F.R. § 35.130(b)(3).

131.    The children Plaintiffs would like to have a safe school environment without state preconditions that may cause them harm.

132.    This executive order and law conflicts with the school districts obligations under the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act in accommodating children with disabilities and the Plaintiffs request that this court find that such order violates 28 C.F.R. § 35.130(b)(3) by imposing criterial and methods of administration that defeat the purposes of these laws upholding the rights of these children.

133.    Students with disabilities who are unable to attend to brick-and-mortar schools because of continued health concerns, are being excluded from the public school system in violation of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act.

Judith Anne Hayes, et. al.  v. Governor DeSantis, et. al.
AMENDED COMPLAINT
Page 26 of 33

134.    The executive order and the subject statutes have placed an illegal barrier for students with disabilities which is preventing our state's most vulnerable students from returning to public schools.

135.    Any alternatives for students with disabilities other than brick-and-mortar schools deny equal and effective programs and services for children with disabilities.

136.    By its actions and inactions, all Defendants are forcing children out of the schoolhouse into segregated and unequal environments and placing parents are put into an impossible situation of having to choose between the health and life of their child and returning to in-person school.

137.    Further, each child's public school has not offered these students any alternatives that provide them with an equal opportunity to receive equal access to its programs and services and leaves the blame of the failure of doing so at the hands of the State Defendants.

138.    Each of the Defendant School Districts have implemented a mask mandate prior to the implementation of the new law, and it would be illegal for them to do so after the law was passed, and will subject the district to civil claims from parents of children who disregard the health and safety of children with disabilities.

139.    Despite record numbers of cases and deaths being reported in the state of Florida, despite guidance from the U.S. Department of Education, the CDC and public health experts, the State of Florida Defendants herein have remained steadfast in their position that school districts will be punished if they put certain measures in place, including mask mandates.

Judith Anne Hayes, et. al.  v. Governor DeSantis, et. al.
AMENDED COMPLAINT
Page 27 of 33

140.    These decisions by the State of Florida Defendants have left thousands of students with no ability to safely return to brick-and-mortar schools and no alternatives for a public education.

141.    The Plaintiffs have performed all conditions precedent prior to the filing of the instant action as exhaustion is unnecessary, and if necessary, would be futile.

142.    The Plaintiffs have engaged the Disability Independence Group, Inc. to represent them and are obligated to pay a reasonable fee for their services.

## COUNT 1

## VIOLATION OF TITLE II OF THE AMERICAN DISABILITIES ACT

143.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 142 of the Complaint as if fully set forth herein.

144.    The Defendants are public entities and is therefore subject to Title II.

145.    The ADA provides a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. 42 U.S.C. § 12101(b)(1) & (2).

146.    Enactment of the ADA reflected deeply held American ideals that treasure the contributions that individuals can make when free from arbitrary, unjust, or outmoded societal attitudes and practices that prevent the realization of their full potential.

147.    The ADA embodies a public policy committed to the removal of a broad range of impediments to the integration of people with disabilities into society and strengthening the federal government's role in enforcing the standards established by Congress.

148.    The ADA requires that "no qualified individual with a disability shall, by reason of

such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

149.    As a result of the immediate implementation of the Executive Order and the laws of the State of Florida to deny these children the protection that they need to attend school in a safe environment, the Defendants have violated the regulations and provisions of the ADA as follows:

a.    The Defendants are failing to make a reasonable modification under circumstances where it is required (28 C.F.R. § 35.130(b)(7); 34 C.F.R. § 104.34(a);

b.    The State Defendants enacted and currently enforce a law that categorically bars school districts from requiring that any student or any employee wear a mask or be vaccinated.  As a result, the school district cannot make an individualized determination that any employee or students wear a mask or be vaccinated regardless of the needs of a student with a disability as a reasonable accommodation for a particular student, regardless of the recommendations of the CDC or the students' treating professionals.

c.    The Defendants are excluding Plaintiffs from the participation in public education (42 U.S.C. § 12132; 28 C.F.R. § 35.130; 34 C.F.R. § 104.34(a)))

d.    The Defendants are failing to make its services, programs, and activities "readily accessible" to disabled individuals (28 C.F.R. § 35.150; 34 C.F.R. § 104.34(a)))

e.    The Defendants are administering a policy that has the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability

and That has the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities. (28 C.F.R. § 35.130(b)(3))

f.     The Defendants are failing to permit a public entity to administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities. (28 C.F.R. § 35.130(d); 34 C.F.R. § 104.34(a))

150.    The ADA further prohibits any public entity from directly or through contractual or other arrangements, utilizing any criteria or methods of administration that (a) has the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and/or (b) perpetuates the discrimination of another public entity if both public entities are subject to common administrative control or are agencies of the same State. § 35.130 (b)(3)(i)&(iii).

151.    The State Defendants do not have the authority to circumvent the ADA and protections for students with disabilities through the executive order

152.    Excluding children from the public-school classroom because of a disability is exactly the type of discrimination and segregation the ADA and its amendments aim to prevent and specifically prohibit.

153.    Further, the regulations implementing the ADA require that "a public entity shall administer services, programs and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d).

154.    As public entities and instrumentalities of the state, each of the school districts is prohibited from providing "a qualified individual with a disability with an aide, benefit or service

that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided others." 28 CFR 35.130(b)(1)(iii).

WHEREFORE, the Plaintiffs respectfully pray that this Court grant the following relief against the Defendants, including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that the Florida law and executive order that restricts a school district's obligation to protect these children with disabilities have subjected the Plaintiffs to discrimination in violation of the Americans with Disabilities Act, issue a permanent injunction enjoining the Defendants from discriminating against students with disabilities and allowing the school to implement the parents accommodation requests, and awarding Plaintiffs' attorneys' fees, costs and expenses incurred in this matter and for such further relief as the court deems just and equitable.

## COUNT 2

### <u>SECTION 504 OF THE REHABILITATION ACT OF 1973</u>
### <u>29 U.S.C. § 706</u>

155.    Plaintiffs repeat and re-allege the allegations in paragraphs 1 through 142 of the Complaint as if fully set forth herein.

156.    Plaintiffs are children with disabilities that substantially limit one or more major life activities and therefore are considered a person with a disability under Section 504 of the Rehabilitation Act, as amended. See 29 U.S.C. §706(8).

157.     The Plaintiffs are otherwise qualified under section 504 of the Rehabilitation Act because they meet the essential eligibility requirements for the Defendants' services at all times material hereto.

158.     The Defendants are recipients of federal financial assistance.

159.     The policies, practices and procedures, particularly the actions and omissions described herein, violate the student's rights under Section 504 of the Rehabilitation Act by discriminating on the basis of a disability.

160.     As a result of the immediate implementation of the Florida law  to deny these children the protection that they need to attend school in a safe environment, the State Defendants have violated the regulations and provisions of the ADA as follows:

a.  The Defendants are failing to make a reasonable modification under circumstances where it is required (28 C.F.R. § 35.130(b)(7); 34 C.F.R. § 104.34(a);

b.  The State Defendants enacted and enforce a law that categorically bars school districts from requiring that any student or any employee wear a mask or be vaccinated.  As a result, each of the school districts cannot make an individualized determination that any employee or students wear a mask or be vaccinated regardless of the needs of a student with a disability as a reasonable accommodation for a particular student, regardless of the recommendations of the CDC or the students' treating professionals.

c.  The Defendants are excluding Plaintiffs from the participation in public education (42 U.S.C. § 12132; 28 C.F.R. § 35.130; 34 C.F.R. § 104.34(a)))

d.  The Defendants are failing to make its services, programs, and activities "readily accessible" to disabled individuals (28 C.F.R. § 35.150; 34 C.F.R. § 104.34(a)))

e.  The Defendants are administering a policy that has the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and That has the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities. (28 C.F.R. § 35.130(b)(3))

f.  The Defendants are failing to permit a public entity to administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities. (28 C.F.R. § 35.130(d); 34 C.F.R. § 104.34(a))

to return to brick-and-mortar schools is a violation of Section 504.

WHEREFORE, the Plaintiffs respectfully pray that this Court grant the following relief against the Defendants, including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that the Florida law and executive order that restricts a school district's obligation to protect these children with disabilities have subjected the Plaintiffs to discrimination in violation of Section 504 of the Rehabilitation Act permanently enjoining the defendants from any practice, policy and/or procedure which would deny students with disabilities equal access to and benefit of each of the school districts services, and allowing the school to implement the parents accommodation requests, award damages, reasonable costs, attorneys' fees and any other relief this court deems necessary and appropriate.

Judith Anne Hayes, et. al.  v. Governor DeSantis, et. al.
AMENDED COMPLAINT
Page 33 of 33

_____

**WHEREFORE**, the Plaintiffs, demand judgment against the Defendants for damages, together with their attorney's fees and costs, and such further relief as the court deems just and equitable.

Dated this 3rd day of January, 2022.

By:  s/ *Matthew W. Dietz*
Matthew W. Dietz, Esq.
Florida Bar No.: 0084905
Stephanie Langer, Esq.
Florida Bar No. 149720
2990 Southwest 35th Avenue
Miami, Florida 33133
T: (305) 669-2822 / F: (305) 442-4181
slanger@justDIGit.org
mdietz@justdigit.org
aa@justdigit.org
*Attorneys for the Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 3, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties and counsel of record, or in some other authorized manner for those counsel or parties who are not authorized to receive notices electronically.

By:  s/ *Matthew Dietz*
Stephanie Langer, Esq.
Florida Bar No. 149720
Matthew W. Dietz, Esq.
Florida Bar No.: 0084905